UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**03-12388 GAO**

| | |
|---|---|
| THOMAS D. GILLIS, ) | |
| ) | |
| Plaintiff ) | |
| ) | Civil Action No.: |
| vs. ) | |
| ) MAGISTRATE JUDGE Cohen | |
| SPX CORPORATION INDIVIDUAL ACCOUNT ) | |
| RETIREMENT PLAN, ) | |
| ) | |
| Defendant ) | |
| ) | |

AMOUNT $150
SUMMONS ISSUED yes
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
DPTY CLK F.O.W
11/26/03

**COMPLAINT**

**Introduction**

1. In this action, Thomas D. Gillis seeks relief against the Defendant SPX Corporation Individual Account Retirement Plan ("SPX Plan," or "Plan"), on account of the Plan's violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Pursuant to §502(a)(1)(B) of ERISA, Mr. Gillis, in his capacity as a Plan participant, makes this demand for the unpaid benefits due him under that Plan. In addition, Mr. Gillis seeks to recover reasonable attorney's fees and costs under §502(g)(1) of ERISA.

2. The bases for Mr. Gillis' claims for relief against the SPX Plan are: (a) that the calculation of his benefit under the Plan impermissibly shortchanged him of his pension; and (b) the Plan administrator's calculation of Mr. Gillis' lump sum benefit under the Plan complied with neither the terms of the Plan nor applicable law.

**Parties**

3. Mr. Gillis is an individual residing in Ashland, Massachusetts.

4. The SPX Plan is a cash balance, defined benefit plan sponsored by SPX Corporation which has its principal place of business in Charlotte, North Carolina.

**Jurisdiction and Venue**

5. This court has subject matter jurisdiction over the dispute described in this complaint pursuant to 28 U.S.C. §1331 (federal question).

6. Venue is proper in this court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this dispute occurred within this district and because the SPX Plan is subject to personal jurisdiction in this judicial district.

**Facts:**

### Background

7. At all times relevant hereto, Mr. Gillis had worked for SPX Corporation and its predecessors out of the district sales office located in Massachusetts.

8. Mr. Gillis became a participant of the Plan through his employment with SPX Corporation ("SPX"). The Plan Administrator of the SPX Plan is the SPX Corporation Retirement and Welfare Plan Administrative Committee ("SPX Plan Administrator" or "Plan Administrator").

9. Mr. Gillis' total pension is comprised of his benefit accruals under the pension programs of the three companies, Blue M Electric, General Signal Corporation and SPX Corporation, that sponsored the Plan, or one of its predecessors, in which Mr. Gillis participated.

10. Mr. Gillis accrued benefits under the Blue M Electric Pension Plan ("Blue M Plan") from May 10, 1965 to July 1, 1982. General Signal Corporation ("GSX") purchased Blue M Electric in 1981 and merged the Blue M Plan with the Corporate Retirement Plan of General Signal Corporation ("GSX Plan") in 1982. Mr. Gillis thereafter accrued benefits

under the GSX Corporate Plan beginning as of July 1, 1982 and ending on November 30, 1998. On November 30, 1998, the GSX Corporate Plan was merged with the SPX Plan as a result of GSX's merger with SPX.

11. The SPX Plan, a defined benefit plan, was amended as of July 1, 1997 to switch from a final average pay plan to a cash balance plan.

12. A cash balance plan is a type of defined benefit plan that typically defines the benefits of an employee by reference to the employee's hypothetical account to which hypothetical principal allocations and interest adjustments are made each year. Under a cash balance plan, an employee does not have an actual account to which the employer makes contributions, as in the case of a defined contribution plan. Rather, the hypothetical account in a cash balance plan serves as a basis for tracking the accrual of benefits which must meet certain legal requirements. For example, when an employee terminates employment prior to normal retirement age, he or she is, by law, entitled to his or her vested "accrued benefit" or its actuarial equivalent which includes interest adjustments through normal retirement age.

13. In order to determine Mr. Gillis' accrued benefit under the cash balance formula, the SPX Plan converted his accrued benefit in the GSX Corporate Plan, which included his Blue M Plan accrued benefit, to its lump sum actuarial equivalent[1] on December 31, 1998 and treated this sum as his "opening Account Balance" under the SPX Plan.

