UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| THOMAS D. GILLIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.:  03-12389-GAO |
| vs. | ) | |
| | ) | |
| SPX CORPORATION INDIVIDUAL ACCOUNT | ) | |
| RETIREMENT PLAN and SPX RETIREMENT | ) | |
| ADMINSTRATIVE COMMITTEE, | ) | |
| Defendants | ) | |
| | ) | |

**PLAINTIFF, THOMAS GILLIS' MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

**I.     INTRODUCTION**

The Plaintiff, Thomas D. Gillis ("Gillis") submits this Memorandum of Law In Support

of His Motion For Summary Judgment on Liability.  By way of his Complaint in this action,

Gillis seeks relief against the Defendants, SPX Corporation Individual Account Retirement Plan

("SPX Plan" or "Plan") and the SPX Retirement Administrative Committee ("Plan

Administrator") on account of the Defendants' violations of the Employee Retirement Income

Security Act of 1974, as amended ("ERISA").  In his capacity as an SPX Plan participant, Mr.

Gillis seeks unpaid benefits due him under that Plan and the interest thereon in accordance with

ERISA §502(a)(1)(B), §502(a)(2), §502(a)(3), 29 U.S.C. §1132 (a)(1)(B), §1132(a)(2),

§1132(a)(3).  In addition, Mr. Gillis also seeks relief under ERISA §502(c)(1), 29 U.S.C.

§1132(c)(1) against the Plan Administrator for its excessive delay in providing him the Plan

documents that he requested and to which he has a right under ERISA.  Finally, Mr. Gillis seeks

to recover reasonable attorneys' fees and costs under ERISA §502(g)(1), 29 U.S.C. §1132(g)(1).

For the reasons that follow, Gillis states that there are no genuine issues of material fact as to the Defendants' liability as to each of his claims and that he is entitled to relief as a matter of law.

## II.    ARGUMENT

### A.    Standard of Review

As this Court is well aware, summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986); Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir. 1991), cert. denied, 502 U.S. 861 (1991); Desmond v. Federal Deposit Insurance Corp., 798 F. Supp. 829 (D. Mass. 1992).

The moving party bears the initial burden of showing "the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). Once this occurs, however, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party." Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc., 167 F.3d 1, 1-7 (1st Cir. 1999). In weighing whether a factual dispute is "material," the Court must examine the substantive law of the case, because "only disputes over the facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Thus the substantive law defines which facts are material." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citing Anderson, 477 U.S. at 247-48).

**B.**    <u>**Recitation of Material Facts**</u>

The Statement of Undisputed Material Facts contains all of the facts pertinent to deciding

Gillis' Motion for Summary Judgment.  These facts are recited in this Memorandum to the extent

necessary for the purposes of the arguments set forth herein.  Reference to these facts in this

Memorandum is made to the Statement of Undisputed Material Facts and the paragraph(s)

therein, including Exhibits referenced.

**C.**    <u>**COUNT I:**</u>  **In its calculation of Mr. Gillis' benefits, the SPX Plan violated
ERISA §204(g)(1), 29 U.S.C. §1054(g)(1) and the analogous provision,
§411(d)(6) of the Internal Revenue Code of 1986, as amended ("IRC"), 26
U.S.C. §411(d)(6),[1] by impermissibly eliminating Mr. Gillis' accrued early
retirement subsidy from his opening Account Balance under the SPX Plan in
calculating his Transition Benefit.**

Mr. Gillis is entitled to judgment on Count I of the Complaint as a matter of law because

the Plan Administrator calculated his Transition Benefit under the SPX Plan by cutting back his

accrued early retirement subsidy in violation of ERISA §204(g)(1), 29 U.S.C. 1054(g)(1) and

IRC§411(d)(6) 26 U.S.C. §411(d)(6).

Coincident with the merger, the Plan Administrator amended the SPX Plan to incorporate

a new benefit structure effective as of December 1, 1998 for former GSX employees.  Statement

of Material Facts ("SOF"), ¶7.  Under §B-31(k) of the SPX Plan, a former GSX Plan participant,

upon his or her termination of employment with SPX, is entitled to the greatest of his or her: (1)

Accrued Benefit; (2) Transition Benefit; or (3) December 31,1998 GSX Accrued Benefit.[2]  SOF

¶14, Exhibit H, Bates  No. 413  Each of these benefits is an alternative; only one can be awarded

---

[1] Under Reorganization Plan No. 4 of 1978, §101, 43 Fed. Reg. 47713, 47713, the IRS was given primary
jurisdiction and rule-making authority over ERISA's funding, participation, benefit accrual and vesting provisions.
ERISA §302(c) specifically adopts the regulations promulgated under IRC §§401(a), 411 and 412.  Regulations
promulgated under ERISA further explain the relationship between ERISA and the IRC. See 29 C.F.R. §2530.200a-
2 ("[R]egulations prescribed by the Secretary of the Treasury [under IRC §§410 and 411] shall also be used to
implement the related provisions contained in [ERISA]".
[2] Because Mr. Gillis accrued benefits under the SPX Plan after December 31, 1998, the December 31, 1998 GSX
Accrued Benefit would result in the smallest of these benefit alternatives, and is not relevant to this case.

to an SPX Plan participant who was a former GSX employee.  Because these benefits operate in

the alternative, each must independently meet the applicable requirements of law.

