# EXHIBIT K



COPY



**Gruenberg**
**Blue M**
**Tenney**
**Lunaire**

~~Sever~~ Release
due 45 days
post 6/20/02

June 20, 2002

Mr. Thomas Gillis
13 Water Way
Ashland, MA 01721

Dear Mr. Gillis:

As discussed with you, the effective termination date of your employment with SPX Corporation (the "Company") is June 20, 2002. This letter sets forth the terms upon which you and the Company have agreed your employment will be terminated (the "Agreement").

1.    Salary Continuation

Subject to the provisions of this Agreement, your salary, as of your termination date, will be continued through March 27, 2003, and will be paid in the same increments at the same pay intervals as you are currently being paid. The period between your termination date and March 27, 2003 will be known as the "Separation Allowance Period". The Salary Continuation shall be subject to any and all applicable withholding and other employment taxes. This Salary Continuation is in lieu of any and all rights or entitlements to severance pay under any other Company plan, policy, benefit or procedure, or any agreement between you and the Company. All stock options granted to you by the Company that are not vested as of your termination date are forfeited pursuant to the terms of the Employee Stock Compensation Plan of 1992 or any other plan.

2.    Employee Benefits

The Attached Exhibit A summarizes the status of your employee benefits following your separation from SPX. Most of your employee benefits terminate as of your last day of active work, although your medical, dental, and vision coverage continue through the end of the month during which your last day of active work occurred. Please be aware that you will be entitled to receive certain benefits as noted in Exhibit A, provided you take the steps described in the Exhibit. It is important that you read this information.

You acknowledge that the payments and benefits specified in this Agreement exceed in value any payments and benefits to which you may already be entitled.

3.    Outplacement Services

The Company agrees to make outplacement services available to assist you in obtaining new employment at the Company's cost.    You will be contacted by Right Management within 5 business days regarding these services.

4.    Release

By signing this Agreement, you release the Company from any known or unknown claims that you may have against the Company.

You are giving this release on behalf of yourself and your heirs, personal representatives, assigns or any other person who could make a claim based upon your employment relationship with the Company.

The release applies to the Company and its subsidiaries and affiliates, as well as their directors, officers, agents, attorneys, employees, successors and assigns. These parties are together called the "Released Parties" in this Agreement. Except to the extent provided herein, the release also includes any employee benefit plans or funds sponsored or administered by the Company (except that it does not apply to claims for vested benefits, if any, arising from Company-sponsored retirement plans).

This is a general and complete release that applies to any claim, known or unknown and waives any claim to further compensation or benefits. It includes claims relating to your employment with and termination of employment with the Company.

This release specifically applies to claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Employee Retirement Income Security Act, the Family and Medical Leave Act, the Fair Labor Standards Act, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, the Older Worker's Benefits Protection Act and any collective bargaining agreement, any claims for attorneys fees, and any claims arising under any and all other federal, state and local laws and under federal or state common law, including claims in contract and tort. It does not apply to any claim that arises after you sign this Agreement, and it does not include claims that cannot be released as a matter of law.

You represent that you have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim against any of the Released Parties, or any portion thereof or interest therein.

You agree to permanently withdraw with prejudice all claims, if any, you have filed against any Released Party. You promise never to seek any damages based on the claims released in this Agreement.

5.    Employee Covenants

You acknowledge that you will remain bound by any confidentiality, nondisclosure or noncompetition agreements you have with the Company.

You further acknowledge that you may possess secret, confidential or proprietary information or trade secrets concerning the operations, future plans or business methods of the Company. You agree never to use or disclose any such information.

You further acknowledge that for a one-year period immediately after termination of your employment, you will not directly or indirectly accept employment with or render services on behalf of a competitor of any SPX business unit at which you have been employed, or any other third party, in any capacity where the confidential information of an SPX business unit acquired by you during your employment with an SPX business unit would reasonably be considered to be useful to the competitor or to such other third party to become a competitor based in whole or in part on such information.

You agree that, for a period of one (1) year after the date of execution of this Agreement, you will not interfere with the Company's relationship with, or endeavor to entice away from the Company, or hire any person who at the time of the execution of this Agreement is an employee of the Company. You agree that, for a period of one (1) year after the date of execution of this Agreement, you will not interfere with the Company's relationship with, or endeavor to entice away from the Company, any customer of the Company who, during your employment at the Company, you serviced, solicited on behalf of the Company or gained knowledge about through your employment at the Company.

