# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| THOMAS D. GILLIS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.: 03-12389-GAO |
| vs. | ) | |
| | ) | Judge George A. O'Toole, Jr. |
| SPX CORPORATION INDIVIDUAL ACCOUNT | ) | |
| RETIREMENT PLAN and SPX RETIREMENT | ) | |
| ADMINISTRATIVE COMMITTEE, | ) | |
| | ) | |
| Defendants | ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Andrew A. Jacobson
Andrew W. Vail
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Tel:  (312) 222-9350
Fax:  (312) 840-7650
Email:  ajacobson@jenner.com
Email:  avail@jenner.com

Richard Cavanaugh BBO#557539
GALLAGHER & CAVANAUGH, LLP
Boott Cotton Mills
100 Foot of John Street
Lowell, MA 018
Tel: (978) 452-0522
Email:  richardc@gcattorneys.com

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION AND BACKGROUND ................................................................1

ARGUMENT ....................................................................................................4

I.  THE PLAN ADMINISTRATOR'S DETERMINATION OF MR. GILLIS'
    BENEFITS IS CONCLUSIVE UNLESS IT IS ARBITRARY AND CAPRICIOUS .............4

II. BECAUSE SPX PROPERLY CALCULATED THE BENEFITS OWED TO
    MR. GILLIS COUNT I (ERISA §204(g)(1) - Anti-Cutback) AND COUNT II (ERISA
    §208 - Merger Requirements) FAIL AS A MATTER OF LAW ...............................6

    A.  SPX's Calculation of the Transition Benefit is Correct Under the SPX Plan ....................6

    B.  The SPX Plan's Benefit Determination Does Not Violate ERISA......................................9

III. MR. GILLIS' STANDING TO BRING CLAIMS UNDER ERISA IS LIMITED
     IN THIS CASE AND HIS REMAINING CLAIMS ARE BARRED....................................11

    A.    It Is Well-Settled Law Under ERISA That Mr. Gillis' Breach of Fiduciary
          Claims In Counts III & V Are Barred.........................................................................12

IV. SPX DID NOT BREACH ANY FIDUCIARY DUTY OWED TO MR. GILLIS.................13

    A.  The Misrepresentation Claim Fails ................................................................................13

    B.  The Distribution Claim Fails ........................................................................................15

V.  COUNT IV FAILS BECAUSE SPX PLAN DID NOT DISCRIMINATE AGAINST
    MR. GILLIS BASED ON HIS AGE .........................................................................16

    A.    Plaintiff's "Early Retirement Subsidy" Was Not Discriminatorily Terminated
          From His Retirement Benefit.......................................................................................16

    B.    Conversion of Mr. Gillis' Former Plan To The SPX Cash Balance
          Plan Was Appropriate And Not Discriminatory...........................................................17

VI. SPX IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VI....................................18

   A.  Mr. Gillis Waived This Claim .................................................................................18

   B.  This Case Is Not The Proper Case For Section 502(c)(1) Penalties Under The
       Case Law.................................................................................................................19

CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE

*Anweiler v. America Elec. Power Serv. Co.*, 3 F.3d 986 (7th Cir. 1993) ...........................................13

*Averhart v. U.S. WEST Mgmt. Pension Plan*, 46 F.3d 1480 (10th Cir. 1994)....................................15

*Campbell v. BankBoston, N.A.*, 206 F.Supp.2d 70 (D. Mass. 2002) .........................................9, 16, 17

*Campbell v. BankBoston, N.A.*, 327 F.3d 1 (1st Cir. 2003) .................................................................17

*Cooper v. IBM*, 274 F.Supp.2d 1010 (S.D. Ill. 2003).........................................................................17

*Denmark v. Liberty Life Assurance Co. of Boston*, No. 04-12261, 2005 U.S.Dist.
        LEXIS 27180 (D. Mass. Nov. 10, 2005) .........................................................................................5

*DiGiovanni v. Guardian Life Ins. Co. of Am.*, No. 98-10908, 2002 U.S.Dist.
        LEXIS 12380 (D. Mass. June 28, 2002)........................................................................................12

*Eaton v. Onan Corp.*, 117 F.Supp.2d 812 (S.D. Ind. 2000)..................................................................17

*Engers v. AT&T Corp.*, No. 98-3660, 2001 U.S.Dist. LEXIS 25889 (D. N.J. June 6, 2001)..............17

*Faircloth v. Lundy Packing Co.*, 91 F.3d 648 (4th Cir. 1996).............................................................19

*Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 732 F.2d 250 (1st Cir. 1984).........14

*Hall v. United Techs.*, 872 F.Supp. 1094 (D. Conn. 1995)..................................................................13

*Harms v. Cavenham Forest Ind., Inc.*, 984 F.2d 686 (5th Cir. 1993)....................................................9

*Hickerson v. Velsicol Chemical Corp.*, 778 F.2d 365 (7th Cir. 1985)..................................................10

*Jones v UOP*, 16 F.3d 141 (7th Cir. 1994) ...........................................................................................9

*Larocca v. Borden*, 276 F.3d 22 (1st Cir. 2002)............................................................................12, 13

*Leahy v. Raytheon Co.*, 315 F.3d 11 (1st Cir. 2002)..........................................................................5, 6

*Lee v. Burkhart*, 991 F.2d 1004 (2d Cir. 1993)...................................................................................13

*Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19 (1st Cir. 2003)....................................5, 6

*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).......................................................13

*Mauser v. Raytheon Co. Pension Plan*, 239 F.3d 51 (1st Cir. 2001)....................................................14

