# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS D. GILLIS,<br><br>                   Plaintiff<br><br>vs.<br><br>SPX CORPORATION INDIVIDUAL ACCOUNT RETIREMENT PLAN and SPX RETIREMENT ADMINISTRATIVE COMMITTEE,<br><br>                  Defendants | Civil Action No.: 03-12389-GAO<br><br>Judge George A. O'Toole, Jr. |

**DECLARATION OF ELAINE KROM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I, Elaine Krom, being first duly sworn, depose and state as follows:

    1.    I am the Manager of Retirement Plans and International Benefits for SPX Corporation ("SPX"). If called to testify, I would be competent to testify to all matters stated in this affidavit on my own personal knowledge.

    2.    I have been in this position at SPX since 1999. My duties and responsibilities as Manager of Retirement Plans for SPX include, but are not limited to, communicating on behalf of the SPX Retirement Administrative Committee, which is the SPX Corporation Individual Account Retirement Plan's (the "SPX Plan") Administrator (the "Plan Administrator"), reviewing participants' benefits claims and coordinating the distribution of retirement benefits to participants, and monitoring third-parties who work for the SPX Plan at the direction of the Plan Administrator, e.g., Watson Wyatt & Company ("Watson Wyatt") is the SPX Plan's current independent actuary.

3. The following documents are true and correct copies:

a. Exhibit 1: The SPX Individual Account Retirement Plan Summary Plan Description, printed as of July 1, 2000 (hereinafter, the "SPD").

b. Exhibit 2: SPX Corporation Individual Account Retirement Plan Supplement to Summary Plan Description - General Signal Transition Benefit (hereinafter, the "SPD Supplement").

c. Exhibit 3: September 18, 2001 letter from SPX Retirement Program to Mr. Gillis.

d. Exhibit 4: November 7, 2001 letter from SPX (Elaine Krom) to Mr. Gillis.

e. Exhibit 5: December 12, 2001 letter from SPX (Elaine Krom) to Mr. Gillis, with attached calculation sheets prepared by Watson Wyatt.

f. Exhibit 6: Mr. Gillis' June 20, 2002 employment termination agreement, signed by Mr. Gillis on July 31, 2002 (hereinafter, "Termination Agreement").

g. Exhibit 7: Mr. Gillis' September 27, 2002 Claim letter to SPX.

h. Exhibit 8: SPX's March 18, 2003 Denial of Claim letter to Mr. Gillis.

i. Exhibit 9: Mr. Gillis' May 2, 2003 Appeal of Claim letter to SPX.

j. Exhibit 10: SPX's November 24, 2003 Denial of Appeal letter to Mr. Gillis, with attached calculation sheets prepared by Watson Wyatt.

k. Exhibit 11: Building For a Better Tomorrow…SPX Corporation Financial Security Plans for New SPX Associates September/October 1999 (hereinafter, "Building For a Better Tomorrow").

l. Exhibit 12: September 3, 1999 letter from Hewitt to SPX.

4. The SPX Corporation Individual Account Retirement Plan, As amended and restated generally effective as of January 1, 2001, attached as Exhibit C to the Memorandum of Law In Support of Defendants' Motion for Summary Judgment, is the controlling plan document for the SPX Plan.

5. The SPX Plan at Section 12.6 provides that the Plan Administrator has the exclusive right to make all findings of fact necessary or appropriate for any purpose under the

2

SPX Plan and the exclusive right and the discretionary authority to interpret the terms and provisions of the SPX Plan.

6.  Effective November 30, 1998 the Corporate Retirement Plan of General Signal Corporation ("GSX Plan"), a defined benefit pension plan, was merged into the SPX Plan, a cash balance plan.

7.  As a result of the merger of the GSX Plan into the SPX Plan and because the SPX Plan is a cash balance plan, it was necessary to convert participants' GSX benefits from a traditional defined plan benefit to a cash balance plan benefit.

