# Exhibit 6




June 20, 2002

Mr. Thomas Gillis
13 Water Way
Ashland, MA 01721

Dear Mr. Gillis:

As discussed with you, the effective termination date of your employment with SPX Corporation (the "Company") is June 20, 2002. This letter sets forth the terms upon which you and the Company have agreed your employment will be terminated (the "Agreement").

1. Salary Continuation

Subject to the provisions of this Agreement, your salary, as of your termination date, will be continued through March 27, 2003, and will be paid in the same increments at the same pay intervals as you are currently being paid. The period between your termination date and March 27, 2003 will be known as the "Separation Allowance Period". The Salary Continuation shall be subject to any and all applicable withholding and other employment taxes. This Salary Continuation is in lieu of any and all rights or entitlements to severance pay under any other Company plan, policy, benefit or procedure, or any agreement between you and the Company. All stock options granted to you by the Company that are not vested as of your termination date are forfeited pursuant to the terms of the Employee Stock Compensation Plan of 1992 or any other plan.

2. Employee Benefits

The Attached Exhibit A summarizes the status of your employee benefits following your separation from SPX. Most of your employee benefits terminate as of your last day of active work, although your medical, dental, and vision coverage continue through the end of the month during which your last day of active work occurred. Please be aware that you will be entitled to receive certain benefits as noted in Exhibit A, provided you take the steps described in the Exhibit. It is important that you read this information.

You acknowledge that the payments and benefits specified in this Agreement exceed in value any payments and benefits to which you may already be entitled.

3. Outplacement Services

The Company agrees to make outplacement services available to assist you in obtaining new employment at the Company's cost. You will be contacted by Right Management within 5 business days regarding these services.

4. Release

By signing this Agreement, you release the Company from any known or unknown claims that you may have against the Company.

You are giving this release on behalf of yourself and your heirs, personal representatives, assigns or any other person who could make a claim based upon your employment relationship with the Company.

The release applies to the Company and its subsidiaries and affiliates, as well as their directors, officers, agents, attorneys, employees, successors and assigns. These parties are together called the "Released Parties" in this Agreement. Except to the extent provided herein, the release also includes any employee benefit plans or funds sponsored or administered by the Company (except that it does not apply to claims for vested benefits, if any, arising from Company-sponsored retirement plans).

This is a general and complete release that applies to any claim, known or unknown and waives any claim to further compensation or benefits. It includes claims relating to your employment with and termination of employment with the Company.

This release specifically applies to claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Americans with Disabilities Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Employee Retirement Income Security Act, the Family and Medical Leave Act, the Fair Labor Standards Act, 42 U.S.C. § 1981, the Age Discrimination in Employment Act, the Older Worker's Benefits Protection Act and any collective bargaining agreement, any claims for attorneys fees, and any claims arising under any and all other federal, state and local laws and under federal or state common law, including claims in contract and tort. It does not apply to any claim that arises after you sign this Agreement, and it does not include claims that cannot be released as a matter of law.

You represent that you have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim against any of the Released Parties, or any portion thereof or interest therein.

You agree to permanently withdraw with prejudice all claims, if any, you have filed against any Released Party. You promise never to seek any damages based on the claims released in this Agreement.

5. Employee Covenants

You acknowledge that you will remain bound by any confidentiality, nondisclosure or noncompetition agreements you have with the Company.

You further acknowledge that you may possess secret, confidential or proprietary information or trade secrets concerning the operations, future plans or business methods of the Company. You agree never to use or disclose any such information.

You further acknowledge that for a one-year period immediately after termination of your employment, you will not directly or indirectly accept employment with or render services on behalf of a competitor of any SPX business unit at which you have been employed, or any other third party, in any capacity where the confidential information of an SPX business unit acquired by you during your employment with an SPX business unit would reasonably be considered to be useful to the competitor or to such other third party to become a competitor based in whole or in part on such information.

You agree that, for a period of one (1) year after the date of execution of this Agreement, you will not interfere with the Company's relationship with, or endeavor to entice away from the Company, or hire any person who at the time of the execution of this Agreement is an employee of the Company. You agree that, for a period of one (1) year after the date of execution of this Agreement, you will not interfere with the Company's relationship with, or endeavor to entice away from the Company, any customer of the Company who, during your employment at the Company, you serviced, solicited on behalf of the Company or gained knowledge about through your employment at the Company.

You also agree not to criticize the Company or any of its officers, directors, employees, shareholders, affiliates or agents.

You agree that the terms of this Agreement are confidential and shall not be disclosed to any third party, with the exception of your attorneys or financial advisors, or as required by law or in order to enforce the terms of this Agreement. In the event that you are ordered to disclose information regarding this Agreement to a court, you agree to give the Company prompt notice of such court order so that the Company can take appropriate action.

You agree that the Company would be irreparably harmed by any actual or threatened violation of the Employee Covenants described in this section, and that the Company will be entitled to an injunction prohibiting you from committing such violation.

6. Tender Back

You agree that in the event of any breach of this Agreement, including but not limited to, your bringing any claim against any Released Party, you will immediately repay all or any portion of the payments made to you and the Company will have no obligation to make any further payments to you under this Agreement, provided, however, that these provisions do not apply to any claims brought pursuant to the Age Discrimination in Employment Act or the Older Worker's Benefit Protection Act.

7. Expenses

The Company will reimburse you for all reasonable business expenses incurred through June 20, 2002, upon proper presentation of supporting documentation, provided that appropriate expense reports have been submitted by July 15, 2002. Effective June 20, 2002, the Company will no longer pay for or reimburse you for any charges or fees incurred in connection with your cellular phone. Should you decide to retain the cellular phone, you agree that all expenses incurred in connection with the phone will be paid by you.

