# Exhibit C

# SPX CORPORATION
# INDIVIDUAL ACCOUNT RETIREMENT PLAN

*As amended and restated*
*generally effective as of January 1, 2001*
*(including amendments adopted after such date)*

# SPX CORPORATION
# INDIVIDUAL ACCOUNT RETIREMENT PLAN

*As amended and restated effective as of January 1, 2001*

# TABLE OF CONTENTS

| SECTION | SUBSECTION | PAGE |
|---|---|---|
| 1 | **Establishment and Restatement of the Plan** | **1** |
| | 1.1 Establishment and Restatement of the Plan | 1 |
| | 1.2 Employees Who Retired or Separated Prior to July 1, 1997, and Their Beneficiaries | 1 |
| 2 | **Definitions** | **2** |
| | 2.1 Definitions | 2 |
| | 2.2 Gender and Number | 12 |
| 3 | **Eligibility and Participation** | **13** |
| | 3.1 Date of Participation | 13 |
| | 3.2 Participation After an Incurrence of a Continuous Service Termination Date | 13 |
| | 3.3 Transferred Employees | 15 |
| | 3.4 Transfers to and From a Foreign Subsidiary | 20 |
| | 3.5 [RESERVED] | 20 |
| | 3.6 Transfer From Sealed Power Technologies Limited Partnership | 20 |
| 4 | **Continuous and Credited Service** | **22** |
| | 4.1 Determination of Continuous Service | 22 |
| | 4.2 Determination of Credited Service | 22 |
| | 4.3 Loss of Continuous Service and Credited Service | 23 |
| | 4.4 Reinstatement of Continuous Service | 23 |
| | 4.5 Service Following Qualified Military Service | 23 |
| 5 | **Benefit Accrual -- Account Balance** | **24** |
| | 5.1 Account Balance | 24 |
| | 5.2 Principal Increases to Account Balance | 24 |
| | 5.3 Interest Credits | 24 |
| | 5.4 Benefit Accruals Following Qualified Military Service | 25 |
| 6 | **Benefits** | **26** |
| | 6.1 Normal Retirement | 26 |
| | 6.2 Early Retirement | 26 |
| | 6.3 Disability | 26 |
| | 6.4 Late Retirement | 28 |
| | 6.5 Vested Benefits | 29 |

SPXP000220

| SECTION | SUBSECTION | | PAGE |
|---|---|---|---|
| | 6.6 | Normal Form of Payment............................ | 29 |
| | 6.7 | Election of the Form of Benefits ................ | 30 |
| | 6.8 | Optional Forms of Payment........................ | 31 |
| | 6.9 | Pre-Retirement Death Benefits.................... | 32 |
| | 6.10 | Survivor Annuity Transitional Rules ........... | 37 |
| | 6.11 | Distribution Rules ................................... | 38 |
| | 6.12 | Commencement of Benefits ....................... | 40 |
| | 6.13 | Alternative Normal and Early Retirement Benefits, and Deferred Vested Benefits Payable to Grandfathered Group ................. | 40 |
| | 6.14 | Minimum Benefits ................................... | 43 |
| | 6.15 | [RESERVED].......................................... | 44 |
| | 6.16 | Deductions for Worker's Compensation Benefits........ | 45 |
| | 6.17 | Deductions for Foreign Governmental Retirement Benefits ................................... | 45 |
| | 6.18 | [RESERVED].......................................... | 45 |
| | 6.19 | Defined Benefit Plan Limitations on Benefits.............. | 45 |
| **7** | **Incompetency** | | **50** |
| | 7.1 | Incompetency ........................................ | 50 |
| **8** | **Financing** | | **51** |
| | 8.1 | Financing ............................................. | 51 |
| | 8.2 | Contributions ........................................ | 51 |
| | 8.3 | Non-Reversion ...................................... | 51 |
| **9** | **Changing Vesting Schedule** | | **53** |
| | 9.1 | Vesting................................................. | 52 |
| **10** | **[RESERVED]** | | **54** |
| | 10.1 | [RESERVED]l........................................ | 54 |
| **11** | **Non-Alienation of Benefits** | | **55** |
| | 11.1 | Non-Alienation....................................... | 55 |
| | 11.2 | Qualified Domestic Relations Orders .......... | 55 |
| **12** | **Administration** | | **57** |
| | 12.1 | Plan Administrator and Fiduciary................ | 57 |
| | 12.2 | Compensation and Expenses ..................... | 57 |
| | 12.3 | Manner of Action ................................... | 57 |
| | 12.4 | Records ............................................... | 57 |
| | 12.5 | Rules................................................... | 57 |
| | 12.6 | Administration ...................................... | 57 |
| | 12.7 | Notice of Address .................................. | 58 |
| | 12.8 | Information for Benefits and Data............... | 58 |
| | 12.9 | Appeals From Denial of Claims ................. | 58 |
| | 12.10 | Indemnity For Liability............................ | 58 |

