## SECTION 11
### NON-ALIENATION OF BENEFITS

11.1    <u>Non-Alienation</u>. No benefit payable at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge, attachment, garnishment, or encumbrance of any kind. Any attempt to alienate, sell, transfer, assign, pledge, or otherwise encumber any such benefit, whether presently or hereafter payable, shall be void. No benefit nor the retirement fund shall in any manner be liable for or subject to the debts or liabilities of any person entitled to any benefit.

The preceding shall also apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a Participant pursuant to a domestic relations order, unless such order is determined to be a qualified domestic relations order, as defined in Section 414(p) of the Code, or any domestic relations order entered before January 1, 1985.

To the extent permitted under Section 206(d) of ERISA and Section 401(a)(3) of the Code, the immediately preceding paragraph shall not apply to any offset of a Participant's benefits provided under the Plan against an amount that the Participant is ordered or required to pay the Plan under a judgment, order, decree or settlement agreement described in Section 206(d)(4) of ERISA and Section 401(a)(13)(C) of the Code.

11.2    <u>Qualified Domestic Relations Orders</u>. The Plan shall pay benefits to an alternate payee pursuant to an order which the Plan administrator determines is a qualified domestic relations order as defined in Section 414(p) of the Code (a "QDRO"), in whichever of the following methods is specified in such order, unless the Participant has already commenced to receive benefits in an annuity form:

(a)    The value of the benefits payable to the alternate payee shall be deducted from the Participant's Account Balance, and the alternate payee shall thereafter have the right to receive such benefits immediately in a lump sum if so ordered in the QDRO. If such benefits are not paid immediately in a lump sum, the alternate payee shall have the right to receive such benefits in any form available to a Participant, except a joint and survivor annuity for the alternate payee and his or her subsequent spouse, and commencing at any time after the Participant attains age 55 and completes ten (10) years of Vesting Service but prior to the Participant's Required Distribution Date, as specified in the QDRO or as specified by the alternate payee if the QDRO does not specify a form of and/or time for payment, and the alternate payee's benefits shall be credited with Interest Credits as if the alternate payee were a terminated Participant. Benefits awarded to the alternate payee in the QDRO shall be paid whether or not the Participant dies prior to such payment, and the alternate payee shall have the right to designate a beneficiary to receive his or her benefits in the event of his or her death, unless the QDRO provides otherwise.

In the alternative, if the Participant is in the Grandfathered Group, a QDRO may divide the Participant's Grandfathered Benefit accrued to a date specified in the order in which event the alternate payee's share of the Participant's Grandfathered Benefit shall be deducted from the Participant's benefits under the Plan and the order may provide that (i) the alternate payee's

- 55 -

SPXP000281

benefit shall be paid in an immediate lump sum if the Actuarial Equivalent of the alternate payee's benefit is $25,000 or less and (ii) the alternate payee may be designated as the Participant's surviving spouse for purposes of the Plan's pre-retirement survivor annuity, with the result that the alternate payee shall receive benefits even if the Participant dies before such benefits commence.

(b)    In the alternative, the alternate payee shall continue to be treated as the spouse of the Participant, but only to the extent of benefits awarded to the alternate payee pursuant to the QDRO. Accordingly, the Participant may not elect a form of benefit payment other than a Joint and 50% Survivor Annuity with the alternate payee as the Participant's joint annuitant, unless the alternate payee consents in writing to such election, and the alternate payee shall receive the Account Balance PRSA described in Section 6.9 (but only in the amount of benefits awarded to the alternate payee in the QDRO) unless the Participant waives the Account Balance PRSA with the alternate payee's written consent. If the alternate payee is to be treated as continuing to be the Participant's spouse, the alternate payee may not elect to commence benefits at any time other than the time benefits are paid or commence to be paid to the Participant. At such time, the value of benefits payable to the alternate payee shall be deducted from the Participant's Account Balance or Grandfathered Benefit (if applicable).

