(i)     30% of his Final Average Monthly Earnings.

(ii)    A fraction, not exceeding one, the numerator of which is the actual number of his then years of Credited Service and the denominator of which is the total number of years of Credited Service he would have if from the commencement of his years of Credited Service he had credited service until his Normal Retirement Date.

(3)      In the case of an Owatonna Group Participant who was a participant in the Owatonna Plan on December 31, 1989, his Accrued Monthly Pension shall not be less than his Accrued Monthly Pension determined on December 31, 1989 pursuant to the terms of the Owatonna Plan then in effect.

(4)      In the case of an Owatonna Group Participant who was a participant in the Owatonna Plan on December 31, 1992, his Accrued Monthly Pension shall not be less than his Accrued Monthly Pension based on his Final Average Monthly Earnings and Credited Service as of December 31, 1992 pursuant to the terms of the Owatonna Plan then in effect.

(5)      In no event shall the Accrued Monthly Pension of an Owatonna Group Participant who has a Normal Retirement or Late Retirement be less than the Accrued Monthly Pension that he could have received at any time upon a Termination of Employment which would have been an Early Retirement.

(h)     <u>Pension on Late Retirement or Required Beginning Date</u>. An Owatonna Group Participant who continues in the employ of the Company after his Normal Retirement Date shall receive his Normal Pension, based upon his Credited Service, Final Average Monthly Earnings, and the provisions of this Appendix B-19 subject to the rules for time of payment and the benefit offset contained in Section 6.1, 6.4, 6.16, and 6.17.

(i)     <u>Pension on Early Retirement</u>.   On Early Retirement, an Owatonna Group Participant shall be entitled to his Normal Pension, provided he is living on the first day of the month following his Normal Retirement Date. In lieu of having his pension commence on the first day of the month following his Normal Retirement Date, he may elect to have his pension commence as of the first day of any month after his Early Retirement and prior to his Normal Retirement Date, provided he is living on the commencement date he elects. The election shall be made by requesting the appropriate form from the Company and completing, signing, and filing the form with the Company before the commencement date elected.

(1)      If –

(i)     an Owatonna Group Participant's Early Retirement Date occurs within 3 years of his Social Security Unreduced Retirement Age,

(ii)    he has at least 10 years of Credited Service, and

(iii)   he elects a commencement date prior to his Normal Retirement Date,

- 117 -

SPXP000365

his pension shall be determined without any reduction for early payment in accordance with the following schedule:

| Birth Date | Unreduced Early Retirement Benefits Available With 10 Years Credited Service at Social Security Unreduced Retirement Age |
|---|---|
| Before 1938 | 62 |
| 1938 - 1954 | 63 |
| 1955 or later | 64 |

    (2)    If--

        (i)    paragraph (1) does not apply to the Owatonna Group Participant's Early Retirement, and

        (ii)    he elects a commencement date prior to his Normal Retirement Date,

the monthly amount of his pension will be reduced by 5/9 of 1% for each of the first 60 months and 5/18 of 1% for each additional month by which the commencement date precedes his Social Security Unreduced Retirement Age.

    (j)    <u>Pension on Vested Termination</u>.  On Vested Termination, an Owatonna Group Participant shall be entitled to the vested percentage of his Normal Pension, provided he is living on the first day of the month following his Normal Retirement Date, subject to the following:

    (1)    The vested percentage shall be 100% if the Owatonna Group Participant attained Normal Retirement Age on or before the date of his Termination of Employment.

    (2)    For any Owatonna Group Participant with at least one (1) Hour of Service on or after January 1, 1989, the vested percentage shall be 100% if the Owatonna Group Participant completed 5 or more years of Continuous Service prior to his Termination of Employment.

    (3)    In lieu of having his pension commence on the first day of the month following his Normal Retirement Date, the Owatonna Group Participant may elect to have his pension commence as of the first day of any month which is after the date on which he attains age 60 (effective as of July 1, 2001, age 55) but not later than the first day of the month after his Normal Retirement Date, provided he is living on the commencement date so elected. The election shall be made by requesting the appropriate form from the Company and completing, signing, and filing the form with the Company before the commencement date so elected.  The monthly amount of such pension shall be the monthly amount which would otherwise be

SPXP000366

payable following the Participant's Normal Retirement Date, reduced by 5/9 of 1% for each month by which the pension commencement date precedes the Owatonna Group Participant's Social Security Unreduced Retirement Age.

(4)    Effective for terminations on and after July 1, 1997, there shall be no reduction in the Vested Terminated Owatonna Group Participant's Qualified Pre-retirement Survivor Benefit provided under Section 6.9 ("PRSA").

(k)    <u>Death Benefit for Active Owatonna Group Participants Without a Qualified Spouse</u>. If an Owatonna Group Participant dies at a time when the requirements of Section 6.9 are met, and he is not survived by a Qualified Spouse, then a monthly pension shall be payable to the Owatonna Group Participant's Beneficiary, with the first payment to be made as of the first day of the month following the Owatonna Group Participant's death and with monthly payments to continue to his Beneficiary until a total of 120 monthly payments have been made to his Beneficiary. The amount of each monthly payment shall be equal to 50% of the Owatonna Group Participant's Accrued Monthly Pension determined as of the date of his death. In lieu of the 120 monthly payments to the Owatonna Group Participant's Beneficiary, the Beneficiary may elect to receive the Actuarial Equivalent of said benefit in a lump sum.

