(m) <u>Definitions</u>. For purposes of this Appendix B-32, the following words and phrases shall have the meanings stated in this Plan or stated below, unless a different meaning is plainly required by the context:

(1) "Benefit Rate" means the dollar amount used to determine a GSX McMinnville Employee's Normal Retirement Benefit during a Benefit Service Milestone.

(2) "Benefit Service" means service with GSX and the Employer used to determine a GSX McMinnville Employee's Benefit Service Milestone. Benefit Service shall include periods of participation in the GSX Hourly Plan and in any other retirement plan sponsored by GSX or the Employer.

(3) "Benefit Service Milestone" means a period, measured in intervals of ten (10) years of Benefit Service, during which a GSX McMinnville Employee's applicable Benefit Rate is in effect.

(4) "Credited Service" means service with GSX and the Employer that is used to calculate the amount of a GSX McMinnville Employee's retirement benefit under this Appendix B-32. Credited Service shall include a GSX McMinnville Employee's years and completed months of employment with GSX and the Employer from his date of hire (or the date he began participation in the GSX Hourly Plan, if he was formerly employed by Permaseal) to the date his employment with GSX or the Employer ends. Credited Service shall exclude any period during which a GSX McMinnville Employee is on a leave of absence or layoff. However, Credited Service shall include periods of absence while a GSX McMinnville Employee –

  (i) is being paid or receiving accident or sickness benefits from a plan that is financially supported by GSX or the Employer, as applicable;

  (ii) is entitled to receive benefits under the terms of a long-term disability plan that is financially supported by GSX or the Employer, as applicable; or

  (iii) is performing military duties as a member of the United States Armed Forces.

(5) "Early Retirement Age" means a GSX McMinnville Employee's age when he has both attained his fifty-fifth (55th) birthday (but not his sixty-fifth (65th) birthday) and completed at least five years of Continuous Service.

(6) "Early Retirement Date" means the first day of the calendar month coincident with or next following the date a GSX McMinnville Employee's Continuous Service terminates because of his early retirement on or after attainment of his Early Retirement Age but not his Normal Retirement Age.

(7) "Normal Retirement Age" means age sixty-five (65).

(8)  "Normal Retirement Date" means the first day of the calendar month coincident with or next following a GSX McMinnville Employee's attainment of Normal Retirement Age.

(9)  "Vested Termination Age" means the age when a GSX McMinnville Employee has completed five years of Continuous Service.

B-33 <u>Special Provisions for Employees of Valley Forge Marketing Corporation and Sun Advertising, Inc.</u> On June 30, 1998, the Company acquired Valley Forge Marketing Corporation and Sun Advertising, Inc. (collectively, "Valley Forge"). Effective January 1, 1999, former Valley Forge employees became eligible to participate in this Plan. For purposes of eligibility to participate in this Plan, the Continuous Service Commencement Date for such former Valley Forge employees shall be the first date each such employee first performed an hour of service with Valley Forge. For vesting purposes, the Continuous Service Commencement Date for such former Valley Forge employees shall be June 30, 1998. Each such employee shall automatically become a Participant in this Plan on January 1, 1999, provided that –

(a) the one-year anniversary of his Continuous Service Commencement Date for participation purposes occurred on or before January 1, 1999, **or**

(b) he is an Employee of the Company on or after January 1, 1999 on the one-year anniversary of his Continuous Service Commencement Date for participation purposes.

SPXP000430

B-34 <u>Special Provisions for Participants Who Terminated Employment with Company as a Result of Cessation of Company's Manufacturing Operations at its Facilities at Westford, Massachusetts and Shelton, Connecticut.</u>

(a) <u>Cessation of Manufacturing Operations.</u> In 1999, the Company will cease its manufacturing operations at its facilities at Westford, Massachusetts and Shelton, Connecticut, and certain Employees who were working at such locations and assigned to INRANGE Technologies projects (the "INRANGE Technologies Employees") will be terminated.

(b) <u>Vested Retirement Benefits for Terminated INRANGE Technologies Employees.</u> All INRANGE Technologies Employees who --

  (1)  were working at the Company's facilities at Westford, Massachusetts or Shelton, Connecticut in 1999;
  (2)  terminated their employment with the Company on or after May 1, 1999 as a result of the Company's cessation of its manufacturing operations at such facilities; and
  (3)  were Participants in the Plan on their date of termination

shall have fully vested and nonforfeitable rights to their retirement benefit under this Plan, regardless of their years of Continuous Service when they terminated. In addition, each such INRANGE Technologies Employee shall receive a special plant closing benefit (the "Plant Closing Benefit") from the Plan equal to 115% of such Employee's base weekly pay (as determined by the Company) multiplied by his complete years of Continuous Service (with a minimum of 4 years of Continuous Service and a maximum of 26 years of Continuous Service) as of his date of termination.

