(1)    both attained his 60th birthday (but not his 65th) and completed ten years of Vesting Service;

       (2)    both attained his 55th birthday and his combined years of age and years of Credited Service (to the nearest 1/10 in each case) shall total 85;

       (3)    has accrued thirty (30) years of Credited Service at any age; or

       (4)    both attained his 55th birthday (but not his 65th birthday) and completed 10 years of Vesting Service, in the case of a person who was a Participant or Inactive Participant on or before December 31, 1980 and who has not, on or after January 1, 1981, lost all Vesting Service hereunder by reason of a Break in Service as defined in Section 2.1(d) of Plan 201.

(C)     "Deferred Retirement Age" means a Plan 201 Participant's age upon his actual date of retirement which occurs subsequent to his Normal Retirement Age.

(D)     "Disability Retirement Age" means a Plan 201 Participant's age when he has --

       (1)    completed ten years of Vesting Service; **and**

       (2)    incurred a Disability.

(E)     "Vested Retirement Age" means the age, prior to his Early Retirement Age, when a Plan 201 Participant has completed five years of Vesting Service.

(vi)     "Retirement Date" means a Plan 201 Participant's Normal Retirement Date, Early Retirement Date, Deferred Retirement Date, Disability Retirement Date, or Vested Retirement Date, whichever is applicable, as follows:

(A)     "Normal Retirement Date" means the first day of the calendar month coincident with or next following the date a Plan 201 Participant's Continuous Service terminates because of his normal retirement on or after the attainment of his Normal Retirement Age.

(B)     "Early Retirement Date" means the first day of the calendar month coincident with or next following the date a Plan 201 Participant terminates employment with the Company or with Dana, at the St. John's location, if later, because of his early retirement (and not for Disability) on

SPXP000448

or after the attainment of his Early Retirement Age but not his Normal Retirement Age.

(C)   "Deferred Retirement Date" means for a Plan 201 Participant who continues in the employ of Dana after attaining Normal Retirement Age, the first day of the calendar month coincident with or next following the date the Plan 201 Participant terminates his Continuous Service.

(D)   "Disability Retirement Date" means the first day of the calendar month coincident with or next following the later to occur of--

   (1)   the date as of which the Committee determines the Disability was incurred after the Plan 201 Participant's Disability Retirement Age, or

   (2)   the date following the last day for which he receives salary continuation for Disability, provided he is a Dana Transferee on the later to occur of said two dates.

(E)   "Vested Retirement Date" means for a Plan 201 Participant who terminates employment with the Company or with Dana at the St. John's, Michigan location, if later, after the attainment of Vested Retirement Age for reasons other than Disability or early or normal retirement or death, the first day of any calendar month coincident with or next succeeding his Early Retirement Age on which he makes application for a vested retirement benefit.

SPXP000449

B-40   <u>Special Provisions for Participants Who Terminated Employment with the Company as a Result of Cessation of Company's Manufacturing Operations at its Power Team Facility in Owatonna, Minnesota.</u>

(a)   <u>Cessation of Manufacturing Operations.</u> In 2001, the Company will cease its manufacturing operations at its facility in Owatonna, Minnesota, and certain Employees who were working at such location and assigned to Power Team (the "Power Team Employees") will be terminated.

(b)   <u>Vested Retirement Benefits for Terminated Power Team Employees.</u> All Power Team Employees who --

(1)   were working at the Company's facility in Owatonna, Minnesota;

(2)   terminated their employment with the Company on or after October 1, 2000 as a result of the Company's cessation of its manufacturing operations at such facilities; and

(3)   were Participants in the Plan on their date of termination

shall have fully vested and nonforfeitable rights to their retirement benefit under this Plan, regardless of their years of Continuous Service when they terminated. In addition, each such Power Team Employee shall receive a special plant closing benefit (the "Plant Closing Benefit") from the Plan equal to 115% of such Employee's base weekly pay (as determined by the Company) multiplied by his complete years of Continuous Service (with a minimum of 4 years of Continuous Service and a maximum of 26 years of Continuous Service) as of his date of termination.

