# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THOMAS D. GILLIS, )
                  )
        Plaintiff )
                  )
vs.               )   Civil Action No.: 03-12389-GAO
                  )
SPX CORPORATION INDIVIDUAL ACCOUNT )
RETIREMENT PLAN and SPX RETIREMENT )
ADMINSTRATIVE COMMITTEE )
        Defendants )

## COMPLAINT

### INTRODUCTION

1. In this action, Thomas D. Gillis seeks relief against the Defendant, SPX Corporation Individual Account Retirement Plan ("SPX Plan," or "Plan"), on account of the Plan's violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Pursuant to §502(a)(1)(B) of ERISA, Mr. Gillis, in his capacity as a Plan participant, makes this demand for the unpaid benefits due him under that Plan. In addition, Mr. Gillis seeks to recover reasonable attorneys' fees and costs under §502(g)(1) of ERISA as well as on those amounts and on his pension that was never paid to him. Mr. Gillis also seeks relief under §502(c)(1) against the SPX Corporation Retirement and Welfare Plan Administrative Committee ("Plan Administrator") for its excessive delay in providing him with requested information to which he has a right under ERISA.

2. The base for Mr. Gillis' claims for relief against the SPX Plan are: (a) that the calculation of his benefit under the Plan impermissibly shortchanged him of his pension;

1

and, (b) the Plan Administrator's calculation of Mr. Gillis' lump sum benefit under the Plan neither complied with the terms of the Plan, nor applicable law.

3. The basis for Mr. Gillis' claim for relief against the Plan Administrator is that it delivered Plan documents more than 30 days after Mr. Gillis' initial request for such documents, in violation of applicable law, and, as a result, Mr. Gillis suffered financial harm.

## PARTIES

4. Mr. Gillis is an individual residing in Ashland, Massachusetts.

5. The SPX Plan is a cash balance, defined benefit plan sponsored by SPX Corporation which has its principal place of business in Charlotte, North Carolina.

6. The Plan Administrator is comprised of SPX Corporation employees who are appointed by the Board of Directors of SPX Corporation.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the dispute described in this Complaint pursuant to 28 U.S.C. §1331 (federal question).

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this dispute occurred within this district and because the SPX Plan and the SPX Plan Administrator are subject to personal jurisdiction in this judicial district.

## FACTS
## BACKGROUND

9. At all times relevant hereto, Mr. Gillis had worked for SPX Corporation and its predecessors out of the district sales office located in Massachusetts.

10. Mr. Gillis became a participant of the Plan through his employment with SPX Corporation ("SPX").

2

11. Mr. Gillis' total pension is comprised of his benefit accruals under the pension programs of the three companies, Blue M Electric, General Signal Corporation and SPX Corporation, that sponsored the Plan, or one of its predecessors, in which Mr. Gillis participated.

12. Mr. Gillis accrued benefits under the Blue M Electric Pension Plan ("Blue M Plan") from May 10, 1965 to July 1, 1982. General Signal Corporation ("GSX") purchased Blue M Electric in 1981 and merged the Blue M Plan with the Corporate Retirement Plan of General Signal Corporation ("GSX Plan") in 1982. Mr. Gillis thereafter accrued benefits under the GSX Corporate Plan beginning July 1, 1982 and ending on November 30, 1998. On November 30, 1998, the GSX Corporate Plan was merged with the SPX Plan as a result of GSX's merger with SPX.

13. The SPX Plan, a defined benefit plan, was amended as of July 1, 1997 to switch from a final average pay plan to a cash balance plan.

14. A cash balance plan is a type of defined benefit plan that typically defines the benefits of an employee by reference to the employee's hypothetical account to which hypothetical principal allocations and interest adjustments are made each year. Under a cash balance plan, an employee does not have an actual account to which the employer makes contributions, as in the case of a defined contribution plan. Rather, the hypothetical account in a cash balance plan serves as a basis for tracking the accrual of benefits which must meet certain legal requirements. For example, when an employee terminates employment prior to normal retirement age, he or she is, by law, entitled to his or her vested "accrued benefit" or its actuarial equivalent which includes interest adjustments through normal retirement age.

15. In order to determine Mr. Gillis' accrued benefit under the cash balance formula, the SPX Plan converted his accrued benefit in the GSX Corporate Plan, which included his Blue M Plan accrued benefit, to its lump sum actuarial equivalent[1] on December 31, 1998 and treated this sum as his "opening Account Balance" under the SPX Plan.