14. Under the terms of the SPX Plan, Mr. Gillis' opening Account Balance includes the early retirement subsidy to which Mr. Gillis was entitled under the prior GSX Corporate Plan.

---

[1] Mr. Gillis' accrued benefit under the GSX and Blue M Plans was originally expressed as a monthly payment for his life on life expectancy. The present value of this stream of payments, expressed as a lump sum, is the actuarial equivalent of those payments. Reasonable actuarial assumptions stated in the SPX Plan are used to find the actuarial value of Mr. Gillis "opening Account Balance" in the SPX Plan. The actuarial assumptions on which actuarial equivalents are based include a mortality table and interest rate assumptions.

00794515/7                                3

15. Under the terms of the SPX Plan, Mr. Gillis' GSX service was treated as Continuous Service under the SPX Plan.

16. After 1998, Mr. Gillis was credited with new service under the SPX Plan, based on his employment with SPX and he accrued benefits under the SPX Plan until his early retirement from the SPX Corporation, on June 21, 2002, at age 59½.

17. On or about September 27, 2002, Mr. Gillis submitted a claim for benefits under the SPX Plan for unpaid benefits due him under the Plan.

18. On March 18, 2003, the SPX Plan Administrator denied Mr. Gillis' initial claim of September 27, 2002 for a properly calculated lump sum distribution.

19. In accordance with the procedures outlined in the SPX Plan Administrator's March 18, 2003 letter, on May 2, 2003 Mr. Gillis submitted an administrative appeal of the Plan Administrator's denial of his unpaid benefits.

20. The SPX Plan Administrator did not respond within 180 days, effectively denying Mr. Gillis' appeal.

### Overview of Benefits Under SPX Plan

21. The SPX Plan, as amended and restated, effective as of January 1, 2001, is the controlling document with respect to Mr. Gillis' lump sum pension distribution. The Plan states that it is to be administered and construed in accordance with ERISA and applicable federal law for a tax qualified retirement plan.

22. The SPX Plan, by its terms and in its operation, does not meet applicable legal requirements and the lump sum benefit that the Plan Administrator determined it owes Mr. Gillis is less than what both the law and the terms of the Plan require.

23. Under the SPX Plan, Mr. Gillis' benefit is the greatest of his Accrued Benefit (*i.e.* his Account Balance or his Grandfathered Benefit), his Transition Benefit, or his December 31, 1998 GSX Accrued Benefit.

24. Because Mr. Gillis' benefit under the SPX Plan exceeds his December 31, 1998 GSX Accrued Benefit, he is principally concerned with the calculations of his Transition Benefit and his Accrued Benefit.

25. Under the terms of the Plan and applicable law, Mr. Gillis should have, but did not receive his Transition Benefit, correctly calculated and payable as a lump sum, as of his early retirement date.

**Correct Calculation of the Transition Benefit Must Include Early Retirement Subsidy**

26. In calculating Mr. Gillis' Transition Benefit, the failure to include his early retirement subsidy in his opening Account Balance that he had already accrued under the GSX Corporate Plan violates the anti-cutback rules of the federal pension law and affects Mr. Gillis in more than a de minimis manner. (Internal Revenue Code of 1986, as amended ("IRC") §411(a), §411(d)(6)(B)(i), ERISA §204(g)(1) and Treasury Regulation ("Treas. Reg.") §1.411(d)-4, Q&A-1).

27. Moreover, the failure to preserve the early retirement subsidy that Mr. Gillis accrued under the GSX Plan in his opening Account Balance under the SPX Plan immediately before the plans were merged also violates IRC §414(l) and ERISA §208 and contravenes SPX Plan §B-31(l)(1)(ii), all of which require that when defined benefit plans are merged, each participant must receive benefits, on a termination basis, immediately after the merger which are at least equal to the benefits that the participant would have received, on a termination basis, immediately prior to the merger.