The issue presented to the Court is whether or not the early retirement subsidy[3] that Mr.

Gillis earned under the GSX Plan before that Plan merged with the SPX Plan must, by law, be

included in calculating his Transition Benefit under the SPX Plan.  This subsidy may not, under

applicable law, be eliminated in calculating his Transition Benefit under the SPX Plan because

Mr. Gillis already met the requirements for an early retirement subsidy under the GSX Plan

before that Plan merged with the SPX Plan; he met the requirements for the Transition Benefit

under the SPX Plan at the time of the merger; the Transition Benefit is an alternate benefit under

the SPX Plan; no prior notice of any cutback of the early retirement subsidy was given Mr. Gillis

(See Count III infra); and, therefore, the starting point for any calculation of his benefits under

the SPX Plan must be his accrued benefits under the GSX Plan, including his early retirement

subsidy, notwithstanding the Plan administrator's interpretation of the SPX Plan or any provision

to the contrary in the SPX Plan.

The Transition Benefit was intended to provide a special alternate benefit to older

employees who would otherwise be hurt by the conversion from the GSX Plan, a traditional

defined benefit plan, to the SPX Plan, a cash balance plan.  SOF ¶15, Exhibit L, "Building for

Tomorrow", page 35 and SOF ¶18, Exhibit M, SPX Plan, Bates  No. 423.  The Transition

Benefit was specifically designed to address the reduced future benefit accruals that older,

former GSX Plan participants would otherwise receive under the cash balance formula of the

---

[3] An early retirement subsidy is the excess of the value of a benefit over the actuarial equivalent of a normal
retirement benefit. (Retirement Equity Act, Pub L. No. 98-397)  The early retirement benefit under Article IV(2) of
the GSX Plan provides a subsidy when compared to normal retirement benefits under the GSX Plan.  The SPX Plan
Administrator acknowledges the  early retirement benefit under the GSX Plan is a subsidy and takes the position that
it must be subtracted from Mr. Gillis' opening Account Balance to calculate his Transition Benefit.  SOF ¶9, Exhibit
J.

SPX Plan as compared to the GSX Plan.  SOF ¶16,  Exhibit L, Bates Nos. 592-593.   To qualify

for the Transition Benefit, an SPX Plan participant must have:  (a) participated in the GSX Plan;

(b) participated in the SPX Plan on January 1, 1999, (c) have attained at least age 45 and have at

least 5 years of Continuous Service under the SPX Plan on January 1, 1999,[4] (d) retired early

(after age 55 and before age 65); and (e) not have already accepted an early retirement incentive.

SOF ¶17, Exhibit M SPX Plan §B-31(p), Bates  No. 423.  Mr. Gillis met all of these

requirements for receiving a Transition Benefit under the SPX Plan, and thus, the SPX Plan

Administrator was obligated to calculate Mr. Gillis' Transition Benefit in accordance with

applicable law, and, if compatible with applicable law, the SPX Plan terms.  SOF ¶18.

The SPX Plan and Plan Administrator violated applicable law by eliminating the early

retirement subsidy from Mr. Gillis' opening balance in calculating his Transition Benefit because

Mr. Gillis had already earned that subsidy prior to the merger and prior to the SPX Plan

amendment instituting the new benefit structure for former GSX employees.  ERISA and the

analogous law in the Internal Revenue Code of 1986, as amended, ("IRC") expressly state that a

retirement plan amendment may not eliminate or reduce an early retirement subsidy in a way that

adversely affects in more than a de minimis manner the rights of participants who have met the

requirements for the subsidy prior to the amendment ("anti-cutback" rule).  (ERISA §204(g)(1),

29 U.S.C. 1054(g)(1); IRC §411(d)(6)(B)(i), 26 U.S.C. §411(d)(6)(B)(i) and Treasury

Regulations §1.411(d)-4, Q&A-1, -2; ERISA §3002(c), 29 U.S.C. §1201(c) (ERISA specifically

adopts Treasury regulations under IRC §411 see, supra, footnote 1)  See, Central Laborers'

Pension Fund v. Heinz, 541 U.S. 739, 124 S. Ct. R. 2230, 2235-2237 (2004) (disallowing a plan

amendment that expanded the definition of work that disqualified participants from the early

---

[4] Under the terms of the SPX Plan, Mr. Gillis' GSX service was treated as Continuous Service under the SPX Plan,
SOF ¶17, Exhibit F SPX Plan §B-31(k), Bates  No. 405, so as of January 1, 1999 he had 5 years Continuous Service
under the SPX Plan.

retirement benefits that they had already accrued before the amendment); Constantino v. TRW, Inc., 13 F.3d 969, 977-978 (6th Cir. 1994) (disallowing the elimination of early retirement subsidies of plaintiffs who already satisfied the conditions for such subsidies); Arena v. ABB Power T & D Co., Inc., 2004 U.S. Dist. LEXIS 6522, pp. 7-8, 19-25; 32 EBC (BNA) 2241 (holding that it was improper under ERISA for the employer to eliminate an early retirement subsidy); Pieski v. Northrop Grumman Corporation, 2002 U.S. Dist. LEXIS 11891; 27 EBC 2663 (2002).