You also agree not to criticize the Company or any of its officers, directors, employees, shareholders, affiliates or agents.

You agree that the terms of this Agreement are confidential and shall not be disclosed to any third party, with the exception of your attorneys or financial advisors, or as required by law or in order to enforce the terms of this Agreement. In the event that you are ordered to disclose information regarding this Agreement to a court, you agree to give the Company prompt notice of such court order so that the Company can take appropriate action.

You agree that the Company would be irreparably harmed by any actual or threatened violation of the Employee Covenants described in this section, and that the Company will be entitled to an injunction prohibiting you from committing such violation.

6.    Tender Back

You agree that in the event of any breach of this Agreement, including but not limited to, your bringing any claim against any Released Party, you will immediately repay all or any portion of the payments made to you and the Company will have no obligation to make any further payments to you under this Agreement, provided, however, that these provisions do not apply to any claims brought pursuant to the Age Discrimination in Employment Act or the Older Worker's Benefit Protection Act.

7.    Expenses

The Company will reimburse you for all reasonable business expenses incurred through June 20, 2002, upon proper presentation of supporting documentation, provided that appropriate expense reports have been submitted by July 15, 2002. Effective June 20, 2002, the Company will no longer pay for or reimburse you for any charges or fees incurred in connection with your cellular phone. Should you decide to retain the cellular phone, you agree that all expenses incurred in connection with the phone will be paid by you.

8.    Company Property

You agree that all Company property, including but not limited to, automobiles, credit cards, keys, documents, software, computer data, records, or any other materials, will be returned by June 24, 2002.

9.    Non-Admission

You agree that this Agreement is not an admission of guilt or wrongdoing by the released parties, and acknowledge that the released parties do not believe or admit that any of them has done anything wrong.

10.    Full Disclosure

You acknowledge that you have disclosed to the Company any information you have concerning any conduct involving the Company that you have reason to believe may be unlawful or involve any false claims to the United States or any other government having jurisdiction over the Company. You promise to cooperate fully and voluntarily in any investigation the Company undertakes into matters occurring during your employment with the Company, and you agree not to disclose to anyone who is not assisting the Company with the investigation, other than your attorney, the fact of or the subject matter of the investigation, except as required by law. You will accommodate your schedule to cooperate with the Company and promptly provide such information. You acknowledge that nothing in this Agreement prevents you from cooperating with any U.S. government investigation.

11.   Review Period

You acknowledge that, before signing this Agreement, you were given a period of at least 45 calendar days to consider this Agreement. If the 45-day period has not elapsed at the time you sign this Agreement, you acknowledge that you have knowingly and voluntarily chosen to sign this Agreement before the expiration of that period. You acknowledge that (a) you took advantage of this period to consider this Agreement before signing it; (b) you carefully read this Agreement; (c) you fully understand it; and (d) you are signing it voluntarily. You further acknowledge that the Company encouraged you to discuss this Agreement with your attorney (at your own expense) before signing it and that you did so to the extent you deemed necessary.

12.   Revocation of Agreement

You understand that you may revoke this Agreement in writing within seven (7) days after you sign it and the Agreement shall not become effective or enforceable until the end of the seven-day period. To be effective, your written revocation must be submitted, in writing, and state "I hereby revoke acceptance of our Separation Agreement and General Release." The revocation must be personally delivered to Chris Shirley, or mailed to Chris Shirley at Lunaire Limited, 2121 Reach Road, Williamsport, PA 17701, and postmarked within seven (7) calendar days of execution of this Agreement. This Agreement shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday in the state where you reside, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday. If you revoke this Agreement, the Company shall have no obligations under this Agreement.

13.   Information Concerning this Group Severance

A listing of the ages and job titles of all individuals eligible or selected for this exit incentive or other termination program and the ages of all individuals in the same job classification or unit who are not eligible or selected is attached to this Agreement as Exhibit B. If you have any questions regarding this information, you may contact SPX's Human Resources Department for more information.