*Pierce v. Sec. Trust Life Ins. Co.*, 979 F.2d 23 (4th Cir. 1992) .............................................................14

*Rego v. Westvaco*, 319 F.3d 140 (4th Cir. 2003) .................................................................................12

*Rodowicz v. Mass. Mut. Life Ins. Co.*, 857 F.Supp. 992 (D. Mass. 1994) ...........................................14

*Rodriguez-Abreau v. Chase Manhatten Bank*, 986 F.2d 580 (1st Cir. 1993)......................................19

*Rueda v. Seafarers Int'l Union of N. Am.*, 576 F.2d 939 (1st Cir. 1978).................................................5

*Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173 (1st Cir. 1995)...................................18

*Tolson v. Avondale Ind., Inc.*, 141 F.3d 604 (5th Cir. 1998) ................................................................13

*Tootle v. ARINC, Inc.*, 222 F.R.D. 88 (D. Md. 2004)..........................................................................17

*Torchetti v. Int'l Bus. Machines*, 986 F.Supp. 49 (D. Mass. 1997) .....................................................14

*Tucker v. General Motors Ret. Program*, 949 F.Supp. 47 (D. Mass. 1996).........................................19

*Turner v. Fallon Cmty. Health Plan, Inc.*, 127 F.3d 196 (1st Cir. 1997) ............................................13

*Varity Corp. v. Howe*, 516 U.S. 489 (1996) .......................................................................................13

*Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan*, 402 F.3d 67 (1st Cir. 2005) ...............4, 5

**DOCKETED CASES**

*Cooper v. IBM*, No. 05-3588 ...............................................................................................................17

**FEDERAL STATUTES**

29 U.S.C. §1054.................................................................................................................................9, 10

29 U.S.C. §1058....................................................................................................................................10

29 U.S.C. §1104...............................................................................................................................15, 16

29 U.S.C. § 1109...................................................................................................................................12

29 U.S.C. §1132...........................................................................................................................4, 11, 12

## INTRODUCTION AND BACKGROUND

In 1998, SPX Corporation acquired Plaintiff's long-time employer, General Signal Corporation ("GSX").   As a result, Mr. Gillis became an SPX employee, and effective November 30, 1998, the GSX retirement plan was merged into the SPX Individual Account Retirement Plan (the "SPX Plan").

In connection with the merger, the SPX Plan and the SPX Retirement Administrative Committee (the "Plan Administrator," together "SPX"), took care to ensure that no accrued benefits of the transferred GSX plan participants would be reduced.  As ultimately implemented, the SPX Plan accomplished the goal of delivering equivalent or greater benefits to GSX plan participants by providing that retiring employees would receive the *greatest* of three possible benefit amounts, known as (1) the GSX Accrued Benefit, (2) the SPX Accrued Benefit, and (3) the Transition Benefit.  Ex. B, Elaine Krom ("Krom") Decl. at ¶10; Ex. C, SPX Plan at B-31(k); Ex. A, Robert Campbell ("Campbell") Decl. at ¶8.

The GSX Accrued Benefit is the value of a participant's vested benefits under their prior employer's GSX Plan as of December 31, 1998 (once converted into an actuarial equivalent present value under the SPX Plan).  Ex. C, SPX Plan at Appendix B-31(j)(1); Ex. A, Campbell Decl. at ¶¶14-15.  The SPX Accrued Benefit is the value of a participant's vested benefits as calculated under the SPX Plan at any time.  Ex. C, SPX Plan §2.1(b).[1]  The Transition Benefit is an alternative benefit to the GSX or SPX Accrued Benefits that was provided to compensate a small group of merged GSX Plan participants who, in certain circumstances, faced losing the

---

[1] Merged GSX plan participants' SPX Accrued Benefit balances were calculated by converting the value of their GSX Accrued Benefit, including vested early retirement subsidies, into an opening account balance and then adding principal and interests credits to the account over time, at a rate set forth by the SPX Plan. Ex. C, SPX Plan at B-31(j); Ex. A, Campbell Decl. at ¶14, 17.

value of a not-yet-accrued early retirement subsidy. Ex. C, SPX Plan at Appendix B-31(p); Ex. A, Campbell Decl. at ¶18; Ex. B, Krom Decl. at ¶13. The SPX Plan documents include detailed provisions on the manner of calculating the three possible benefits amounts, which depend in part on actuarial assumptions and net present value calculations. The SPX Plan engaged independent benefits consultants and actuarial consultants to assist the Plan Administrator in accomplishing the initial merger of the GSX retirement plan with the SPX Plan and in determining Mr. Gillis' available benefits upon his retirement. Ex. A, Campbell Decl. at ¶¶4-6; Ex. B, Krom Decl. at ¶¶8-9.

Mr. Gillis' employment with SPX terminated in mid-2002. Ex. E, Am. Compl. ¶18; Answer ¶18; Ex. B, Krom Decl. at ¶3(f) and at Ex. 6, Mr. Gillis' Termination Agreement ("Termination Agreement") at 1. In the period preceding and continuing even after Mr. Gillis' termination, the Plan Administrator explained the manner in which Mr. Gillis' benefits would be calculated. *See, e.g.,* Ex. B, Krom Decl. at ¶3(c) and at Ex. 3, September 18, 2001 SPX Retirement Program letter; Ex. B, Krom Decl. at ¶3(e) and at Ex. 5, December 12, 2001 letter from SPX to Mr. Gillis. Mr. Gillis indicated a disagreement with the Plan Administrator's methodology, and on September 27, 2002, Mr. Gillis submitted a claim for benefits under the SPX Plan. Ex. B, Krom Decl. at ¶3(g) and at Ex. 7, September 9, 2002 Claim Letter. Mr. Gillis claimed that pursuant to his interpretation of SPX Plan documents, he was owed benefits in the total claimed amount of $661,367.62 (calculated as of December 31, 2002). *Id.*