8.  SPX engaged Hewitt Associates, the SPX Plan's independent actuary at the time of the merger (Watson Wyatt is the current independent actuary), to perform actuarial and benefit calculations relating to the merger of former GSX Plan participants' accounts into the SPX Plan. Subsequent to this merger and to the calculation of benefits by Hewitt Associates, Watson Wyatt, acting as the SPX Plan's independent actuary, recalculated and verified the benefit amounts for SPX Plan participants who have since termination or retired from SPX. The Plan Administrator relied on Watson Wyatt's calculations when it determined such participants' benefit amounts under the SPX Plan.

9.  SPX provided Hewitt Associates and later Watson Wyatt the necessary plan documents to perform these calculations and as ERISA demands, and both Hewitt Associates and Watson Wyatt followed the terms of the SPX Plan when they calculated the transferred participants' benefits.

10. SPX wanted merging, former GSX employees to feel like "one SPX team," and thus as set forth in Appendix B-31(l) to SPX Plan provided possible transition benefits to make sure that "[e]ach participant in the GSX Corporate Plan . . . shall receive a benefit under this Plan

immediately after the merger . . . which is equal to or greater than the benefit he would have been entitled to receive from the GSX Corporate Plan)." Therefore, at the time relevant to Mr. Gillis' benefit claim the SPX Plan offered these merged GSX participants the greatest of three possible benefits for their individual plan accounts: their GSX Accrued Benefit at December 31, 1998, their SPX Accrued Benefit, or their Transition Benefit.

11. I understand that Mr. Gillis does not dispute the calculation of the GSX Accrued Benefit at December 31, 1998 and that it is not at issue in this case. The only possible benefits at issue in this case are his SPX Accrued Benefit and his Transition Benefit. The formula for calculating each of these possible benefits is set forth in the SPX Plan and several plan communications.

12. Because of the conversion of benefits it was possible that some transferred participants who had not yet accrued their GSX early retirement subsidy would have received a lesser future benefit under the SPX Plan than the GSX Plan if they elected early retirement from SPX.

13. The Transition Benefit that was provided to compensate this small group of employees who faced losing the value of a not-yet-accrued early retirement subsidy. It is not required under ERISA or any federal law.

14. Mr. Gillis' SPX Accrued Benefit of $471,147.90, as of January 1, 2003, included the value of his early retirement subsidy and was Mr. Gillis' greatest benefit under the SPX Plan. His Transition Benefit as of that date was $451,569.24. Therefore, Mr. Gillis is entitled to his SPX Accrued Benefit under the SPX Plan.

15. SPX received Mr. Gillis' September 27, 2002 claim for benefits under the Plan, which it denied in its March 18, 2003 letter, and Mr. Gillis' May 2, 2003 administrative appeal

of the denial of his claim for benefits, which SPX denied in its November 24, 2003 letter. The Administrator conducted a full and fair review of his claim and appeal pursuant to the terms of the SPX Plan.

16. As set forth above, SPX was assisted by Watson Wyatt when it determined Mr. Gillis' pension benefit under the SPX Plan. SPX provided the relevant calculations to Mr. Gillis as an attachment to its March 18, 2003 benefit claim denial letter and its November 24, 2003 denial of appeal letter. *See* Exhibits 8, 10.

17. In SPX's November 24, 2003 denial of appeal letter, SPX informed Mr. Gillis that his appeal was denied and advised him "[i]n order to apply for your pension benefit, you will need to contact [an SPX representative]." Ex. 10, at 3. Mr. Gillis did not do this.

18. To date, Mr. Gillis has never made application to any SPX representative for his SPX Accrued Benefit of $471,147.90 (subject to adjustment since January 1, 2003) that the Administrator has determined he is owed under the SPX Plan.

19. SPX has handled Mr. Gillis' benefit claim and requests for documents in good-faith at all times. If there was any delay under ERISA in providing Mr. Gillis with documents he requested, it was in-part because SPX desired to provide Mr. Gillis with all documents that he requested whether or not SPX was required to provide those documents pursuant to the law. SPX further demonstrated good-faith by communicating with Mr. Gillis about the status of his document requests and by tolling the period for his claim denial appeal until he received such documents. *See* Exs. 4-5.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JANUARY 8, 2006.**

                                                  /s/ Elaine Krom
                                                  Elaine Krom
Manager of Retirement Plans and
International Benefits for SPX Corporation