8. Company Property

You agree that all Company property, including but not limited to, automobiles, credit cards, keys, documents, software, computer data, records, or any other materials, will be returned by June 24, 2002.

9. Non-Admission

You agree that this Agreement is not an admission of guilt or wrongdoing by the released parties, and acknowledge that the released parties do not believe or admit that any of them has done anything wrong.

10. Full Disclosure

You acknowledge that you have disclosed to the Company any information you have concerning any conduct involving the Company that you have reason to believe may be unlawful or involve any false claims to the United States or any other government having jurisdiction over the Company. You promise to cooperate fully and voluntarily in any investigation the Company undertakes into matters occurring during your employment with the Company, and you agree not to disclose to anyone who is not assisting the Company with the investigation, other than your attorney, the fact of or the subject matter of the investigation, except as required by law. You will accommodate your schedule to cooperate with the Company and promptly provide such information. You acknowledge that nothing in this Agreement prevents you from cooperating with any U.S. government investigation.

11. Review Period

You acknowledge that, before signing this Agreement, you were given a period of at least 45 calendar days to consider this Agreement. If the 45-day period has not elapsed at the time you sign this Agreement, you acknowledge that you have knowingly and voluntarily chosen to sign this Agreement before the expiration of that period. You acknowledge that (a) you took advantage of this period to consider this Agreement before signing it; (b) you carefully read this Agreement; (c) you fully understand it; and (d) you are signing it voluntarily. You further acknowledge that the Company encouraged you to discuss this Agreement with your attorney (at your own expense) before signing it and that you did so to the extent you deemed necessary.

12. Revocation of Agreement

You understand that you may revoke this Agreement in writing within seven (7) days after you sign it and the Agreement shall not become effective or enforceable until the end of the seven-day period. To be effective, your written revocation must be submitted, in writing, and state "I hereby revoke acceptance of our Separation Agreement and General Release." The revocation must be personally delivered to Chris Shirley, or mailed to Chris Shirley at Lunaire Limited, 2121 Reach Road, Williamsport, PA 17701, and postmarked within seven (7) calendar days of execution of this Agreement. This Agreement shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday in the state where you reside, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday. If you revoke this Agreement, the Company shall have no obligations under this Agreement.

13. Information Concerning this Group Severance

A listing of the ages and job titles of all individuals eligible or selected for this exit incentive or other termination program and the ages of all individuals in the same job classification or unit who are not eligible or selected is attached to this Agreement as Exhibit B. If you have any questions regarding this information, you may contact SPX's Human Resources Department for more information.

14. Arbitration

You and the Company agree to resolve any claims we may have with each other or that you have with any other released party (Arbitrable Dispute) through final and binding arbitration in accordance with the rules of the American Arbitration Association. This arbitration agreement applies first to any disputes about the validity, interpretation or effect of this Agreement or alleged violations of it. If it is finally determined by an arbitrator or the Courts that the Agreement is unenforceable, any claim against the Company, including claims of discrimination under federal, state or local law, must also be arbitrated. Arbitration shall be the exclusive remedy for any Arbitrable Dispute and any arbitration will take place at the office of the American Arbitration Association

closest to your place of work for SPX. This section does not limit the Company's right to seek and obtain an injunction pursuant to Paragraph 5.

15. Fee-Shifting

In the event of litigation or arbitration concerning the subject matter of this Agreement, the prevailing party shall be entitled to recover all costs and expenses incurred by it, including such party's reasonable attorneys' fees and reasonable compensation for the services of its internal personnel, provided however that this provision shall not apply to any claims brought pursuant to the Age Discrimination in Employment Act or the Older Worker's Benefit Protection Act.

16. Miscellaneous

This is the entire agreement between you and the Company. This Agreement may not be modified in any manner except in writing signed by both you and an authorized Company official. You acknowledge that the Company has made no representations or promises to you other than those in this Agreement. If any provision in this Agreement is found to be unenforceable, all other provisions will remain fully enforceable.

This Agreement binds your heirs, administrators, personal representatives, executors, successors and assigns, and will apply to the benefit of all released parties and their respective heirs, administrators, personal representatives, executors, successors and assigns.

**YOU HAVE BEEN ADVISED THAT YOU HAVE UP TO FORTY-FIVE (45) CALENDAR DAYS TO REVIEW THIS SEPARATION AGREEMENT AND GENERAL RELEASE AND HAVE BEEN ADVISED THAT YOU HAVE THE RIGHT TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS SEPARATION AGREEMENT AND GENERAL RELEASE.**

**YOU AGREE THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT AND GENERAL RELEASE DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL FORTY-FIVE (45) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND GENERAL RELEASE, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 1 ABOVE, YOU FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS SEPARATION AGREEMENT AND GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS YOU HAVE OR MIGHT HAVE AGAINST THE COMPANY.**

This Agreement shall be construed as a whole according to its fair meaning. It shall not be construed strictly for or against you or any released party. This Agreement shall be governed by the statutes and common law of the State of North Carolina, without regard to that state's rules regarding conflict of laws.

LUNAIRE LIMITED

By: Michael J. Gausam

Michael J. Gausam, President, Lunaire

SPX CORPORATION

By: James R. Cauley

Jim Cauley, Group General Counsel

## ACKNOWLEDGMENT

I have read this Agreement consisting of seven pages, I understand its contents, and I willingly, voluntarily and knowingly accept and agree to the term and conditions of this Agreement. I acknowledge that I was advised in writing to consult with an attorney prior to executing this Agreement. I acknowledge and represent that I received a copy of this Agreement and Exhibits A and B on June 21, 2002, and that I had a period in excess of 45 days to consider them.

Thomas D Gillis ______________________ 7/31/02 ______________________
[Name] [Date]

Witnessed by ______________________, this 31st day of July, 2002.