SPXP000221

| SECTION | SUBSECTION | PAGE |
|---|---|---|
| **13** | **[RESERVED]** | **60** |
| | 13.1 [RESERVED] | 60 |
| **14** | **Amendment and Termination** | **61** |
| | 14.1 Amendment and Termination | 61 |
| | 14.2 Distribution on Termination | 62 |
| **15** | **Cash-Out of Benefits** | **65** |
| | 15.1 Cash-Out of Benefits | 65 |
| | 15.2 Direct Rollovers | 66 |
| **16** | **Employment Rights** | **68** |
| | 16.1 Employment Rights | 68 |
| **17** | **Applicable Law** | **69** |
| | 17.1 Applicable Law | 69 |
| **18** | **Mistakes** | **70** |
| | 18.1 Mistakes | 70 |
| **19** | **Merger or Consolidation or Transfer** | **71** |
| | 19.1 Merger or Consolidation or Transfer | 71 |
| **20** | **Limitation on Benefits** | **72** |
| | 20.1 Limitations Applicable To Twenty-Five (25) Highest Paid Employees Of The Employer | 72 |
| **21** | **Participation in the Plan by a Subsidiary** | **74** |
| | 21.1 Participation in the Plan | 74 |
| **22** | **[RESERVED]** | **75** |
| **23** | **Top Heavy Plan Rules** | **76** |
| | 23.1 General Rule | 76 |

## *Attachments*

| *APPENDIX A* | Actuarial Tables | 78 |
|---|---|---|

SPXP000222

| SECTION | SUBSECTION | | PAGE |
|---------|------------|--|------|
| *APPENDIX B* | | Special Rules | 79 |
| | B-1 | Special Provisions for Participants Employed by Investment Casting Division | 79 |
| | B-2 | Special Provisions for Participants Formerly Employed by Johnson Products, Inc. | 80 |
| | B-3 | Special Provisions for Participants Employed by Alloyed Grairon Castings Division | 81 |
| | B-4 | Special Provisions for Participants Who Were Former Participants of the Norbrook Division Hourly Employees' Pension Plan | 82 |
| | B-5 | Special Provisions for Participants Who Were Former Participants of the Standard Composite Die and Forge Retirement Income Plan | 84 |
| | B-6 | Special Provisions for Participants Who Were Former Participants of the Sealed Power Corporation Pension Plan No. 205 | 86 |
| | B-7 | Special Provisions for Participants Who Were Former Participants of Kent-Moore Stamping and Fabricating Division UAW (AFL-CIO) Retirement Income Plan | 88 |
| | B-8 | Special Provisions for Participants Who Were Former Participants of H & P Tooling Division Hourly Employees Pension Plan | 90 |
| | B-9 | Transfer of SPX Corporation Pension Plan 3 Participants to the Sealed Power Technologies Limited Partnership Pension Plan 302 | 92 |
| | B-10 | Special Provisions for Participants Who Were Former Participants of Bear Automotive Service Equipment Company Salaried Retirement Plan | 94 |
| | B-11 | Special Provisions for Participants Who Were Former Participants of Sealed Power Corporation Pension Plan 301 ( Supplement I [over the road truck drivers] ) | 97 |
| | B-12 | Special Provisions for Participants Who Were Former Participants of Sealed Power Corporation Pension Plan 301 | 100 |
| | B-13 | Special Early Retirement Benefits | 102 |
| | B-14 | Special Provisions for Participants Who Were Former Participants of SPX Corporation Pension Plan 202 and SPX Corporation Pension Plan 214 | 104 |
| | B-15 | Special Provisions for Participants Who Were Employees of the Replacement Division on October 22, 1993 | 106 |
| | B-16 | Special Provisions for Participants Who Are Employees of Company's | |