If a Participant has already started to receive his benefits in an annuity form, the form of payment may not be changed and, if the form of payment is a joint and survivor annuity, the joint annuitant may not be changed. However, a QDRO may order that all or any portion of the annuity payments be paid to the alternate payee, and may specify that any amounts not paid to the alternate payee may be paid to the Participant or the Participant's subsequent spouse after the Participant's death, but only for the remainder of the term certain under Section 6.8, Option 5 or over the life of the designated joint annuitant, for a joint and survivor annuity.

SPXP000282

| SECTION 12 |
| :---: |
| ADMINISTRATION |

12.1    Plan Administrator and Fiduciary.    The Plan shall be administered by the Committee.    The Committee shall be comprised of individuals employed by the Company appointed by the Board of Directors to be a member of such Committee.    Any member of the Committee may resign by delivering his written resignation to the Board of Directors.    Vacancies in the Committee arising by resignation, death, removal or otherwise shall be filled by the Board of Directors.    The Committee shall be the Administrator of the Plan and the Committee shall be a fiduciary under the Plan and under the Trust Fund, as a named fiduciary in accordance with the Act.

12.2    Compensation and Expenses.

(a)    A member of the Committee shall serve without compensation for services as such if he is receiving full-time pay from the Employer as an Employee.    Any other member of the Committee may receive compensation for services as a member.    Any member of the Committee may receive reimbursement of expenses properly and actually incurred.

(b)    All reasonable and proper expenses incurred in the administration of the Plan (collectively referred to as "Administrative Expense") shall be paid from the funds held under the Trust Agreement between the Company and the Trustee; provided, however, that the Company may pay any such expenses or reimburse the Trust for any payments made for such expenses, or the Trust may reimburse the Company for any such expenses it has paid.

12.3    Manner of Action.    A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business.    All resolutions adopted, and other actions taken by the Committee at any meeting shall be by the vote of a majority of those present at any such meeting.    Upon concurrence in writing of a majority of the members at the time in office, action of the Committee may be taken otherwise than at a meeting.

12.4    Records.    All resolutions, proceedings, acts and determinations of the Committee shall be recorded by the Secretary thereof or under his supervision, and all such records, together with such documents and instruments as may be necessary for the administration of the Plan, shall be preserved in the custody of the Secretary.

12.5    Rules.    Subject to the limitations contained in the Plan, the Committee shall be empowered from time to time in its discretion to adopt by-laws and establish rules for the conduct of its affairs and the exercise of the duties imposed upon it under the Plan.

12.6    Administration.    The Committee shall be responsible for the administration of the Plan.    The Committee shall have all such powers as may be necessary to carry out the provisions hereof and may, from time to time, establish uniform rules for the administration of the Plan and the transaction of the Plan's business.    The Committee shall have the exclusive right to make any finding of fact necessary or appropriate for any purpose under the Plan, including, but not limited

- 57 -

SPXP000283

to, the determination of the eligibility for and the amount of any benefit payable under the Plan. The Committee shall have the exclusive right and the discretionary authority to interpret the terms and provisions of the Plan and to determine any and all questions arising under the Plan or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision. The Committee shall make, or cause to be made, all reports or other filings, necessary to meet the reporting and disclosure requirements of the Act which are the responsibility of "plan administrators" under the Act. All findings of fact, determinations, interpretations, and decisions of the Committee shall be conclusive and binding upon all persons having or claiming to have any interest or right under the Plan. Effective as of July 1, 2001, benefits under the Plan will be paid only if the Committee decides in its discretion that the applicant is entitled to them.

12.7    Notice of Address.  Each person entitled to benefits from the Plan must file with the Committee, in writing, his post office address and each change of post office address. Any communication, statement, or notice addressed to such a person at his latest reported post office address will be binding upon him for all purposes of the Plan and neither the Committee nor any Employer or Trustee shall be obliged to search for, or ascertain his whereabouts.