(l)    <u>Protection of Benefits</u>. Each Owatonna Plan Participant (whether or not actively employed by the Company on December 31, 1994) shall be entitled to receive a benefit under this Plan immediately after the merger and transfer of assets and liabilities described in (a) above (if this Plan then terminated) which is at least equal to the benefit he would have been entitled to receive from the Owatonna Plan immediately before the merger (if the Owatonna Plan had then terminated).

(m)    For purposes of this Appendix B-19, the following words and phrases shall have the meanings stated below unless a different meaning is plainly required by the context:

(1)    "Accrued Monthly Pension" means the retirement benefit to which an Owatonna Group Participant is entitled pursuant to (g) above.

(2)    "Early Retirement" means any Termination of Employment of a Participant (except termination by reason of death)--

(i)    after he has both completed 5 years of Continuous Service and attained--

(A)    age 60, if his Termination of Employment occurs before June 1, 1998; **or**

(B)    age 55, if his Termination of Employment occurs on or after June 1, 1998; **and**

(ii)    before his Normal Retirement Date.

- 119 -

SPXP000367

(3)    "Final Average Monthly Earnings" means:

    (i)    <u>January 1, 1995 through December 31, 1995</u>.  For the period beginning January 31, 1995 and ending December 31, 1995, a Participant's "Final Average Monthly Earnings" shall be the greatest of:

        (A)    his average Pay for the 3 consecutive Plan Years within the last 10 consecutive Plan Years of his service as a Qualified Employee that produce the highest average; **or**

        (B)    his average Pay for the 36 consecutive months within the last 120 consecutive months of his service as a Qualified Employee that produce the highest average; **or**

        (C)    his average Pay for the 60 consecutive months within the last 120 consecutive months of his service as a Qualified Employee that produce the highest average.

        If the Participant has been a Qualified Employee for a period of less than 36 or 60 full calendar months, as applicable, preceding the earlier of the date of his Termination of Employment or Required Beginning Date, his Final Average Monthly Earnings shall be a fraction of his total Pay for all of his full months as a Qualified Employee, such fraction having as the numerator 1 and as the denominator the number of full calendar months as a Qualified Employee preceding his Termination of Employment or Required Beginning Date.

    (ii)    <u>On or after January 1, 1996</u>.  Effective January 1, 1996, a Participant's "Final Average Monthly Earnings" shall be the greatest of:

        (A)    his average Pay for the 3 Plan Years (not necessarily consecutive) within the last 10 consecutive Plan Years of his service as a Qualified Employee that produce the highest average; **or**

        (B)    his Final Average Monthly Earnings as determined on December 31, 1995.

(4)    "Late Retirement" means any Termination of Employment of a Participant (except termination by reason of death) occurring after his Normal Retirement Date.

(5)    "Late Retirement Date" means, for a Participant whose service terminates after his Normal Retirement Date by reason other than death, the last day of the month in which the Participant makes application for his retirement benefit on Late Retirement.

SPXP000368

(6) A Participant's "Normal Pension" means a pension payable monthly for his life, in an amount equal to his Accrued Monthly Pension. The first payment of a Participant's Normal Pension shall be made as of the first day of the month following his Normal Retirement Date (if he is living on such date), and the last payment shall be made as of the first day of the month in which his death occurs. Under a Normal Pension, there are no continuing payments to any beneficiary or co-annuitant after the Participant's death. Notwithstanding the foregoing, the Normal Pension of a Participant who was a Participant on December 31, 1989 shall not be less than his Normal Pension as determined on December 31, 1989 and converted to a life annuity form.

(7) "Normal Retirement" means a Participant's Termination of Employment (except termination by reason of death) occurring on his Normal Retirement Date.

(8) "Normal Retirement Age" means the earlier of:

    (i) the date on which a Participant has attained his Social Security Unreduced Retirement Age; or

    (ii) the date the Participant has attained age 65 and completed 5 years of participation in the Owatonna Plan and this Plan, collectively.

(9) "Normal Retirement Date" means the last day of the month in which a person attains Normal Retirement Age.

(10) "Qualified Employee" means an Employee, subject to the following:

    (i) A salesman paid by the Company solely on a commission basis shall not be a Qualified Employee.

    (ii) A nonresident alien while not receiving earned income (within the meaning of Code Section 911(b)) from the Company which constitutes income from sources within the United States (within the meaning of Code Section 861(a)(3)) shall not be a Qualified Employee.

    (iii) Eligibility of Employees in a collective bargaining unit to participate in the Plan shall be subject to negotiations with the representative of that unit. During any period that an Employee is covered by the provisions of a collective bargaining agreement between the Company and such representative, he shall not be considered a Qualified Employee for purposes of this Appendix B-19 unless such agreement expressly so provides. For purposes of this Appendix B-19 only, any such agreement shall be deemed to continue after its formal expiration during collective bargaining negotiations pending the execution of a new agreement.

    (iv) An Employee shall be deemed to be a Qualified Employee during a period of absence from active service that does not result from his

- 121 -

SPXP000369

Termination of Employment, provided he was a Qualified Employee at the commencement of such period of absence.

    (v)    A person working for the Company in a capacity other than as a common law employee, including, but not limited to, a leased employee, shall not be a Qualified Employee.

(11)    "Qualified Spouse" means the person legally married to the Owatonna Group Participant throughout the one-year period ending on the date of the Owatonna Group Participant's death.