(c) <u>Time of Payment for Plant Closing Benefit.</u> An INRANGE Technologies Employee who is entitled to a Plant Closing Benefit pursuant to subsection (b) above shall be paid such benefit in the same manner as a Vested Benefit under Section 6.5. If an INRANGE Technologies Employee elects to defer receipt of his Plant Closing Benefit, such benefit shall be treated as a Principal Credit to his Account Balance as of December 31, 1999. The portion of his Account Balance attributable to his Plant Closing Benefit shall not be increased by Interest Credits pursuant to Section 5.3 during 1999.

(d) <u>Form of Payment for Plant Closing Benefit.</u> The Plant Closing Benefit provided pursuant to subsection (b) above shall be subject to the annuity requirements specified in Section 6.6 and be payable in the optional forms permitted under Sections 6.6., 6.7, and 6.8.

SPXP000431

B-35  <u>Special Provisions for Dual-Lite Employees</u>.  As of the close of business on March 24, 1999, the Company's Dual-Lite Division was sold. As a result, the employment by the Company of all Employees who were working at the Company's Dual-Lite Division ("Dual-Lite Employees") on March 24, 1999 terminated as of that date, and all Dual-Lite Employees ceased to be Employees as that term is defined under this Plan. By amendment of the Plan effective March 24, 1999, all Dual-Lite Employees who were employed by the Company on that date were deemed to be one hundred percent (100%) vested in their benefits accrued under the Plan as of that date.

SPXP000432

B-36  Special Provisions for Employees of Toledo Trans-Kit, Inc. On August 4, 1998, the Company acquired Toledo Trans-Kit, Inc. ("Trans-Kit"). Effective January 1, 1999, former Trans-Kit employees became eligible to participate in this Plan. For purposes of eligibility to participate in this Plan, the Continuous Service Commencement Date for such former Trans-Kit employees shall be the first date each such employee first performed an hour of service with Trans-Kit. For vesting purposes, the Continuous Service Commencement Date for such former Trans-Kit employees shall be August 4, 1998. Each such employee shall automatically become a Participant in this Plan on January 1, 1999, provided that –

(a)  the one-year anniversary of his Continuous Service Commencement Date for participation purposes occurred on or before January 1, 1999, or

(b)  he is an Employee of the Company on or after January 1, 1999 on the one-year anniversary of his Continuous Service Commencement Date for participation purposes.

B-37 <u>Frozen General Signal Cash Balance Plan</u>. On November 30, 1998, the General Signal Corporation Corporate Benefits Plan (the "GSX Benefits Plan") was merged into this Plan, its provisions were incorporated into the Plan by reference, and benefits for persons who terminated employment prior to such plan merger continued to be paid in accordance with the terms of the former GSX Benefits Plan.

The GSX Benefits Plan included a separate plan document called the "The Cash Balance Plan for Certain Groups of Employees of General Signal Corporation and Its Subsidiaries" (the "GSX Cash Balance Plan").

(a) The GSX Cash Balance Plan is hereby amended as follows:

(i) The Interest Credits made to Account Balances as of the end of each of the first three quarters of the 1996 plan year shall be increased by .04%.
(ii) Account Balances as of the end of the fourth quarter of 1996 shall be increased by .19%.
(iii) Account Balances as of the end of each quarter of the 1997 plan year shall be increased by .18%.
(iv) Account Balances as of the end of each quarter of the 1998 plan year shall be increased by .16%.
(v) Account Balances shall be increased to reflect the additional interest credits which would have been made had the foregoing amounts been credited at the end of each of the foregoing calendar quarters.

(b) Any terminated employee may elect at any time to receive a lump sum payment of the full value of his Account Balance or any other optional form of benefit available under the Plan; provided, however, that no such lump sum payment will be made unless and until the Participant and the Participant's spouse (if any) have given consent in writing to such a lump sum payment in lieu of the automatic joint and survivor benefits otherwise payable under the GSX Cash Balance Plan.