(c)   <u>Time of Payment for Plant Closing Benefit.</u> A Power Team Employee who is entitled to a Plant Closing Benefit pursuant to subsection (b) above shall be paid such benefit in the same manner as a Vested Benefit under Section 6.5. If a Power Team Employee elects to defer receipt of his Plant Closing Benefit, such benefit shall be treated as a Principal Credit to his Account Balance as of December 31, 2000, if such Employee is terminated in 2000, and December 31, 2001, if the Employee is terminated in 2001. The portion of his Account Balance attributable to his Plant Closing Benefit shall not be increased by Interest Credits pursuant to Section 5.3 during the year of termination.

(d)   <u>Form of Payment for Plant Closing Benefit.</u> The Plant Closing Benefit provided pursuant to subsection (b) above shall be subject to the annuity requirements specified in Section 6.6 and be payable in the optional forms permitted under Sections 6.6., 6.7, and 6.8. Power Team Employees may make a separate election for the Plant Closing Benefit.

SPXP000450

B-41 **Special Provisions for Participants Who Terminated Employment with the Company as a Result of Cessation of Company's Manufacturing Operations at its Filtran Facility in Toledo, Ohio.** Effective as of April 16, 2001:

(a) <u>Cessation of Manufacturing Operations</u>. In 2001, the Company will cease its manufacturing operations at its facility in Toledo, Ohio, and certain Employees who were working at such location and assigned to Filtran (the "Filtran Employees") will be terminated. For purposes of this Appendix B-41, a Filtran Employee shall include any Employee on approved leave of absence and any individual who was laid-off pursuant to the February, 2001 lay-off (to the extent such individual is eligible to participate in the Plan); however, a Filtran Employee shall not include any individual with an employment agreement or who is not eligible to participate in the Plan.

(b) <u>Vested Retirement Benefits for Terminated Filtran Employees</u>. All Filtran Employees who –

    i) were working at the Company's facility in Toledo, Ohio;

    ii) terminated their employment with the Company as follows:

        (1) on the earlier of each such Filtran Employee's established termination date or June 29, 2001; or

        (2) pursuant to the February, 2001 layoff and fails to return to work after recall; and

    iii) were Participants in the Plan on their date of termination

shall have fully vested and nonforfeitable rights to their retirement benefit under this Plan, regardless of their years of Continuous Service when they terminated.

In addition, each such Filtran Employee shall receive a special plant closing benefit (the "Plant Closing Benefit") from the Plan equal to 115% of such Employee's base weekly pay (as determined by the Company) multiplied by his complete years of Continuous Service (with a minimum of 4 years of Continuous Service and a maximum of 26 years of Continuous Service) as of his date of termination. For the limited purposes of determining the Plant Closing Benefit, a Filtran Employee's Continuous Service shall include his service with Toledo Trans-Kit, Inc.

Any Filtran Employee who terminates employment prior to their established termination date, shall not have fully vested nonforfeitable rights to their retirement benefit under the Plan or receive a Plant Closing Benefit from the Plan.

SPXP000451

(c) <u>Time of Payment for Plant Closing Benefit</u>. A Filtran Employee who is entitled to a Plant Closing Benefit pursuant to subsection (b) above shall be paid such benefit in the same manner as a Vested Benefit under Section 6.5. If a Filtran Employee elects to defer receipt of his Plant Closing Benefit, such benefit shall be treated as a Principal Credit to his Account Balance as of December 31, 2001, if the Employee is terminated in 2001. The portion of his Account Balance attributable to his Plant Closing Benefit shall not be increased by Interest Credits pursuant to Section 5.3 during the year of termination.

(d) <u>Form of Payment for Plant Closing Benefit</u>. The Plant Closing Benefit provided pursuant to subsection (b) above shall be subject to the annuity requirements specified in Section 6.6 and be payable in the optional forms permitted under Sections 6.6., 6.7, and 6.8. Subject to a Filtran Employee's election to defer receipt of his Plant Closing Benefit as described in subsection (c) above, such Filtran Employee may make a separate election for the Plant Closing Benefit.