16. Under the terms of the SPX Plan, Mr. Gillis' opening Account Balance includes the early retirement subsidy to which Mr. Gillis was entitled under the prior GSX Corporate Plan.

17. Under the terms of the SPX Plan, Mr. Gillis' GSX service was treated as Continuous Service under the SPX Plan.

18. After 1998, Mr. Gillis was credited with new service under the SPX Plan, based on his employment with SPX and he accrued benefits under the SPX Plan until his early retirement from the SPX Corporation, on June 21, 2002, at age 59½.

19. On or about October 22, 2001, Mr. Gillis sent a written request to the Plan Administrator for Plan documents which were not sent until July 18, 2002, in response to the demand of Mr. Gillis' attorney.

20. On or about September 27, 2002, Mr. Gillis submitted a claim for benefits under the SPX Plan for unpaid benefits due him under the Plan.

21. On March 18, 2003, the SPX Plan Administrator denied Mr. Gillis' initial claim of September 27, 2002 for a properly calculated lump sum distribution.

22. In accordance with the procedures outlined in the SPX Plan Administrator's March 18, 2003 letter, on May 2, 2003 Mr. Gillis submitted an administrative appeal of the Plan Administrator's denial of his unpaid benefits.

---

[1] Mr. Gillis' accrued benefit under the GSX and Blue M Plans was originally expressed as a monthly payment for his life or life expectancy. The present value of this stream of payments, expressed as a lump sum, is the actuarial equivalent of those payments. Reasonable actuarial assumptions stated in the SPX Plan are allowed by law to be used to find the actuarial value of Mr. Gillis "opening Account Balance" in the SPX Plan. The actuarial assumptions on which actuarial equivalents are based include a particular mortality table and interest rate assumptions.

4

23. The SPX Plan Administrator did not respond to Mr. Gillis' appeal within 180 days, effectively denying Mr. Gillis' appeal.

## OVERVIEW OF BENEFITS UNDER SPX PLAN

24. The SPX Plan, as amended and restated, effective as of January 1, 2001, is the controlling document with respect to Mr. Gillis' lump sum pension distribution. The Plan states that it is to be administered and construed in accordance with ERISA and applicable federal law for a tax qualified retirement plan.

25. The SPX Plan, by its terms and in its operation, does not meet applicable legal requirements and the lump sum benefit that the Plan Administrator determined it owes Mr. Gillis is less than what both the law and the terms of the Plan require.

26. Under the SPX Plan, Mr. Gillis' benefit is the greatest of his Accrued Benefit (*i.e.*, his Account Balance or his Grandfathered Benefit), his Transition Benefit, or his December 31, 1998 GSX Accrued Benefit.

27. Because Mr. Gillis' benefit under the SPX Plan exceeds his December 31, 1998 GSX Accrued Benefit, he is principally concerned with the calculations of his Transition Benefit.

28. Under the terms of the Plan and applicable law, Mr. Gillis should have, but did not receive his Transition Benefit, correctly calculated and payable as a lump sum, as of his early retirement date.

## CORRECT CALCULATION OF THE TRANSITION BENEFIT MUST INCLUDE EARLY RETIREMENT SUBSIDY

29. In calculating Mr. Gillis' Transition Benefit, the failure to include his early retirement subsidy in his opening Account Balance that he had already accrued under the GSX Corporate Plan violates the anti-cutback rules of the federal pension law and affects Mr. Gillis in more than a *de minimis* manner. (Internal Revenue Code of 1986, as

5

amended ("IRC") §411(a), §411(d)(6)(B)(i), ERISA §204(g)(1) and Treasury Regulation ("Treas. Reg.") §1.411(d)-4, Q&A-1).

30. Moreover, the failure to preserve the early retirement subsidy that Mr. Gillis accrued under the GSX Plan in his opening Account Balance under the SPX Plan immediately before the plans were merged also violates IRC §414(l) and ERISA §208 and contravenes SPX Plan §B-31(l)(1)(ii), all of which require that when defined benefit plans are merged, each participant must receive benefits, on a termination basis, immediately after the merger which are at least equal to the benefits that the participant would have received, on a termination basis, immediately prior to the merger.