## Communications To Employees Were Misleading

28. In addition, at the time of the merger, SPX represented to former GSX employees then employed by SPX that their GSX pensions earned as of December 31, 1998 will not be reduced. Another employee disclosure indicated that an employee's opening Account Balance under the SPX Plan would include his or her GSX pension accrued to December 31,1998, which, for Mr. Gillis, included his early retirement subsidy. In addition, GSX employees were told that Transition Benefits (which are based on the opening Account Balance) would allow those employees hurt by the merger of the GSX and SPX Plans to recoup some of the lesser future benefits that they would otherwise receive under the SPX Plan after 1998.

29. Furthermore, the SPX Plan Administrator never provided notice to former GSX employees of the elimination of their GSX early retirement subsidy at the time of the merger of the plans. On the contrary, SPX reassured former GSX employees that the GSX benefits earned as of the merger could not be cut back.

30. ERISA specifically requires employers to distribute summary plan descriptions describing in plain language how employees' pension benefits are calculated. (ERISA §102) Summary plan descriptions (which are compromised of booklets and other notices given to employees about the retirement plan) must not have the effect of misleading, misinforming or failing to inform participants. (29 C.F.R. §2520.102-2(b))

31. Any description of exceptions, limitations, reductions and other restrictions of plan benefits are not to be minimized, rendered obscure or otherwise made to appear unimportant. Rather, such limitations are to be summarized in the manner not less prominent than the style used to describe or summarize plan benefits. (29 C.F.R § 2520.102-2(b)) In addition, the use of clarifying examples is required. (29 C.F.R §

2520.102-2(a)) Moreover, notwithstanding anything to the contrary, the terms of the summary plan description are controlling with respect to benefits communicated to employees. ERISA specifically contemplates that summary plan descriptions will be an employee's primary source of information regarding employee benefits, and employees are entitled to rely on them.

32. Reading all the employee disclosures together, a reasonable person in the position of Mr. Gillis would conclude that the opening Account Balance for an SPX employee who met the requirements for early retirement under the GSX Corporate Plan includes that employee's accrued early retirement subsidy, and that such subsidy becomes part of his or her opening Account Balance for all purposes under the SPX Plan, including the calculation of the Transition Benefit.

33. Because disclosures made to employees about their pension plans are legally binding on the employer, Mr. Gillis had a right to expect that his early retirement subsidy would be included in his Transition Benefit.

### Alternatively, the Plan Administrator should have considered Mr. Gillis' Grandfathered Benefit in determining his overall benefit under the Plan

34. As set forth above, the Transition Benefit, correctly calculated to include the early retirement subsidy, represents the benefit to which Mr. Gillis is entitled under the Plan and applicable law.

35. In the alternative, since Mr. Gillis is a member of the Grandfathered Group, the SPX Plan Administrator should have considered the Grandfathered Benefit (which is part of the definition of his Accrued Benefit), in determining Mr. Gillis' overall benefit under the SPX Plan. This is so under the plain and literal terms of the SPX Plan.

36. There is nothing in the Plan that excludes former GSX employees from Grandfathered Benefits. On the contrary, in a provision referring only to former GSX employees, the

37. SPX Plan specifically cross-references the definition of Accrued Benefits[2] which includes a Participant's Grandfathered Benefit.

38. Grandfathered Benefits are available to the "Grandfathered Group". The "Grandfathered Group" is defined by the Plan as "those Participants on July 1, 1997: (1) who had 10 or more years of Continuous Service on that date; and (2) whose age and years of Continuous Service total at least 50 on that date."

39. There is nothing in the definition of Grandfathered Group that requires active employment with SPX on July 1, 1997, but rather the completion of the age and service conditions on that date.

40. Further, "Grandfathered Participant" is defined by the SPX Plan as "a Participant or Inactive Participant who is in the Grandfathered Group or who was in the Grandfathered Group until his termination of employment with the *Employer*."[3] (emphasis added)

---

[2] The definition of Accrued Benefit under the SPX Plan is set forth in Section 2.1(b) and defined as follows:

"2.1(b) 'Accrued Benefit' has the following meaning with respect the methods of determining a benefit under this Plan as may apply to a specific Participant:

(1) Account Balance. An Accrued Benefit based on a Participant's Account Balance means the Participant's Account Balance at any time, and the immediate single life annuity which is the Actuarial Equivalent of the Participant's Account Balance *at the time of determination. (emphasis added)*

(2) Grandfathered Benefit or Minimum Benefit. An Accrued Benefit based on a Participant's Grandfathered Benefit or Minimum Benefit (as applicable) means a single life annuity payable at Normal Retirement Age, as provided at Section 6.13 or 6.14."