The SPX Plan amendment which replaced the GSX Plan benefit structure and required the subtraction of Mr. Gillis' early retirement subsidy to calculate his Transition Benefit violates ERISA §204(g)(1), 29 U.S.C. §1054(g)(1) and IRC §411(d)(6), 26 U.S.C. §41(d)(g) by reducing to zero the early retirement subsidy that he had already accrued under the GSX Plan without prior notice (See Count III, infra). That reduction adversely affects him by more than a de minimis amount. Because the Transition Benefit is an alternate benefit under the SPX Plan instituted in conjunction with the merger with the GSX Plan, and because Mr. Gillis qualified for the Transition Benefit as of the merger, its calculation must preserve the benefit that Mr. Gillis accrued under the GSX Plan, including his early retirement subsidy, regardless of whether another alternate benefit under the SPX Plan's three-part scheme preserved that benefit. Since the Transition Benefit was targeted to a special sub-group of former GSX employees and was an alternate benefit, it had to comply with all of the requirements of law separately.

The Defendants also violate the anti-cutback rule of ERISA in the calculation of Mr. Gillis' Accrued Benefit by violating the applicable accrual rules for cash balance plans. Thus, even if the Accrued Benefit preserves the early retirement subsidy, it violates the anti-cutback rule for a separate reason and thereby fails as an alternate benefit because Mr. Gillis had no prior

6

notice of it. (See Count III and IV infra).

D.     **COUNT II. By eliminating Mr. Gillis' early retirement subsidy under the GSX Plan in calculating the Transition Benefit, the SPX Plan also violated the merger requirements under ERISA §208, 29 U.S.C. §1058 and its analog at IRC §414(l), 26 U.S.C. §414(l) and breached its fiduciary duty under ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D), by violating the terms of the SPX Plan at §B-31(l).**

Mr. Gillis is entitled to judgment on Count II as a matter of law because the Plan Administrator failed to preserve his accrued early retirement subsidy when it calculated his Transition Benefit under the SPX Plan after the merger of the SPX and GSX Plans, in violation of ERISA §208, 29 U.S.C. §1058, IRC §414(l), 26 U.S.C.§414(l) and the terms of the SPX Plan §B-31(l). ERISA §208, 29 U.S.C. §1058 and IRC §414(l), 26 U.S.C. §414(l) require that when defined benefit plans merge, as did the SPX Plan [5] with the GSX Plan, each participant must receive immediately after the merger, benefits which are at least equal to the benefits the participant would have received immediately prior to the merger, if the plan had then terminated. The SPX Plan mirrors this legal requirement at §B-31(l) by guaranteeing the same or greater benefits after the merger that GSX Plan participants would have received if the GSX Plan had terminated immediately before the merger. SOF ¶15, Exh. H, SPX Plan, Bates No. 413. By reducing Mr. Gillis' Transition Benefit (for which he qualified as an alternate benefit) by his GSX Plan early retirement subsidy, the SPX Plan Administrator violates this provision of the SPX Plan because the Transition Benefit, excluding the GSX Plan early retirement subsidy, could never be equal to or greater than a GSX Plan participant's benefit, including the early

---

[5] As a cash balance plan, the SPX Plan is a type of defined benefit plan which defines the benefits of an employee by reference to the employee's hypothetical account to which hypothetical principal and interest adjustments are made each year. (Treas. Reg. §1.401(a)(4)-8(c)(3)(1) and Esden v. Bank of Boston, 229 F.2d 154, 162-63 (2nd Cir.) (2000)). Under a cash balance plan, an employee does not have an actual account to which the employer makes contributions as in the case of a defined contribution plan. Rather, the hypothetical account in a cash balance plan serves as a basis for tracking the accrual of benefits. When an employee terminates employment prior to normal retirement age, he or she is entitled to his or her vested "accrued benefit" or its actuarial equivalent, including interest credits projected to age 65. (Esden, supra at 166, n. 18.)

retirement subsidy earned immediately prior to the merger and thus fails to meet the rule on merger. Accordingly, the Plan Administrator violated applicable merger law, and breached its fiduciary duty under ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D) because as of the date of the merger, the Transition Benefit is invalid under §B-31(l) of the SPX Plan. See e.g., Gillis v. Hoechst Celanese Corp., 4 F.3d 1137, 1145 (3d Cir. 1993) (holding that the combined effect of ERISA §§208 and 204(g) is to require the plan to fund the early retirement benefits of those who would qualify for early retirement even *after* the transfer to a successor employer). It is irrelevant whether another alternate benefit under the SPX Plan includes Mr. Gillis' early retirement subsidy just after the merger, because each alternate formula under the SPX Plan serves a different purpose, is targeted to different classes of former GSX Plan participants, is awarded separately, and therefore must each meet the applicable requirements of law separately.