14.   Arbitration

You and the Company agree to resolve any claims we may have with each other or that you have with any other released party (Arbitrable Dispute) through final and binding arbitration in accordance with the rules of the American Arbitration Association. This arbitration agreement applies first to any disputes about the validity, interpretation or effect of this Agreement or alleged violations of it. If it is finally determined by an arbitrator or the Courts that the Agreement is unenforceable, any claim against the Company, including claims of discrimination under federal, state or local law, must also be arbitrated. Arbitration shall be the exclusive remedy for any Arbitrable Dispute and any arbitration will take place at the office of the American Arbitration Association

closest to your place of work for SPX. This section does not limit the Company's right to seek and obtain an injunction pursuant to Paragraph 5.

15.    <u>Fee-Shifting</u>

In the event of litigation or arbitration concerning the subject matter of this Agreement, the prevailing party shall be entitled to recover all costs and expenses incurred by it, including such party's reasonable attorneys' fees and reasonable compensation for the services of its internal personnel, provided however that this provision shall not apply to any claims brought pursuant to the Age Discrimination in Employment Act or the Older Worker's Benefit Protection Act.

16.    <u>Miscellaneous</u>

This is the entire agreement between you and the Company. This Agreement may not be modified in any manner except in writing signed by both you and an authorized Company official. You acknowledge that the Company has made no representations or promises to you other than those in this Agreement. If any provision in this Agreement is found to be unenforceable, all other provisions will remain fully enforceable.

This Agreement binds your heirs, administrators, personal representatives, executors, successors and assigns, and will apply to the benefit of all released parties and their respective heirs, administrators, personal representatives, executors, successors and assigns.

**YOU HAVE BEEN ADVISED THAT YOU HAVE UP TO FORTY-FIVE (45) CALENDAR DAYS TO REVIEW THIS SEPARATION AGREEMENT AND GENERAL RELEASE AND HAVE BEEN ADVISED THAT YOU HAVE THE RIGHT TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS SEPARATION AGREEMENT AND GENERAL RELEASE.**

**YOU AGREE THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL FORTY-FIVE (45) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 1 ABOVE, YOU FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS SEPARATION AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS YOU HAVE OR MIGHT HAVE AGAINST THE COMPANY.**

This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against you or any released party. This Agreement shall be governed by the statutes and common law of the State of North Carolina, without regard to that state's rules regarding conflict of laws.

LUNAIRE LIMITED

By: _____
Michael J. Gaysam, President, Lunaire

SPX CORPORATION

By: _____
Jim Cauley, Group General Counsel

**EXHIBIT L**

# The Bottom Line

- **Am I better off under the former plan or the new plan?**

  - SPX conducted thorough due diligence to analyze the impact of changes

  - Overall, the majority of associates are **better off** under the new SPX Financial Security Plans

  - Under the new plans, there were a small number of employees who would have received a lesser future benefit

  - As a result, SPX is providing transition benefits to these associates



# SPX CORPORATION
## Individual Account Retirement Plan (IARP)

September 18, 2001

Mr. Thomas Gillis
13 Water Way
Ashland, MA 01721

Dear Mr. Gillis:

Sue Budewitz has forwarded on your inquiry as to why the Transition Benefit is only 4% higher than the Account Balance benefit. Hopefully, this letter will explain this difference. Enclosed with this letter is a summary of the transition benefit that you should have received with your opening balance statement.

### SPX Philosophy

SPX's philosophy is to provide a competitive benefits package through the SPX Financial Security Plans. The Financial Security Plans include the Individual Account Retirement Plan, the Retirement Savings and Stock Ownership Plan and the Employee Stock Purchase Plan.

The following information was communicated at the employee meetings regarding these benefit plans in 1999:

> *Am I better off under the former plan or the new plan?*
> - *SPX conducted a thorough due diligence to analyze the impact of changes*
> - *Overall, the majority of associates are better off under the new SPX Financial Security Plans*
> - *Under the new plans, there were a small number of employees who would have received a lesser future benefit*
> - *As a result, SPX is providing transition benefits to these associates*

The communication also noted that the transition benefit is provided to help ensure comparable benefits. "Comparable benefits" is determined by looking at the benefits provided through the SPX Financial Security Plans as a whole. The communications you received emphasized that the IARP is one program within the Financial Security Plans structure.