The Plan Administrator reviewed Mr. Gillis' benefits claim and identified several ways in which Mr. Gillis' method of calculation contravened the SPX Plan documents. As a result, the Plan Administrator issued a denial of benefits letter on March 18, 2003. Ex. B, Krom Decl. at ¶3(h) and at Ex. 8, March 18, 2003 Denial of Claim Letter. In that letter, the Plan Administrator

explained its interpretation of the SPX Plan documents and advised Mr. Gillis that when properly calculated, Mr. Gillis' three possible benefit amounts (as of January 1, 2003) were as follows:

GSX Accrued Benefit:        $413,445.24

SPX Accrued Benefit        $471,147.90

Transition Benefit         $451,569.24

Ex. B, Krom Decl. at ¶3(i) and at Ex. 9, Mr. Gillis' May 2, 2003 Appeal of Claim Letter at 1.

As the SPX Plan expressly provides, Mr. Gillis was entitled to the greatest of the three possible benefit amounts, or $471,147.90 (the SPX Accrued Benefit) as of January 1, 2003.[2]

Mr. Gillis persisted in his disagreement over plan interpretation and the calculation of his benefit amounts. Following the denial of his administrative appeal of the denial of benefits, Mr. Gillis commenced this lawsuit.

Although Mr. Gillis based his benefits claim on several grounds (some of which have been abandoned),[3] Mr. Gillis' core assertion is that the Plan Administrator erred in calculating his Transition Benefit. Mr. Gillis contends that the account balance under the Transition Benefit should be higher than that employed by the Plan Administrator. Mr. Gillis believes that the Transition Benefit calculation needs to add in the value of an early retirement subsidy. *See, e.g.,* Ex. E, Am. Compl. at ¶¶29, 48, 53, 64.

As explained in the argument below, the SPX Plan documents expressly and unambiguously provide that -- contrary to Mr. Gillis's assertion – the specific early retirement subsidy he seeks should not be included in the calculation of the Transition Benefit. This is

---

[2] The amount of the benefits due depend on the date of calculation, and will have to be updated to present value when there is a final determination. However, that updating is not relevant to the issues presented in this summary judgment motion as Mr. Gillis' challenge is to the calculation methodology.

[3] For example, Mr. Gillis' claim for benefits, administrative appeal and original complaint alleged that his pension benefits should have included a "Grandfather Benefit" and that the elimination of this benefit violated ERISA. Ex. D, Original Complaint ¶¶34-40. Mr. Gillis has dropped all allegations relating to a Grandfather Benefit in this case.

because the operation of the Transition Benefit calculation is itself designed to take into account the effect of an early retirement, and therefore adding in the early retirement subsidy would be double-counting and create an unfair windfall of benefits.

Under controlling law and the express terms of the SPX Plan, the Plan Administrator has "the exclusive right and the discretionary authority" to interpret and decide matters arising under the SPX Plan, and those determinations shall be "conclusive" and may be set aside only if they are arbitrary and capricious.  Ex. C, SPX Plan §12.6; *Wright v. R.R. Donnelley & Sons Co. Group Benefits Plan*, 402 F.3d 67, 74 (1st Cir. 2005).  In light of the express terms of the SPX Plan, the deferential standard of review, and other applicable legal principles, Mr. Gillis cannot meet his burden on summary judgment to overcome the Plan Administrator's determination of the proper amount of his benefits.  Although Mr. Gillis' Amended Complaint attempts to dress up this straightforward case of plan interpretation and denial of benefits in additional theories, such as age discrimination, misrepresentation, breach of fiduciary duty and the like, Mr. Gillis does not even have standing to advance many of those theories, and all of them fail as a matter of law.  Accordingly, SPX is entitled to summary judgment in its favor on each and every one of Mr. Gillis' claims.

**ARGUMENT**

**I.    THE PLAN ADMINISTRATOR'S DETERMINATION OF MR. GILLIS' BENEFITS IS CONCLUSIVE UNLESS IT IS ARBITRARY AND CAPRICIOUS.**

Mr. Gillis brings this challenge to the denial of benefits pursuant to ERISA Section 502(a)(1)(B), which permits Mr. Gillis to bring a civil action "to recover benefits due to him under the terms of his plan."  29 U.S.C. §1132(a)(1)(B); see Ex. E, Am. Compl. at ¶1.[4]  It is well-established law that where the plan allows its administrators discretionary authority to

---

[4] Indeed, as discussed below, Section 1132(a)(1)(B) is the only proper avenue of challenge open to Mr. Gillis, and his purported reliance on other ERISA provisions is improper.

determine benefits and to interpret the terms of the plan, the plan administrators' benefits determination or interpretation may only be set aside if it is "arbitrary and capricious." *See Wright,* 402 F.3d at 74; *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 24 (1st Cir. 2003); *Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir. 2002); *see also Rueda v. Seafarers Int'l Union of N. Am.*, 576 F.2d 939, 942 (1st Cir. 1978) ("unless the trustees' interpretation of the plan is arbitrary and capricious, it may not be disregarded").  As a result, at summary judgment, the applicable standard differs from the one applied in an ordinary civil case, and the non-moving party is not entitled to the usual inferences in its favor.  *Leahy*, 315 F.3d at 17; *Denmark v. Liberty Life Assurance Co. of Boston*, No. 04-12261, 2005 U.S. Dist. LEXIS 27180, at *22 (D. Mass. Nov. 10, 2005).