SPXP000223

| SECTION | SUBSECTION | | PAGE |
|---------|------------|--|------|
| | | Automotive Diagnostics Division......................108 | |
| | B-17 | Special Provisions for Participants Who Were Former Participants in The Allen Group, Inc. Corporate Retirement Plan .....110 | |
| | B-18 | Special Provisions for Allen Group, Inc. Commissioned Sales Employees ..................................115 | |
| | B-19 | Special Provisions for Participants Who Were Former Participants of Owatonna Group Pension Plan or Are Employed in the Owatonna Group..................116 | |
| | B-20 | 1995 Special Incentive Early Retirement Benefit.........124 | |
| | B-21 | Special Provisions for Participants Who Were Who Were Former Participants of Bangor Plant Hourly Pension Plan or Who Are Bangor Group Participants..........................................127 | |
| | B-22 | Special Provisions for Participants Who Were Former Participants of Puerto Rico Hourly Employees' Pension Plan ..............................135 | |
| | B-23 | Special Provisions for Participants Who Were Former Participants of Sealed Power Technologies Limited Partnership Sealed Power Division -- (Ravenna Plant) Retirement Plan ..............................137 | |
| | B-24 | Special Provisions for Participants Who Were Former Participants of Sealed Power Technologies Limited Partnership Pension Plan No. 302 or Who Are Former Sealed Power Technologies Limited Partnership Employees...................................139 | |
| | B-25 | 1996 Special Incentive Early Retirement Benefit.........141 | |
| | B-26 | Special Provisions for Members Who Were Former Participants of SPX Corporation Manchester Plant Pension Plan ...................................144 | |
| | B-27 | Special Provisions for A.R. Brasch Marketing, Inc. Employees....................150 | |
| | B-28 | 1998 Special Incentive Early Retirement Benefit for SPX Power Team Employees................................151 | |
| | B-29 | 1998 Special Incentive Early Retirement Benefit for Service Solutions Employees................................154 | |
| | B-30 | 1998 Special Incentive Early Retirement Benefit for SPX Acutex Employees.......................................155 | |
| | B-31 | Special Provisions for Participants Who Were Former Participants under the Corporate Retirement Plan of General Signal Corporation or Pension Plan for Hourly Employees of General Signal Corporation.......................................158 | |
| | B-32 | Special Provisions for Participants Who Were Former General Signal Corporation Employees at DeZurik (McMinnville, Tenn.) | |

SPXP000224

| SECTION | SUBSECTION | | PAGE |
|---------|-----------|---|------|
| | | Who Were Participants in the Pension Plan for Hourly Employees of General Signal Corporation | 178 |
| | B-33 | Special Provisions for Employees of Valley Forge Marketing Corporation and Sun Advertising, Inc. | 183 |
| | B-34 | Special Provisions for Participants Who Terminated Employment with the Company as a Result of Cessation of Company's Manufacturing Operations at its Facilities at Westford, Massachusetts and Shelton, Connecticut | 185 |
| | B-35 | Special Provisions for Dual-Lite Employees | 186 |
| | B-36 | Special Provisions for Employees of Toledo Trans-Kit, Inc. | 187 |
| | B-37 | Frozen General Signal Cash Balance Plan | 188 |
| | B-37A | Special Provisions for Former Employees of North American Transformer | 189 |
| | B-38 | Special Provisions for Former Best Power Employees | 190 |
| | B-39 | Special Provisions for Members Who Were Former Participants of SPX Corporation Pension Plan No. 201 | 191 |
| | B-40 | Special Provisions for Participants Who Terminated Employment with the Company as a Result of Cessation of Company's Manufacturing Operations at its Power Team Facility in Owatonna, Minnesota. | 206 |
| | B-41 | Special Provisions for Participants Who Terminated Employment with the Company as a Result of Cessation of Company's Manufacturing Operations at its Filtran Facility in Toledo, Ohio | 208 |
| | B-42 | Special Provisions for Former Engineered Ceramics Employees. | 210 |
| | B-43 | Special Provisions for Former GS Electric Company Employees. | 211 |
| | B-44 | Special Provisions for Participants Who Terminated Employment with the Company as a Result of the Acquisition of United Dominion Industries Limited | 212 |
| | B-45 | Special Provisions for Employees of Varcom Corporation. | 214 |
| | B-46 | Special Provisions for Employees of Computerm Corporation. | 215 |
| | B-47 | The United Dominion Industries, Inc. Retirement Plan | 216 |
| | B-48 | The Marley Cooling Tower Company Pension Plan for Salaried Employees | 217 |

SPXP000225

*SECTION*        *SUBSECTION*                                                    *PAGE*

           B-49       The Marley Company Pension Plan for
                        Salaried Employees ...................................................218
           B-50       The Kelley Company, Inc. Salaried Pension Plan ........219
           B-51       The CMB Industries Pension Plan ...............................220
           B-52       The SPX Corporation Pension Plan at Muskegon.........221
           B-53       The SPX Corporation Pension Plan at Rochester .........222


*APPENDIX C*          Pre-January 1, 2001 Restatement Rules                 223

SPXP000226

## SPX CORPORATION
## INDIVIDUAL ACCOUNT RETIREMENT PLAN
### *As Amended and Restated Effective as of January 1, 2001*

## SECTION 1
## ESTABLISHMENT AND RESTATEMENT OF THE PLAN

1.1    Establishment and Restatement of the Plan. SEALED POWER CORPORATION heretofore established a pension plan for certain of its eligible salaried employees, and those of its Subsidiaries which adopt the Plan, which as amended and restated effective as of January 1, 1985, was known as "SEALED POWER CORPORATION PENSION PLAN NO. 3" (the Plan). Effective January 1, 1988, the name of the Corporation changed to SPX Corporation (hereinafter sometimes referred to as the "Company") and the Plan's name changed to the "SPX Corporation Pension Plan No. 3".

Effective July 1, 1997, the Plan, which prior to that date had generally provided benefits based on a final average pay formula, was restated to generally base future accruals on a cash balance formula, and the Plan was renamed the "SPX CORPORATION INDIVIDUAL ACCOUNT RETIREMENT PLAN."