12.8  Information For Benefits And Data.  All persons claiming benefits from the Plan must furnish to the Committee or its designated agent, such documents, evidence, or information as the Committee or its designated agent considers necessary or desirable for the purpose of administering the Plan; and each such person must furnish such information promptly and sign such documents as the Committee or its designated agent may require before any benefits become payable from the Plan.

12.9  Appeals from Denial of Claims.  If any claim for benefits under the Plan is wholly or partially denied, after completion of the established claim procedure at the plant or division level, the claimant shall be given notice in writing, within 90 days (or 180 days in a special case) after receipt of the claim by the Plan, by registered or certified mail, of such denial, written in a manner calculated to be understood by the claimant, setting forth the specific reasons for such denial, specific reference to pertinent Plan provisions on which the denial is based, a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary, and an explanation of the Plan's claim review procedure.   The claimant also shall be advised that he or his duly authorized representative may request a review by the Committee of the decision denying the claim by filing with the Committee, within 60 days after such notice has been received by the claimant, a written request for such review, and that he may review pertinent documents, and submit issues and comments in writing within the same 60 day period.  If such request is so filed, such review shall be made by the Committee within 60 days after receipt of such request; and the claimant shall be given written notice of the decision resulting from such review, and shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions on which the decision is based.

12.10  Indemnity For Liability.  The Company shall indemnify each member of the Committee or subcommittee against any and all claims, losses, damages, expenses, including

- 58 -

SPXP000284

counsel fees, incurred by the Committee or subcommittee and any liability, including any amounts paid in settlement with the Committee's or subcommittee's approval, arising from the member's or Committee's or subcommittee's action or failure to act, except when the same is judicially determined to be attributable to the gross negligence or willful misconduct of such member.

SPXP000285

| SECTION 13 |
|:---:|
| RESERVED |

13.1    [RESERVED]

SPXP000286

## SECTION 14
## AMENDMENT AND TERMINATION

14.1    Amendment and Termination.

(a)    The Employer expects the Plan to be permanent, but since future conditions cannot be anticipated or foreseen, the Company must necessarily and does hereby reserve the right to amend, modify or terminate the Plan at any time by action of the Committee pursuant to authority delegated to it by the Board of Directors or by action of the Company's corporate officer responsible for employee compensation and benefits, acting pursuant to authority delegated to him by the Committee.

(b)    The above notwithstanding, effective for amendments made after July 30, 1984, no amendment to the Plan (including a change in the actuarial basis for determining optional or early retirement benefits) shall be effective to the extent that it has the effect of decreasing a Participant's accrued benefit.  Notwithstanding the preceding sentence, a Participant's accrued benefit may be reduced to the extent permitted under Section 412(c)(8) of the Code.  For purposes of this paragraph, a Plan amendment which has the effect of (1) eliminating or reducing an early retirement benefit or a retirement-type subsidy, or (2) eliminating an optional form of benefit, with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.  In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a Participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy.  In general, a retirement-type subsidy is a subsidy that continues after retirement, but does not include a qualified disability benefit, a medical benefit, a social security supplement, a death benefit (including life insurance), or a plant shutdown benefit (that does not continue after retirement age).  Furthermore, no amendment to the Plan shall have the effect of decreasing a Participant's vested interest determined without regard to such amendment as of the later of the date such amendment is adopted, or becomes effective.

(c)    The Plan shall terminate as to any Employer participating in the Plan and its Participants, upon the first to occur of the following events subject to the provisions of the Act:

(1)    Upon the Employer providing written notice of termination to the Trustee holding the Trust Fund and to the other Employers participating in the Plan;

(2)    Three (3) months after the effective date of the merger or consolidation of the Employer with or into any other corporation, or three (3) months after the effective date of the transfer of substantially all of the assets of the Employer to another corporation, except that in either event provision may be made before or within such three-month period by which the Plan may be continued by the successor or purchaser corporation, as the case may be, and in that event such successor or purchaser corporation shall be substituted for the Employer hereunder.