(12)    The "Termination of Employment" of an Employee shall be deemed to occur upon his resignation, discharge, retirement, death, failure to return to active work at the end of an authorized leave of absence or the authorized extension or extensions of such leave, failure to return to work when duly called following a temporary layoff, or upon the happening of any other event or circumstance which results in the termination of the employer-employee relationship between the Company and the Employee; provided, however, that a Termination of Employment shall not be deemed to occur upon a Transfer pursuant to Section 3.3(a).  However, if a Participant becomes eligible to receive disability benefits under the Company's Long Term Disability Plan, his Termination of Employment shall be deemed not to have occurred until the earlier of his Normal Retirement Date or the termination of his benefit payments under such Long Term Disability Plan. For each month up to his Normal Retirement Date that he receives a payment under such Long Term Disability Plan, he shall be credited with Continuous and Credited Service.

(13)    For any Employee who has been credited with at least one (1) Hour of Service on or after January 1, 1989, "Vested Termination" means any Termination of Employment of a Participant (except termination by reason of death) that is not defined as a form of retirement and that occurs under one or more of the following circumstances:

    (i)    The termination occurred after he completed five or more years of Continuous Service; or

    (ii)    The termination occurred on or after his Normal Retirement Age.

SPXP000370

B-20    1995 Special Incentive Early Retirement Benefit. The following provisions shall apply to the enhanced Early Retirement Benefit (the "1995 Special Early Retirement Benefit") that the Company shall offer to selected Participants during a window period opening December 11, 1995 and closing January 26, 1996.

(a)    Eligibility. Any Participant--

(i)    who completes at least five years of Vesting Service by December 31, 1996;

(ii)    who attains age 55 by December 31, 1996;

(iii)    whose Continuous Service terminates on a date determined by the Company during the period beginning on December 11, 1995 and ending on December 31, 1996 on account of his Early Retirement (and not Disability);

(iv)    who is employed by the Company in its Kent-Moore/DES and Robinair, Automotive Diagnostics, or Owatonna Group divisions and who, based on the Company's determination of its future organizational requirements, is designated by the Company to receive an offer of a 1995 Special Early Retirement Benefit; and

(v)    who files with the Company a written Acceptance of Special Early Retirement Benefits and Release in the form prepared and in the manner specified by the Company between December 11, 1995 and January 26, 1996.

(b)    Amount. The amount of an eligible Participant's 1995 Special Early Retirement Benefit shall be determined as follows:

(1)    In the case of a Participant who is at least age 62 (but not yet age 65) at the time of retirement, he shall receive a 1995 Special Early Retirement Benefit on the following terms:

(i)    The Participant shall receive an unreduced Early Retirement Benefit in accordance with Section 6.13(b)(i).

(ii)    During the first 24 months following the commencement of benefits, the Participant shall also receive a Social Security supplement equal to $400 per month. If the Participant's 1995 Special Early Retirement Benefit is being paid --

(A)    in the form of a Qualified Joint and Survivor Annuity, or

(B)    in any optional form of benefit described in Section 6.8, Options 1 through 4, with the Participant's Surviving Spouse as the joint annuitant,

- 123 -

SPXP000371

and the Participant dies during such 24-month period, a reduced Social Security supplement equal to $200 per month shall be payable to the Participant's Surviving Spouse for the remainder of such 24-month period.

(iii)    The Participant's first 1995 Special Early Retirement Benefit payment shall include a one-time bonus payment determined as follows:

| Years of Credited Service at Retirement Date | Bonus Payment |
|---|---|
| Less than 25 | 12 weeks salary |
| 25 to 29 | 15 weeks salary |
| 30 to 32 | 18 weeks salary |
| 33 to 36 | 21 weeks salary |
| 37 or more | 24 weeks salary |

(2)    In the case of a Participant who is at least age 58 (but not yet age 62) at the time of retirement, he shall receive a 1995 Special Early Retirement Benefit on the following terms:

(i)    The Participant shall be deemed to be eligible for, and shall receive an unreduced Early Retirement Benefit in accordance with Section 6.13(b)(i).

(ii)    The Participant shall also receive a Social Security supplement equal to $400 per month until he attains age 62 or, if later, until he has received 24 Social Security supplement payments.  If the Participant's 1995 Special Early Retirement Benefit is being paid --

(A)    in the form of a Qualified Joint and Survivor Annuity, or
(B)    or in any optional form of benefit described in Section 6.8, Options 1 through 4, with the Participant's Surviving Spouse as the joint annuitant,

and the Participant dies before he has received all the Social Security supplement payments to which he is entitled, a reduced Social Security supplement equal to $200 per month shall be payable to the Participant's Surviving Spouse until the date on which the deceased Participant would have attained age 62 or, if later, until the number of Social Security supplement payments received by the Participant and his Surviving Spouse, collectively, totals 24.

(iii)    The Participant's first 1995 Special Early Retirement Benefit payment shall include a one-time bonus payment determined as follows:

- 124 -

SPXP000372

| Years of Credited Service at Retirement Date | Bonus Payment |
|---|---|
| Less than 20 | 6 weeks salary |
| 20 to 29 | 9 weeks salary |
| 30 or more | 12 weeks salary |

(3)    In the case of a Participant who is age 57 or younger at the time of retirement, he shall receive a 1995 Special Early Retirement Benefit on the following terms:

    (i)    The Participant shall be deemed to be eligible for, and shall receive an unreduced Early Retirement Benefit in accordance with Section 6.13(b)(i).