SPXP000434

B-37A <u>Special Provisions for Former Employees of North American Transformer.</u> On October 9, 1999, the Company acquired North American Transformer, Inc. ("NAT"), and it was merged into Waukesha Electric Corporation, a subsidiary of the Company. Employees of NAT who were participants in the Rockwell Automatic United Retirement Plan (the "Rockwell Plan") and were not members of a collective bargaining unit became eligible to participate in the Plan on the acquisition date. For purposes of eligibility to participate in this Plan and/or vesting purposes, the Continuous Service Commencement Date for such NAT employees is the date each such employee first performed an hour of service with NAT. Each such former NAT employee shall automatically become a participant in this plan on October 9, 1999, provided that—

(a) The one-year anniversary of his Continuous Service Commencement Date for participation purposes occurred on or before October 9, 1998 **or**

(b) He is an Employee of the Company on and after October 9, 1999 on the one-year anniversary of his Continuous Service Commencement Date for participation purposes.

SPXP000435

B-38. *Special Provisions for Former Best Power Employees.* On December 31, 1999, the Company, through General Signal Corporation and other subsidiaries, sold the assets of its Best Power business to Powerware Corporation ("Powerware"). Powerware did not assume any part of the Plan, and Best Power employees who became Powerware employees following the closing ceased to be Employees covered by this Plan. No further Principal Credits will be made to their Account Balances after December 31, 1999.

Former Best Power employees who did not have sufficient Continuous Service to be vested under the Plan on the sale date shall continue to be credited with Continuous Service under this Plan solely for purposes of eligibility to receive a deferred vested retirement benefit pursuant to Section 6.5 of the Plan. Continuous Service after the sale date shall be determined in accordance with the records of the tax-qualified retirement plan established by Powerware Corporation for former employees at Best Power. Inclusion of such vesting service under the Plan shall be dependent upon provision of information concerning post-sale service by Powerware, and no such service will be included unless and until such information is provided. A former Best Power employee who subsequently becomes vested in benefits accrued under the Plan prior to the sale shall be eligible to receive that benefit in accordance with the terms of the Plan as if that person had terminated employment on the date of vesting.

B-39 <u>Special Provisions for Members Who Were Former Participants of SPX Corporation Pension Plan No. 201.</u>

(a) <u>General</u>. Effective as of February 7, 1997, the assets of the Company's facility at St. John's, Michigan were sold to Dana Corporation ("Dana"). Certain employees working at that facility on February 7, 1997, were participants in SPX Corporation Pension Plan No. 201 ("Plan 201"). Under the terms of the sale, Dana did not assume any legal responsibility for maintaining Plan 201 after the closing. Accordingly, as a result of Dana's purchase of the Company's St. John's facility, persons who --

(i) were covered by Plan 201 on February 7, 1997; and

(ii) transferred to covered employment with Dana after February 7, 1997

(hereinafter "Dana Transferees") ceased to be eligible Employees under Plan 201 as of February 7, 1997, and their benefit under Plan 201 on February 7, 1997 became frozen, based on their years of Credited Service and the applicable benefit rate on that date. Except as otherwise provided under this Appendix B-39, Dana Transferees shall not receive credit for Continuous Service, Vesting Service, or Credited Service under Plan 201 for their employment with Dana after February 7, 1997.

(b) <u>Merger</u>. Effective as of the close of business on January 1, 2000, the liabilities and assets of Plan 201 and its constituent trust fund were merged into this Plan and into the SPX Corporation Master Retirement Trust, respectively. As a result of that merger, the benefits of former participants under Plan 201 ("Plan 201 Participants") shall be paid by this Plan, subject to the terms of this Appendix B-39. Such former Plan 201 Participants shall accordingly become Participants under this Plan, but solely within the terms of this Appendix B-39.

(c) <u>Former Plan 201 Participants with Benefits Being Paid on December 31, 2000</u>. Effective as of January 1, 2000, all benefits of former Plan 201 Participants whose benefits under Plan 201 were, as disclosed by the records of Plan 201 --

(i) in pay status prior to January 1, 2000; or

(ii) the subject of a valid retirement benefit election or direction prior to January 1, 2000,

shall become liabilities of this Plan and be paid by this Plan. All such benefits shall be paid in accordance with the terms of Plan 201 and shall be as disclosed by the records of Plan 201.

(d) <u>Terminated Vested Plan 201 Participants with Benefits Not Being Paid on January 1, 2000</u>. Effective as of January 1, 2000, all benefits of former Plan 201 Participants who had terminated employment with the Company prior to January 1, 2000, with a vested right to a retirement benefit under Plan 201 but had not yet begun to receive that benefit shall become liabilities of this Plan and be paid by this Plan in accordance with this Appendix B-39.