SPXP000452

B-42  <u>Special Provisions for Former Engineered Ceramics Employees</u>. On February 23, 2001, the Company sold the assets of its Engineered Ceramics Division to Selee Corporation. As a result, the employment by the Company of the Employees who were working at the Company's Engineered Ceramics Division on February 23, 2001, terminated as of such date, and all such Employees ceased to be Employees as that term is defined in the Plan. Effective as of February 23, 2001, all Employees terminated as a result of such sale and who were Participants as of such date, are deemed to be one-hundred percent (100%) vested in their benefits accrued under the Plan as of such date.

SPXP000453

B-43  <u>Special Provisions for Former GS Electric Company Employees</u>. On May 18, 2001, the Company sold the assets of its GS Electric Company division to Ametek, Inc. As a result, Employees who were employed by the Company at its GS Electric Company division on May 18, 2001, terminated as of such date, and all such Employees ceased to be Employees as that term is defined in the Plan. Further, effective as of May 18, 2001, all Employees terminated as a result of such sale and who were Participants as of such date, are deemed to be one-hundred percent (100%) vested in their benefits accrued under the Plan as of such date.

B-44 <u>Special Provisions for Participants Who Terminated Employment with the Company as a Result of the Acquisition of United Dominion Industries Limited</u>. Effective May 24, 2001, the Company acquired United Dominion Industries Limited ("UDI"). As a result of this acquisition, the Company will be restructuring its business operations and certain individuals who became employees of the Company as a result of the acquisition of UDI (the "UDI Employees") will be terminated. For purposes of this Appendix B-44, UDI Employees shall only include domestic employees of UDI.

(a) <u>Voluntary Separation Program</u>. The following provisions apply to the Voluntary Separation Program (the "VSP") benefits that the Company shall offer to selected UDI Employees during the period between June 29, 2001 and August 24, 2001:

  i) <u>Eligibility</u>. A UDI Employee shall be eligible for the VSP, if he meets all of the following conditions:
  (1) He is at least 40 years of age as of May 25, 2001 and hired on or before May 25, 1996;
  (2) He is not covered by a collective bargaining agreement unless such collective bargaining agreement expressly provides for eligibility;
  (3) He is not employed by the Company at the UDI corporate office;
  (4) His department or division is participating in the VSP; and
  (5) He files with the Company a VSP benefit application, in a form prepared by the Company, by 12:00 noon (local time), August 31, 2001 or 45 days after receipt of the VSP informational packet which includes the VSP benefit application and separation agreement and general release, whichever is later.

  ii) <u>VSP Benefit</u>. The VSP benefit shall be equal to the sum of the following:
  (1) 10% of annual base pay;
  (2) 3% of annual base pay times years of service (up to a maximum of 26 years); and
  (3) $1,400 transition benefit (collectively, the "VSP Benefit").

  iii) <u>Miscellaneous</u>.
  (1) <u>Voluntary Separation Prior to June 29, 2001</u>. If a UDI Employee voluntarily separates from service after May 24, 2001 but prior to June 29, 2001 and meets the eligibility requirements of Appendix B-44(a)(i), subject to the other requirements of Appendix B-44(a), he shall be eligible to receive a VSP Benefit.
  (2) <u>Termination Date</u>. A UDI Employee shall not receive a VSP Benefit if he separates from service prior to the termination date established by the Company (the "Termination Date").
  (3) <u>Separation Agreement and General Release</u>. The VSP Benefit shall only be paid to a UDI Employee, if such UDI Employee has executed a valid separation agreement in a form prescribed by the Company, which may include among other items, a general release and a covenant not to compete with geographic, temporal and

SPXP000455

subject matter restrictions, as determined by the Company, and has not revoked such separation agreement during the applicable revocation period.

(4) <u>Later Separations</u>. If a UDI Employee is otherwise eligible for the VSP and is identified for possible involuntary termination on or before September 15, 2001, the Company may in its sole discretion offer that UDI Employee the VSP notwithstanding the fact that such offer is made after August 24, 2001.