## COMMUNICATIONS TO EMPLOYEES WERE MISLEADING

31. In addition, at the time of the merger, SPX represented to former GSX employees then employed by SPX that their GSX pensions earned as of December 31, 1998 will not be reduced. Another employee disclosure indicated that an employee's opening Account Balance under the SPX Plan would include his or her GSX pension accrued to December 31, 1998, which, for Mr. Gillis, included his early retirement subsidy. In addition, GSX employees were told that Transition Benefits (which are based on the opening Account Balance) would allow those employees hurt by the merger of the GSX and SPX Plans to recoup some of the lesser future benefits that they would otherwise receive under the SPX Plan after 1998.

32. Furthermore, the SPX Plan Administrator never provided notice to former GSX employees of the elimination of their GSX early retirement subsidy at the time of the merger of the plans. On the contrary, SPX reassured former GSX employees that the GSX benefits earned as of the merger could not be cut back.

33. ERISA specifically requires employers to distribute summary plan descriptions describing in plain language how employees' pension benefits are calculated. (ERISA §102). Summary plan descriptions (which are compromised of booklets and other notices given to employees about the retirement plan) must not have the effect of misleading, misinforming or failing to inform participants. (29 C.F.R. §2520.102-2(b)).

34. Any description of exceptions, limitations, reductions and other restrictions of plan benefits are not to be minimized, rendered obscure or otherwise made to appear unimportant. Rather, such limitations are to be summarized in the manner not less prominent than the style used to describe or summarize plan benefits. (29 C.F.R § 2520.102-2(b)). In addition, the use of clarifying examples is required. (29 C.F.R § 2520.102-2(a)). Moreover, notwithstanding anything to the contrary, the terms of the summary plan description are controlling with respect to benefits communicated to employees. ERISA specifically contemplates that summary plan descriptions will be an employee's primary source of information regarding employee benefits, and employees are entitled to rely upon them.

35. Reading all the employee disclosures together, a reasonable person in the position of Mr. Gillis would conclude that the opening Account Balance for an SPX employee, who met the requirements for early retirement under the GSX Corporate Plan, includes that employees accrued early retirement subsidy, and that such subsidy becomes part of his or her opening Account Balance for all purposes under the SPX Plan, including the calculation of the Transition Benefit.

36. Because disclosures made to employees about their pension plans are legally binding on the employer, Mr. Gillis had a right to expect that his early retirement subsidy would be included in his Transition Benefit.

7

## THE CALCULATION OF MR. GILLIS' ACCOUNT BALANCE MUST CONFORM TO APPLICABLE LAW REGARDING INTEREST CREDITS AND DISCOUNT RATES.

37. In addition to improperly eliminating the early retirement subsidy in the calculation of Mr. Gillis' opening Account Balance, the SPX Plan further runs afoul of the applicable law by failing to take into account the interest projections to Mr. Gillis' normal retirement age before converting his Account Balance to its actuarial equivalent as of his early retirement date.

38. Rather, the SPX Plan illegally looks to the Participant's current Account Balance[2] to determine his or her accrued benefit prior to age 65.

39. The failure to credit to age 65 future interest credits on Mr. Gillis' Account Balance violates applicable law regarding the calculation of accrued benefits under a cash balance plan and violates the anti-cutback rules of applicable law. (IRS Notice 96-8 IV, A and IRC §411(d)(6)).

40. The value of any optional form of distribution, such as a lump sum, must be no less than the actuarial equivalent of the accrued benefit at normal retirement age.

41. For a cash balance plan, like the SPX Plan, the calculation of the hypothetical account involves projecting the cash balance forward to normal retirement age, and then discounting it back to the present value, using legally acceptable actuarial factors. The failure of the SPX Plan to comply with these requirements in calculating his Account Balance deprives Mr. Gillis of the correct calculation of his overall benefit by failing to use the actuarial equivalent of his normal retirement benefit.

---

[2] The definition of Accrued Benefit under the SPX Plan is set forth in Section 2.1(b) and is defined, in pertinent part, as follows:

"2.1(b) 'Accrued Benefit' has the following meaning with respect the methods of determining a benefit under this Plan as may apply to a specific Participant:

(1) Account Balance. An Accrued Benefit based on a Participant's Account Balance means the Participant's Account Balance at any time, and the immediate single life annuity which is the Actuarial Equivalent of the Participant's Account Balance at the time of determination. (emphasis added)

8

## COUNT I: ERISA §204(G)(1), 29 U.S.C. 1054(G)(1) AND IRC §411(D)(6) (ANTI-CUTBACK)

42. Mr. Gillis repeats and realleges Paragraphs 1 through 41 of the Complaint as if fully and separately set forth herein.