[3] Section 2.1(t) of the SPX Plan states, "'Employer' means:

(1) the Company and
(2) any Subsidiary and any newly acquired or created division of a Subsidiary which, in either case, has been designated as participating in the Plan by the Company's corporate officer responsible for employee compensation and benefits."

41. Even if there were an active service requirement "with the Employer" on July 1, 1997, Mr. Gillis met that requirement, because he was employed with GSX on that date, and the definition of "Employer" includes GSX because GSX is a wholly-owned subsidiary of SPX.

42. Under the terms of the SPX Plan Mr. Gillis' Continuous Service under the GSX Corporate Plan for the period between May 10, 1965 to November 30, 1998 was treated as service under the SPX Plan for the same period. Moreover, on July 1, 1997, Mr. Gillis was 54 years old.

43. Thus, Mr. Gillis met all of the qualifications of the Grandfathered Group because: (a) he qualified as a participant under the SPX Plan; (b) on July 1, 1997 he had more than 10 years of Continuous Service because his service under the GSX Corporate Plan was also treated as service under the SPX Plan for the same period; and (c) the sum of Mr. Gillis' age and Continuous Service on July 1, 1997 was over 50. Therefore, SPX Plan violated ERISA §404(a)(1)(D) by failing to follow the plain meaning of the Plan document and by failing to consider Mr. Gillis' eligibility for Grandfathered Benefits.

### The Calculation of Mr. Gillis' Account Balance Must Conform to Applicable Law Regarding Interest Credits and Discount Rates.

44. In addition to improperly eliminating the early retirement subsidy in the calculation of Mr. Gillis' opening Account Balance, the SPX Plan further runs afoul of the applicable law for calculating Mr. Gillis' pension because, in calculating his overall benefit, it fails to take into account the interest projections to normal retirement age before converting his Account Balance to its actuarial equivalent as of his early retirement date.

45. Rather, the SPX Plan illegally looks to the Participant's current Account Balance[4] to determine his or her accrued benefit prior to age 65.

46. The failure to credit to age 65 future interest credits on Mr. Gillis' Account Balance violates applicable law regarding the calculation of accrued benefits under a cash balance plan and violates the anti-cutback rules of applicable law. (IRS Notice 96-8 IV, A and IRC §411(d)(6))

47. The value of any optional form of distribution, such as a lump sum, must be no less than the actuarial equivalent of the accrued benefit at normal retirement age.

48. For a cash balance plan, like the SPX Plan, the calculation of the hypothetical account involves projecting the cash balance forward to normal retirement age, and then discounting it back to the present value, using legally acceptable actuarial factors. The failure of the SPX Plan to comply with these requirements in calculating his Account Balance deprives Mr. Gillis of the correct calculation of his overall benefit by failing to use the actuarial equivalent of his normal retirement benefit.

**Count I – ERISA §204(g)(1), 29 U.S.C. 1054(g)(1) and IRC §411(d)(6) (anti-cutback)**

49. Mr. Gillis repeats and realleges Paragraphs 1 through 48 of the Complaint as if fully and separately set forth herein.

50. Pursuant to ERISA §2(7), Mr. Gillis is a participant under the SPX Plan.

51. As a Plan participant, Mr. Gillis is entitled to bring this action to recover benefits under 29 U.S.C. §1132(a)(1)(B) and §502(a)(1)(B) of ERISA and for relief under §502 of ERISA.

52. Under the SPX Plan, the early retirement subsidy is an accrued benefit to Mr. Gillis as defined by §203(a) of ERISA.

---

[4] *See supra*, footnote 2 for definition. See emphasized language.