The merger requirement is a species of the anti-cutback rule applied in the context of a merger, and establishes a method for determining the assets that must be transferred in a merger of retirement plans. By failing to include Mr. Gillis' early retirement subsidy accrued under the GSX Plan in the calculation of his Transition Benefit under the SPX Plan, the SPX Plan Administrator violated both the pension law and the terms of the SPX Plan for plan mergers because Mr. Gillis had already earned the early retirement subsidy at the time of the merger and would have been entitled to that subsidy if the GSX Plan had then terminated.

E.     **COUNT III. The SPX Plan Administrator misrepresented to Mr. Gillis the benefits to which he was entitled under the SPX Plan thereby violating applicable law under ERISA regarding employee disclosures, breaching its fiduciary duty of loyalty to the SPX employees, and entitling Mr. Gillis to the unreduced GSX Plan benefits originally promised him, if greater than a lawfully calculated benefit under the SPX Plan.**

Mr. Gillis is entitled to judgment on Count III as a matter of law because the Plan Administrator breached its fiduciary duty of loyalty to him under ERISA §404(a)(1), 29 U.S.C.

§1104(a)(1) by providing him misleading information about his SPX plan benefits, and by failing

to give him prior notice of the cutback of his benefits as required by ERISA §204(h), 29 U.S.C.

1054(h).

The SPX Plan Administrator never provided notice to Mr. Gillis prior to the effective

date of the SPX Plan amendment that cutback his benefits. SOF ¶13. On the contrary, at the

time of the merger of the SPX and GSX Plans, SPX represented to former GSX employees then

employed by SPX that their GSX pensions earned as of December 31, 1998 would not be

reduced. See, SOF ¶15, 19, specifically Exhibit L, Building for Tomorrow, Bates No. 601. The

SPX Plan Administrator confirmed this representation by advising Mr. Gillis in a statement as of

January 1, 1999 that his opening Account Balance under the SPX Plan was $367,016.83, an

amount which included his early retirement subsidy under the GSX Plan. SOF ¶26, specifically

Exhibit Q, Your Personal Opening Account Balance Statement, Bates No. 576-577. In addition,

the Plan Administrator assured former GSX employees that an enriched Transition Benefit

would be provided to qualifying employees who would have received a smaller future benefit

under the SPX Plan than under the GSX Plan because of their age and the fact that the SPX Plan

has a cash balance formula.[6] SOF ¶15, specifically Exhibit L, "Building for Tomorrow" page

35. Further, a disclosure distributed to all former GSX employees purporting to describe the

calculation of the Transition Benefit under the SPX Plan made no mention of any circumstances

under which an employee's accrued early retirement subsidy under the GSX Plan would be

subtracted from an employee's opening Account Balance[7]. See, SOF ¶19, specifically SPX

Corporation Individual Account Retirement Plan, Summary Plan Description (SPD) Supplement,

---

[6] The SPX Plan, formerly a traditional deferred benefit plan, was amended as of July 1, 1997 to convert to a cash balance plan. SOF ¶11, Exhibit F, SPX Plan §1.1, Bates No. 227.
[7] Note that the only mention of a reduction for early retirement in the SPD Supplement relates to the early *payment* of benefits, not a reduction of the *amount of the subsidy* from the opening Account Balance.

Exhibit L Bates 592-593.  Rather, there is nothing in the Supplement, including the example, or even the SPX letter to Mr. Gillis dated September 18, 2001 that describes unambiguously any circumstance whatsoever under which the Transition Benefit is reduced by the early retirement subsidy that the participant already accrued under the GSX Plan.  See, SOF ¶15, specifically Exhibit L, Bates No. 504-506.  Reading all the employee disclosures together, Mr. Gillis reasonably concluded that his opening Account Balance included his early retirement subsidy for purposes of calculating his Transition Benefit, a special alternative benefit for which he qualified.

ERISA specifically requires employers to distribute summary plan descriptions describing in plain language how employees' retirement benefits are calculated.  (ERISA §102, 29 U.S.C. §1022)  Summary plan descriptions must not have the effect of misleading, misinforming or failing to inform participants.  (29 C.F.R. §2520.102-2(b))  Descriptions of exceptions, limitations, reductions and other restrictions of plan benefits must not to be minimized, rendered obscure or otherwise made to appear unimportant.  Rather, limitations on benefits are to be summarized in a manner not less prominent than the style used to describe or summarize plan benefits.  (29 C.F.R § 2520.102-2(b))  In addition, the use of clarifying examples is required.  (29 C.F.R § 2520.102-2(a))  Accordingly, the SPX Plan Administrator had an affirmative duty under ERISA to state in participant disclosures how Transition Benefits under the SPX Plan would be calculated and what conditions, if any, would result in a reduction or forfeiture of a participant's early retirement subsidy accrued under the GSX Plan.