Please note that the SPX Retirement Savings and Stock Ownership Plan provides an increased match over the GSX 401(k) Plan and also an Employee Stock Purchase Plan (where contributions are matched by SPX) is now available for you to take advantage of.

SPXP000504

Mr. Thomas Gillis
September 18, 2001
Page 2

## <u>Your Initial Opening Balance</u>

The estimate provided to you showed that you would be entitled to the greater of the a) IARP Account Balance of $447,691.04 and b) a lump sum Transition Benefit of $465,711.21. This estimate was prepared as of January 1, 2002.

The Plan provides that employees who meet certain conditions will receive a "Transition Benefit" under the IARP. This benefit provides an enhanced benefit over the regular IARP Account Balance. The differential between the Transition Benefit and the regular Account Balance is less as you get closer to age 65.

The main reason for the smaller differential in your Account Balance and Transition Benefit is the fact that your early retirement benefit (along with the enhanced early retirement reductions under the GSX Corporate Plan) was used in determining the opening Account Balance at December 31, 1998. By providing the GSX early retirement subsidy to you in the initial Account Balance, a larger initial Account Balance was made available to you. Employees who were participating in the Corporate Plan on 1/1/99 and were at least age 55 with 5 years of service received this enhancement. Please refer to the footnote at the bottom of the first page of the enclosed Summary. If you did not meet this criteria, the value of the benefit payable at age 65 is determined as the opening Account Balance (i.e. the benefit without subsidy).

If this enhancement were not provided to you the Account Balance would have been as follows:

| | Account Balance if enhancement was not provided | Estimated Account Balance with the enhancement provided under the Plan |
|---|---|---|
| Accrued Benefit at 12/31/98, payable at age 65 | $3,047.25 | $3,047.25 |
| Opening Account Balance | $244,749.63 | $367,016.83 |
| Principal Credit for 1999 | 2,419.85 | 2,419.85 |
| Interest Credit for 1999 | 11,038.21 | 16,552.46 |
| Account Balance 12/31/99 | 258,207.69 | 385,999.14 |
| Principal Credit for 2000 | 10,552.00 | 10,552.00 |
| Interest Credit for 2000 | 15,776.49 | 23,584.55 |
| Account Balance 12/31/00 | 284,536.18 | 420,135.69 |
| Est. Principal Credit 2001 | 4,784.00 | 4,784.00 |
| Est. Interest Credit 2001 | 15,421.86 | 22,771.35 |
| Est. Cash Balance Account Balance 12/31/01 | $304,742.04 | $447,691.04 |

**Please note that the comparable Transition Benefit is $465,771.21.**

Comparing the Account Balance without subsidy of $304,742.04 to the Transition Benefit of $465,771.21 would result in a differential of 52.8%. This would be the situation if your original Account Balance did not reflect early retirement enhancements to begin with. You would receive the Transition Benefit of $465,771.21 if you chose to retire at this time.

Mr. Thomas Gillis
September 18, 2001
Page 3

If you still feel that you are entitled additional benefits, you may appeal the information provided to you.  If you do so:

- your appeal must be filed within 60 days from the day you receive this letter;
- you must specify why you believe that this decision is wrong.  Please be as specific as possible.

All appeals should be in writing, and should include your issues and comments.

To help you prepare your appeal of the denial of your request for reconsideration, you (or your duly authorized representative) may review relevant plan documents (such as the plan and its trust agreement).

Plan documents are available at:

SPX Corporation
700 Terrace Point Drive
Muskegon, MI 49443

Normally, we will complete our review of your appeal of the denial of your request for reconsideration within sixty days after receiving it.  If we need more time to review your appeal, you will be told that a delay is necessary, the reason for that delay, and the date that you can expect a written reply.  A decision will be rendered as soon as possible, but no later than 120 days after receipt of the written appeal.