In this case, it is beyond challenge that the express terms of the SPX Plan grant the Plan Administrator (in the excerpt below, the "Committee") the requisite discretion such that its determinations may not be set aside unless they are arbitrary and capricious.  Section 12.6 of the SPX Plan states:

> The Committee shall have the exclusive right to make any finding of fact necessary or appropriate for any purpose under the Plan, including, but not limited to, the determination of the eligibility for and the amount of any benefit payable under the Plan.  The Committee shall have the exclusive right and the discretionary authority to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision. … All findings of fact, determinations, interpretations, and decisions of the Committee shall be conclusive and binding upon all persons having or claiming to have any interest or right under the Plan.

Ex. C, SPX Plan §12.6.  The Summary Plan Description contains similar language informing Plan participants that SPX has "discretionary authority to interpret the plan and, upon appeal, to determine eligibility for and entitlement to benefits and the amount of benefits. Any such

interpretation and determination by SPX is final and binding, subject only to the arbitrary and capricious standard of judicial review."  Ex. B, Krom Decl. at ¶3(a) and at Ex. 1, the Summary Plan Description ("SPD") at 22-23.

The language of the SPX Plan closely tracks language that the First Circuit has held as triggering the deferential "arbitrary and capricious" review.  *Leahy*, 315 F.2d at 11 (finding discretionary grant "could hardly be clearer" and arbitrary and capricious standard applied where plan documents gave administrator "exclusive right" to "interpret the Plan and decide all matters arising thereunder" and determinations were "conclusive").  Accordingly, the Plan Administrator's interpretation of the SPX Plan and determination of Mr. Gillis' benefits governs, and at summary judgment, any doubts about the correctness of that determination should be resolved in favor of upholding that determination.  *Liston*, 330 F.3d at 24 ("the rationality standard tends to resolve doubts in favor of the administrator").  Because Mr. Gillis cannot demonstrate that the Plan Administrator's benefits decision was arbitrary and capricious, SPX is entitled to summary judgment upholding that determination.

## II.    BECAUSE SPX PROPERLY CALCULATED THE BENEFITS OWED TO MR. GILLIS COUNT I (ERISA §204(g)(1) - Anti-Cutback) AND COUNT II ERISA §208 - Merger Requirements) FAIL AS A MATTER OF LAW._____

### A.    SPX's Calculation of the Transition Benefit is Correct Under the SPX Plan.

SPX and Mr. Gillis are in absolute agreement that Mr. Gillis' benefit is the greatest of his GSX Accrued Benefit, his SPX Accrued Benefit, or the Transition Benefit.  *See, e.g.,* Ex. E, Am. Compl. at ¶26; Ex. B, Krom Decl. at ¶11.  Moreover, Mr. Gillis freely concedes that "[b]ecause Mr. Gillis' benefit under the SPX Plan exceeds his December 31, 1998 GSX Accrued Benefit, he is principally concerned with the calculations of his Transition Benefit."  Ex. E, Am. Compl. at ¶27; *see also id.* at ¶¶29, 48, 50, 60, 63, 64.  Although Mr. Gillis contends that the Transition

Benefit can be correct only if it includes a specifically identified early retirement subsidy, Mr. Gillis' interpretation of the methodology of the Transition Benefit calculation is flatly contrary to the express terms of the SPX Plan. Under the SPX Plan, the early retirement issue is handled differently for the alternative benefit. Because the Plan Administrator complied with the express terms of the SPX Plan in calculating the Transition Benefit, and because the law does not compel the SPX Plan to do anything differently, SPX is entitled to summary judgment.

First, the SPX Transition Benefit is an alternative benefit, not required by any principle of ERISA law. Ex. A, Campbell Decl. at ¶20. Instead, the Transition Benefit is an alternative to the GSX Accrued Benefit and the SPX Accrued Benefit that could address certain unique circumstances that ultimately did not affect Mr. Gillis. *Id.;* Ex. C, SPX Plan at Appendix B-31(p). Because the SPX Plan is a cash balance plan, it was necessary upon merger of the plans to convert participants' GSX accounts from a traditional defined plan benefit to a cash balance plan benefit. As a result of the conversion, it was possible that some transferred participants, who had not yet accrued their GSX early retirement subsidy, would have received a lesser future benefit under the SPX Plan in the future if they elected early retirement. Ex. B, Krom Decl. at ¶¶12-13. While not compelled to do so by law, to make sure this small group of employees were satisfied with their new SPX Plan, SPX made available to them the alternative Transition Benefit, which the participant could receive if it turned out to be the greatest of the three alternative benefit amounts. *Id.* at ¶10. For Mr. Gillis, the properly calculated Transition Benefit simply does not provide the greatest amount of benefits, the SPX Accrued Benefit does.

Mr. Gillis' contention that an early retirement subsidy must be included "up-front" in calculating his alternative Transition Benefit is flatly contrary to the terms of the SPX Plan. The

requirements for establishing a starting point for the Transition Benefit clearly states that the calculation is begun without including the early retirement subsidy:

> The Transition Benefit shall be an alternative benefit determined as follows: (1) The Participant's Account Balance at Early Retirement, as determined by the Plan (without taking into account the provisions of Appendix B-31(j)(iii), which would otherwise include the GSX Corporate Plan's early retirement subsidy in determining the opening Account Balance of a GSX Group Employee eligible for Early Retirement under the GSX Corporate Plan …).