Effective January 1, 2001, the Plan was amended and restated to incorporate the changes required by the Uruguay Round Agreements Act, the Uniformed Services Employment and Reemployment Rights Act of 1994, the Small Business Job Protection Act of 1996, the Taxpayer Relief Act of 1997, the Community Renewal Tax Relief Act of 2000 and the Economic Growth and Tax Relief Reconciliation Act of 2001, as well as all amendments adopted after the last restatement.

Please see Appendix A for more information regarding the history of the Plan.

1.2    Employees Who Retired or Separated Prior to January 1, 2001, and Their Beneficiaries. Except as otherwise expressly provided, the provisions set forth in this Plan are applicable only to Employees in the employ of the Employer on or after January 1, 2001. Employees retired with benefits commencing prior to such date or disabled prior to such date or separated prior to such date, or eligible surviving Spouses or beneficiaries of such Employees, shall be entitled to the benefits, if any, under the Plan as it existed at the time of retirement, disability, or separation; or as subsequently amended to specifically apply to prior retirements and separations.

---

**SECTION 2**
**DEFINITIONS**

---

2.1   <u>Definitions</u>.   Whenever used in the Plan, the following terms shall have the respective meanings set forth below unless otherwise expressly provided.   When the defined meaning is intended, the term is capitalized:

(a)   "<u>Account Balance</u>" means the value of a Participant's benefit payable under this Plan on or after July 1, 1997, expressed as a lump sum.   A Participant's Account Balance at any time shall be the sum of the following:

    (1)   July 1, 1997 Account Balance (if any);
    (2)   Principal Credits made pursuant to Section 5.2;  and
    (3)   Interest Credits made pursuant to Section 5.3.

(b)   "<u>Accrued Benefit</u>" has the following meaning with respect to the methods of determining a benefit under this Plan as may apply to a specific Participant:

    (1)   <u>Account Balance</u>.   An Accrued Benefit based on a Participant's Account Balance means the Participant's Account Balance at any time, and the immediate single life annuity which is the Actuarial Equivalent of the Participant's Account Balance at the time of determination.

    (2)   <u>Grandfathered Benefit or Minimum Benefit</u>.   An Accrued Benefit based on a Participant's Grandfathered Benefit or Minimum Benefit (as applicable) means a single life annuity payable at Normal Retirement Age, as provided at Section 6.13 or 6.14.

(c)   "<u>Actuarial Equivalent</u>" means a benefit having the same value as the benefit it replaces, as defined in this subsection.   Actuarial equivalency shall be determined on the basis of the following assumptions:

    (1)   For purposes of (i) converting an Account Balance to a single life annuity, (ii) converting a single life annuity to a lump sum at age 65 or attained age, if later, if the Participant is eligible for Normal Retirement, or at Early Retirement Age if the Participant is eligible for Early Retirement, or (iii) converting a Grandfathered or Minimum Accrued Benefit into an immediate annuity payable before normal or early retirement age for purposes of a Cash-Out of Benefits pursuant to Section 15, mortality shall be based upon the mortality table prescribed in Code Section 417(e)(3)(A)(ii)(I), and the assumed interest rate shall be the annual interest rate on 30-year Treasury securities, as published by the Board of Governors of the Federal Reserve System, for the November prior to the Plan Year during which the distribution is made; PROVIDED that only for purposes of converting a single life annuity to a lump sum, a Participant who was a Participant in the Sealed Power Corporation Pension Plan No. 3 (the predecessor to this Plan) on December 31, 1984 shall receive a lump sum equal to that calculated pursuant to

- 2 -

SPXP000228

Section 2.1(c)(1) above, or if greater, the Participant's vested Retirement Benefit (or survivor annuity, if applicable) as of December 31, 1984, converted to a lump sum using the UP 1984 mortality table and an interest rate of 9.33%.

(2)     For purposes of converting a single life annuity (i) into a joint and 50% survivor annuity, or (ii) into any optional form of benefit, the actuarial factors set forth in Appendix A of the Plan shall be applied.

(3)     For all other purposes under the Plan, mortality shall be based upon the mortality assumptions set forth in the mortality table commonly described as "UP-1984," as published, and the assumed interest rate shall be 5% per year.