- 61 -

SPXP000287

Upon termination of the Plan with respect to a group of Participants which constitutes a partial termination of the Plan, the benefit of each Participant shall become vested and non-forfeitable to the extent funded.

14.2    Distribution On Termination.    Upon termination of the Plan as respects any Employer participating in the Plan, that portion of any assets then held in the retirement fund allocable to Participants of such Employer, as determined by the Trustee and the Committee on the basis of contributions made for and benefits paid to such Participants compared with contributions made for and benefits paid to all Participants of all Employers covered by the Plan, shall be allocated, after payment of all expenses of administration or liquidation attributable to such Employer, for the following purposes and in the following manner and order, to the extent of the sufficiency of such assets:

(a)    to provide all or that part of his benefit hereunder for each Participant or his beneficiaries who either:

(1)    Has begun to receive benefit payments at the date which is three years prior to the date of termination of the Plan, or

(2)    Could have begun to receive benefit payments at the date which is three year prior to the date of termination of the Plan if the Participant would have been eligible to retire under Sections 6.1 or 6.2 hereof prior thereto and begin to receive benefit payments three years prior to the date of termination of the Plan,

which is equal to the smallest benefit (he was receiving or could have received) which would be provided for such person under the Plan based on its provisions as in effect during the five-year period ending on the date of termination of the Plan; and for this purpose the lowest benefit payment received under (1) above during the three years prior to the date of termination of the Plan shall be considered to be the benefit he was receiving at the date which is three years prior to termination of the Plan. Allocation shall be made on a pro rata basis based on the then present value of the benefits under this paragraph (a) if assets are not sufficient to provide such benefits in full.

(b)    if any assets remain, to provide all or that part of his benefit hereunder remaining after (a) above which is guaranteed under Section 4022 of the Act for each Participant or his beneficiaries who qualifies under (a) above but all of his benefit is not provided thereunder, or who does not qualify under (a) above but who either:

(1)    has begun to receive benefit payments later than three years prior to the date of termination of the Plan, or

(2)    could have begun to receive benefit payments the date of termination of the Plan if the Participant would have been eligible to retire under Section 6.1 or 6.2 at the date of termination of the Plan and be eligible to receive benefit payments thereunder, or

- 62 -

SPXP000288

       (3)     had terminated Continuous Service prior to the date of termination of the Plan with eligibility to receive vested Retirement Benefit payments under Section 6.5 of the Plan but had not begun to receive benefit payments at the date of termination of the Plan, or

       (4)     would have been eligible to terminate Continuous Service at the date of termination of the Plan and be eligible to receive vested Retirement Benefit payments under section 6.5 of the Plan.

Allocation shall be made on a pro rata basis based on the then present value of the benefits under this paragraph (b) if assets are not sufficient to provide such benefits in full.

(c)     if any assets remain, to provide that part, if any, of his benefit hereunder for each Participant or his beneficiaries described in (a) and (b) above, which is not provided for under (a) or (b) above, in the following order of priority if such remaining assets are not sufficient to provide all of such part of such benefits for all such persons:

       (1)     To provide such part of the benefits which would be provided for such person under the Plan based on its provisions as in effect at the beginning of the five-year period ending on the date of termination of the Plan; and on a pro rata basis based on the present value of such benefits under this subparagraph (1) if such assets are not sufficient to provide such benefits described in this subparagraph (1) in full; provided, however, if such assets are more than sufficient to provide such benefits described in this subparagraph (1) in full then the assets available under this paragraph (d) shall be allocated as provided in (2) below.

       (2)     To provide such part of the benefits which would be provided for such persons under the Plan based on its provisions as in effect as amended by the earliest Plan amendment under which they are currently entitled to receive benefits effective during the five-year period ending on the date of termination of the Plan under which the assets under this paragraph (c) are sufficient to provide such benefits in full; and with any assets remaining thereafter similarly to be allocated to provide such part of the benefits which would be provided for such persons under the Plan based on its provisions as in effect as amended by each next succeeding Plan amendment under which they are currently entitled to receive benefits effective during such five-year period.