    (ii)    The Participant shall also receive a Social Security supplement equal to $400 per month until he attains age 62. If the Participant's 1995 Special Early Retirement Benefit is being paid --

        (A)    in the form of a Qualified Joint and Survivor Annuity, or

        (B)    in any optional form of benefit described in Section 6.8, Options 1 through 4 with the Participant's Surviving Spouse as the joint annuitant,

and the Participant dies prior to attainment of age 62, a reduced Social Security supplement equal to $200 per month shall be payable to the Participant's Surviving Spouse until the date on which the deceased Participant would have attained age 62.

    (iii)    The Participant's first 1995 Special Early Retirement Benefit payment shall include a one-time bonus payment equal to 4 weeks of compensation.

(4)    For purposes of this Appendix B-20(b), "salary" means the Participant's regular weekly pay, exclusive of bonuses, overtime, or shift differential (if applicable), increased by salary reduction amounts described in Section 2.1(k)(1) and decreased by amounts described in Section 2.1(k)(2).

- 125 -

SPXP000373

B-21    Special Provisions for Participants Who Were Former Participants of Bangor Plant Hourly Pension Plan or Who Are Bangor Group Participants.

(a)    Merger.    Effective as of the close of business on December 31, 1995, the liabilities and assets of the Bangor Plant Hourly Pension Plan (the "Bangor Plan") and its constituent trust fund were merged into this Plan and into the SPX Corporation Pension Trust 2, respectively.

(b)    Participation.    Effective January 1, 1996, each Bangor Group Participant who was a participant under the Bangor Plan on December 31, 1995 shall become a Participant under this Plan. Each other Bangor Group Participant shall become a Participant under this Plan on the day he completes an Hour of Service with the Company as an Eligible Employee. The benefits of Bangor Group Participants shall be governed solely by the terms of this Appendix B-21, except as expressly otherwise provided in this Appendix B-21.

(c)    Continuous and Credited Service.    Effective January 1, 1996, the vesting service and credited service with respect to each Bangor Group Participant described in subsection (b) above for participation, vesting, and benefit accrual purposes as shown on the records of the Bangor Plan shall be transferred to this Plan as Continuous Service and Credited Service, respectively. From and after January 1, 1996, each such Bangor Group Participant shall be credited with Continuous Service and Credited Service pursuant to the terms of this Plan; provided, however, that the years of Credited Service that may be credited toward the benefits of a Bangor Group Participant provided under this Appendix B-21 shall be limited as follows:

> (1)    For retirements or other terminations of employment occurring prior to January 1, 1990, a Bangor Group Participant may not accrue more than thirty (30) years of Credited Service.
>
> (2)    For retirements or other terminations of employment occurring prior to May 5, 1992, a Bangor Group Participant may not accrue more than thirty-two (32) years of Credited Service.
>
> (3)    For retirements or other terminations of employment occurring prior to May 5, 1995, a Bangor Group Participant may not accrue more than thirty-five (35) years of Credited Service.
>
> (4)    For retirements or other terminations of employment occurring on or after May 5, 1995, there shall be no limitation on years of Credited Service.

(d)    Former Bangor Plan Participants with Benefits Being Paid on December 31, 1995. Effective as of January 1, 1996, all benefits of former Bangor Plan Participants whose benefits under the Bangor Plan were, as disclosed by the records of the Bangor Plan —

> (1)    in pay status prior to January 1, 1996; or
>
> (2)    the subject of a valid retirement benefit election or direction prior to January 1, 1996

- 126 -

SPXP000374

shall become liabilities of this Plan and be paid by this Plan. All such benefits shall be paid in accordance with the terms of the Bangor Plan and shall be as disclosed by the records of the Bangor Plan.

(e)    Terminated Vested Bangor Plan Participants with Benefits Not Being Paid on December 31, 1995.  Effective as of January 1, 1996, all benefits of former Bangor Plan Participants who had terminated employment with the Company prior to January 1, 1996 with a vested right to a retirement benefit under the Bangor Plan but had not yet begun to receive that benefit shall become liabilities of this Plan and be paid by this Plan in accordance with this Appendix B-21. Set forth in the records of this Plan is information needed to calculate the accrued benefits of terminated vested former Bangor Plan Participants as of December 31, 1995, which shall be paid by this Plan in the forms specified in subsection (f).

(f)    Active Bangor Group Participants on December 31, 1995.  Effective as of January 1, 1996, all benefits under the Bangor Plan of Bangor Group Participants who —

> (1)    were actively employed in the Bangor Group on December 31, 1995;
> (2)    satisfied the Bangor Plan's eligibility requirements as of December 31, 1995; and
> (3)    continued their employment with the Company or a Related Company after December 31, 1995 as a Bangor Group Participant shall become liabilities of this Plan. Such Bangor Group Participants shall accrue retirement benefits under the benefit structure set forth in this Appendix B-21, and their retirement benefits shall be paid by this Plan in accordance with the provisions of subsections (g), (h), (i), (j), or (k), as applicable, in the forms of payment provided by this Plan. In addition to the forms of payment provided in Section 6.6, 6.8 (Options 1 through 5), and 15.1 of this Plan, the Bangor Group Participants may elect a five year period certain and life benefit as an optional form.

> Benefits payable to a Bangor Group Participant pursuant to this Appendix B-21 shall be subject to the qualified pre-retirement survivor annuity provisions of Code Section 417 and the Bangor Plan. Such benefit shall be subject to applicable spousal consent rules as provided in Code Section 417 and the Bangor Plan.