SPXP000437

Set forth in the records of this Plan is information needed to calculate the accrued benefits payable at Normal Retirement Age to former Plan 201 Participants. Such benefits shall be expressed as a monthly payment of a lifetime only benefit commencing at age 65. Benefits shall be payable to former Plan 201 Participants as follows:

(i) Any former Plan 201 Participant who attains Normal Retirement Age shall be eligible for a monthly normal retirement benefit, regardless of whether he is actively employed by Dana when he attains Normal Retirement Age, beginning at his Normal Retirement Date. Such benefit shall be equal to the sum of:

(A) the number of his years of Credited Service multiplied by the normal rate specified below based on the year of his termination of employment with the Company; and

(B) the number of his years of Credited Service in excess of 30 (to a maximum of seven such years) which were earned after his attainment of age 58 and before February 7, 1997, multiplied by the bonus rate specified below based on the year of his termination of employment with the Company.

| Retirement Date | Normal Rate | Bonus Rate |
|---|---|---|
| 1/1/89 -- 5/31/90 | 17.00 | 5.65 |
| 6/1/90 -- 12/31/91 | 18.00 | 5.65 |
| 1/1/92 -- 12/31/92 | 18.50 | 6.00 |
| 1/1/93 -- 12/31/93 | 19.00 | 6.00 |
| 1/1/94 -- 12/31/94 | 19.50 | 6.00 |
| 1/1/95 -- 6/30/95 | 20.00 | 6.00 |
| 7/1/95 -- 12/31/96 | 21.00 | 6.00 |
| 1/1/97 and thereafter | 23.00 | 6.00 |

A Participant's right to a normal retirement benefit shall become nonforfeitable upon attainment of Normal Retirement Age.

(ii) Any former Plan 201 Participant who:

(A) attained Early Retirement Age on or before February 7, 1997; or

(B) attains Early Retirement Age while employed by Dana at the St. John's, Michigan location after February 7, 1997 and terminates employment with Dana

shall be eligible for an early retirement benefit, beginning at his Early Retirement Date. Such benefit shall be an amount equal to his normal retirement benefit

- 190 -

under paragraph (i) above multiplied by the percentage set forth in the following table based on his attained age on the date benefits commence:

| AGE | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 47 | 30.4 | 30.6 | 30.8 | 31.0 | 31.2 | 31.4 | 31.6 | 31.8 | 32.0 | 32.2 | 32.4 | 32.6 |
| 48 | 32.8 | 33.0 | 33.2 | 33.5 | 33.7 | 33.9 | 34.1 | 34.3 | 34.5 | 34.8 | 35.0 | 35.2 |
| 49 | 35.4 | 35.6 | 35.9 | 36.1 | 36.4 | 36.6 | 36.9 | 37.1 | 37.3 | 37.6 | 37.8 | 38.1 |
| 50 | 38.3 | 38.6 | 38.8 | 39.1 | 39.4 | 39.6 | 39.9 | 40.2 | 40.4 | 40.7 | 41.0 | 41.2 |
| 51 | 41.5 | 41.8 | 42.1 | 42.4 | 42.7 | 43.0 | 43.3 | 43.5 | 43.8 | 44.1 | 44.4 | 44.7 |
| 52 | 45.0 | 45.3 | 45.7 | 46.0 | 46.3 | 46.6 | 47.0 | 47.3 | 47.6 | 47.9 | 48.3 | 48.6 |
| 53 | 48.9 | 49.3 | 49.6 | 50.0 | 50.3 | 50.7 | 51.0 | 51.4 | 51.8 | 52.1 | 52.5 | 52.8 |
| 54 | 53.2 | 53.6 | 54.0 | 54.4 | 54.8 | 55.2 | 55.6 | 55.9 | 56.3 | 56.7 | 57.1 | 57.5 |
| 55 | 57.9 | 58.4 | 58.8 | 59.3 | 59.8 | 60.2 | 60.7 | 61.2 | 61.6 | 62.1 | 62.6 | 63.0 |
| 56 | 63.5 | 64.0 | 64.5 | 65.0 | 65.5 | 66.0 | 66.4 | 66.9 | 67.4 | 67.9 | 68.4 | 68.9 |
| 57 | 69.4 | 69.9 | 70.4 | 70.8 | 71.3 | 71.8 | 72.3 | 72.8 | 73.3 | 73.7 | 74.2 | 74.7 |
| 58 | 75.2 | 75.7 | 76.1 | 76.6 | 77.1 | 77.5 | 78.0 | 78.5 | 78.9 | 79.4 | 79.9 | 80.3 |
| 59 | 80.8 | 81.3 | 81.8 | 82.3 | 82.8 | 83.3 | 83.7 | 84.2 | 84.7 | 85.2 | 85.7 | 86.2 |
| 60 | 86.7 | 87.3 | 87.8 | 88.4 | 88.9 | 89.5 | 90.0 | 90.6 | 91.1 | 91.7 | 92.2 | 92.8 |
| 61 | 93.3 | 93.9 | 94.4 | 95.0 | 95.5 | 96.1 | 96.6 | 97.2 | 97.8 | 98.3 | 98.9 | 99.4 |