(5) <u>Incapacitation</u>. If a UDI Employee is mentally incapacitated at the time he receives his VSP informational packet, and the UDI Employee is unable to make an informed decision regarding the VSP because of such incapacitation, upon providing medical evidence of such incapacitation satisfactory to the Company on or before December 31, 2001, such UDI Employee shall have thirty (30) days to file a VSP benefit application with the Company. If such period of incapacitation is longer than one year from receipt of the VSP informational packet, such UDI Employee shall be precluded from electing the VSP.

(b) <u>Involuntary Separation Program</u>. The following provisions apply to the Involuntary Separation Program (the "ISP") benefits that the Company shall offer to selected UDI Employees during the period between May 30, 2001 and December 31, 2002:

i) <u>Eligibility</u>. A UDI Employee shall be eligible for the ISP, if he meets all of the following conditions:
   (1) He is not covered by a collective bargaining agreement unless such collective bargaining agreement expressly provides for eligibility;
   (2) He is not employed by the Company at the UDI corporate office;
   (3) He is designated by the Company to be eligible for the ISP; and
   (4) He files with the Company an ISP benefit application, in a form prepared by the Company, by the close of business on his Termination Date or 45 days after receipt of the ISP informational packet which includes the ISP benefit application and separation agreement and general release, whichever is later.

ii) <u>ISP Benefit</u>. The ISP benefit shall be equal to the sum of the following:
   (1) 6.6% of annual base pay;
   (2) 2.25% of annual base pay times years of service (up to a maximum of 26 years); and
   (3) $1,400 transition benefit (collectively, the "ISP Benefit").

iii) <u>Miscellaneous</u>.
   (1) <u>Separation Agreement and General Release</u>. The ISP Benefit shall only be paid to a UDI Employee, if such UDI Employee has

SPXP000456

   executed a valid separation agreement in a form prescribed by the Company, which may include among other items, a general release and a covenant not to compete with geographic, temporal and subject matter restrictions, as determined by the Company, and has not revoked such separation agreement during the applicable revocation period.

  (2) <u>Termination Date</u>.  A UDI Employee shall not receive an ISP Benefit if he separates from service prior to his Termination Date.

  (3) <u>VSP Benefit</u>.  Subject to the requirements to this subsection (b), certain UDI Employees who meet the requirements of Appendix B-44(a)(i)(1) may be provided with a VSP Benefit as reflected on the Company's records.

(c) <u>Withholding of Payment</u>.  If, at any time, the Company determines, in its discretion, that a UDI Employee has engaged in any action that would have resulted in such UDI Employee's termination of employment, including but not limited to the failure to adequately perform assigned work, the violation of a Company policy or the commission of any act that is detrimental to the Company, the Company may withhold any and all payments otherwise required under this Appendix B-44.

(d) <u>Forms of Payment</u>.  Benefits provided under the ISP and VSP shall be subject to the annuity requirements of Section 6.6 and payable in the form of a lump sum as provided under Option 7 of Section 6.8.

(e) <u>Definitions</u>.  For purposes of this Appendix B-44, the following terms shall have the following meanings:

 i) "Annual base pay" shall be equal to a UDI Employee's annual base rate of pay as of May 25, 2001 or such UDI Employee's annual base rate of pay as of the date he separates from service, whichever is greater.

  (1) For a part-time UDI Employee, his "annual base pay" for the 2001 year shall be his average gross pay for the 1999 and 2000 taxable years.  For the 2002 year, "annual base pay" shall be his average gross pay for the 2000 and 2001 taxable years.

  (2) For commission UDI Employees, his "annual base pay" for the 2001 year shall be his average gross pay for the 1999 and 2000 taxable years.  For the 2002 year, "annual base pay" shall be his average gross pay for the 2000 and 2001 taxable years.

 ii) "Years of service":

  (1) under the VSP shall be the elapsed time from a UDI Employee's date of hire to August 31, 2001, rounded to the nearest year.

SPXP000457

(2)　under the ISP shall be the elapsed time from a UDI Employee's date of hire to the earlier of such UDI Employee's Termination Date or December 31, 2002, rounded to the nearest year.

SPXP000458