43. Pursuant to ERISA §2(7), Mr. Gillis is a participant under the SPX Plan.

44. As a Plan participant, Mr. Gillis is entitled to bring this action to recover benefits under 29 U.S.C. §1132(a)(1)(B) and §502(a)(1)(B) of ERISA and for relief under §502 of ERISA.

45. Under the SPX Plan, the early retirement subsidy is an accrued benefit to Mr. Gillis as defined by §203(a) of ERISA.

46. The early retirement subsidy cannot be cutback under ERISA §204(g)(1).

47. In addition, the exclusion of the early retirement subsidy in calculating Mr. Gillis' overall benefits violates tax provisions analogous to ERISA under IRC §411(a), §411(d)(6)(B)(i) and Treas. Reg. §1.411(d)-4, Q&A-1, -2; ERISA §3002(c) (specifically adopting regulations promulgated under I.R.C. 410(a), 411 and 412) and 29 C.F.R. §2530.200a-2 ("[R]egulations prescribed by the Secretary of the Treasury [under I.R.C. §410, 411] implement related provisions contained in [ERISA]).

48. The SPX Plan Administrator's actions in excluding Mr. Gillis' early retirement benefit from the calculation of his Transitional Benefit violates the anti-cutback provision of ERISA §204(g)(1).

49. As a result of such violations Mr. Gillis suffered harm.

## COUNT II: ERISA §208 AND IRC §414(L) (MERGER REQUIREMENTS)

50. Mr. Gillis repeats and realleges Paragraphs 1 through 49 of the Complaint as if fully and separately set forth herein.

51. ERISA §208 and IRC §414(1) require that when defined benefit plans are merged, as in this action, each participant must receive benefits, on a termination basis, immediately after the merger which are at least equal to the benefits that the participant would have received, on a termination basis, immediately prior to the merger.

52. The Plan contains an equivalent provision. (SPX Plan §B-31(1)(1)(ii)).

53. By failing to include in the calculation of his Transition Benefit Mr. Gillis' early retirement subsidy accrued from the GSX Corporate Plan, the SPX Plan Administrator violated both the pension law and the terms of the Plan for plan mergers.

54. As a result of such violations Mr. Gillis suffered harm.

## COUNT III: BREACH OF FIDUCIARY DUTY/MISREPRESENTATION

55. Mr. Gillis repeats and realleges Paragraphs 1 through 54 of the Complaint as if fully and separately set forth herein.

56. ERISA mandates that a Plan provide participants with a summary plan description. (ERISA § 102 (a) and § 104 (b), Labor Reg. §2520.104b-2).

57. ERISA specifically provides that a summary plan description must not have the effect of misleading, misinforming or failing to inform participants. (ERISA §102(a)).

58. Any description of exceptions, limitations, reductions and other plan restrictions are not to be minimized, rendered obscure or otherwise made to appear unimportant. Rather, such limitations are to be summarized in the manner not less prominent than the style used to describe or summarize plan benefits. (29 C.F.R. §2520.102-2(b)).

59. In addition, the use of clarifying examples is required. (29 C.F.R. §2520.102-2(a)).

60. The SPX Plan Administrator violated these requirements for disclosure under ERISA by plainly failing to advise affected employees, including Mr. Gillis, that their GSX early retirement subsidies would be subtracted from opening their Account Balances in calculating their Transition Benefits or otherwise did so in a manner that was confusing and misleading. Accordingly, Mr. Gillis expected that his Transition Benefit would include his early retirement subsidy when he took an early retirement from SPX.

61. As a result of such violations Mr. Gillis suffered harm.

### COUNT IV: ERISA §204 (B)(1)(G) AND (H) AND IRC §411(B)(1)(G) AND (H) (AGE DISCRIMINATION)

62. Mr. Gillis repeats and realleges Paragraphs 1 through 61 of the Complaint as if fully and separately set forth herein.

63. In calculating his Transition Benefit, the SPX Plan subtracted Mr. Gillis' early retirement subsidy that he had already earned under the GSX Plan for his SPX Plan retirement benefit.