53. The early retirement subsidy cannot be cutback under ERISA §204(g)(1).

54. In addition, the exclusion of the early retirement subsidy in calculating Mr. Gillis' overall benefits violates tax provisions analogous to ERISA under IRC §411(a), §411(d)(6)(B)(i) and Treas. Reg. §1.411(d)-4, Q&A-1, -2; ERISA §3002(c) (specifically adopting regulations promulgated under I.R.C. 410(a), 411 and 412) and 29 C.F.R. §2530.200a-2 ("[R]egulations prescribed by the Secretary of the Treasury [under I.R.C. §410, 411] implement related provisions contained in [ERISA]).

55. The SPX Plan Administrator's actions in excluding Mr. Gillis' early retirement benefit from the calculation of his Transitional Benefit violates the anti-cutback provision of ERISA §204(g)(1).

56. In the alternative, the SPX Plan Administrator violated §204(g)(1) of ERISA by failing to consider Mr. Gillis' Grandfathered Benefit in determining his overall benefit under the SPX Plan, and violated ERISA §404(a)(1)(D) in failing to follow the plain terms of the Plan which include reference to Mr. Gillis' Grandfathered Benefit.

57. As a result of such violations Mr. Gillis suffered harm.

### Count II – ERISA §208 and IRC §414(l) (merger requirements)

58. Mr. Gillis repeats and realleges Paragraphs 1 through 57 of the Complaint as if fully and separately set forth herein.

59. ERISA §208 and IRC §414(l) require that when defined benefit plans are merged, as in this action, each participant must receive benefits, on a termination basis, immediately after the merger which are at least equal to the benefits that the participant would have received, on a termination basis, immediately prior to the merger.

60. The Plan contains an equivalent provision. SPX Plan §B-31(1)(1)(ii).

61. By failing to include in the calculation of his Transition Benefit, Mr. Gillis' early retirement subsidy accrued from the GSX Corporate Plan, the SPX Plan Administrator violated both the pension law and the terms of the Plan for plan mergers.

62. As a result of such violations Mr. Gillis suffered harm.

**Count III – Breach of Fiduciary Duty/Misrepresentation**

63. Mr. Gillis repeats and realleges Paragraphs 1 through 62 of the Complaint as if fully and separately set forth herein.

64. ERISA mandates that a Plan provide participants with a summary plan description. ERISA § 102 (a) and § 104 (b), Labor Reg. §2520.104b-2.

65. ERISA specifically provides that a summary plan description must not have the effect of misleading, misinforming or failing to inform participants. ERISA §102(a).

66. Any description of exceptions, limitations, reductions and other plan restrictions are not to be minimized, rendered obscure or otherwise made to appear unimportant. Rather, such limitations are to be summarized in the manner not less prominent than the style used to describe or summarize plan benefits. 29 C.F.R. §2520.102-2(b).

67. In addition, the use of clarifying examples is required. 29 C.F.R. §2520.102-2(a).

68. The SPX Plan Administrator violated these requirements for disclosure under ERISA by plainly failing to advise affected employees, including Mr. Gillis, that their GSX early retirement subsidies would be subtracted from opening their Account Balances in calculating their Transition Benefits or otherwise did so in a manner that was confusing and misleading. Accordingly, Mr. Gillis expected that his Transition Benefit would include his early retirement subsidy when he took an early retirement from SPX.

69. Further, and in the alternative, the SPX Plan Administrator violated these requirements under ERISA by failing to plainly advise affected employees, including Mr. Gillis, that it

would consider his or her Grandfathered Benefit in determining his or her overall benefit under the SPX Plan.

70. As a result of such violations Mr. Gillis suffered harm.

**WHEREFORE**, Plaintiff, Thomas D. Gillis, respectfully prays for the following relief:

A. Judgment on each count of the Complaint in an amount to be determined at trial;

B. The costs and disbursements of this action, and reasonable attorneys' fees pursuant to ERISA §502(g); and

C. Such other and further relief as the Court deems warranted and just.

### JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE

PLAINTIFF
THOMAS D. GILLIS
By his attorneys,

LAWRENCE P. MURRAY BBO# 561835
EVELYN A. HARALAMPU BBO# 221130
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA  02110
(617) 345-3000

Dated: November 25, 2003