The Plan Administrator breached that duty and materially misled the Plaintiff and SPX Plan participants by failing to describe the circumstances under which a participant would lose the early retirement subsidy already earned under the GSX Plan, by assuring former GSX

employees that their accrued benefits under the GSX Plan as of December 31, 1998 would not be reduced, and by then subtracting the accrued early retirement subsidy from the opening Account Balance in calculating the Transition Benefit. In <u>Varity Corp. v. Howe</u>, 516 U.S. 489 (1996), the Supreme Court held that misleading plan participants about their future benefits is inconsistent with a fiduciary's duty of loyalty under ERISA §404(a)(1), 29 U.S.C. §1104(a)(1) and subject to equitable remedy under ERISA §502(a)(3), 29 U.S.C. 1132(a)(3). In <u>Layaou v. Xerox Corp.</u>, 238 F.3d 205, 211 (2d Cir. (2001)), the court held that employee disclosures not describing the "full import" of a condition that reduces benefits violates ERISA §102, 29 U.S.C. §1022. <u>See</u> <u>Harte v. Bethlehem Steel Corp.</u>, 214 F.3d 446, 452-53 (3rd Cir. 2000), *cert. denied,* 121 S.Ct. 626 (2000) and <u>Griggs v. DuPont</u>, 237 F.3d 371, 380-382 (2001) (ERISA plan administrators have a fiduciary obligation not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures).

Under ERISA §204(h), 29 U.S.C. 1054(h), a plan amendment which eliminates or reduces any early retirement benefit or subsidy or the rate of future benefit accruals is subject to statutory notice requirements. ERISA §204(h)(9), 29 U.S.C.1054(h)(9)). The notice must be in writing, and provided a reasonable time before the effective date of the amendment that cuts back or eliminates the early retirement subsidy or reduces a future accrual. If such a notice is not given, the employee is entitled to take the benefit described before the effective date of the amendment, or if greater, the benefit described by the amendment. ERISA §204(h)(6), 29 U.S.C. §1054(h)(6)and Treas. Reg. §54.4980F-1, Q & A-1 and 14. (ERISA §204(h)(2) cross-references Treasury regulations for guidance under ERISA §204(h))

The SPX Plan Administrator violated these statutory requirements by failing to give Mr. Gillis notice prior to the effective date of the 1998 SPX Plan amendment instituting the new

11

benefit structure for former GSX employees, that explained his accrued early retirement subsidy under the GSX Plan would be subtracted his Transition Benefit under the SPX Plan. SOF ¶19. Because the Transition Benefit is an alternate benefit designed to protect older employees who met certain conditions (as Mr. Gillis did), Mr. Gillis was entitled to notice of anything that would reduce his Transition Benefit. Even if Mr. Gillis' Accrued Benefit under the SPX Plan was not impermissibly cut back (which it was) preserving the early retirement subsidy in the alternate Accrued Benefit does not absolve the Plan Administrator from providing the statutory notice as to the Transition Benefit because the Transition Benefit served a different purpose than the Accrued Benefit. In fact, the Plan Administrator was also required to give the statutory notice as to the Accrued Benefit, since that Benefit impermissibly cutback future accruals by failing to credit interest to employees who retire after age 55 and before age 65. SOF ¶13 See, Paragraph 14 and Count IV, infra. Rather than giving the required prior notice regarding the benefit cutbacks to former GSX employees, the Plan Administrator gave only subsequent notice that materially misled SPX Plan participants by never disclosing with the clarity mandated by ERISA that their GSX early retirement subsidies would be eliminated under the calculation of the Transition Benefit, and that interest accruals would be cutback for early retirees (See Count IV, infra). The SPX Plan Administrator's actual, misleading disclosures exhibited bad faith and a breach of its fiduciary duty of loyalty to SPX Plan participants by its failure to meet ERISA §102 requirements. SPX also violated ERISA §204(h), 29 U.S.C.§1054(h) in the most egregious manner not only by failing to advise Mr. Gillis of: (a) the elimination of his early retirement subsidy in calculating the Transition Benefit, and (b) the cessation of future benefit accruals of the Accrued Benefit of early retirees under the SPX Plan but also by misleading him. Therefore, under ERISA §204(h)(6), 29 U.S.C. §1054(h)(b), Mr. Gillis is entitled to have his pension be

calculated as the greater of his Transition Benefit, including his GSX early retirement subsidy, or

his benefit under the GSX Plan as if the SPX Plan had never amended the GSX Plan benefit

structure, and Mr. Gillis is entitled to recovery under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3)

to enforce these terms of ERISA.