Please send any appeal to:

Director of Compensation and Benefits
SPX Corporation
700 Terrace Point Drive
Muskegon, MI 49443

Sincerely,


SPX Retirement Program

/kby

cc:      Sue Budewitz

SPXP000506

**SPX Corporation**
**Individual Account Retirement Plan**

**Supplement to Summary Plan Description**
**General Signal Transition Benefit**

This Supplement to the Summary Plan Description of the SPX Corporation Individual Account Retirement Plan (the "Plan") describes a transition benefit for eligible former General Signal Corporate Plan or certain Hourly Plan (the "GSX Plans") participants. You are eligible for this transition benefit if you meet all of the following conditions:

- You were at least age 45 on January 1, 1999;

- You completed at least five years of Continuous Service with General Signal (including service with SPX after the plans merged) by January 1, 1999;

- On January 1, 1999, you were a participant in either:
  — the General Signal Corporate Plan; or
  — the General Signal Hourly Plan at EST, GS Electric, Lightnin, or Kayex;

- You retire on or after age 55; and

- You retire after October 1, 1999.

The transition benefit provides you with a better benefit if you retire early from SPX. If you leave SPX before early retirement age (before age 55), you will receive the cash balance benefit described in the Summary Plan Description, but you will not be eligible for a transition benefit.

The transition benefit provides better early retirement benefits when you retire. Your initial account balance for this transition benefit begins with the value of your normal retirement benefit.[1]

**Transition Benefit Beginning at Your Early Retirement Date**
Your transition account balance at retirement will first need to be converted into a monthly life annuity benefit that would begin at age 65. In other words, we calculate how much of a life annuity we could "buy" with the account balance. The account balance and the equivalent life annuity at age 65 will depend on standard actuarial life expectancy tables and the 30-year Treasury rate used for the year you retire.

Next, the age-65 benefit is reduced for early retirement. There is no reduction if you retire at age 62 or later. If you retire before age 62 the benefit is reduced .25% for each month you retire prior to age 62. If this transition benefit is greater than the regular life annuity you would have from the IARP, you will be offered the greater benefit at retirement. Of course, all of the other optional forms of payment will be available to you at retirement.

If you want a lump sum payment at retirement, you will get the greater of the cash balance account or the lump sum value of the transition benefit.[1]

---

[1] If you were in the Corporate Plan on December 31, 1998 and were at least age 55 with five years of service on that date, your regular cash balance account could be better than the transition benefit. This is because your opening account balance already included the value of your early retirement benefit. However, if you were in the Hourly Plan on December 31, 1998, your opening account balance was the value of your normal retirement benefit. No matter which group you were in, you will get the better of the regular or the transition benefit.



**Special Transition for former General Signal Hourly Employees at EST, GS Electric, Lightnin, or Kayex on January 1, 1999**

In addition to the transition benefit described above, if you were age 55 and working as an hourly employee at one of these units on January 1, 1999, you will receive higher principal credits each year. The table below shows the total principal credits you will receive at the end of each year beginning at the end of 1999.

|  | Principal Credits up to the Wage Base as a Percent of Eligible Compensation | Principal Credits over the Wage Base as a Percent of Eligible Compensation |
|---|---|---|
| Regular Cash Balance Principal Credits | 4% | 8% |
| Special Transition Principal Credits for Employees who were former General Signal Hourly Employees at EST, GS Electric, Lightnin, or Kayex, retire after October 1, 1999, and attained age 55 with 5 years of service on January 1, 1999 | 7% | 11% |

**Transition Benefit Example**

Harry retires on December 1, 1999 when he is 55 years old and has 20 years of service. Since he was at least age 45, completed at least 5 years of service on January 1, 1999, and is retiring after October 1, 1999, he is eligible for the transition benefit. On Harry's retirement date he had a cash balance account of $50,000 and a regular cash balance life annuity of $321.28 a month beginning at age 55.

1.  Cash Balance Account is converted to an age-65 life annuity:

    $50,000 divided by accrued benefit conversion factor of 66.6781 =
    $750 a month beginning at age 65

2.  The age-65 life annuity is reduced for early retirement (.25% for each month prior to age 62):

    $750 × 79% (100% - .25% × 84 months before age 62) = $592.50 a month beginning at age 55

3.  The monthly early retirement annuity may be taken as a lump sum:

    $592.50 × a lump sum conversion factor of 155.6298 = $92,210.66

Because Harry's lump sum transition benefit ($92,210.66) is greater than his cash balance account ($50,000), he will receive $92,210.66 if he selects a lump sum option.