Ex. C, SPX Plan at Appendix B-31(p).   The Plan Administrator followed these express requirements in performing Mr. Gillis' benefit determination.  Ex. B, Krom Decl. at ¶9; Ex. A, Campbell Decl. at ¶¶6, 9.

When it is time to for the SPX Plan to make a benefits determination, the actual Transition Benefit is calculated based on the opening account balance through application of actuarial factors as set forth in the SPX Plan.  Ex. A, Campbell Decl. at ¶¶5, 16.  In performing a Transition Benefit calculation for a plan participant like Mr. Gillis (where employment ends before age 65), the actuarial factors used are different than those used under the other available SPX Plan benefits.  Ex. C, SPX Plan at Appendix B-31(p); Ex. A, Campbell Decl. at ¶17.  One purpose of using the different actuarial factors is to capture the value of any early retirement benefits to be reflected in the Transition Benefit amount.  *Id.*  This has the result of increasing the value of the benefits available under the Transition Benefit.  *Id.*  To use both the different actuarial values and include an "up-front" early retirement subsidy in the Transition Benefit calculation (as Mr. Gillis apparently contends), would result in effectively double-counting the value of any early retirement benefits.  *Id.*  In calculating Mr. Gillis' Transition Benefit, the appropriate actuarial values were used such that the Transition Benefit in fact accounted for the value of early retirement.  *Id.*

8

The kind of double-recovery Mr. Gillis seeks not only contravenes the express terms of the SPX Plan, but is contrary to law, because ERISA abhors double-recovery windfalls.  *See, e.g.*, *Harms v. Cavenham Forest Indus., Inc.*, 984 F.2d 686, 693 (5th Cir. 1993) (rejecting plaintiffs claim for benefits from a successor employer).

SPX clearly followed the method of calculation provided in the SPX Plan documents. The Plan Administrator's determination that Mr. Gillis cannot doubly recover for early retirement benefits therefore cannot possibly be considered "arbitrary and capricious." Accordingly, SPX is entitled to the entry of summary judgment in its favor.

### B.    The SPX Plan's Benefit Determination Does Not Violate ERISA.

Mr. Gillis seeks to escape the clear operation of the express terms of the SPX Plan by claiming that the failure to double count in calculating his Transition Benefit somehow violates ERISA.  It does not.

In Count I, Mr. Gillis alleges that the SPX Plan violated ERISA §204(g)(1) because it excluded the value of an early retirement subsidy when it calculated the benefits due to him under the Plan. Ex. D, Am. Compl. at ¶48.  That Section of ERISA states, "The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."  29 U.S.C. §1054(g)(1).  Courts have stated that the purpose of  this provision "is to prevent employer from defeating 29 USCS §1053 by back-loading benefits (making benefits accrue very slowly until employee is near retirement age), so that employee's pension rights, even though vested after 10 years, have very little value until he has completed much longer period of service."  *Jones v UOP*, 16 F.3d 141, 143 (7th Cir. 1994).  Under this Section, if the plaintiff does not demonstrate that he has received a lesser accrued benefit, his claim fails.  *See Campbell v. BankBoston, N.A.*, 206 F. Supp. 2d 70, 79 (D. Mass 2002).

9

First, as noted above, this claim fails because Mr. Gillis' benefits were not cut back in any way. All three alternative benefit calculations account in some way for the effect of early retirement. *See supra* at 6 - 8.

Second, because the GSX Accrued Benefit, which is calculated as of December 31, 1998, serves as one of the three alternative benefits, participants always receive at least as much as they already had accrued under the previous plan. Mr. Gillis concedes that the "benefits under the SPX Plan exceeds his December 31, 1998 GSX Accrued Benefit." Ex. E, Am. Compl. at ¶27. Therefore Mr. Gillis cannot show that his accrued benefit has been "decreased by an amendment of the plan." *See* 29 U.S.C. §1054(g)(1).

Similarly, in Count II, Mr. Gillis alleges that the SPX Plan violated ERISA Section 208 and the SPX Plan's terms based on the same underlying allegation concerning the value of his early retirement subsidy. Ex. D, Am. Compl. at ¶¶50-54. That Section provides in relevant part that:

> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan… unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated).

29 U.S.C. §1058. Thus, whether a merger meets ERISA's requirements "is measured by comparing the benefits on a termination basis of the participants immediately *before* proposed merger with the benefits on termination basis of participants immediately after." *Hickerson v. Velsicol Chemical Corp.*, 778 F.2d 365, 374 (7th Cir. 1985).

Once again, Mr. Gillis' concession that he received greater benefits under the SPX Plan than under his GSX Accrued Benefit means that he cannot demonstrate any violation of Section 208. Indeed, SPX provided transferred participants like Mr. Gillis the three possible

transition options to make sure that "[e]ach participant in the GSX Corporate Plan … shall receive a benefit under this Plan immediately after the merger … which is equal to or greater than the benefit he would have been entitled to receive from the GSX Corporate Plan, as applicable, immediately before the merger (if the GSX Corporate Plan … had then terminated)." Ex. C, SPX Plan at Appendix B-31(l); Ex. B, Krom Decl. at ¶10. Mr. Gillis cannot prevail on this claim.

### III.    MR. GILLIS' STANDING TO BRING CLAIMS UNDER ERISA IS LIMITED IN THIS CASE AND HIS REMAINING CLAIMS ARE BARRED.

All of Mr. Gillis' claims, including those discussed above, not brought under ERISA Section 502(a)(1)(B), including the cut-back and merger claims discussed above, are improperly asserted in this case.