(d)     "Beneficiary" means any person or persons designated by a Participant upon such forms as may be provided by the Company, to receive death benefits payable in the event of death. The designation of a Beneficiary shall not be effective for any purpose unless and until it has been filed by the Participant with the Committee on a form approved by the Committee. In the event that a Participant shall not have so designated a Beneficiary, or if for any reason such designation shall be legally ineffective, or if such Beneficiary predeceases the Participant, then, for the purpose of the Plan, the Beneficiary shall be deemed to be and payments shall be made to the first surviving class, and in equal shares if there are more than one in each class, of the following classes of preference beneficiaries: Participant's widow or widower, surviving children, surviving parents, surviving brothers or sisters, legal representative, PROVIDED that if no legal representative is duly appointed and qualified within six months of the date of death of a deceased Participant, then the Beneficiary shall be deemed to be and payment shall be made to such persons as, at the date of the Participant's death, would be entitled to share in the distribution of such deceased Participant's estate under the provisions of the statute governing the descent of intestate property, then in force and effect in the state of residence of such deceased Participant. A Participant may, from time to time, on a form approved by and filed with the Committee, change the Beneficiary, provided that once benefit payments have commenced to be paid to a Participant, his designation of a Beneficiary may only be changed for a period certain and life benefit. If payments under a period certain and life benefit have commenced to a Participant's designated Beneficiary and the Beneficiary dies before all payments under such form of payment have been made, any remaining payments shall be made to the Beneficiary's estate.

A Participant's designation of his spouse as his Beneficiary shall be null and void on the date of entry of a judgment of divorce from that spouse, provided that a Participant may again designate a former spouse as his Beneficiary in a written designation filed with the Committee after the date of entry of the judgment of divorce and before his death, subject to the consent of a subsequent spouse. In the absence of such a written designation of Beneficiary, no death benefits with respect to the Participant's unassigned share of his benefits shall be payable to the Participant's former spouse who is an alternate payee under a qualified domestic relations order meeting the requirements of Section 414(p) of the Code unless (i) such order is entered with the court before the Participant's death and submitted to the Committee before payment of the Participant's unassigned benefits and (ii) the order clearly states that the alternate payee is to be

- 3 -

SPXP000229

deemed to be the surviving spouse with respect to the Participant's unassigned share of his benefits or the order otherwise designates the alternate payee as his Beneficiary.

    (e)    [RESERVED]

    (f)    "Break in Service" means a twelve (12) consecutive month Period of Severance. In the case of an Employee or Participant who is: (1) absent from work for maternity or paternity reasons, or (2) on is absent for a leave covered by the Family and Medical Leave Act of 1993 ("FMLA"), the twelve (12) consecutive month period beginning on the first anniversary of the first date of such absence shall not constitute a Break in Service, provided, however, the Employee or Participant shall not earn any additional Credited Service or Continuous Service for the period of the leave. Absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the Employee or Participant, (2) by reason of the birth of a child of the Participant or Employee, (3) by reason of the placement of a child with the adoption of such child by the Employee or Participant, or (4) for purposes of caring for a child for the period beginning immediately following such birth or placement. Leaves of absences under FMLA include unpaid leaves for the foregoing maternity and paternity reasons whether concurrent with or in addition to such leaves, and absences (1) by reason of the care of the individual's spouse, son, daughter, or parent who has a serious health condition; or (2) by reason of a serious health condition that makes the Employee or Participant unable to perform his job.

    (g)    "Code" means the Internal Revenue Code of 1986, as amended from time to time. Any reference to a section of the Code shall be deemed to include any applicable regulations and rulings pertaining to that section and any comparable section or sections of any future legislation that amends, supplements or supersedes such section.

    (h)    "Committee" means the SPX Corporation Retirement and Welfare Plan Administrative Committee.

    (i)    "Company" means SPX Corporation, a Delaware corporation, or any successor thereto. The term "Company" shall also include any Foreign Subsidiary for the purpose of SPX Corporation providing for contributions or benefits under the Plan for Employees of a Foreign Subsidiary.

    (j)    "Compensation" means the amount paid to a Participant for personal services which is reported as Code Section 3401(a) wages on the Participant's Federal Income Withholding Statement (Form W-2) for the Plan Year as provided at Internal Revenue Service Regulations Section 1.415-2(d)(11)(ii) and paid prior to termination of employment, adjusted as follows:

        (1)    Increased by
            (A)    any amount which is contributed by the Employer pursuant to a salary reduction agreement and which is not includable in the gross income of the Participant pursuant to one or more of the following Code Sections:

- 4 -

SPXP000230

(i)    125 for cafeteria plans including, but not limited to, the SPX Corporation Cafeteria Benefit Plan, but not including Employer-provided flexible benefit credits;

(ii)    132(f)(4) for qualified transportation fringe benefits; and

(iii)    402(a)(8) for cash or deferred arrangements including, but not limited to, the SPX Retirement Savings and Stock Ownership Plan;

(B)    the following items paid after termination of employment:

(i)    annual payments from the Employer's EVA Incentive Plan, other bonuses and commission payments attributable to the year prior to termination of employment; and

(ii)    overtime, vacation and holiday pay (but not severance pay).