(d)     if any assets remain, to provide all other benefits hereunder, whether or not vested under the Plan, for each Participant or beneficiary which are not provided for above, accrued to the date of termination of the Plan, and in the order of priority described in (c)(1) and (2) above if assets are not sufficient to provide such benefits in full.

(f)     If any assets remain, they may revert to the Employer as provided in the Act.

SPXP000289

The present value of benefits under paragraphs (a), (b), (c), or (d) above, shall be determined on the basis of the actuarial assumptions used in the last previous valuation of the Plan prior to date of termination of the Plan.

Notwithstanding the foregoing, in the event the Plan terminates, or there is a spin-off of part of the Plan (in excess of the 3% of the assets permitted under Treasury Regulation Section 1.414(1)-1(n)(2), within five years following the date of any merger of another plan into this Plan after September 2, 1974, and if the sum of the assets in this Plan after any such merger was less than the sum of the present values of the accrued benefits (whether or not vested) of both this Plan and such other plan on a termination basis on the merger date, then a special schedule of benefits shall be created from the necessary (as identified by an enrolled actuary) data maintained by the Company and shall be inserted in and modify the allocation priorities set forth above in this subsection at the time of such termination or spin-off, in accordance with Treasury Regulation Section 1.414(1)-1(e) through (j) and Department of Labor Regulation Section 2608.13.

The benefits to be provided by such allocation shall be fully vested and nonforfeitable as of the date of such termination of this Plan, only the affected Participants in that part of the Plan which is terminated shall have fully vested and nonforfeitable rights in the benefits to be provided by the allocations (unless they were already fully vested prior to the partial termination). Distribution may be implemented through either (i) continuance of the retirement fund or creation of a new retirement fund for such Participants, or (ii) purchase of nontransferable insurance annuity contracts, or a combination thereof; provided, however, that the Committee, upon finding that it is not practicable or desirable under the circumstances to do any of the foregoing with respect to some or all of the categories listed above, may provide for some allocation of a part or all of such assets of the retirement fund other than the continuance of a retirement fund or the purchase of nontransferable insurance annuity contracts with respect to any or all of such categories; provided, further, that no change shall be effected in the order of precedence and basis for allocation above established.

Notwithstanding anything to the contrary in this Plan, in the event of termination of the Plan, the benefit of any Highly Compensated Employee and any Highly Compensated former Employee (in each case as defined at Code Section 414[q]) is limited to a benefit that is nondiscriminatory under Code Section 401(a)(4).

SPXP000290

## SECTION 15
## CASH-OUT OF BENEFITS

15.1   Cash-Out of Benefits

(a)   Involuntary and Deemed Cash-Out.  The Committee shall make an immediate lump sum distribution to a Participant, or in the case of a Participant's death, to the Participant's beneficiary, of the present value of any vested Retirement or Vested Benefit or survivor benefit, regardless of the Participant's or beneficiary's election, provided that such present value does not exceed $5,000.  No such distribution may be made, however, without the consent of the Participant and his spouse if Retirement or Vested Benefits have commenced, or without the consent of the Surviving Spouse if the Participant has died and the survivor annuity has commenced.  If the present value of a Participant's vested Retirement or Vested Benefit is zero, the Participant shall be deemed to have received a distribution of such vested Retirement or Vested Benefit.  The non-vested portion of such benefit will be treated as a forfeiture.

Effective as of September 1, 2001, the above subsection (a) shall be replaced with the following:

(a)   Involuntary and Deemed Cash-Out.  The Committee shall make an immediate lump sum distribution to a Participant, or in the case of a Participant's death, to the Participant's Beneficiary, the present value of any vested benefit regardless of the Participant's or Beneficiary's election, provided that such present value does not exceed $5,000.  No such distribution may be made, however, without the consent of the Surviving Spouse if the Participant has died and the survivor annuity as commenced.  If the present value of a Participant's vested Retirement benefit or Vested Benefit on termination is zero, the Participant shall be deemed to have received a distribution of such vested Retirement or Vested Benefit.  The non-vested portion of such benefit shall be treated as a forfeiture.