(g)    Accrued Monthly Benefit.  The Accrued Monthly Benefit of a Bangor Group Participant as of any time shall be the amount determined from the following table multiplied by the number of his years of Credited Service:

| Date of Termination of Employment | Amount |
|---|---|
| After May 4, 1994 but prior to May 5, 1995 | $ 17.00 |
| After May 4, 1995 but prior to May 5, 1996 | $ 17.50 |
| After May 4, 1996 but prior to May 5, 1997 | $ 18.00 |
| After May 4, 1997 | $ 18.50 |

- 127 -

SPXP000375

The Accrued Monthly Benefit of a Bangor Group Participant who has incurred more than one Termination of Employment shall be determined as of his most recent Termination of Employment. However, if a Bangor Group Participant incurs a Termination of Employment and is rehired by the Company or a Related Company into a position not covered under this Plan (or any successor plan thereto), his Accrued Monthly Benefit shall be determined as of his most recent Termination of Employment with respect to service covered under this Plan.

(h)    Pension On Normal Or Late Retirement.    On Normal Retirement or Late Retirement, a Bangor Group Participant shall be entitled to a pension benefit equal to his Accrued Monthly Benefit. The pension benefit payable under this subsection (h) shall be subject to all of the provisions of this Appendix B-21.

(i)    Pension On Early Retirement.    On Early Retirement, a Bangor Group Participant shall be entitled to a pension benefit equal to his Accrued Monthly Benefit. However, if the payment of a Bangor Group Participant's Early Retirement benefit commences prior to the first day of the month following the Bangor Group Participant's Normal Retirement Date, such benefit shall be reduced by one-half percent (½%) for each month the payment of such benefit precedes his Normal Retirement Date. The pension benefit payable under this subsection (i) shall be subject to all of the provisions of this Appendix B-21.

(j)    Pension On Disability Retirement.    If a Bangor Group Participant's Disability Retirement occurs, he shall be entitled to a pension benefit in accordance with (1) - (3) below:

(1)    The amount of a Bangor Group Participant's Disability Retirement benefit shall be equal to the Bangor Group Participant's Accrued Monthly Benefit determined in accordance with this Appendix B-21 as in effect at the time benefits commence to the Bangor Group Participant.

(2)    No benefit shall be payable under this subsection (j) until at least six (6) months after a Bangor Group Participant's Disability Retirement.

(3)    Entitlement to pension benefits under this subsection (j) shall terminate if the Bangor Group Participant no longer satisfies the conditions for Disability Retirement or the Bangor Group Participant fails to furnish proof of continuance of permanent disability. In such event, the Bangor Group Participant shall nevertheless be entitled to any benefits for which he is otherwise eligible under any other provisions of this Appendix B-21.

The Committee may require a Bangor Group Participant receiving a Disability Retirement benefit to submit proof of continuance of permanent disability at any time prior to his Normal Retirement Date; provided, however, that such proof shall not be requested more often than twice a year. The pension benefit payable under this subsection (j) shall be subject to all of the provisions of this Appendix B-21.

(k)    Pension on Vested Termination.    On Vested Termination, a Bangor Group Participant who is not eligible for a Normal Retirement, Early Retirement, or Disability

- 128 -

SPXP000376

Retirement benefit shall be entitled to a Vested Termination (nonforfeitable) benefit equal to his Accrued Monthly Benefit in accordance with (1) - (6) below:

(1)    A Bangor Group Participant whose Termination of Employment occurs prior to September 1, 1989 shall be entitled to a pension benefit under this subsection (k) only if he has completed at least ten (10) years of Continuous Service. A Bangor Group Participant whose Termination of Employment occurs on or after September 1, 1989 shall be entitled to a pension benefit under this subsection (k) only if he —

    (i)    has at least one Hour of Service on or after September 1, 1989, and
    (ii)    has completed at least five (5) years of Continuous Service.

(2)    For purposes of applying the rules in (i) above, all of a Bangor Group Participant's years of Continuous Service other than his years of Continuous Service prior to May 16, 1963 shall be taken into account.

(3)    Notwithstanding the foregoing paragraphs, a Bangor Group Participant shall be entitled to one hundred percent (100%) of his Accrued Monthly Benefit upon his attainment of age sixty-five (65).

(4)    If the payment of a Bangor Group Participant's Vested Termination benefit commences prior to the first day of the month following the Bangor Group Participant's Normal Retirement Date, such benefit shall be reduced by one-half percent (½%) for each month the payment of such benefit precedes his Normal Retirement Date.

(5)    No amendment to the Plan changing the Plan's vesting schedule shall reduce the Vested Termination benefit provided pursuant to this subsection (k) as determined for each Bangor Group Participant as of the day preceding the adoption or the effective date of such amendment, whichever is later.

(6)    The rules applicable to amendments of the Plan's vesting provisions contained in Section 9.1 shall apply to Bangor Group Participants.

(l)    <u>Deduction for Other Pension Payments</u>. Notwithstanding the foregoing provisions, the monthly amounts otherwise payable under subsection (h), (i), (j) or (k), as applicable, shall be reduced by the amount (expressed on a comparable basis that is an actuarial equivalent) of the monthly pension, if any, to which the Bangor Group Participant is entitled under any other fixed benefit pension plan that meets the requirements of Code Section 401(a), or any comparable section or sections of any future legislation that amends, supplements, or supersedes Code Section 401(a), and that is financed in whole or in part by the Company, but only to the extent such other pension is attributable to employer contributions and to the same period of service for which the pension is being paid under this Appendix B-21.