62 or Over = 100%

provided, however, that for a Plan 201 Participant who has at least 30 years of Credited Service or whose age and years of Credited Service total at least 85, the monthly basic benefit otherwise payable to him after age 62 shall be increased to 100% of his normal retirement benefit under paragraph (i) above, based on his Credited Service at his Early Retirement Date.

(iii) Any former Plan 201 Participant who attains Normal Retirement Age and defers the commencement of his retirement benefit until his Deferred Retirement Age shall be eligible to receive a deferred retirement benefit, regardless of whether he is actively employed by Dana when he attains Deferred Retirement Age, beginning at the earlier of his Deferred Retirement Date or his Required Beginning Date under Section 6.11(c) of this Plan. Such benefit shall be an amount equal to the greater of:

(A) a monthly benefit determined under paragraph (i) above, based on his Credited Service and the provisions of this Appendix B-39 in effect on the earliest of February 7, 1997, his Deferred Retirement Date, or his Required Beginning Date; or

(B) his normal retirement benefit under paragraph (i) above at Normal Retirement Age, actuarially increased to reflect the commencement of his retirement benefit at his Deferred Retirement Date or his Required Beginning Date, as applicable.

(iv) (A) Any former Plan 201 Participant who --

(1) becomes a Dana Transferee;

- 191 -

  (2)  completes 10 or more years of Vesting Service;

  (3)  attains his Disability Retirement Date while employed by Dana at the St. John's, Michigan location; and

  (4)  ceases active employment with Dana on account of a Disability

shall be eligible for a monthly disability retirement benefit beginning at his Disability Retirement Date.

(B) A Plan 201 Participant's disability retirement benefit shall be equal to the sum of:

  (1) an amount computed in the same manner as a normal retirement benefit under paragraph (i) above at his Disability Retirement Date, as the basic benefit; and

  (2) an amount equal to $9.50 times his years of Credited Service (to a maximum of 25 such years) at the earlier of February 7, 1997 or his Disability Retirement Date, as the temporary benefit, such temporary benefit to be payable during the continuance of Disability only until the earlier of --

    (I) his attainment of age 65; or

    (II) the age at which he becomes or could have become eligible for a Federal Social Security Benefit for disability or an unreduced Federal Social Security Benefit for age,

at which age the temporary benefit shall cease to be payable.

(C) A Plan 201 Participant's disability retirement benefit shall be payable monthly for life during the continuance of his Disability, except that the temporary benefit under (B)(2) above shall cease as provided therein. A retired Plan 201 Participant who is receiving a disability retirement benefit may be required by the Committee to submit to a physical examination at any time prior to his attainment of age 65 to determine if the Disability still exists. If, on the basis of an examination, it is found that his Disability no longer exists, or if he engages in gainful employment, except for purposes of rehabilitation as determined by the Committee, he shall be deemed recovered, and his disability retirement benefit shall cease. If a retired Plan 201 Participant refuses to submit to any physical examination that has been properly requested under this Appendix B-39, his disability retirement benefit shall be discontinued until he is examined. If a retired

SPXP000440

Plan 201 Participant's disability retirement benefit under any other defined benefit plan sponsored by the Company ceases, his disability retirement benefit under this Appendix B-39 shall also cease.

(D) The Federal Social Security Benefit which is referred to in the determination of the cessation of the payment of the temporary benefit under (B)(2) above shall be included in such determination even though the Plan 201 Participant either does not apply for, or loses part or all of, such Federal Social Security Benefit payments through delay in applying for them, by entering into covered employment, or otherwise. If a Plan 201 Participant is eligible for a Federal Social Security Benefit at the time of retirement or thereafter, he shall provide the Committee with evidence of the effective date of entitlement to such benefit. If the Plan 201 Participant is not eligible to receive a Federal Social Security Benefit at the time of retirement, he shall, unless waived by the Committee, request the Social Security Administration (at least 30 days prior to retirement) to provide such data as may be necessary to estimate the effective date of entitlement to such Federal Social Security Benefit.