64. By eliminating Mr. Gillis' accrued early retirement subsidy, which are awarded only to participants over the age of 54, the SPX Plan violated the anti-age discrimination provisions of ERISA § 204(b)(1)(G) and (H) and IRC §411(b)(1)(G) and (H) which make it unlawful to reduce the accrued benefit or rate of benefit accrued on to a participant account of any increase in age or service.

65. Similarly, by failing to credit Mr. Gillis' hypothetical cash balance account with future interest credits to age 65, the SPX Plan discriminated against Mr. Gillis to his age at early retirement by impermissibly reducing the rate of his accruals.

66. The SPX Plan violated these age discrimination provisions by penalizing Mr. Gillis when he reached the age of 55 years.

67. As a result of such violation, Mr. Gillis suffered harm.

11

## COUNT V: BREACH OF FIDUCIARY DUTY
## (FAILURE TO PAY BENEFITS TIMELY/CONSTRUCTIVE TRUST)

68. Mr. Gillis repeats and realleges Paragraphs 1 through 67 of the Complaint as if fully and separately set forth herein.

69. The SPX Plan owed Mr. Gillis a fiduciary duty as a beneficiary of the Plan.

70. Mr. Gillis had a right to expect timely distributions under the Plan in accordance with the terms of the Plan.

71. The SPX Plan has violated its fiduciary duty to Mr. Gillis by failing to pay him his early retirement benefits in a lump sum when he retired early on June 21, 2002. Such benefits include a portion which the SPX Plan does not contest and which is due and owing to Mr. Gillis since his retirement.

72. As a result of this breach of duty, Mr. Gillis suffered harm.

73. In addition to the sum of his early retirement benefits and expert and legal fees incurred in pursuit of his benefits, Mr. Gillis is entitled to interest on such amounts by awarding him a constructive trust.

## COUNT VI: ERISA 502(C)(1)
## (FAILURE TO PROVIDE DOCUMENTS TIMELY)

74. Mr. Gillis repeats and realleges Paragraphs 1 through 73 of the Complaint as if fully and separately set forth herein.

75. Mr. Gillis had a legal right to expect that copies of the Plan documents that he requested would be mailed to him no later than 30 days after his request of the Plan Administrator, in accordance with ERISA §502(c)(1).

76. Mr. Gillis first made a written request for Plan documents from the SPX Plan Administrator on October 22, 2001.

77. The Plan Administrator did not honor Mr. Gillis' request for Plan documents until July 18, 2002 which was 239 days after the deadline for response.

78. Because the Plan Administrator did not deliver Plan documents within the ERISA deadline for response, it breached its duty to Mr. Gillis under ERISA.

79. Mr. Gillis suffered economically from the Plan Administrator's delay because, *inter alia*, he was forced to hire counsel to obtain the Plan documents, and because the delay may have had the effect of lessening his early retirement benefits, given the wearaway calculation under the SPX Plan.

80. In addition to the sum of his early retirement benefits and interest on such benefits amount and expert and legal fees incurred in pursuing his benefits. Mr. Gillis also requests that, in accordance with ERISA §502(c)(1), the Court impose a fine on the Plan Administrator, in the amount of Twenty-Six Thousand, Two Hundred Ninety Dollars ($26,290.00) which is One Hundred Ten Dollars ($110.00) per day from the date of its deadline for providing documents (November 21, 2001, to July 18, 2002) when Mr. Gillis' attorney received such documents.

**WHEREFORE**, Plaintiff, Thomas D. Gillis, respectfully prays for the following relief:

A. Judgment on each count of the Complaint in an amount to be determined at trial;

B. The costs and disbursements of this action, and reasonable attorneys' fees pursuant to ERISA §502(g);

C. Interest and expert fees be awarded and otherwise be made whole by virtue of a constructive trust or other equitable means;

D. That, in accordance with ERISA §502(c)(1), the Court award Mr. Gillis $26,290 for the Plan Administrator's delay in producing Plan documents; and

E. Such other and further relief as the Court deems warranted and just.

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Plaintiff,
**THOMAS D. GILLIS**,
By his attorneys,

_____
LAWRENCE P. MURRAY BBO# 561835
EVELYN A. HARALAMPU BBO# 221130
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000

Dated: March 11, 2005

14