F.    **COUNT IV. In its calculation of benefits for former GSX employees, age 55 and over, the SPX Plan violates the age discrimination provisions of ERISA §204(b)(1)(G) and (H), 29 U.S.C. §1054(b)(1)(G) and (H), IRC §411(b)(1)(G) and (H), 26 U.S.C. §411(b)(1)(G) and (H) by impermissibly cutting back the benefits of participants age 55 and over.**

Mr. Gillis is entitled to judgment on Count IV as a matter of law because by subtracting

his accrued early retirement subsidy from his opening Account Balance in calculating his

Transition Benefit, the SPX Plan Administrator discriminated against Mr. Gillis based on his age

in violation of ERISA §204(b)(1)(G) and (H), 29 U.S.C. §1054(b)(1)(G) and (H) and IRC

§411(b)(1)(G) and (H), 26 U.S.C. §411(b)(1)(G) and (H).  Under these provisions, it is unlawful

to reduce either the amount of the accrued benefit or the rate of benefit accrual of a participant on

account of any increase in his or her age or service.

In Cooper v. IBM, Personal Pension Plan, 274 F.Supp. 1010 (S.D. Ill. 2003), the court

found that a cash balance plan violates the age discrimination provisions of ERISA

§§204(b)(1)(G) and (H) if either the amount of a participant's accrued benefit or the rate of

accrual decreases on account of the employee's age.  In Cooper, the conversion factors used to

calculate benefits penalized older participants by producing smaller benefits than for younger

participants with the same compensation and years of service.

By subtracting Mr. Gillis' early retirement subsidy to which he was already entitled

under the GSX Plan from his opening Account Balance, in calculating his Transition Benefit

under the SPX Plan, the SPX Plan penalized Mr. Gillis for being over age 55 in violation of

applicable law.  Because only those between ages 55 and 65 were entitled to an early retirement

subsidy under the GSX Plan, and because only those employees were subject to the reduction of their accrued early retirement subsidy in calculating their Transition Benefits, the SPX Plan violated the age discrimination prohibition imposed on pension plans by reducing the accrued benefits of participants on account of their age.  In contrast, the benefits accrued under the GSX Plan by a participant younger than age 55 are not reduced from the opening Account Balance in calculating that participant's Transition Benefit under the SPX Plan.

The SPX Plan also impermissibly reduced the rate of accrual under the SPX Plan on account of age for those retiring early.  Under the SPX Plan, no interest is credited through age 65 to the Account Balance of a participant retiring prior to age 65, as is required by applicable law for cash balance plans.  Exhibit S, SPX Plan §2.1(b), Bates No. 228.  Rather, the participant's Account Balance as of his date of early retirement is treated as his Accrued Benefit under the SPX Plan in violation of IRS Notice 96-8 and Treas. Reg. §1.401(a)(4)-8(c) which require that interest must be credited through normal retirement age under a cash balance plan.[8] See, Berger v. Xerox Corporation Retirement Income Guarantee Plan, 338 F. 3d 755 (7th Cir. (2003), (rejecting the Xerox Plan's failure to credit interest under a cash balance formula through age 65 for lump sums paid prior to age 65 as an improper cutback of benefits violating the age discrimination rules of ERISA).  See, Esden v. Bank of Boston, 229 F. 3d 154 (2nd Cir.) (2000)

---

[8] IRS Notice 96-8, II.A states in pertinent part:
"As explained below, in order to comply with [IRC] sections 411(a) and 417(e) in calculating the amount of a single sum distribution under a cash balance plan [for a participant under age 65], the balance of the employee's hypothetical account *must be* projected to normal retirement age [65], and then the employee must be paid at least the present value, determined in accordance with section 417(e), of that projected hypothetical account balance." (emphasis added)

See also federal regulation section 1.401(a)(4)-8(c)(3)(v)(B) which states:

"...the value of an employee's hypothetical [cash balance] account must be determined as of normal retirement age in order to determine the employee's accrued benefit as of any date at or before normal retirement age.  As of any date at or before normal retirement age, the value of an employee's hypothetical account as of normal retirement age must equal the sum of each hypothetical allocation provided through that date for the employee under the plan's benefit formula, *plus the interest adjustments through normal retirement age on each of those hypothetical allocations...*"(emphasis added).

14

(validating IRS Notice 96-8 as an authoritative interpretation of existing statutes and regulations).

Instead of complying with these rules, the SPX Plan illegally determines the benefit of a participant who retires after age 55 and prior to age 65 by determining his Accrued Benefit as of the time of early retirement without crediting interest to age 65, thereby violating the rules for cash balance plan accruals and the prohibition against age discrimination.  Aff. of Thomas D. Gillis, ¶30, Exhibit S, SPX Plan §2.1(b), Bates No. 228.  By failing to provide prior notification participants of this reduction in future accruals, the SPX Plan again violates the cutback rules of ERISA § 204(g), 29 U.S.C. § 1054(g) and the notice rules of ERISA §204(h), 29U.S.C. §1054(h), discussed supra at Counts I and III.