Because Harry's transition monthly life annuity at age 55 ($592.50) is greater than his regular cash balance life annuity ($321.28), he will receive $592.50 if he takes the life annuity form of payment.

Please keep in mind that this is only one example. The conversion factors change each year. Although the cash balance account always increases, the transition benefits could increase or decrease from year to year because the conversion interest rate changes. Also, generally there will be less of a difference between the transition benefits and regular benefits as you get closer to age 65.

## What's Happening to the Benefits I Had Under the General Signal Plans?

**Former Plan:**

- Benefits earned as of 12/31/98, under former General Signal pension plans are protected by law and can't be reduced

- Former monthly benefit converted to an equivalent lump sum amount in today's dollars to create opening account balance as of 1/1/99

SPXP000601

## Interest Credits

The interest credit is set annually at a rate equal to the return on the five-year Treasury rate. Your account will be credited each December, based on your account balance as of the last day of the previous plan year. Toward the end of each year, SPX will announce the rate that will be used for interest credits for the next plan year.

## Owning Your Account

You own your Individual Account Retirement Plan benefit when you are *vested*. Being vested means you are entitled to receive the total value of your account when you leave employment with SPX for any reason at any age. Under the Individual Account Retirement Plan, you are vested after you have five years of vesting service. You also may become vested the earlier of:

■ age 65 with five years of service, or

■ your unreduced Social Security retirement age (varies by birthdate).

Vesting service is the length of time from the date you first start working at SPX to the date you stop working for the company. Any past vesting service you have earned prior to the introduction of the Individual Account Retirement Plan on January 1, 1999, is included in determining your vested status.

If you leave SPX before earning at least five years of vesting service, you will not be vested and will not receive a benefit from the Plan.

### Transition Benefit

Although most hourly and salaried associates will see comparable or even better benefits under the Financial Security Plans, there was a group of associates — those within 10 or fewer years of early retirement — who initially didn't fare as well. To ensure this group also receives comparable benefits to the former plan, SPX established a transition benefit.

To be eligible for this transition benefit, you must:

■ Be a former participant in the General Signal salaried pension plan (Corporate Plan).

■ Be at least 45 with five or more years of service as of January 1, 1999.

■ Retire on or after age 55.

■ Retire after October 1, 1999.

The transition benefit is designed to establish a minimum benefit level comparable to the former SPX plan. If eligible at retirement, you would receive the greater of the minimum benefit or your account balance under the Individual Account Retirement Plan.

In addition, hourly associates who were covered by the career average plan will be eligible for a transition benefit.

The hourly career average transition benefit is designed to establish a minimum benefit level comparable to the former plan. Eligibility for the hourly associates is the same as shown in the last three bullets above.

SPXP000649

# EXHIBIT M

      (1)    Seven percent (7%) of a Participant's Compensation to the Wage Base;

      (2)    Eleven percent (11%) of Principal Credits over the Wage Base.

(p)    <u>Transition Benefit</u>. Effective October 1, 1999, each GSX Group Employee who was formerly a participant in the GSX Corporate Plan or a participant in the GSX Hourly Plan working at the Edwards Systems Technology, GS Electric, Lightnin or Kayex units and also was a participant in this Plan on January 1, 1999 and was at least 45 years of age with at least 5 years of Continuous Service under the Plan on such date shall be eligible for the Transition Benefit set forth below upon his or her Early Retirement Age unless his or her early retirement was as a result of accepting an early retirement incentive under this Appendix B-31.

The Transition Benefit shall be an alternate benefit, determined as follows:

      (1)    The Participant's Account Balance at Early Retirement, as determined under the Plan (without taking into account the provisions of Appendix B-31(j)(iii), which would otherwise include the GSX Corporate Plan's early retirement subsidy in determining the opening Account Balance of a GSX Group Employee eligible for Early Retirement under the GSX Corporate Plan) shall be converted to an Actuarially Equivalent annuity, payable at Normal Retirement Age.

      (2)    The monthly amount payable to the Participant at Normal Retirement Age shall be reduced by .25 percent per month for each month prior to his 62nd birthday that his Early Retirement Date occurs.