Civil enforcement under ERISA is governed by Section 502. 29 U.S.C. §1132. Under ERISA Section 502(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. §1132(a)(1)(B). Mr. Gillis states that this section is the basis for his "demand for unpaid benefits due to him under [the SPX] Plan." Ex. E, Am. Compl. at ¶1.

Mr. Gillis, however, does not limit his claims in this case to that Section. Instead, he attempts to dress up this straightforward case of plan interpretation and denial of benefits in additional theories that allege violations of various ERISA provisions based on the same underlying theory as his claim for benefits. *See* Ex. E, Am. Compl. at ¶¶48 (ERISA's anti-cutback provision), 53 (ERISA's merger provisions), 60 & 71 (ERISA's fiduciary duties), 66 (ERISA's anti-age discrimination provisions).

These claims should be disposed of because "federal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)." *Larocca v. Borden*, 276 F.3d 22, 28 (1st Cir. 2002) (citing cases).

### A.    It Is Well-Settled Law Under ERISA That Mr. Gillis' Breach of Fiduciary Claims In Counts III & V Are Barred.

In Counts III and V, Mr. Gillis asserts claims against the SPX Plan for alleged breach of fiduciary duties relating to the denial of his benefit claim amount.[5]

Recognizing that ERISA specifically tailors the type of relief available for breaches of fiduciary duty under its provisions, this Court previously determined that a claim for breach of fiduciary duty under ERISA is only available to "participants who are unable to avail themselves of other remedies." *DiGiovanni v. Guardian Life Ins. Co. of Am.*, No. 98-10908, 2002 U.S. Dist. LEXIS 12380, at *19 (D. Mass June 28, 2002) (O'Toole, J.).   Based on this application of ERISA law, Counts III and V fail because Mr. Gillis can and has sought remedy in this case under ERISA 501(a)(1)(B).

ERISA Section 502(a)(2) allows participants to bring a civil action for violations of Section 409, which states that fiduciaries who breach of their fiduciary duties must make good any losses resulting of that breach to the plan.   29 U.S.C. §1132(a)(2); 29 U.S.C. §1109(a). Under ERISA Section 502(a)(2), however, damages are available only when the harm is to the entire plan.  29 U.S.C. 1132(a)(2).  Otherwise, plan participants who allege individual harm from breach of fiduciary duty are limited to equitable relief provided for in ERISA Section 502(a)(3).

---

[5] In Count III, he essentially alleges that the Plan Administrator breached its duty because his early retirement subsidy was subtracted from his Transition Benefit and the Plan Administrator did not advise him of this in a manner that was not "confusing and misleading." Ex. E, Am. Compl. at ¶¶55-61.  In Count V, he alleges that the SPX Plan breached by failing to pay him the benefit he claims in this case. *Id.* at. ¶¶68-73.

29 U.S.C. 1132(a)(3); *Rego v. Westvaco*, 319 F.3d 140, 144-45 (4th Cir. 2003). The Supreme Court has determined equitable relief is only appropriate under Section 1132(a)(3) where other ERISA provisions do not provide redress. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

Although ERISA Section 502(a)(2) provides for money damages, that section does not provide a remedy to individuals. Rather, Section 502(a)(2) is reserved exclusively for losses to the plan itself rather than losses to participants in a plan. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985); *Anweiler v. Am. Elec. Power Serv. Co.*, 3 F.3d 986 (7th Cir. 1993); *Lee v. Burkhart*, 991 F.2d 1004 (2d Cir. 1993); *Hall v. United Techs.*, 872 F. Supp. 1094 (D. Conn. 1995).

Similarly, Courts repeatedly have rejected claims for breach of fiduciary duty under Section 502(a)(3) where, like Mr. Gillis, they have adequate redress for disavowed claims through the right to bring suit under Section 502(a)(1)(B). *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 200 (1st Cir. 1997) ("Beneficiaries may sue a plan for breach of fiduciary duty causing individual harm, but such suits are allowed only for equitable relief and, even then only where Congress has failed to provide more specific relief."); *see also Larocca*, 276 F.3d at 28; *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604 (5th Cir. 1998).

## IV.    SPX DID NOT BREACH ANY FIDUCIARY DUTY OWED TO MR. GILLIS.

Not only does Mr. Gillis lack standing to advance his claims for breach of fiduciary duty against SPX in this case, those claims also fail on the merits.

### A.    The Misrepresentation Claim Fails.

Mr. Gillis alleges that the Plan Administrator violated ERISA's disclosure requirements by failing to inform him that his GSX early retirement subsidy would be subtracted from his Transition Benefit or to do so in a manner that was not misleading. Ex. E, Am. Compl at ¶60.

As described above, the SPX Plan and other SPX Plan documents expressly and unambiguously dictate the manner of calculation.  Ex. C, SPX Plan at Appendix B-31(p); Ex. B, Krom Decl. at ¶3(b) and at Ex. 2, Supplement to Summary Plan Description at 1 n.1.  The Transition Benefit is an alternative benefit, itself a form of an early retirement subsidy that accounts for the value of any appropriate early retirement subsidy through other means, such as actuarial factors.  Ex. A, Campbell Decl. at ¶¶14, 18; Ex. B, Krom Decl. at ¶¶13-18.  Since SPX did not reduce or eliminate the early retirement subsidy as Mr. Gillis contends, SPX obviously did not act contrary to any representation to Mr. Gillis.