(2)    Decreased by all of the following amounts (even if includable in gross income):

(i)    reimbursements or other expense allowances;

(ii)    fringe benefits (cash and non-cash);

(iii)    moving expenses;

(iv)    welfare benefits;

(v)    deferred compensation, including, but not limited to:

(1)    contributions to or amounts paid from the SPX Corporation Supplemental Retirement Savings Plan (whether or not contributions are made pursuant to a salary reduction agreement), the SPX Corporation Supplemental Retirement Plan for Top Management, the SPX Corporation Supplemental Individual Account Retirement Plan, the SPX Corporation 1992 Stock Compensation Plan, deferred bonuses, long-term incentive payments and any other similar plan of deferred compensation;

(2)    the value of restricted shares, either when paid or when the restriction lapses, except to the extent the recipient elects to be taxed under Code Section 83(b) at the time of grant;

(3)    the value of nonqualified stock options at the time of grant if the option price is the then market value of the shares subject to the option;

(4)    the taxable value of qualified and nonqualified stock options when exercised; and

(5)    the value of stock appreciation rights.

(vi)    amounts paid from the Bonus Reserve under Employer's EVA Incentive Compensation Plan and annual payments from the Employer's EVA Incentive Compensation Plan attributable to the year of termination of employment;

- 5 -

SPXP000231

(vii)   severance pay paid after termination of employment; and

(viii)  without limiting the generality of the exclusions of this Section 2.1(j)(2), the following amounts shall be specifically excluded from Compensation: Employer-provided automobiles, mileage reimbursements and car allowances for which no documentation is required, hiring bonuses or other special payments, taxable and non-taxable tuition reimbursements, the taxable value of physical examinations and group term life insurance coverage in excess of $50,000, and other similar amounts not paid in cash which are required to be included in taxable income under the Code.

If there is an item of compensation which is not specifically set forth above, the Committee shall determine whether such item is more similar to an item set forth above as included or excluded from Compensation.

For Plan Years beginning on or after January 1, 1994, Compensation in excess of $150,000 (or such other cost of living adjusted amount as determined by the Secretary of the Treasury pursuant to Section 401(a)(17)(b) of the Code) shall be disregarded for all purposes under the Plan. Effective for Plan Years beginning on or after January 1, 2002 and for separations from service after such date, Compensation in excess of $200,000 (or such other cost of living adjusted amount as determined by the Secretary of the Treasury pursuant to Section 401(a)(17)(b) of the Code shall be disregarded for all purposes under the Plan.

(k)     "Continuous Service Commencement Date" means the date on which

(1)     an Employee, or

(2)     a former Leased Employee who subsequently becomes an Employee

first performs an Hour of Service with the Employer, or any Related Company, provided that an Employee's Continuous Service Commencement Date may be adjusted upon reemployment as provided in Section 4.4 if prior Continuous Service is not reinstated.

(l)     "Continuous Service Termination Date" means the date on which a Participant begins a Period of Severance with the Employer or a Related Company.

(m)     "Covered Compensation" shall mean for any Participant, one twelfth (1/12th) of the average of the Social Security Wage Base over a 35-year period, with the calendar years used being the 35 years that end with the inclusion of the year the Participant attains Social Security Unreduced Retirement Age. The monthly Covered Compensation amount shall be set forth on the Covered Compensation Table in effect for the year of his termination, based on the Participant's year of birth.

(n)     "Credited Service" means service (as determined pursuant to Section 4.2) which is applied in the determination of (i) a Participant's June 30, 1997 Accrued Benefit, (ii) a

- 6 -

Participant's Grandfathered Benefit, as provided at Section 6.13, or (iii) a Participant's Minimum Benefit, as provided at Section 6.14.

(o)    "Credited Service Commencement Date" means for a Participant the earliest date on which he rendered an Hour of Service for the Employer as an Employee which was not followed by a Break in Service, adjusted as provided in Section 4.4.

(p)    "Credited Service Termination Date" means the date on which a Participant begins a Period of Severance with the Employer.

(q)    "Disability" shall have the same meaning as under the SPX Corporation Long Term Disability Plan, without regard to any elimination period that may be contained therein, and without regard to whether the Participant elected to be covered by such plan.

(r)    "Effective Date" means January 1, 2001.

(s)    "Employee" means any person employed by an Employer prior to January 1, 2001, except:

    (1)    Wage Employees at the Company's Contech Division;

    (2)    Wage Employees at the Company's Acutex Division; or

    (3)    Wage Employees whose employment is governed by the terms of a collective bargaining agreement between employee representatives (within the meaning of Code Section 7701(a)(46)) and the Company under which retirement benefits were the subject of good faith bargaining between the parties, unless such agreement expressly provides for coverage under this Plan.

The term Wage Employee means any Employee in the payroll classification of wage or hourly employee.  Individuals not initially treated and classified by the Company or Employer as common-law employees on the payroll records of the Company or Employer, including, but not limited to, Leased Employees, independent contractors or any other contract employees, shall be excluded from Plan participation irrespective of whether a court, administrative agency or other entity determines that such individuals are common law employees.