Effective September 1, 2001, if at any time the present value of a Participant's benefit under the Plan has an Actuarial Equivalent lump sum value that does not exceed $5,000 (or such other amount set forth under Section 411(a)(11)(A) of the Code), the Committee may make a lump sum distribution to the Participant, or in the case of Participant's death, to the Participant's beneficiary as soon as practicable after a Participant's separation from service or death, and such Participant or Spouse shall have no further interest in the Plan with respect to the Participant's employment prior to such Participant's separation from service or death.  In the event the Participant has commenced receipt of an annuity and the Actuarial Equivalent lump sum value of the remaining payments does not exceed $5,000 (or such other amount set forth under Section 411(a)(11)(A) of the Code) at any time thereafter, the Committee may make an immediate lump sum distribution of the remaining vested benefit, but only with consent of the Participant and, if applicable and required by the Code and regulations thereunder, the Participant's Spouse, Surviving Spouse or Beneficiary.  If the present value of a Participant's vested Retirement benefit or Vested Benefit on termination is zero, the Participant shall be deemed to have received a distribution of such vested Retirement or Vested Benefit.  The non-vested portion of such benefit shall be treated as a forfeiture.

- 65 -

SPXP000291

(b)    <u>Voluntary Cash-Out</u>.  Where (i) the Actuarial Equivalent of a vested Retirement or Vested Benefit or survivor annuity exceeds $5,000 but is less than $10,500 ($15,000 effective July 13, 1993 and $25,000 effective January 1, 1994), or (ii) the Account Balance on and after July 1, 1997 exceeds $5,000, the Committee shall make an immediate lump sum distribution of the entire vested benefit, but only with the written consent of the Participant and his Spouse, or in the case of the Participant's death, with the consent of the Participant's Surviving Spouse.

For purposes of calculating the Actuarial Equivalent under (i) above, the vested Retirement or Vested Benefit shall be the immediate life annuity benefit (if the calculation is being made with respect to a Participant who had attained the age at which annuity payments may begin) or the life annuity benefit deferred to age 65 (if the calculation is being made with respect to a Participant who had not attained the age at which annuity payments may begin).

(c)    <u>Vested Benefit</u>.  A Participant who is eligible to elect a voluntary cashout of his vested Retirement or vested Benefits under paragraph (b) may elect immediate payment of his vested Retirement or vested Benefit in the applicable automatic form of a Qualified Joint and Survivor or Life Annuity benefit as provided at Section 6.6 based on his age at the date of distribution, or in any other Form of immediate payment as permitted by the Plan.

(d)    <u>Consent Requirements</u>.  The Spouse's consent under paragraph (a) or (b) above must conform with the rules of Section 6.7.  The consent of the Participant and/or the Spouse must be obtained not more than 90 days before the commencement of the distribution of any part of the Retirement or Vested Benefit or survivor annuity.

15.2    <u>Direct Rollovers</u>.  A Distributee who is otherwise receiving a distribution under this Section 15, may elect to have the distribution paid, in whole or in part, directly to an Eligible Retirement Plan pursuant to the terms and conditions established by the Committee, from time to time.

(a)    <u>Definitions</u>.  For purposes of this Section 15.2, the following terms shall have the following meanings:

(1)    "Eligible Retirement Plan" means an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity (other than an endowment contract) described in Section 408(b) of the Code, a qualified plan described in Section 401(a) of the Code if it is a defined contribution plan which permits the acceptance of rollover distributions, or an annuity plan described in Section 403(a) of the Code.

Effective for distributions made after December 31, 2001, "Eligible Retirement Plan" shall also mean an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision or any agency or instrumentality of a state or political subdivision or a state and which agrees to separately account for amounts transferred into such plan from

SPXP000292

this Plan. This definition shall also apply in the case of a distribution to a Surviving Spouse, or to a Spouse or former Spouse who is an alternate payee under a QDRO, as defined in Section 414(p) of the Code.