(m)    <u>Benefits for Transferred Employees</u>. If an employee is transferred to a position with the Company or a Related Company such that he becomes eligible to participate in the Bear Automotive Service Equipment Company Salaried Retirement Plan (or on or after September 1,

- 129 -

SPXP000377

1989, this Plan or its successor), his ultimate benefit upon Termination of Employment shall be the greater of the following:

> (1)    A benefit payable from the Bear Automotive Service Equipment Company Salaried Retirement Plan computed on the assumption that the employee's Credited Service earned with respect to the Bangor Plan was benefit service earned with respect to the Bear Automotive Service Equipment Company Salaried Retirement Plan.
>
> (2)    A benefit payable pursuant to the Bangor Plan equal to an Accrued Monthly Benefit reflecting the Bangor Group Participant's Credited Service earned with respect to the Bangor Plan prior to the transfer (on the assumption that he terminated employment at the time of the transfer) plus a benefit payable from the Bear Automotive Service Equipment Company Salaried Retirement Plan reflecting the Bangor Group Participant's benefit service earned with respect to the Bear Automotive Service Equipment Company Salaried Retirement Plan.

(n)    <u>Protection of Benefits</u>.  Each Bangor Group Participant (whether or not actively employed by the Company on December 31, 1995) shall be entitled to receive a benefit under this Plan immediately after the merger and transfer of assets and liabilities described in subsection (a) above (if this Plan then terminated) which is at least equal to the benefit he would have been entitled to receive from the Bangor Plan immediately before the merger (if the Bangor Plan had then terminated).

(o)    <u>Definitions</u>.  For purposes of this Appendix B-21, the following words and phrases shall have the meanings stated in this Plan or stated below, unless a different meaning is plainly required by the context:

> (1)    "Accrued Monthly Benefit" means the retirement benefit to which a Bangor Group Participant is entitled pursuant to subsection (g) above.
>
> (2)    "Bangor Group Participant" means an employee of the Company at its Bangor Plant.
>
> (3)    "Company" means SPX Corporation, a Delaware corporation.  Prior to June 10, 1993, the "Company" means Bangor Products Corp. (formerly known as "Dyna Development Corporation"), a Pennsylvania corporation. Prior to December 13, 1973, the "Company" shall also mean Applied Power Inc.
>
> (4)    "Disability Retirement" means a Bangor Group Participant's Termination of Employment by reason of permanent disability occurring —
>
> > (i)    after he has completed ten (10) years of Continuous Service; and
> > (ii)   before he is eligible for Normal Retirement.

For purposes of a Bangor Group Participant's Disability Retirement, "permanent disability" means a medically determined physical or mental impairment which:

- 130 -

SPXP000378

(i)    Can be expected to result in death or be of long, continued and indefinite duration;

(ii)   Prevents the Bangor Group Participant from engaging in any substantially gainful activity by reason of such impairment;

(iii)  Has not been caused by the Bangor Group Participant's engaging in a criminal enterprise;

(iv)   Did not result from the Bangor Group Participant's intentionally self-inflicted injury or his habitual drunkenness or addiction to narcotics; and

(v)    Was not incurred during military service that prevents the Bangor Group Participant from returning to active employment with the Company.

Proof of permanent disability or the continuance of such disability shall be furnished to the Committee by competent medical testimony of a physician chosen and compensated by the Bangor Group Participant. If the determination of such disability is questioned by the Committee, the Bangor Group Participant shall submit to a medical examination by a physician chosen and compensated by the Committee. If the two physicians do not agree, they shall select a third physician (to be compensated by the Committee) to examine the Bangor Group Participant and consult with the other two physicians, and the determination of the third physician shall be final and binding on all concerned.

(5)    "Early Retirement" means any Termination of Employment by a Bangor Group Participant (except termination by death) occurring —

(i)    after he has attained age sixty (60) and completed ten (10) years of Continuous Service, and

(ii)   before he is eligible for Disability Retirement or Normal Retirement.

(6)    "Eligible Employee" means a Bangor Group Participant, subject to the following:

(i)    No Bangor Group Participant shall be an Eligible Employee unless he is a Participant of a collective bargaining unit represented on or after the effective date of the Plan by Local Union 2074 International Brotherhood of Electrical Workers, AFL-CIO.

(ii)   A Bangor Group Participant shall be deemed to be an Eligible Employee during a period of absence from service which does not result from a Termination of Employment, provided he is an Eligible Employee at the commencement of such period of absence.

SPXP000379

(7)  "Late Retirement" means a Termination of Employment (except termination by death) occurring after a Bangor Group Participant's Normal Retirement Date.

(8)  "Late Retirement Date" means the last day of the month in which a Bangor Group Participant elects Late Retirement.

(9)  "Leave of Absence" means a Bangor Group Participant's absence from the performance of duties for an employer which is recognized by the Committee, under rules and policies uniformly applied to all Bangor Group Participants similarly situated, as being a period of service for purposes of this Appendix B-21. If a Bangor Group Participant does not return to service with the Company or a Related Company promptly after the expiration of a Leave of Absence, he shall not be deemed to have been on a Leave of Absence. The preceding sentence shall not apply, however, and each of the periods described above shall be deemed a Leave of Absence even though the Bangor Group Participant does not so return to service, if the period expires after the Bangor Group Participant's death or the first day upon which he would otherwise be eligible for Disability Retirement, Early Retirement, or Normal Retirement.