(E) A retired Plan 201 Participant's disability retirement benefit shall not be decreased by reason of any increase in the benefit levels payable under Title II of the Social Security Act or in the wage base under such Title II if such increase takes place after the earlier of:

(1) his Disability Retirement Date; or

(2) the date of his cessation of active employment with Dana at the St. John's, Michigan location.

(v) Any former Plan 201 Participant who does not meet the specifications described in paragraphs (i), (ii), (iii), or (iv) above and attains his Vested Retirement Age shall be eligible for a vested retirement benefit beginning at his Vested Retirement Date, regardless of whether he is actively employed by Dana when he satisfies the requirements for a vested retirement benefit. Such benefit shall be an amount equal to his normal retirement benefit under paragraph (i) above, based on his Credited Service and the provisions of Plan 201 or this Appendix B-39, as applicable, in effect at his termination of employment with the Company, and reduced by one-half percent (½%) for each complete calendar month the payment of such benefit precedes his Normal Retirement Date.

(vi) Any former Plan 201 Participant who meets the requirements set forth in (A) below shall be eligible to receive, on the following terms and conditions, a monthly supplemental benefit in addition to his retirement benefit.

(A) A former Plan 201 Participant who --

SPXP000441

  (1) retires --

    (I) under paragraph (ii) above after attaining his 55th birthday but before attaining his 62nd birthday, and his combined years of age and years of Credited Service (to the nearest 1/10th in each case) total at least 85; or

    (II) with at least 30 years of Credited Service; or

    (III) under paragraph (iv) above; and

  (2) files his application for a retirement benefit within two years of the last day he worked for the Company; and

  (3) agrees to restrict his participation in the work force in accordance with (F) below

shall be eligible to receive a monthly supplemental benefit. A Participant who is discharged for cause shall not be entitled to receive a supplemental benefit under this paragraph (vi).

(B) Subject to the other provisions of this paragraph (vi), the monthly supplemental benefit for a Plan 201 Participant who retires under this paragraph (vi) with 30 or more years of Credited Service shall be an amount which, when added to his monthly retirement benefit, equals the amount specified below based on the year of his Retirement Date. This amount shall cease to be payable upon his attainment of age 62.

| *Retirement Date* | *Benefit Amount* |
|---|---|
| 1989 – 1993 | $825 |
| 1994 | $850 |
| 1/1/95 – 6/30/95 | $875 |
| 7/1/95 – 12/31/96 | $950 |
| 1/1/97 and thereafter | $1050 |

(C) Subject to the other provisions of this paragraph (vi), the monthly supplemental benefit for a Plan 201 Participant who retires under this paragraph (vi) with fewer than 30 years of Credited Service, but whose combined years of age and years of Credited Service (to the nearest 1/10 in each case) total at least 85 on his Retirement Date, shall be the rate specified below multiplied by his years of Credited Service and multiplied by the percentage set forth in the table in paragraph (ii) above. This amount shall cease to be payable upon his attainment of age 62.

- 194 -

| *Retirement Date* | *Supplement Rate* |
|---|---|
| 1/1/89 -- 12/31/91 | $7.50 |
| 1/1/92 and thereafter | $8.00 |

(D) For any month prior to age 62 for which a Plan 201 Participant becomes or could have become eligible for a Federal Social Security Benefit for disability or an unreduced Federal Social Security Benefit for age, supplemental benefits payable under (B) or (C) above shall cease.

(E) If a Plan 201 Participant who is entitled to a supplemental benefit under (B) elects or is deemed to have elected an optional reduced form of benefit under in paragraph (viii) below, his supplemental benefit shall be computed on the basis of the monthly retirement benefit he would have received had he not elected the optional form of benefit.

(F) The supplemental benefit payable to a Plan 201 Participant shall begin on the first day of the month following the date on which he retires and shall be payable monthly thereafter until and including the first day of the month in which --

(1) he attains age 62;

(2) he dies; or

(3) his retirement benefit ceases for any other reason,

whichever first occurs. For Plan Years prior to January 1, 1995, supplemental benefits under this paragraph (vi) were reduced by earnings above a set limit. Such earnings limitations are described in Plan 201 as in effect prior to its merger into this Plan.

(G) If a Plan 201 Participant has been receiving a supplemental benefit under this paragraph (vi) and has also been receiving a disability retirement benefit under paragraph (iv) above and, on the basis of medical evidence satisfactory to the Committee, it is found that he is no longer totally and permanently disabled and his seniority is restored, or if he is reemployed by Dana, he shall not thereby forfeit any right he may thereafter have to receive a supplemental benefit under this paragraph (vi) if he thereafter retires under the benefit structure set forth in this Appendix B-39.