**G.    COUNT V:  Mr. Gillis' pension should have been paid to him when he retired, and since it was not, Mr. Gillis seeks the payment of interest on his unpaid pension under the equitable remedies allowed by ERISA §502(a), 29 U.S.C. §1132(a).**

Under a constructive trust theory, Mr. Gillis is entitled to judgment on Count V for the payment of interest on his unpaid pension because ERISA allows for equitable remedies under §502(a)(3)(B), 29 U.S.C. §1132(a)(3)(B).

Throughout Mr. Gillis' controversy with the Defendants, the SPX Plan Administrator withheld all payment of any pension to Mr. Gillis, even though he retired on June 20, 2002, was entitled to payment in 2002, and some amount of his pension is uncontested.  By failing to pay any part of his pension timely, the Defendants, in effect, illegally cut back Mr. Gillis' benefit by operating the SPX Plan as if it had been amended to suspend the payment of early retirement benefits.  The suspension of early retirement benefits is an illegal cutback under ERISA §204(g), 29 U.S.C. §1154(g) and IRC §411(d)(6), 26 U.S.C. §411(d)(6).  In Central Laborers' Pension Fund v. Heinz, 124 S.Ct. 2230, 2235-36 (2004) the Supreme Court held that suspending the

payment of an early retirement benefit is tantamount to an illegal cutback of benefits under the

anti-cutback rules of ERISA, and is subject to equitable remedy under ERISA. Accordingly, Mr.

Gillis seeks recovery of the interest that would have accrued on the lump sum payment of his

early retirement benefit that should have been paid him in 2002 under a constructive trust theory

of the equitable remedy provision under ERISA §502(a)(3)(B), 29 U.S.C. §1132(a)(3)(B). Great-

West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213-214 (2002) validated that an

equitable remedy under ERISA includes the return of funds to the plaintiff that are in the

defendant's possession. Here, the SPX Plan benefited by, and is in possession of the amount of

interest earned on the pension that it should have, but did not pay Mr. Gillis in 2002. Thus,

proper equitable relief would include the return to Mr. Gillis of the interest that accrued under

the SPX Plan on his unpaid early retirement pension.[9]

> **H.    COUNT VI: The failure of the SPX Plan Administrator to provide timely all the Plan documents that Mr. Gillis requested is a violation of ERISA and may be subject to penalty under ERISA §502(c)(1), 29 U.S.C. § 1132(c)(1).**

Mr. Gillis seeks judgment on Count VI as a matter of law to remedy the Plan

Administrator's deliberate and egregious failure to provide Mr. Gillis timely the Plan documents

that he requested, which delay subjected Mr. Gillis to actual financial loss.

Under ERISA §502(c)(1), 29 U.S.C. § 1132(c)(1), Mr. Gillis had a legal right to expect

that copies of the SPX Plan documents he requested would be mailed to him no later than thirty

(30) days after his request of the Plan Administrator. Mr. Gillis first made a written request for

---

[9] When it enacted ERISA, Congress intended to replicate the core principles of trust remedy law, including the make-whole standard of relief. The three-remedy provisions of ERISA that allow participants and beneficiaries to recover for ERISA violations (ERISA §502(a)(1) through (3)) track trust remedy law which provides for make-whole compensatory relief for consequential injury. (John H. Langbein, *What ERISA Means by Equitable*, 103 Columbia Law Review 1317, 1319 (2003)) The Conference Committee explained that the drafters of ERISA wanted to "apply rules and remedies similar to those under the traditional trust law to govern the conduct of fiduciaries" under ERISA. (H.R. Conf. Rep. No. 93-1280, at 295 (1974) *reprinted in* 1974 U.S.C.C.A.N. 5038, 5076) In crafting the remedy provisions of ERISA, Congress worked at a level of some generality and the term "appropriate equitable relief" entails the application of general trust law. (*Id.* at 1343)

Plan documents from the SPX Plan Administrator on October 22, 2001. SOF ¶22, Exhibit N,

Bates Nos. 507-509. The Plan Administrator did not honor Mr. Gillis' request for Plan

documents until July 18, 2002, which was 230 days after the statutory deadline for response, and

provided documents only in response to the demand of legal counsel that Mr. Gillis retained.

SOF ¶23, Exhibit O, Bates Nos. 541-542. By refusing to deliver timely the SPX Plan documents

that Mr. Gillis requested and had a right to receive within thirty (30) days of his request, the SPX

Plan Administrator breached its statutory duty to Mr. Gillis under ERISA §502(c)(1), 29 U.S.C.

§1132(c)(1), exercised bad faith, as is evidenced by its long delay in providing documents, and

subjected Mr. Gillis to actual financial harm because he was forced to hire counsel to obtain the

Plan documents. In addition, the consequential delay in paying Mr. Gillis his benefits may have

had the effect of lessening his early retirement benefits under the wearaway calculation under the

SPX Plan.