      (3)    The Participant may request payment of his benefit in any optional form otherwise available under the Plan. The amount of any optional form of benefit shall be the Actuarial Equivalent of the amount determined above, expressed as a single life annuity. If the Participant requests a lump sum payment (with spousal consent, if applicable), the Actuarial Equivalent of the amount payable at the Participant's Early Retirement Age shall be determined and, if larger than the Participant's Account Balance, shall be paid instead of his Account Balance, and, in such event, references in this Plan to the Participant's Account Balance shall, where appropriate, be deemed to refer to the lump sum Actuarial Equivalent of the Participant's transition benefit under this Appendix B-31(p).

For purposes of this Appendix B-31(p), the Early Retirement Age of a GSX Group Employee who was formerly a participant in the GSX Corporate Plan shall be the Participant's age when he has both (i) attained his 55th birthday (but not his 65th) and (ii) completed a total of no less than five years of Credited Service and/or Continuous Service (including Continuous Employment under the GSX Corporate Plan).

(q)    <u>Recalculation of Plan Benefit</u>. Effective February 1, 2002, each GSX Group Employee who previously participated in the GSX Corporate Plan or the GSX Hourly Plan, who

SPXP000423

# EXHIBIT N

RECEIVED

OCT 2 9 2001

HUMAN RESOURCE

October 22, 2001

Director of Compensation and Benefits
SPX Corporation
700 Terrace Point Drive
Muskegon, MI 49443

      **Re:**   **Thomas Gillis  Your Letter Dated September 18,2001**

Dear Sir or Madam:
[1] Your letter sets out a sixty day "appeal period" and this letter is an initial response.

    In order to properly analyze my' rights, it will be necessary that I receive:

    1/     a copy of the new cash balance plan document and any related documents which describe the "transition benefit."

    2/     a copy of the defined benefit plan as in effect immediately prior to the conversion to a cash balance program.

    3/     a calculation sheet which sets forth the actuarial factors, compensation history and other information which your actuary used to calculate the amount of the "opening account balance", the "transition benefit", and other computations shown in the September 18 letter.

    I will assume that you will agree that the sixty day "appeal period" will be tolled until such time as I receive this information.  If you do not agree, however, please contact me immediately in writing and I will file an appeal based on the information presently available.

    Based on what I have seen to date, it does seem that this program is extremely unfair to me.. If your actuary used  my five year average compensation history as of December 31, 1998, it in no way reflects the actual five year compensation history on which  my pension would have been based if  I had been allowed to continue accruals under the defined benefit formula until normal retirement age. My excellent performance has caused  my compensation to increase more

Director of Compensation and Benefits
SPX Corporation
October 18, 2001
Page 2

rapidly than would be the case with a typical employee. Under the older version of the plan, my past service would have been credited at this higher rate. Instead, the past service benefit is frozen at a level which is significantly lower than my expected five year average at actual retirement.

To assist your review, I point out my actual five year compensation history:

| | |
|---|---|
| 1994 | $58,368.38 |
| 1995 | $60,410.86 |
| 1996 | $86,626.93 |
| 1997 | $96,826.27 |
| 1998 | $83,500.00 |

In considering this problem from my perspective, you should also take into account my pay history in the last three years, for which I do not receive adequate recognition in the new program.

| | |
|---|---|
| 1999 | $60,700.00 |
| 2000 | $241,000.00 (subject to IRS limit) |
| 2001 | $110,000.00 (approx.) |

You should also consider that when I was provided a lump sum pension calculation as of December 1, 1998 (which did not even take my 1998 compensation into account) that the present value of my pension was shown to be $292,381.96, which is more than $50,000 higher than the opening account balance as of December 31, 1998 shown in the September 18, 2001 letter.

---

[1]   The letter was postmarked September 19, 2001 and received by him on Monday, September 24.

SPXP000508

Director of Compensation and Benefits
SPX Corporation
October 18, 2001
Page 3

I look forward to receiving the documents requested.  Also, I will be delighted to speak with anyone who wishes to discuss my situation and who would be in a position to propose an equitable adjustment outside of any formal "transition benefit" made available generally.

Very truly yours,

By: *Thomas D Gillis*

SPXP000509