Moreover, Mr. Gillis cannot establish the elements of a misrepresentation claim because he cannot show reliance on any alleged misrepresentation as required under ERISA.  *Torchetti v. Int'l Bus. Machines*, 986 F. Supp. 49, 51 (D. Mass 1997); *Rodowicz v. Mass. Mut. Life Ins. Co.*, 857 F. Supp. 992, 998-99 (D. Mass 1994).  Particularly in ERISA claims seeking damages for alleged misrepresentations, actual reliance is an essential element that cannot be presumed. *Pierce v. Sec. Trust Life Ins. Co.*, 979 F.2d 23 (4th Cir. 1992); s*ee Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am.*, 732 F.2d 250 (1st Cir. 1984).  The First Circuit has held that an allegation of an expectation that certain benefits would have materialized or that an employee "might not have retired had he known his pension would be smaller" is not enough to maintain this claim.  *Mauser v. Raytheon Co. Pension Plan*, 239 F.3d 51, 56 (1st Cir. 2001); *Govoni*, 732 F.2d at 252.  Indeed, the undisputed evidence is that Mr. Gillis' employment was terminated, not that Mr. Gillis relied on any particular benefits expectation in voluntarily separating from the Company.  Ex. F, Gillis Dep. at 19-20.

**B.      The Distribution Claim Fails.**

In Count V, Mr. Gillis alleges that the SPX Plan violated its fiduciary duty to him by failing to pay him "his early retirement benefits in a lump sum" when his employment with SPX was terminated.  Ex. E, Am. Compl. at ¶71.  First, Mr. Gillis lacks standing to bring this breach of fiduciary duty claim as established above.  Moreover, Mr. Gillis cannot prevail on this claim on the undisputed facts.

SPX clearly informed Mr. Gillis in its November 24, 2003 denial of appeal letter that his appeal was denied and "[i]n order to apply for your pension benefit, you will need to contact [an SPX representative].    Ex. B, Krom Decl. at ¶3(k) and at Ex. 11, "Building for a Better Tomorrow" at 3.  Mr. Gillis did not do this.  Ex. B, Krom Decl. at ¶22.  Instead he filed this lawsuit.  *See generally*, Ex. D, Compl.  To date, Mr. Gillis has never made application to any SPX representative for the amount of his SPX Accrued Benefit.  Ex. B, Krom Decl. at ¶23.  Since he never properly requested the actual benefit that he is entitled to under the Plan, SPX did not breach any fiduciary duty owed to Mr. Gillis relating to the distribution of his benefit.

Under ERISA Section 404(a)(1)(D), the Plan Administrator has a fiduciary obligation to act "in accordance with the documents and instruments governing the plan."  29 U.S.C. §1104(a)(1)(D).  Indeed, federal courts have repeatedly found that a plan fiduciary does not violate its obligations under Section 404(a)(1)(D) as a matter of law if it denies benefits to a person not entitled to those benefits under the plan.  *See, e.g., Averhart v. U.S. WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1489 (10th Cir. 1994).  Because Mr. Gillis has never requested his retirement benefit pursuant to the terms of the SPX Plan and the Plan Administrator is bound to follow those terms, summary judgment for SPX is appropriate.

## V.    COUNT IV FAILS BECAUSE SPX PLAN DID NOT DISCRIMINATE AGAINST MR. GILLIS BASED ON HIS AGE.

In Count IV, Mr. Gillis alleges that the SPX Plan violated the anti-age discrimination provisions of ERISA by eliminating his early retirement subsidy and by failing to credit his hypothetical cash balance account with future interest credits.  Ex. E, Am. Compl. at ¶¶62-67.

ERISA Section §204(b)(1)(G) states that "a defined benefit plan shall be treated as not satisfying the requirements of this paragraph if the participant's accrued benefit is reduced on account of any increase in his age or service" and (H) states that a plan violates this Section "if, under the plan, an employee's benefit accrual is ceased, or the rate of an employee's benefit accrual is reduced, because of the attainment of any age."  29 U.S.C. §1104(b)(1)(G) and (H). Addressing an allegation similar to that pleaded in this Count, a court in this circuit interpreted this provision to mean:

> Where no accrued benefits were reduced by the conversion to a cash balance system and the plaintiff was credited with what he had accrued up to that date of the conversion, there was no intentional age discrimination by the defendant.  Moreover, unvested welfare benefits may be altered or terminated at any time.  Thus, the conversion violated no federal statute.

*Campbell,* at 70, 74, 79 (D. Mass. 2002).

For the reasons set forth below, the complaint fails to assert any proper claim for age discrimination under ERISA.

### A.    Plaintiff's "Early Retirement Subsidy" Was Not Discriminatorily Eliminated From His Retirement Benefit.

The allegations that the SPX Plan violated this provision because it eliminated the value of Mr. Gillis' early retirement subsidy from his benefit fails for the reasons discussed in Section II above.  SPX did not eliminate the value of Mr. Gillis' early retirement subsidy from

his pension benefit.  The value of his available benefits was calculated pursuant to the SPX Plan and accounted for the effects of early retirement.  *See* Section II above.

**B.    Conversion of Mr. Gillis' Former Plan to The SPX Cash Balance Plan Was Appropriate And Not Discriminatory.**

The complaint also alleges that SPX violated ERISA's anti-age discrimination provisions because it failed to take into account the interest projections to Mr. Gillis' normal retirement age before converting his account balance to its actuarial equivalent.  Ex. E, Am. Compl. at ¶¶37-41, 65.

It is not clear what argument Mr. Gillis presses here.  To the extent the complaint alleges that the cash balance design of the SPX Plan is inherently age discriminatory, and thus SPX violated ERISA when it merged Mr. Gillis' account into it, that claim fails as a matter of law.