(t)    "Employer" means –

    (1)    the Company, and

    (2)    any Subsidiary and any newly acquired or created division of a Subsidiary which, in either case, has been designated as participating in the Plan by the Company's corporate officer responsible for employee compensation and benefits.

- 7 -

SPXP000233

(u)    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.    Any reference to a section of ERISA shall be deemed to include any applicable regulations and rulings pertaining to that section and any comparable section or sections of any future legislation that amends, supplements or supersedes such section.

(v)    "Foreign Subsidiary" means any corporation organized or created otherwise than in or under the laws of the United States or any State therein or territory thereof if:

(1)    twenty percent or more of such foreign corporation's voting stock is owned by the Company; or

(2)    fifty percent or more of such foreign corporation's voting stock is owned by a foreign corporation described in subparagraph (1) immediately above;

provided, in either case, that an agreement which remains in effect has been entered into by the Company to have the insurance system established under Title II of the Social Security Act, as amended, extended to cover all United States citizens who are employed by such foreign corporation.

(w)    "Grandfathered Benefit" means a benefit available to a Participant of the "Grandfathered Group," as provided at Section 6.13.

(x)    "Grandfathered Group" refers to those Participants on July 1, 1997:

(1)    who had 10 or more years of Continuous Service on that date; and

(2)    whose age and years of Continuous Service total at least 50 on that date.

For this purpose, a Participant shall be credited with (a) one point for each year of Continuous Service, plus (b) points equal to his attained age on July 1, 1997.

(y)    "Grandfathered Participant" means a Participant or Inactive Participant who is in the Grandfathered Group or who was in the Grandfathered Group until his termination of employment with the Employer.

(z)    "Hour of Service" means an hour for which an Employee is paid or entitled to payment by the Employer or a Related Company for the performance of duties for the Employer or Related Company.

(aa)    "Inactive Participant" means an Employee who was a Participant but who is transferred to and is in a position of employment either:

(1)    as an employee who does not meet the requirements to be a Participant (e.g., a transfer to a collective bargaining unit); or

(2)    as an employee of a non-participating Subsidiary or other business unit to which participation in this Plan has not been extended, other than a Foreign Subsidiary; or

- 8 -

SPXP000234

      (3)    as an employee of an acquired business unit or Subsidiary which has not been designated as participating in the Plan by the Company's corporate officer responsible for employee compensation and benefits; or

      (4)    as an employee of a Related Company which is not an Employer.

    (bb)   "Interest Credit Rate" means the rate of interest (determined once each Plan Year) at which a Participant's Account Balance is deemed to grow. For any Plan Year, the Interest Credit Rate shall be the interest rate paid on five-year United States Treasury Notes (Constant Maturities) in effect as of the last business day of the immediately preceding November.

    (cc)   "July 1, 1997 Account Balance" means the Actuarial Equivalent of the June 30, 1997 Accrued Benefit, expressed as a lump sum on July 1, 1997.

    (dd)   "June 30, 1997 Accrued Benefit" means a Participant's accrued unreduced Normal Retirement Benefit as of June 30, 1997 payable in the form of a single-life annuity at the Participant's age 65 (or, if later, payable on June 30, 1997), based on the terms of this Plan as in effect on June 30, 1997. See Appendix C for provisions relating to this definition.

    (ee)   "Leased Employee" means any person described in Section 414(n) of the Code.

    (ff)   "One Year's Base Pay" means:

      (1)    For a Participant who is other than a commissioned salesman at the time of his disability while an active Employee, or at the time of his retirement, his annual compensation rate, exclusive of bonuses, overtime and other extra compensation, at such time.

      (2)    For a Participant who is a commissioned salesman at the time of his disability while an active Salaried Employee, or at the time of his retirement, the annual compensation, exclusive of bonuses, overtime and other extra compensation, during the last calendar year of his Continuous Service or during the next to the last calendar year of his Continuous Service, whichever is higher; provided, however, if he has been such a salesman for less than such period, then "One Year's Base Pay" means his annualized compensation, exclusive of bonuses, overtime and other extra compensation, based on the time during such year he was such a salesman.

    (gg)   "Participant" means any Employee who is eligible to be and has become and is a Participant as provided in Section 3 hereof, and includes the term Participant, Inactive Participant, and a terminated Participant, retired Participant or retired Inactive Participant.

    (hh)   "Pay" means the average monthly Compensation of a Participant for the three calendar years (not necessarily consecutive) in which the largest amount of Compensation was paid to him by the Employer during the last ten calendar years of his Credited Service.

- 9 -

SPXP000235

(ii)    "Period of Severance" means a period of time commencing with the earliest of: (i) the date on which a Participant quits, retires, dies or is discharged; (ii) the first anniversary of the first date of the period on which a Participant remains absent from Service (with or without pay) with the Employer for any reason other than a quit, retirement, death or discharge; or (iii) the Participant's Disability End Date if later than the date under (ii) above which would otherwise apply, and ending with the date on which an Employee again performs an Hour of Service for the Employer.