(2)    "Direct Rollover" means an Eligible Rollover Distribution that is paid directly to an Eligible Retirement Plan for the benefit of the Participant.

(3)    "Distributee" means a Participant. In addition, the Participant's Surviving Spouse or the Participant's Spouse or former Spouse who is an alternate payee under a QDRO, as defined in Section 414(p) of the Code, are distributees with regard to the interest of the Spouse or former Spouse.

(4)    "Eligible Rollover Distribution" means any distribution of all or any portion of the balance to the credit of the Participant in the Plan subject to the following exceptions and to subsection (d) below:

(i)    Any distribution that is one of a series of substantially equal periodic payments (paid not less frequently than annually) paid over any one of the following periods: the life of the Participant (or the joint lives of the Participant and the Participant's designated beneficiary), the life expectancy of the Participant (or the joint life and last survivor expectancy of the Participant and the Participant's designated beneficiary), or a specified period of 10 years or more.

(ii)   Any distribution to the extent the distribution is required under Section 401(a)(9) of the Code relating to the minimum distribution requirements;

(iii)  The portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation described in Section 402(e)(4) of the Code). An Eligible Rollover Distribution does not include the portion of any distribution that is excludable from gross income under Section 72 of the Code as a return of the employee's investment in the contract but an Eligible Rollover Distribution does include net unrealized appreciation;

(iv)   Loans treated as distributions under Section 72(p) of the Code because they exceed the limitations set forth by Section 72(p)(2) of the Code;

(v)    Loans in default that are deemed distributions;

(vi)   The P.S. 58 costs of life insurance coverage; or

(vii)  Similar items designated in revenue rulings, notices, and other guidance from the Treasury Department of general applicability.

SPXP000293

## SECTION 16
## EMPLOYMENT RIGHTS

16.1   <u>Employment Rights</u>.  The Employer's right to discipline or discharge Employees shall not be affected by reason of any of the provisions of this Plan.

SPXP000294

## SECTION 17
## APPLICABLE LAW

17.1    Applicable Law.  The Plan is intended to meet the requirements applicable to a pension plan for qualification under Section 401(a) of the Code.  The Plan is also intended to be in full compliance with the applicable requirements of ERISA.  The Plan shall be administered and construed consistent with said intent.  If any provision of this Plan shall be held by a court of competent jurisdiction to be invalid or unenforceable, the remaining provisions hereof shall continue to be fully effective.

SPXP000295

| SECTION 18 |
| :---: |
| MISTAKES |

18.1     <u>Mistakes</u>.  In the event of a mistake or misstatement as to the date of birth or sex of a Participant or other person, or a mistake as to the Continuous Service, Credited Service, Compensation or Pay of a Participant, or the amount of payments made or to be made, the Committee, to the extent possible, shall cause to be withheld, or accelerated, or otherwise adjusted, such amounts as will in its judgment accord to the Participant or other person the benefits to which he is properly entitled under the Plan.

SPXP000296

## SECTION 19
## MERGER OR CONSOLIDATION OR TRANSFER

19.1    <u>Merger or Consolidation or Transfer</u>.  In the case of any merger or consolidation of the Plan with, or in the case of any transfer of assets or liabilities of the Plan to or from, any other plan after September 2, 1974, each Participant in the Plan shall be entitled to a benefit under the successor plan immediately after the merger, consolidation or transfer which is equal to or greater than the benefit, according to the terms and conditions of the Plan, that he would have been entitled to receive immediately before the merger, consolidation or transfer, the same as if this Plan were then terminated.