(10)  "Military Leave of Absence" means an absence from the performance of duties for an employer which is incurred by a Bangor Group Participant who leaves his employment to enter the Armed Forces of the United States and who returns to service with the Company or a Related Company within the period during which he has reemployment rights under federal law. If a Bangor Group Participant does not return to service within the time permitted by the preceding sentence, he shall not be deemed to have been on a Military Leave of Absence.

(11)  "Normal Retirement" means a Termination of Employment by a Bangor Group Participant (except termination by death) occurring on his Normal Retirement Date.

(12)  "Normal Retirement Date" means the last day of the month in which a Bangor Group Participant attains age sixty-five (65).

(13)  "Plan Year" means the twelve (12) consecutive month period commencing on January 1 and is the year on which records of the Bangor Plan are kept. Prior to January 1, 1990, the "Plan Year" was the twelve (12) month period which began September 1. The period from September 1, 1989 through December 31, 1989 was a short Plan Year.

(14)  A Bangor Group Participant's "Termination of Employment" shall be deemed to occur upon his resignation, discharge, retirement, cessation of active work, death or failure to return to the performance of duties at the end of a Leave of Absence or Military Leave of Absence, failure to return to work when duly called following a temporary layoff or upon the happening of any other event or circumstance which, under a collective bargaining agreement (or policy of the Company or a Related Company) as in effect from time to time, results in the termination of the employer-Bangor Group Participant relationship. A "Termination of Employment"

- 132 -

SPXP000380

shall not be deemed to occur upon a transfer between any combination of the Company or Related Companies.

(15)    "Vested Termination" means any Termination of Employment of a Bangor Group Participant (other than by reason of death) which is not a Disability Retirement, Early Retirement or Normal Retirement and after which the Bangor Group Participant is entitled to benefits pursuant to subsection (k).

SPXP000381

B-22    <u>Special Provisions for Participants Who Were Former Participants of Puerto Rico Hourly Employees' Pension Plan</u>.

(a)    <u>Merger</u>.  As of the close of business on December 31, 1993, the Company's Puerto Rico facility was closed.  As a result, the employment by the Company of all active Participants under the Puerto Rico Hourly Employees' Pension Plan (the "Puerto Rico Plan") terminated as of that date.  On December 31, 1993, such persons ceased to be "Employees" as that term was defined in the Puerto Rico Plan.

Effective as of the close of business on December 31, 1995, the liabilities and assets of the Puerto Rico Plan and its constituent trust fund were respectively merged into this Plan and into the SPX Corporation Pension Trust 2.  As a result of that merger, the benefits of former participants under the Puerto Rico Plan ("Puerto Rico Plan Participants") shall be paid by this Plan, subject to the terms of this Appendix B-22.  Such former Puerto Rico Plan Participants shall accordingly become Participants under this Plan, but solely within the terms of this Appendix B-22.

(b)    <u>Former Puerto Rico Plan Participants with Benefits Being Paid on December 31, 1995</u>.  Effective as of January 1, 1996, all benefits of former Puerto Rico Plan Participants which on December 31,1995 were —

        (1)    in pay status; **or**

        (2)    were the subject of a valid retirement benefit election or direction

shall become liabilities of this Plan and be paid by this Plan.  All such benefits shall be paid in accordance with the terms of the Puerto Rico Plan and shall be as disclosed by the records of the Puerto Rico Plan.

(c)    <u>Terminated Vested Puerto Rico Plan Participants with Benefits Not Being Paid on December 31, 1995</u>.  Effective as of January 1, 1996, all benefits of former Puerto Rico Plan Participants who had terminated employment with the Company prior to January 1, 1996 with a vested right to a retirement benefit under the Puerto Rico Plan but had not yet begun to receive that benefit shall become liabilities of this Plan and be paid by this Plan in accordance with this Appendix B-22.

Set forth in the records of this Plan is information needed to calculate the accrued benefit payable at Normal Retirement Age to former Puerto Rico Plan Participants.  Such benefits shall be expressed as a monthly payment of a lifetime only benefit commencing at age 65.  Benefits shall be payable to former Puerto Rico Plan Participants as follows:

        (1)    Any former Puerto Rico Plan Participant who had attained age 65 on December 31, 1995 shall be eligible for a normal retirement benefit as described in Section 4.1 of the Puerto Rico Plan.

        (2)    Any former Puerto Rico Plan Participant who had attained age 55 and had completed 10 or more Full Years of Service on December 31, 1995 shall

- 134 -

be eligible for an early retirement benefit as described in Section 4.3 of the Puerto Rico Plan.

(3)   Any former Puerto Rico Plan Participant not meeting the specifications described in paragraphs (1) or (2) above shall be eligible for a deferred vested retirement benefit as described in Section 4.2 of the Puerto Rico Plan.

(4)   All benefits provided pursuant to paragraphs (1), (2), and (3) above shall be subject to the annuity requirements specified in Section 6.6 of this Plan and be payable in the following optional forms provided under Sections 5.3 and 5.5 of the Puerto Rico Plan only (and not in the optional forms provided in Section 6.8 of this Plan):

    (i)     a lifetime only benefit;

    (ii)    a ten year period certain and life benefit;

    (iii)   a joint and 25% to survivor benefit;

    (iv)   a joint and 50% to survivor benefit;

    (v)    a joint and 75% to survivor benefit; .