(H) If the total of a Plan 201 Participant's monthly retirement benefit under this Appendix B-39 and his monthly supplemental benefit under this paragraph (vi) exceeds 70% of his final base pay, his monthly

SPXP000443

supplemental benefit (but not his monthly retirement benefit) shall be reduced to the extent required so that the sum of monthly retirement benefit plus his monthly supplemental benefit equals 70% of his final base pay. For this purpose, "final base pay" shall have the following meanings:

(1) If he is an hourly rate person at the time of his retirement, his regular hourly job rate at such time multiplied by 173-1/3, and then rounded to the nearest whole dollar; or

(2) If he is a salaried person at the time of his retirement, one-twelfth of his annual base salary rate at such time rounded to the nearest whole dollar.

(I) If a Plan 201 Participant is also a participant in another defined benefit plan sponsored by the Company which provides a supplemental benefit similar to the supplemental benefit under this Appendix B-39, then the supplemental benefit under this Appendix B-39, when added to the supplemental benefit (if any) payable under any other Company-sponsored defined benefit plan, shall not exceed the supplemental benefit which he would have been entitled to receive under whichever plan (either such other plan or the separate benefit structure set forth in Appendix B-39 of this Plan) in which he was an active participant at the time his Continuous Service terminates because of his retirement if all his Credited Service under all plans would have been used under such final plan to compute his basic retirement benefit and his supplemental benefit thereunder. The supplemental benefit under all plans will be reduced as necessary to effect this limitation, and proportionately if supplemental benefits are payable under more than one plan.

(vii) All benefits provided pursuant to paragraphs (i), (ii), (iii), (iv), (v), and (vi) above shall be subject to reduction for Worker's Compensation benefits as follows:

(A) In determining the monthly retirement benefits payable to any retired or terminated Plan 201 Participant, such benefits shall be reduced, unless prohibited by law, for all or any part of any Worker's Compensation benefits payable to such retired or terminated Plan 201 Participant by reason of any law of the United States, the state in which the Participating Group is located, or any political subdivision of either, which has been or shall be enacted; provided, however, that such reductions shall be made to the extent that such Worker's Compensation benefits have been provided by premiums, taxes or other payments paid by the Company or at the Company's expense; provided further, that payments specifically allocated for hospitalization or medical expenses, fixed statutory payments for the loss of or 100% loss of use of any bodily member, payments for loss of industrial vision, or redemption awards payable prior to the date monthly

SPXP000444

retirement benefits first become payable shall not be deducted from a Plan 201 Participant's monthly retirement benefits.

(B) If the benefits deductible under (A) above are stated as a specified amount per week for a designated calendar period, then the monthly amount shall, for purposes of this paragraph (vii), be 4-1/3 times such weekly amount. For any calendar month during which the amount of benefits deductible under (A) above, when thus computed on a monthly basis, exceeds the amount of the monthly retirement benefit otherwise payable for that month, no monthly retirement benefit shall be payable. For any calendar month in which the amount of benefits deductible under (A) above, when computed on a monthly basis, is less than the monthly retirement benefit payable for that month, such lesser amount shall be deducted from the retirement benefit payable for that month.

(C) Lump sum awards providing for payment in advance of such deductible Worker's Compensation benefits which are definitely allocable to specific weeks in a calendar period shall be deducted on the same basis as if the award had been payable on a weekly basis.

(D) If such deductible Worker's Compensation benefits are not allocable to any specific calendar period, including redemption awards payable subsequent to the date monthly retirement benefits first become payable, then an equivalent monthly amount of such award shall be computed, for purposes of this paragraph (vii), as 4-1/3 times the amount of weekly Worker's Compensation benefit provided for the retired or terminated Plan 201 Participant and his dependents. The total Worker's Compensation award shall be divided by such computed equivalent monthly amount to determine the number of months and fractions of months during which monthly retirement benefits are not payable.

(viii) All benefits provided pursuant to paragraphs (i), (ii), (iii), (iv), (v), and (vi) above shall be subject to the annuity requirements specified in Section 6.6 of this Plan and be payable in the following optional forms only (and not in the optional forms provided in Section 6.8 of this Plan) except that for those Plan 201 Participants eligible for benefits under paragraph (vi), only the optional forms (A) and (C) shall be available:

(A) a joint and 50%, 66 2/3%, 75%, or 100% survivor benefit;

(B) a 10, 15, or 20 year period certain and life benefit;

(C) a life only benefit; or

SPXP000445

    (D)    a voluntary cashout, for any vested benefit that has a present value greater than $5,000 and less than $25,000, in accordance with Section 15.1(b)(i) of this Plan.