Accordingly, Mr. Gillis requests, in accordance with ERISA §502(c)(1), 29 U.S.C. §

1132(c)(1), and in light of the bad faith the Defendants have shown and the potential prejudice to

Mr. Gillis, that the Court impose a fine on the Plan Administrator, in the amount of Twenty-Six

Thousand, Two Hundred Ninety Dollars ($26,290.00) which is One Hundred Ten Dollars

($110.00) per day from the date of its deadline for providing documents (November 21, 2001 to

July 18, 2002) when Mr. Gillis' attorney received such documents. See, e.g., B. Man Yoon v.

Fordham University Faculty, 263 F. 3d. 196, 205 (2001) (stating that ERISA §502(c)(1)(B)

penalties are warranted where there are allegations of harm or bad faith).

I.    **Mr. Gillis should be allowed attorneys' fees and costs under ERISA §502(g)(1), 29 U.S.C. 1132(g)(1).**

Mr. Gillis seeks his attorneys fees and costs under ERISA §502(g)(1), 29 U.S.C.

§1132(g)(1) because: (1) the Plan Administrator exercised bad faith toward Mr. Gillis in its

dilatory manner of handling his claim and its providing him inadequate and misleading disclosures about the SPX Plan; (2) the Defendants have the ability to satisfy the award; (3) such an award would deter Defendants and others from acting in the future as Defendants have in this case; (4) a successful outcome to Mr. Gillis would resolve significant legal questions and benefit other SPX Plan participants; and (5) the merits of Mr. Gillis' case outweigh those of Defendants'.

On or about September 27, 2002, Mr. Gillis submitted a claim for benefits under the SPX Plan for his benefits, none of which have been paid to date. SOF ¶24, Exhibit P, Bates Nos. 545-558. On March 18, 2003, the SPX Plan Administrator denied Mr. Gillis' initial claim of September 27, 2002 for a lump sum distribution and disputed Mr. Gillis' calculation of the benefits due him. SOF ¶25, Exhibit J, Bates Nos. 567-569. On May 2, 2003, Mr. Gillis submitted an administrative appeal of the Plan Administrator's denial in accordance with the appeal process described by the Plan Administrator in its March 18, 2003 letter. SOF ¶26, Exhibit Q, Bates Nos. 570-577. The SPX Plan Administrator did not respond to Mr. Gillis' appeal within 120 days, as required under its own claims policy, stated in the SPX letter dated March 18, 2003. SOF ¶26, Exhibit J. The SPX Plan Administrator did, however, provide Mr. Gillis a written denial of his appeal on November 24, 2003, substantially outside the deadline for the response under the Plan Administrator's claims procedure, and only after Mr. Gillis' attorney advised the Plan Administrator that he would be filing this lawsuit, having exhausted his administrative remedies SOF ¶28, Exhibit R, Bates Nos. 579-588. In evaluating a claim for a fee award under ERISA §502(g)(1), the First Circuit Court of Appeals generally applies a five-factor test set forth in Cottrill v. Sparrow, Johnson & Ursillio, Inc., 100 F. 3d. 220, 225 (1st Cir. 1996). The factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of

the opposing parties to satisfy a fee award; (3) whether a fee award would deter others from acting under similar circumstances; (4) the benefit that a successful suit confers on plan participants and beneficiaries; and (5) the relative merits of the parties' positions.

The SPX Plan Administrator acted in bath faith by not producing the requested Plan documents until Mr. Gillis hired legal counsel SOF ¶¶23, 24, specifically, Exhibit O Bates Nos. 536-537 and Exhibit N, Bates Nos. 507-509; by misleading SPX Plan participants in SPX Plan disclosures (see discussion supra, at Count III); by suspending payment of Mr. Gillis' early retirement pension (see discussion supra at Count V); and by deliberately prolonging the appeals process past its own deadlines. The SPX Corporation, a member of the Fortune 500, has the economic resources and expertise to meet its obligations under ERISA, however, it has consistently failed to do so. The SPX Plan Administrator should be penalized for these failures to deter such behavior in the future, to set an example to other employers that the provisions of ERISA shall be enforced, and to protect all these similarly situated who will benefit greatly by a holding for Mr. Gillis.

In addition to the sum of his early retirement benefits calculated in accordance with applicable law, the interest thereon, and penalties under ERISA §502(g)(1), Mr. Gillis seeks reimbursement for the costs that he has incurred for expert and legal fees in pursuing his benefits claim.

# CONCLUSION

For all of the reasons set forth above and in the record presented to this Court, the

Plaintiff, Thomas D. Gills, requests that this Court grant summary judgment in his favor as to

liability for all Defendants on Counts I, II, III, IV, V, and VI.

Respectfully submitted,

Plaintiff,
**THOMAS D. GILLIS**
By his attorneys,


___/s/ Lawrence P. Murray_____
LAWRENCE P. MURRAY BBO# 561835
EVELYN A. HARALAMPU BBO# 221130
Burns & Levinson LLP
125 Summer Street
Boston, MA  02110
(617) 345-3000


Dated:  February 8, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed though the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on February 8,

2006.


_____/s/ Lawrence P. Murray_____
Lawrence P. Murray


J:\Docs\24651\00000\00989778.DOCv.3