Every court, absent one, that has ever addressed the issue of whether cash balance plans are inherently discriminatory has determined that they are not.  *See Campbell,* 206 F. Supp. 2d at 74*; Eaton v. Onan Corp.*, 117 F. Supp. 2d 812, 822-34 (S.D. Ind. 2000) (finding the cash balance plan design did not violate the age discrimination provisions of the ADEA or ERISA because the rate of benefit accrual in the defendant's plan did not decline based on changes in an employee's age);  *Tootle v. ARINC, Inc.*, 222 F.R.D. 88 (D. Md. 2004) (same); *Engers v. AT&T Corp.*, No. 98-3660, 2001 U.S. Dist. LEXIS 25889 (D. N.J. June 6, 2001) (same).  The First Circuit also has rejected the argument that cash balance plans violate ERISA §204(B)(1)(g).  *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 10 (1st Cir. 2003) (*dicta*).[6]  To the extent Mr. Gillis is making such a claim it should be rejected as against the greater weight of authority.

---

[6] A lone decision out of the United States District Court for the Southern District of Illinois, *Cooper v. IBM*,  274 F. Supp. 2d 1010 (S.D. Ill. 2003), remains the only case that has ever held cash balance plans to be inherently discriminatory.  *Cooper* is against the weight of authority, and it is currently under review in the Seventh Circuit. *Cooper v. IBM*, No. 05-3588 (7th Cir. 2005).

In the alternative, if Mr. Gillis is alleging that the SPX Plan violated ERISA because it did not project the value of his normal retirement benefit using a projecting rate that is at least equal to the plan's interest credit rate - this is false.  The SPX Plan properly converted Mr. Gillis' benefit by using appropriate projection rates under the terms of the SPX Plan.  Ex. A, Campbell Decl. at ¶¶14-15.  The calculations performed by Watson Wyatt were pursuant to the SPX Plan and lawful under all applicable federal law, including ERISA and the IRS Code.   Ex. A, Campbell Decl. at ¶¶6, 9.

## VI.    SPX IS ENTITLED TO SUMMARY JUDGMENT ON COUNT VI.

### A.    Mr. Gillis Waived This Claim.

When Mr. Gillis terminated his employment with SPX, he and the company executed a severance agreement in which he released "any known or unknown claims . . . against the Company" on July 31, 2002.  Ex. B, Krom Decl. at ¶3(f) and at Ex. 6, Termination Agreement at ¶4.  The Termination Agreement further states:

> This is a general and complete release that applies to any claim, known or unknown and waives any claim to further compensation or benefits.  It includes claims relating to your employment with and termination of employment from this Company. … This release specifically applies to … any claims for attorneys fees, and any claims arising under any and all federal, state and local laws and under federal or state common law, include claims in contract or tort.

*Id.*

In the complaint, Mr. Gillis alleges that he requested documents on or about October 22, 2001, and that he did not receive them until July 18, 2002, Ex. D, Am. Compl. at ¶¶76-77, which is well before his execution of the Termination Agreement.  The binding terms of the Agreement and Mr. Gillis' waiver of claims therefore preclude this claim.  *See, e.g., Smart v. Gillette Co. Long-Term Disability Plan,* 70 F.3d 173, 182 (1st Cir. 1995).

**B.    This Case Is Not The Proper Case For Section 502(c)(1) Penalties.**

Even absent waiver, this is not the type of case for which any penalty is appropriate under Section 502(c)(1).  The purpose of assessing penalties under this Section is to punish employers who willfully contravene the purposes of the disclosure requirement or prejudice plaintiffs by their delay.  *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996).  Because the purposes of ERISA are not served when no prejudice or harm was suffered by the plaintiff and the delay in providing documents was not due to an intentional, bad faith delay by the defendant, courts have refused to assess penalties under Section 502(c)(1) in these circumstances.  *See, e.g., Rodriguez-Abreau v. Chase Manhatten Bank*, 986 F.2d 580, 588-89 (1st Cir. 1993); *Tucker v. General Motors Ret. Program*, 949 F. Supp. 47, 56 (D. Mass. 1996).

In this case, the delay in producing the requested documents did not result from bad faith or intentional delay on the part of SPX.  Rather, the delay was the result of SPX's desire to ensure that Gillis received the complete documents he requested.  Ex. B, Krom Decl. at ¶24.  During this time, SPX corresponded with Gillis, apprising him of SPX's progress and providing the documents it had so far.  Moreover, while SPX processed the request for documents, it tolled Gillis' sixty-day appeal period so that Gillis would not be prejudiced by any delay.  *Id. see also Id.* at Ex. 4.

Given SPX's good-faith and the fact that Gillis suffered no prejudice, the punitive purposes of § 502(c)(1) would not be served by assessing penalties against SPX in this case.

19

**CONCLUSION**

For all of the foregoing reasons, SPX respectfully requests that the Court grant

Defendants' Motion for Summary Judgment.


Dated: February 8, 2006                    On Behalf of SPX Individual Account Retirement
                                           Plan and the SPX Retirement Administrative Committee


                    _____ /s/ Andrew W. Vail _____

                                           Andrew A. Jacobson
                                           Andrew W. Vail
                                           JENNER & BLOCK LLP
                                           One IBM Plaza
                                           Chicago, IL 60611
                                           Tel:  (312) 222-9350
                                           Fax:  (312) 840-7650
                                           Email:  ajacobson@jenner.com
                                           Email:  avail@jenner.com

                                           Richard Cavanaugh BBO#557539
                                           GALLAGHER & CAVANAUGH, LLP
                                           Boott Cotton Mills
                                           100 Foot of John Street
                                           Lowell, MA 018
                                           Tel: (978) 452-0522
                                           Email:  richardc@gcattorneys.com