(jj)    "Plan Year" means a calendar year.

(kk)    "Principal Credit" means the amount added to a Participant's Account Balance pursuant to Section 5.1.

(ll)    "Related Company" means a corporation which is a member of a controlled group of corporations (within the meaning of Section 414(b) of the Code) which group includes the Company, or a partnership, proprietorship or other entity under common control (within the meaning of Section 414(c) of the Code) with the Company; provided that the status of being employed by the Related Company shall only pertain to a person during the period of time when it is a Related Company, and not to period(s) of time prior or subsequent to its Related Company status, unless the Plan shall otherwise expressly provide.

(mm)    "Retirement Benefit" means the monthly payment to which a retired Participant is entitled.

(nn)    "Retirement Date" means a Participant's or Inactive Participant's Normal Retirement Date, his Early Retirement Date, or his Late Retirement Date, whichever is applicable, as follows:

(1)    "Normal Retirement Date" means the first day of the calendar month coincident with or next following the date a Participant's or Inactive Participant's Continuous Service terminates because of his normal retirement on or after he attains (i) his Social Security Unreduced Retirement Age or (ii) age sixty-five (65), and has completed five (5) years of Plan participation (his "Normal Retirement Age"). Compulsory retirement of an Executive shall not be prohibited, PROVIDED, the Executive (i) has attained age 65, (ii) has been a bona fide executive or in a high policymaking position for the 2-year period immediately preceding his retirement, and (iii) is entitled to receive an immediate nonforfeitable annual retirement benefit of at least $44,000, or such other amount as may be provided under the Age Discrimination in Employment Act, Section 12(c).

(2)    "Early Retirement Date" means the first day of the calendar month coincident with or next following the date a Participant's or Inactive Participant's Continuous Service terminates because of his early retirement (and not for Disability) on or after he attains both age fifty-five (55) and

- 10 -

SPXP000236

completed a total of no less than ten (10) years of Credited Service and/or Continuous Service, counting any Credited Service earned prior to July 1, 1997 and only Continuous Service earned after June 30, 1997 (his "Early Retirement Age").

(3)    "Late Retirement Date" means for a Participant whose Continuous Service terminates after he attains (i) his Social Security Unreduced Retirement Age or (ii) age sixty-five (65), and has completed five (5) years of Plan participation, for reasons other than death, the first day of any calendar month next succeeding the date on which he makes application for the Late Retirement Benefit (his "Late Retirement Age").

(oo)    "Service" means for any given Participant, employment by the Employer or Related Company.

(pp)    "Social Security Taxable Wage Base" ("SSTWB") means the maximum amount of a Participant's earnings which can be considered as wages under Code Section 3121(a)(1) in effect at the beginning of the Plan Year.

(qq)    "Social Security Unreduced Retirement Age" shall mean for any Participant, the age at which unreduced Social Security Benefits become payable, based on the Participant's year of birth as set forth below:

| Year of Birth | Age |
|---|---|
| 1937 or earlier | 65 |
| 1938 - 1954 | 66 |
| 1955 or later | 67 |

(rr)    "Spouse" means the person to whom the Participant is legally married. The term "Surviving Spouse" means the widow or widower of a deceased Participant who was legally married to the Participant on the date of the Participant's death.

(ss)    "Subsidiary" means any corporation, limited liability company, partnership, or other entity which is a Related Company.

(tt)    "Trust Agreement" means any agreement in the nature of a trust established to form a part of the Plan to receive, hold, invest, and dispose of the Trust Fund.

(uu)    "Trust Fund" means the assets of every kind and description held under any Trust Agreement forming a part of the Plan.

(vv)    "Trustee" means the corporation, individual, individuals, or combination thereof, acting as Trustee under the Trust Agreement at any time of reference.

(ww)    "Vested Termination Age" means the age when a Participant or Inactive Participant has completed five years of Continuous Service.

- 11 -

SPXP000237

(xx)    "Vested Termination Date" means the first day of the first calendar month after a Participant or Inactive Participant has (i) attained his Vested Termination Age, (ii) reached his Continuous Service Termination Date, and (iii) elected to commence payment of his or her Account Balance.  In the case of a Grandfathered or Minimum Benefit, the term "Vested Termination Date" means for a Participant or Inactive Participant who attains his Continuous Service Termination Date after he has attained this Vested Termination Age for reasons other than Early or Normal Retirement or death, the first day of any calendar month after he has attained age 55 but prior to his Normal Retirement Age on which he makes application for the Vested Termination Benefit to begin.

Notwithstanding the foregoing, a Participant's or Inactive Participant's Vested Termination Date shall not be earlier than the date on which all severance pay has been paid that he is entitled to receive from the Company when his Continuous Service terminates.

2.2    Gender and Number.  The masculine pronoun whenever used shall include the feminine pronoun, and the singular shall include the plural where the context requires it.

SPXP000238