SPXP000297

## SECTION 20
## LIMITATION ON BENEFITS

20.1    Limitations Applicable to Twenty-Five (25) Highest Paid Employees of the Employer.

Effective January 1, 1994, the provisions of this Section 20.1 (the "New Restrictions") shall restrict Plan benefits and distributions to certain Highly Compensated Employees in the event of the termination of the Plan, as further described herein. The provisions of this Section shall replace and supersede any provisions previously contained in the Plan for this purpose (the "Old Restrictions"), PROVIDED that any restrictions, escrow accounts or other security devices established under the previous versions of these rules shall continue in effect to the extent necessary to continue to meet the restrictions on distributions as provided in this Section or as otherwise required or permitted by the Code or regulations. Notwithstanding the foregoing, neither the Old nor the New Restrictions shall apply, and this Section shall be void and of no effect, in the event that the Commissioner of Internal Revenue determines that such provisions are not necessary to prevent prohibited discrimination in the event of an early termination of the Plan.

(a)    Annual payments under the Plan derived from Employer contributions and payable to a Participant described in subsection (c) of this Section are restricted to the payments that would be made to the Participant under:

(1)    a straight life annuity that is the Actuarial Equivalent of the sum of the Participant's accrued benefit and the Participant's other benefits under the Plan (if any), all as defined in subsection (c) below; and

(2)    a Social Security supplement (if any) that the Participant is entitled to receive.

(b)    The restrictions in subsection (a) above shall not apply if:

(1)    After payment to a Participant described in subsection (c) of this Section of all benefits defined in subsection (d) of this Section, the value of Plan assets equals or exceeds 110% of the value of current liabilities, as defined in Code Section 412(l)(7);

(2)    The value of the benefits described in subsection (d) of this Section for a Participant described in subsection (c) of this Section is less than 1% of the value of current liabilities, as defined above, before distribution; or

(3)    The value of the benefits described in subsection (d) of this Section for a Participant described in subsection (c) of this Section does not exceed the amount set forth in Code Section 411(a)(11)(A) for mandatory distributions.

(c)    The Participants subject to the restrictions of this Section shall be all Highly Compensated Employees and Highly Compensated Former Employees as defined at Section

- 72 -

SPXP000298

414(q) of the Code, PROVIDED that in any one year, the total number of Participants whose benefits are subject to the restriction of this Section shall not exceed a total of 25 Participants. This group of 25 affected Participants shall be those Highly Compensated Employees and Highly Compensated Former Employees (combined) with the greatest compensation in the prior Plan Year, PROVIDED FURTHER that the definition of this group of affected Participants may be amended by the Committee at any time without regard to the requirements of Section 411(d)(6) of the Code.  For purposes of this Section, the compensation of a Highly Compensated Former Employee shall be based upon his compensation during his last full calendar year of employment with the Employer.

(d)    For purposes of this Section, the term "benefit" shall include loans in excess of the amounts set forth in Section 72(p)(2)(A) of the Code, any periodic income, any withdrawal values payable to a living employee, and any death benefits not provided for by insurance on the Participant's life.

(e)    Notwithstanding the otherwise applicable restrictions on distributions of benefits incident to early plan termination, a Participant's otherwise restricted benefit may be distributed in full upon depositing with an acceptable depository property having a fair market value equal to one hundred twenty-five percent (125%) of the amount which would be repayable had the Plan terminated on the date of the lump sum distribution (100% if cash or its equivalent [e.g., a letter of credit] is deposited).  If the market value of the property (other than cash or its equivalent) held by the depository falls below one hundred ten percent (110%) of the amount which would be repayable if the Plan were then to terminate, additional property necessary to bring the value of the property held by the depository up to one hundred twenty-five percent (125%) of such amount shall be deposited.

SPXP000299

## SECTION 21
## PARTICIPATION IN THE PLAN BY A SUBSIDIARY

21.1    <u>Participation in the Plan</u>.  By written action, the Company's corporate officer responsible for employee compensation and benefits shall designate whether each Subsidiary of the Company, or business unit of any Subsidiary and the Company, shall participate in this Plan.

- 74 -

SPXP000300

| SECTION 22 |
| RESERVED |

22.    [RESERVED]

SPXP000301