    (vi)   a level income benefit that provides monthly payments which are larger before age 62 and smaller on or after age 62 than under the lifetime only benefit so as to produce, together with the former Puerto Rico Plan Participant's Social Security benefits, an approximately level total monthly income (at the former Puerto Rico Plan Participant's election, the level income benefit may be combined with the ten year period certain and life benefit in (ii) above or any of the joint and survivor benefits in (iii), (iv), or (v) above); and

    (vii)  a lump sum payment.

Lump sum payments shall be governed by Section 15 of this Plan.

(v)    All of the above described benefits shall be available for payment to former Puerto Rico Plan Participants on or after December 31, 1995. (Former Puerto Rico Plan Participants may elect to defer the commencement of any benefit of a present value greater than $5,000 and therefore not subject to mandatory immediate cash-out, all in accordance with Section 15 of this Plan.)

(d)   <u>Protection of Benefits</u>. Each former Puerto Rico Plan Participant (whether or not employed by the Company on December 31, 1995) shall receive a benefit under this Plan immediately after the merger and transfer of assets and liabilities described in subsection (a) above (if this Plan then terminated) which is equal to or greater than the benefit he or she would have been entitled to receive from the Puerto Rico Plan immediately before the merger (if the Puerto Rico Plan had then terminated).

SPXP000383

B-23  Special Provisions for Participants Who Were Former Participants of Sealed Power Technologies Limited Partnership Sealed Power Division -- (Ravenna Plant) Retirement Plan.

(a)  Merger. As of the close of business on April 26, 1994, the Company's Ravenna Plant was closed. As a result, the employment by the Company of all active participants under the Sealed Power Technologies, Limited Partnership Sealed Power Division -- (Ravenna Plant) Retirement Plan (the "Ravenna Plan") terminated as of that date. On April 26, 1994, such persons ceased to be "Employees" as that term was defined in the Ravenna Plan.

Effective as of the close of business on December 31, 1995, the liabilities and assets of the Ravenna Plan and its constituent trust fund were respectively merged into this Plan and into the SPX Corporation Pension Trust 2. As a result of that merger, the benefits of former participants under the Ravenna Plan ("Ravenna Plan Participants") shall be paid by this Plan, subject to the terms of this Appendix B-23. Such former Ravenna Plan Participants shall accordingly become Participants under this Plan, but solely within the terms of this Appendix B-23.

(b)  Former Ravenna Plan Participants with Benefits Being Paid on December 31, 1995. Effective as of January 1, 1996, all benefits of former Ravenna Plan Participants which on December 31, 1995 were --

(1)  in pay status; or
(2)  were the subject of a valid retirement benefit election or direction

shall become liabilities of this Plan and be paid by this Plan. All such benefits shall be paid in accordance with the terms of the Ravenna Plan and shall be as disclosed by the records of the Ravenna Plan.

(c)  Terminated Vested Ravenna Plan Participants with Benefits Not Being Paid on December 31, 1995. Effective as of January 1, 1996, all benefits of former Ravenna Plan Participants who had terminated employment with the Company prior to January 1, 1996 with a vested right to a retirement benefit under the Ravenna Plan but had not yet begun to receive that benefit shall become liabilities of this Plan and be paid by this Plan in accordance with this Appendix B-23.

Set forth in the records of this Plan is information needed to calculate the accrued benefit payable at Normal Retirement Age to former Ravenna Plan Participants. Such benefits shall be expressed as a monthly payment of a lifetime only benefit commencing at age 65. Benefits shall be payable to former Ravenna Plan Participants as follows:

(1)  Any former Ravenna Plan Participant who had attained age 65 on December 31, 1995 shall be eligible for a normal retirement benefit as described in Section 3.01 of the Ravenna Plan.

SPXP000384

(2)    Any former Ravenna Plan Participant who had attained age 55 on December 31, 1995 shall be eligible for an early retirement benefit as described in Section 3.02 of the Ravenna Plan.

(3)    Any former Ravenna Plan Participant not meeting the specifications described in paragraphs (1) or (2) above shall be eligible for a deferred vested retirement benefit as described in Section 3.03 of the Ravenna Plan.

(4)    All benefits provided pursuant to paragraphs (1), (2), and (3) above shall be subject to the annuity requirements specified in Section 6.7 of this Plan and be payable in the following optional forms provided under Sections 6.01 and 6.03 of the Ravenna Plan only (and not in the optional forms provided in Section 6.8 of this Plan):

        (i)    a lifetime only benefit; and

        (i)    a lump sum.

Lump sum payments shall be governed by Section 15 of this Plan.

(5)    All of the above described benefits shall be available for payment to former Ravenna Plan Participants on or after December 31, 1995. (Former Ravenna Plan Participants may elect to defer the commencement of any benefit of a present value greater than $5,000 and therefore not subject to mandatory immediate cash-out, all in accordance with Section 15 of this Plan.)

(d)    <u>Protection of Benefits</u>.  Each former Ravenna Plan Participant (whether or not employed by the Company on December 31, 1995) shall receive a benefit under this Plan immediately after the merger and transfer of assets and liabilities described in subsection (a) above (if this Plan then terminated) which is equal to or greater than the benefit he or she would have been entitled to receive from the Ravenna Plan immediately before the merger (if the Ravenna Plan had then terminated).

SPXP000385