In the case of a Plan 201 Participant whose benefits are subject to redetermination upon attainment of eligibility for Federal Social Security Benefits for age, the amount of reduction in the monthly basic benefit under a survivor benefit election that becomes available before such Plan 201 Participant would have become eligible for Federal Social Security Benefits for age shall be based on the monthly basic benefit that would have been payable to the Plan 201 Participant after becoming eligible for Federal Social Security Benefits for age.

(ix)    All of the above described benefits shall be available for payment to former Plan 201 Participants on or after December 31, 2000. (Former Plan 201 Participants may elect to defer the commencement of any benefit having a present value greater than $5,000 and therefore not subject to mandatory immediate cashout, all in accordance with Section 15 of this Plan.)

(e)    <u>Continuous Service and Vesting Service for Dana Employment</u>. Dana Transferees shall not be credited with Continuous Service or Vesting Service under this Appendix B-39 for employment with Dana after February 7, 1997, except for purposes of attaining Early Retirement Age, Disability Retirement Age, and Vested Retirement Age, under this Appendix B-39. For such purposes, their Continuous Service and Vesting Service after February 7, 1997 shall be determined in accordance with the records of the tax-qualified retirement plan established by Dana for Dana Transferees (the "Dana Plan").

(f)    <u>Credited Service for Dana Employment</u>. The amount of any Dana Transferee's benefit under this Plan shall be determined on the basis of his years of Credited Service and the applicable benefit rate on February 7, 1997. Dana Transferees shall not be credited with Credited Service under this Appendix B-39 for employment with Dana after February 7, 1997, except for purposes of --

(i)    attaining Early Retirement Age; and

(ii)    eligibility to receive a supplemental benefit pursuant to subsection (d)(vi) above.

For such purposes, their Credited Service after February 7, 1997 shall be determined in accordance with records maintained by the Dana Plan.

(g)    <u>Protection of Benefits</u>. Each Plan 201 Participant (whether or not actively employed by the Company on January 1, 2000) shall be entitled to receive a benefit under this Plan immediately after the merger and transfer of assets and liabilities described in subsection (b) above (if this Plan then terminated) which is at least equal to the benefit he would have been entitled to receive from Plan 201 immediately before the merger (if Plan 201 had then terminated).

SPXP000446

(h) <u>Definitions</u>. For purposes of this Appendix B-39, the following words and phrases shall have the meanings stated in this Plan or stated below, unless a different meaning is plainly required by the context:

(i) "Continuous Service" or "Vesting Service" means the years and fractional parts of years of service of a Plan 201 Participant computed under Section 2.1(g) of Plan 201 for the purpose of determining his eligibility for a disability retirement benefit or a vested retirement benefit under Plan 201.

(ii) "Credited Service" means the years and fractional parts of years of service of a Plan 201 Participant computed under Section 2.1(h) of Plan 201 for the purpose of determining the amount of a benefit payable under Plan 201 and his eligibility for an early retirement benefit under Plan 201.

(iii) "Disability" means permanent, total, and unavoidable incapacity by bodily injury or disease which prevents a Plan 201 Participant who is a Dana Transferee from engaging in any occupation or employment for remuneration or profit, except for purposes of rehabilitation as determined by the Committee. Any injury or disease shall be considered avoidable if it --

(A) was contracted, suffered, or incurred while engaging in a criminal enterprise;

(B) resulted from habitual drunkenness or addition to narcotics; or

(C) was intentionally self-inflicted.

The determination as to the Disability of a Plan 201 Participant shall be the responsibility of the Company physician, who shall advise the Committee as to his determination.

(iv) "Participating Group" means all former Plan 201 Participants employed by Dana whose payroll status is wage, excluding, however, any salaried employees.

(v) "Retirement Age" means a Plan 201 Participant's Normal Retirement Age, Early Retirement Age, Deferred Retirement Age, Disability Retirement Age, or Vested Retirement Age, whichever is applicable, as follows:

(A) "Normal Retirement Age" means the date on which a Plan 201 Participant has both reached age 65 and completed five (5) years of participation in Plan 201 and the benefit structure set forth in this Appendix B-39.

(B) "Early Retirement Age" means a Plan 201 Participant's age when he has --

- 199 -

SPXP000447