UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

THOMAS D. GILLIS,                         )
                                          )
                           Plaintiff      )
                                          )           Civil Action No.:  03-12389-GAO
vs.                                       )
                                          )
SPX CORPORATION INDIVIDUAL ACCOUNT )
RETIREMENT PLAN and SPX RETIREMENT        )
ADMINSTRATIVE COMMITTEE,                  )
                           Defendants     )
                                          )

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendants' Motion for Summary Judgment should be denied because the terms and

operation of the SPX Plan violate the plain requirements of ERISA by illegally cutting back

Plaintiff's benefits, failing to meet the merger requirement, discriminating on the basis of age and

failing to provide proper notice of future reduced benefits.  In addition, Plaintiff reiterates his

request that the Court award Plaintiff his costs and attorneys' fees because Defendants not only

violated applicable federal law, but acted in bath faith by:  (i) misleading SPX Plan participants in

failing to disclose that benefits were subject to cutback; (ii) flouting the deadlines of ERISA in

processing Plaintiff's claim for benefits; (iii) failing to pay any part of Plaintiff's pension even after

he made proper written demand therefor; and (iv) failing to provide SPX Plan documents timely in

accordance with ERISA.  Finally, because Defendants failed to provide the prior written notice

required by law regarding future cutbacks, Plaintiff is entitled to have his benefits be calculated in

accordance with ERISA §204(h) as if the GSX Plan had not been amended by Defendants to

convert its traditional defined benefit formula to the cash balance formulas under the SPX Plan.

The claim that Mr. Gillis states under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B) is for benefits under the GSX Plan prior to its amendment by SPX, if those benefits are greater than those afforded under the SPX Plan after the amendment. Mr. Gillis seeks appropriate equitable relief under ERISA §502(a)(3), 29 U.S.C. §1132(a)(B) for all claims pertaining to the failure of the SPX Plan to comply with the provisions of ERISA at issue here. Mr. Gillis' claims for attorneys' fees and costs and his request for the imposition of a penalty against Defendants are under ERISA §§502(g)(1) and ERISA §502(a)(1)(A) and (c), respectively.

For all of the reasons contained in this Opposition and Plaintiff's Motion for Summary Judgment on Liability, the Plaintiff requests that this Court deny Defendants' Motion for Summary Judgment in total and allow his motion.

## FACTUAL BACKGROUND

This controversy involves the SPX Plan, an employee pension benefit plan under ERISA §3(2); 29 U.S.C. §1002(3) which merged with the GSX Plan on November 30, 1998. (Defendants' Exhibit C, SPX Plan §B-31(b), Bates No. 405) Effective as of December 1, 1998, the merger changed the benefit structure of former GSX employees from a traditional defined benefit formula to three alternate cash balance formulas. (SPX Plan §B-31, Defendants' Exhibit C, Bates Nos. 405-424 and 468-469.) The parties agree that the SPX Plan provides former GSX employees benefits equal to the greatest of three separate and alternative benefit formulas: **(1)** the "December 31, 1998 GSX Accrued Benefit" which is the value of a participant's vested benefits under the GSX Plan on December 31, 1998, expressed as an actuarially equivalent lump sum, and includes the GSX early retirement subsidy (Defendants' Exhibit C, SPX Plan §B-31(k)(3) and (h), Bates Nos. 413, 410); **(2)** the "Accrued Benefit" which is the value of a participant's vested benefits in the SPX Plan, calculated at any time after 1998 and includes the GSX early retirement subsidy (Defendants' Exhibit C, SPX Plan §B-31(k)(1), and §2.1(b)(1) Bates Nos. 412 and 228 ; and **(3)** the "Transition

2

Benefit" (Defendants' Exhibit C, SPX Plan §B-31(k)(2), and (p), Bates No. 413 and 423). The terms of the SPX Plan require the subtraction of the participant's GSX early retirement subsidy from the opening Account Balance[1] of the Transition Benefit (Id.) Both parties agree that the Transition Benefit is an alternative benefit to the GSX December 31, 1998 Accrued Benefit and the Accrued Benefit under the SPX Plan (Defendants' Mem. in Supp. of S.J., page 1). Because it is an alternative under the SPX Plan, and is not added to any other benefit, the Transition Benefit must meet the requirements of ERISA independently of the other alternatives.[2]

The conditions qualifying a former GSX employee for the Transition Benefit under the SPX Plan clearly encompass a former GSX Plan participant who earned an early retirement subsidy under the GSX Plan (Defendants' Exhibit C, SPX Plan §B-31(p), Bates No. 423). A person who, on November 30, 1998, was at least age 55 with 5 years of continuous service, like Mr. Gillis, qualified for both the Transition Benefit and the GSX Plan early retirement subsidy, under the express terms of each plan. (Id. and Plaintiff's Exhibit F, GSX Plan, Article IV(2) and Article III(1), Bates Nos. 59, 77 and 88) Thus, the sole legitimate purpose of the Transition Benefit is to increase the future accruals of former GSX employees who would receive smaller future benefits under the SPX Plan than under the GSX Plan if they retired early from SPX. (Defendants' Statement of Material Facts, ¶15 and Plaintiff's Exhibit L).

---

[1] The opening Account Balance under the SPX Plan is the actuarial equivalent, expressed as a lump sum, of a GSX Plan participant's accrued benefit under the GSX Plan immediately before the merger. (Defendants Exhibit C, SPX Plan §B-31(j), Bates No. 411.)

[2] If the Transition Benefit and other SPX Plan benefit calculations were not each required to comply with ERISA independently, then employers would have an easy means of evading the accrual, vesting, notice and other requirements of ERISA simply by establishing an illegal alternative benefit structure. Since such a transparent scheme violates the purpose of ERISA, each benefit alternative under the SPX Plan must independently meet the requirements of ERISA, or ERISA is meaningless.

## ARGUMENTS

I.    **The Plan Administrator's power to interpret SPX Plan provisions is not operative
in determining Mr. Gillis' benefits where the SPX Plan provisions in question
violate ERISA.**

Mr. Gillis does not challenge the Plan Administrator's power to interpret the lawful SPX

Plan provisions under the SPX Plan §12.6 (Defendants' Exhibit C, Bates Nos. 283-284), as long as

such interpretation is not arbitrary or capricious and the Plan Administrator is not acting as a result

of its conflict of interests. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115; 109 S. Ct.

948, 957 (1989). However, if the terms of the SPX Plan are themselves illegal under ERISA, as

Plaintiff contends, the fact that the Plan Administrator interpreted those provisions accurately and

without arbitrary and capricious abuse of its discretion is meaningless. All of the case law that

Defendants cite in support of their proposition that the Plan Administrator's determination of Mr.

Gillis' benefits is conclusive in determining his benefits is inapposite to this case because in none of

the cases cited was the legality of the underlying ERISA plan in question. (Defendants Mem. in

Supp. of S. J., L, pages 4-6) Rather, the cases involved the interpretation of legal plan terms in the

context of the facts of the cases. Before the Plan Administrator can presume to interpret the SPX

Plan, which is an employee pension benefit plan under ERISA, that Plan must meet the legal

requirements of ERISA, including the notice, anti-cutback, anti-age discrimination and merger

requirements thereof. (ERISA §201; 29 U.S.C. §1051). Fair interpretation of illegal provisions is

no defense to the fact that the terms of the SPX Plan, that Plaintiff brings into question in this case,

are themselves illegal.

**II.    ERISA requires the preservation of accrued benefits, and SPX Plan
provisions to the contrary are illegal and have no binding effect on the Plaintiff.**

    **A.    Defendants illegally cut back Plaintiff's GSX early retirement subsidy in
calculating his Transition Benefit.**

The Plan Administrator presumes wrongly that because it has applied a calculation in
accordance with the terms of the SPX Plan that the result of those calculations is therefore correct as
a matter of law. Such a position ignores the requirements of ERISA and is inapposite. By setting
up alternative benefit structures, the Plan Administrator was obligated to comply with the terms of
ERISA for each of those alternative benefit structures, otherwise the requirements of ERISA are
easily evaded (see footnote 2, supra). In this case, the terms of the SPX Plan violate law pertaining
to the anti-cutback and merger rules in calculating the Transition Benefit, and contravene law as to
future accruals in calculating the Accrued Benefit.

    **1. The SPX Plan calculation of the Transition Benefit violates ERISA.**

ERISA has two different statutory mechanisms to ensure that benefits already accrued to a
participant are not cutback. (ERISA §204(g) and §208; 29 U.S.C. §1054(g) and §1058 (anti-
cutback and merger rules)) Future benefits, not yet accrued, and early retirement subsidies, may not
be cut back by plan amendment unless proper written notice is given to plan participants prior to the
effective date of the amendment. Otherwise the new benefit structure is invalid, and a participant is
free to choose the prior benefit structure if that produces a greater benefit. (ERISA §204(h), 29
U.S.C. 1054 (h)). In calculating the Transition Benefit, the Plan Administrator subtracted Mr.
Gillis' accrued GSX early retirement subsidy from his opening Account Balance in the first step of
the calculation of the Transition Benefit. (Defendants' Exhibit C, SPX Plan §B-31(p)(1), Bates No.
423 and Declaration of Robert Campbell, In Supp. of Defs.' Mot. For S.J.) This violates both the
merger and anti-cutback rules of ERISA absent prior written notice under ERISA §204(h), 29
U.S.C. §1054(h) (discussed infra at Section IV).

Defendants try to create the illusion that Plaintiff is demanding a windfall in protesting the cutback of his GSX Plan early retirement subsidy.  In support, they cite Harms v. Cavenham Forest Indus., Inc., 984 F.2d 686 (5th Cir. 1993) which involved the amendment of a pension plan after a hostile corporate takeover.  That  amendment reduced the retirement benefits of employees who lost their jobs in the takeover.  The Court found that because ERISA §204(g) protects vested, accrued retirement benefits,  those benefits could not be reduced by a  plan amendment after the merger, and found for the plan beneficiaries on that count.  (Id. at 692.)  The windfall involved in Harms was attributable to a welfare benefit.  Since ERISA §204(g) does not apply to welfare benefits such as severance, Defendants wrongly analogize Harms to this case because this case involves only retirement, not welfare benefits.  Mr. Gillis is not asking for a windfall but simply for the retirement benefits that ERISA §204(g) and §208, 29 U.S.C. §1054(g) and §1058 and the Harms court provide for him.

Defendants further mischaracterize and obfuscate the anti-cutback issue by trying to conflate the elimination of a past accrued GSX early retirement benefit with the greater future accruals under the Transition Benefit.  Defendants wrongly characterize as a windfall and a double-counting of an early retirement benefit an employee's receipt of his early retirement subsidy already accrued under the GSX Plan and greater future accruals under the Transition Benefit.  By characterizing future accruals as an early retirement benefit, Defendants also improperly suppose that such future, speculative and inchoate benefit is interchangeable with an already accrued early retirement subsidy, the amount of which is not speculative, but fixed and determinable.  While the Defendants are free to provide a greater future rate of accrual to an older employee from January 1, 1999 to the date of the participant's early retirement with the SPX Corporation ("SPX"), they are prohibited by law from eliminating the early retirement subsidy that accrued to the participant before the merger of the SPX and GSX Plans without prior notice under ERISA §204(h), 29 U.S.C. 1054(h).  Paying

Mr. Gillis the early retirement subsidy that he has already accrued under the GSX Plan is not a windfall because it is required by law. Providing greater future accruals to Mr. Gillis who qualifies for the Transition Benefit, while not required by law, becomes enforceable under ERISA as a provision of the SPX Plan once the Plan Administrator undertakes to provide for such greater future accruals.

Defendants also apparently argue that because future benefit accruals under the Transition Benefit are not lesser, backloaded benefits, that they have not violated the anti-cutback or merger rules. Their argument is incorrect. (See Defendants' Mem. In Supp. of S.J., pages 9-10) First, the requirements that govern the rate at which future benefits must accrue under a defined benefit plan are set forth under ERISA §204(b), 29 U.S.C. §1054(b), and are separate and distinct from the anti-cutback rules set forth in ERISA §204(g), 29 U.S.C. 1054(g). The ERISA anti-cutback prohibition at §204(g) plainly relates to benefits already accrued, and not to future benefit accruals. [3] The Plaintiff is not contesting the rate of future benefit accruals of the Transition Benefit under ERISA §204(b), 29 U.S.C. §1054(b), but the illegal cutback of past accrued benefits under ERISA §204(g), 29 U.S.C. §1054(g). These benefits, including early retirement subsidies, are specially protected benefits to the extent they have already accrued, and cannot be reduced or eliminated without a prior ERISA §204(h) notice. (Treas. Reg. §1.411(d)-4, Q & A (a)) [4] Thus, it is irrelevant that the Transition Benefit provides greater future benefit accruals than the SPX Accrued Benefit. As long as the Transition Benefit reduces a participant's benefit by an early retirement subsidy that has already accrued, it violates ERISA §204(g), absent proper notice under ERISA §204(h) discussed

---

[3] While there is some minor conceptual overlap between the anti-cutback rules of ERISA §204(g) and the accrual rules under ERISA §204(b)(1)(D) which prohibits the cutback of benefits accrued before the enactment of ERISA, the two are different concepts. ERISA §204(g) relates to past accrued benefits while ERISA §204(b) relates to future accruals. Neither of the cases that Defendants cite regarding their backloading argument (Jones v. UOP (relating to a pre-ERISA plan) and Campbell v. Bank Boston, N.A. (relating to actuarial factors used in a cash balance conversion), has any application here. (Defendants' Mem. In Supp. Of S.J. page 9.)

[4] The Treasury Regulations under §§410, 411 and 412 of the Internal Revenue Code of 1986, as amended, are applicable to ERISA under ERISA §3002.

infra at Section IV. (See Plaintiff's Mem. in Supp. of S.J., Ct. 1, pages 3-6). The facts that: (a) Mr. Gillis accrued an early retirement subsidy under the GSX Plan as of November 30, 1998; (b) Mr. Gillis met the requirements for the Transition Benefit under the SPX Plan; and (c) the plain language of the SPX Plan §B-31(p) requires the subtraction of Mr. Gillis' early retirement subsidy already accrued under the GSX Plan in 1998 from his opening Account Balance under the SPX Plan in calculating his Transition Benefit, together describe the very type of cutback that ERISA generally prohibits.

> **2.    The calculation of the December 31, 1998 GSX Accrued Benefit does not relieve Defendants from liability for violating ERISA when calculating the Transition Benefit.**

Defendants' assertion that the December 31, 1998 GSX Accrued Benefit, which preserves his GSX early retirement subsidy, somehow relieves them from meeting the anti-cutback rules of ERISA in calculating the Transition Benefit is misplaced because it tacitly condones the illegality of the calculation of the Transition Benefit. The Transition Benefit has a different purpose and is targeted to a different group of participants than the December 31, 1998 GSX Accrued Benefit and must, therefore, separately meet the requirements of ERISA as an alternative benefit. The December 31, 1998 GSX Accrued Benefit is irrelevant to Mr. Gillis under the plain terms of the SPX Plan because it is targeted only to those former GSX employees whose service terminated between December 1, 1998 and December 31, 1998. (Defendants' Exhibit C, SPX Plan §B-31(h), Bates No. 410) and Mr. Gillis worked for SPX until 2002. (Gillis' Aff. ¶ 11) The Transition Benefit, on the other hand, was targeted to participants who, on January 1, 1999, were at least age 45, with five (5) or more years of service and who continued working for SPX after 1998 (Defendants' Exhibit C, SPX Plan B-31(h), Bates No. 423). Because the Transition Benefit is plainly tailored for a completely different group of employees than the December 31, 1998 GSX Account Benefit, it must meet the requirements of ERISA separately, including the anti-cutback

rules of ERISA, and cannot invoke the calculation of an unrelated benefit as justification for failing to meet the anti-cutback rule.

### 3.    The calculation of the SPX Accrued Benefit also violates ERISA.

The SPX Accrued Benefit, a third, separate alternative benefit under the SPX Plan, violates accrual rules applicable to cash balance plans by failing to accrue interest to the normal retirement age of an early retiree.  (See detailed discussion of law in Plaintiff's Mem. in Supp. of S. J., pages 14-15.)  Because the Plan Administrator gave participants no prior notice of this cutback as required by ERISA §204(h), Mr. Gillis has standing on another ground to invoke ERISA §204(h) 29 U.S.C. 1054(h), and ignore the SPX Plan amendment of the GSX Plan benefit structure, or to require the crediting of interest on his Accrued Benefit as required by law, whichever produces the higher benefit.

### B.    Defendants violated the merger rules of ERISA §208, 29 U.S.C. § 1058 by reducing Plaintiff's Transition Benefit by his GSX early retirement subsidy.

Defendants further misconstrue the requirements of ERISA by asserting that because Mr. Gillis "received greater benefits under the SPX Plan than under his [December 31, 1998] GSX Accrued Benefit, [it] means that he cannot demonstrate any violation of [ERISA] Section 208") (Defendants' Mem. in Supp. of S.J., p. 10).  Defendants also wrongly assert that because all three benefit calculations "account in some way for the effect of early retirement" there is no violation of ERISA §208.  (Id.)  By making these arguments, Defendants ignore both the timing requirements for applying the merger rule, and the separateness of the SPX Plan alternative benefits.

Under ERISA, the times for testing whether the merger requirements are met are immediately before and immediately after the date of a plan merger.  (ERISA §208, 29 U.S.C. §1058)  The plain language of the statute requires the benefits that a participant would receive immediately after a merger (if the plan then terminated) be at least as great as those he or she would

have received immediately before the merger (if the plan then terminated). The fact that the

December 31, 1998 GSX Accrued Benefit or the SPX Accrued Benefit may have met the merger

requirement of ERISA §208 because of their inclusion of the GSX Plan early retirement subsidy,

does not alter the fact that the Transition Benefit did not include that subsidy and, therefore, could

not stand on its own as a legitimate alternative benefit. By subtracting Mr. Gillis' GSX Plan early

retirement subsidy from his opening Account Balance of his Transition Benefit which is the

operative benefit for Mr. Gillis, immediately after the merger, the SPX Plan fails the merger

requirement as to the Transition Benefit, and the Transition Benefit itself becomes an illegal

alternative benefit ab initio. (See footnote 2, supra) (SPX Plan §B-31(p), Exhibit M, Bates No.

423 and Declaration of Robert Campbell in Supp. of Defs.' Mot. for S.J., ¶16). Accordingly,

whatever Mr. Gillis accrued in the months and years after the date of merger for his service for

SPX, is irrelevant in determining the values tested at the time of the merger under ERISA §208, 29

U.S.C. §1058. Even if the future accruals of the Transition Benefit reflect a future early retirement

benefit under the SPX Plan, they are not interchangeable with the early retirement subsidy under the

GSX Plan that Mr. Gillis accrued immediately before the date of the merger because, as of the date

immediately after the merger, future accruals on the Transition Benefit cannot be counted for

purposes of ERISA §208.

III.  **Mr. Gillis has standing to recover benefits due him, to seek the imposition of penalties, to enforce the provisions of ERISA, and to seek costs and attorneys' fees.**

The SPX Plan is an employee benefit plan under ERISA §3(3), 29 U.S.C. §1002(3). Mr.

Gillis is a participant of the SPX Plan because he is a former employee of SPX who is eligible to

receive a benefit from the SPX Plan (ERISA §3(7), 29 U.S.C. §1002(7)). Because there is no

question of fact that the SPX Plan owes Mr. Gillis some pension, there is no question of law that

Mr. Gillis is a participant, as defined under ERISA. As such, he has standing under the plain terms

of ERISA to:  **(a)** recover benefits due him under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B);

**(b)** to seek relief under ERISA §502(a)(1)(A), 29 U.S.C. §1132(a)(1)(A) which allows him to ask

the Court to impose penalties against the Defendants under ERISA §502(c), 29 U.S.C. §1132(c); **(c)**

to obtain appropriate equitable relief under ERISA §502(a)(3)(B)(ii), 29 U.S.C. §1132(a)(3)(B)(ii)

to enforce any provisions of ERISA; and **(d)** to recover costs and attorneys' fees under ERISA

§502(g)(1), 29 U.S.C. §1132(g)(1).  Accordingly, Mr. Gillis has standing to bring all the claims

that he has brought, and such claims are properly before the Court and within ERISA §502.

Defendants assert wrongly that Mr. Gillis cannot bring his merger and anti-cutback claims at

all because these are not encompassed under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

Instead, Defendants hide behind the illegal provisions of the SPX Plan and attempt to limit Mr.

Gillis' recovery to those provisions, asserting that ERISA §502(a)(1)(B) provides him his only

remedy.  However, ERISA provides other means for participants to enforce their rights. The plain

language of the civil enforcement provisions of ERISA §502(a)(3)(B)(ii) allows a participant to

bring a claim to enforce the provisions of ERISA.  The U.S. Supreme Court has ruled that ERISA

§502(a)(3), 29 U.S.C. §1132(a)(3) is a "catchall" provision, that acts "as a safety net offering

appropriate equitable relief for injuries caused by violations that §1132 does not elsewhere

adequately remedy" <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 512; 116 S.Ct. 1065 (1996).  Instead of

cutting off avenues for participants to pursue their rights, ERISA expands them by providing a

means for participants to redress ERISA violations under ERISA §502(a)(3) if they cannot be

remedied under ERISA §502(a)(1).  Where, as in this case, Defendants have clearly breached

ERISA's anti-cutback, anti-discrimination, merger and notice rules, ERISA §502(a)(3)(B)(ii) is the

only provision that allows Mr. Gillis appropriate relief because enforcement of the illegal SPX Plan

provisions is inappropriate.  Mr. Gillis has standing under ERISA § 502(a)(3) because illegal terms

of the SPX Plan preclude a proper and full recovery under ERISA § 502(a)(1).

Defendants cite an inapplicable case for the apparent proposition that Mr. Gillis is barred from claiming violations of ERISA under ERISA §502(a)(3). (Defendants' Mem. in Supp. of S.J., pages 11-12). In that case, <u>Larocca v. Borden</u>, 276 F.3d 22, 28 (l<sup>st</sup> Cir. 2002), the plaintiffs sought to recover premiums under a welfare benefit plan as a form of equitable relief under ERISA §502(a)(3). They were denied that relief because they were otherwise permitted to recover benefits under ERISA §502(a)(1). Unlike Mr. Gillis, the plaintiffs in <u>Larocca</u> were not challenging the legality of the terms of the underlying ERISA plan itself, but rather, the appropriate remedy due them for the employer's improper termination of their plan participation.

Because the terms of the SPX Plan do not comply with ERISA, ERISA § 502(a)(1)(B) (referring to recovery under the terms of a plan), does not adequately describe Mr. Gillis' complaints against Defendants and is not applicable for enforcing the provisions of law which Defendants have contravened. Rather, Mr. Gillis has standing under ERISA §502(a)(3) to bring his claims.

**A.     Plaintiff is not bringing a claim based on fiduciary breach under ERISA §409 or §404, 29 U.S.C. §1109 or §1104, but is seeking enforcement of the notice requirements of ERISA §204(h), 29 U.S.C. 1054(h) under ERISA §502(a)(3).**

Defendants argue that Mr. Gillis cannot bring a claim for Defendants' breach of fiduciary duty for its misrepresentations to employees, its failure to provide notice under ERISA §204(h), and its failure to pay Mr. Gillis any benefits when he retired., In fact, Mr. Gillis has not brought any claim under ERISA § 404 or §409, 29 U.S.C. § 1104 or §1109 for Defendants' breach of fiduciary duty, even though he could in his capacity as a participant under the statute and applicable case law, when no other remedy applies. (See, <u>Varity v. Howe</u> 516 U.S. 489, 510-512, 116 S.Ct. 1065 (1995) (holding that appropriate equitable relief under ERISA §502(a)(3) is broad enough to cover individual relief for breach of fiduciary duty). Rather, Mr. Gillis cites the Plan Administrator's

material misrepresentations to employees as evidence both of its bad faith and its failure to comply with ERISA §204(h), 29 U.S.C. §1154(h). (See detailed discussion in Plaintiffs' Mem. in Supp. of S.J., pages 8-13). Accordingly, Defendants' reliance on the cases cited at III. A. in their Memorandum of Law in Support of Summary Judgment (pages 12-13) is misplaced because those cases involve counts under ERISA §404 or §409 that are inapplicable here. Instead, Plaintiff seeks equitable relief under ERISA §502(a)(3) to enforce the notice provisions of ERISA §204(h), that allows him recovery as if SPX never amended the GSX Plan to convert it to a cash balance plan.

## IV.    Because Defendants misled SPX Plan participants and failed to provide employee disclosures that comply with ERISA §204(h), 29 U.S.C. 1054(h) Plaintiff seeks the statutory remedy under ERISA §204(h).

By detailing the extent of the Plan Administrator's misrepresentations to former GSX employees who became SPX plan participants, Mr. Gillis seeks to show the Court the Plan Administrator's bad faith as well as its failure to provide the statutory notice required under ERISA §204(h), 29 U.S.C. §1054(h), before cutting back the GSX early retirement subsidy from the Transition Benefit, and ceasing future accruals of early retirees under the SPX Accrued Benefit. The equitable remedy that Mr. Gillis seeks is his proper pension, as required under ERISA § 204(h)(6)(A), notwithstanding the illegal terms of the SPX Plan. As a Plan participant under ERISA §3(7), 29 U.S.C. §1002(7), Mr. Gillis has standing to bring such a claim under ERISA §502(a)(3) to enforce ERISA §204(h), 29 U.S.C. §1054(h).

### A.    The SPX Plan Administrator's employee disclosures distributed after 1998 never revealed unambiguously that the Transition Benefit is reduced by an employee's accrued GSX early retirement subsidy.

Defendants ignore the various representations that the Plan Administrator made to former GSX employees that their GSX Plan benefits would be preserved, and cite an ambiguous, inconspicuous footnote in a Supplement to the Summary Plan Description and an SPX Plan provision as evidence that it informed former GSX employees participating in the GSX Plan of the

reduction of their GSX early retirement subsidy from their Transition Benefit.  Neither of these

constitute proper notice under ERISA §204(h), 29 U.S.C. §1054(h) for the reasons described below.

Under ERISA §204(h), 29 U.S.C. §1054(h), the Plan Administrator owed all former GSX

employees a clear and direct notice that it was:  (a) eliminating their accrued GSX Plan early

retirement subsidies from their SPX Transition Benefits; and (b) eliminating interest accruals to age

65 for early retirees receiving the SPX Accrued Benefit.  Moreover, such notice had to be provided

a reasonable time[5] before December 1, 1998 which is the effective date of the amendment merging

the GSX and SPX Plans and changing the GSX Plan benefit structure.  (Defendants' Exhibit C,

SPX Plan, App. C, Bates Nos. 468-469)  ERISA §204(h) notices must be written in a manner

calculated to be understood by the average participant and describe the effect of any amendment

that significantly reduces the rate of a future benefit accrual notice (ERISA §204(h)(2) and Treas.

Reg. §1.411(d)-6, Q & A-10).  Notice must also be provided to each participant by hand delivery or

first class mail (Treas. Reg. §1.411(d)-6, at Q & A-11).  If the ERISA §204(h) notice is not given,

the plan amendment reducing future accruals and early retirement subsidies will not become

effective for those not provided such notice (Id. at Q & A-13 and ERISA §204(h)(6)(A) and (h)(9)).

The footnote in the Supplement fails to meet any of these requirements by failing to state

directly that the Transition Benefit is reduced by a participant's accrued GSX early retirement

subsidy, and by failing to explain the effect of this calculation.  Rather, that footnote states in

pertinent part, "......your regular cash balance account could be better than the transition benefit.

This is because your opening account balance already included the value of your early retirement

benefit."  Especially in light of other representations made to SPX Plan participants that their GSX

---

[5] ERISA §204(h)(6)(B)(iii) delegates to the Secretary of the Treasury the power to issue regulations under ERISA §204(h).  The regulatory notice requirements under ERISA §204(h) for amendments that went into effect prior to June 7, 2001, as did the SPX Plan amendment here in question,  are set forth at Treas. Reg. §1.411(d)-6.  (Treas. Reg. §54.4980F-1, Q & A -18(c))  Under these regulations, the Treasury Reg. 1.411(d)-6, Q & A-1 and Q & A-12 require 15 days' notice prior to the effective date of a plan amendment that cuts back benefits.

Plan benefits would not be lost, the footnote is, at best, confusing. It does not unambiguously state that the accrued early retirement subsidy will be subtracted from the Transition Benefit, nor does it mention the cessation of SPX Accrued Benefit interest accounts for early retirees. (See Gillis' SOF ¶15, 19, Plaintiff's Exhibit L, Bates No. 610 and Plaintiff's Mem. in Supp. of S. J., pages 11-13). It is, therefore, unreasonable to conclude that the quoted language would be understood by participants to mean that the Transition Benefit is significantly reduced by their early retirement subsidy accrued under the GSX Plan prior to 1999 and that future accruals of the SPX Accrued Benefit are cut back for early retirees. The quoted language clearly fails to meet the statutory and regulatory content requirements of ERISA § 204(h). Moreover, the alleged notice is buried in an obscure footnote, hardly the appropriate vehicle for meeting the statutory notice requirements of ERISA §204(h).

But even if the Supplement had unambiguously and conspicuously described the early retirement cutback in the Transition Benefit and the Accrued Benefit (which it did not), the Supplement was not distributed to former GSX employees at least 15 days before December 1, 1998, the effective date of the SPX Plan amendment to the GSX Plan, as required by ERISA §204(h)(3), 29 U.S.C. §1054(h)(3), and Reg. §1.411(d)-6, Q & A-1 and 12. (Defendants' Exhibit C, SPX Plan, App. C, Bates Nos: 468-469), Rather, the Supplement was distributed to former GSX employees after they became participants in the SPX Plan, after 1998, and after the amendment of the GSX Plan benefit structure was already in effect (Gillis' Affidavit ¶¶14, 20) (Gillis' SOF ¶ 19, Exhibit L, and Defendants' Exhibit B, Declaration of Elaine Krom in Supp. of Defs.' Mot. For S.J., §3a and b, noting that the Summary Plan Description, to which the Supplement was a later add-on, was printed as of July 1, 2000).

In addition to the Supplement, Defendants rely on the SPX Plan document as if it were an employee disclosure. (Defendants' Mem. in Supp. of S.J., pages 13-14) This reliance is misplaced.

The SPX Plan document was never distributed to any SPX Plan participants, not even to those who, like Mr. Gillis, requested copies on numerous occasions and had to hire counsel before his demand was honored. (Gillis' SOF ¶¶23-24) Defendants' reliance on the SPX Plan document as prior notice to employees of a cutback in their benefits is wholly inapposite, and strains credulity.

Instead, Defendants deny that they eliminated Mr. Gillis' GSX early retirement subsidy and deny they cut back interest accruals under the Accrued Benefit. (Defendants' Mem. in Supp. of S.J., page 14) Because Defendants held this belief, they never attempted to comply with the ERISA §204(h) notice requirements. Because Defendants did cut back benefits without notice, the consequences of ERISA §204(h), 29 U.S.C. 1054(h) apply to reinstate the pre-amendment benefit structure under the GSX Plan. Pickering v. VSX Corporation, 809 F. Supp. 1501, 1560, 1565, 1992 U.S. Dist. LEXIS 17242 (applying as a remedy the pre-amendment plan provisions where inadequate notice was given under ERISA §204(h), and stating that ERISA §204(h) forbids secret amendments) and Pratt v. Petroleum Prod. Management Employee Sav. Plan & Trust 920 F. 2d. 651 (remedy for ERISA §204(h) violation is pre-amendment plan benefit).

Under ERISA §204(h)(6), an egregious failure to give §204(h) notice entitles a participant to the benefit formula in effect before the effective date of the amendment cutting back benefits, if those benefits are greater than those under the amendment. (ERISA §204(h)(6)(A), 29 U.S.C. §1054(h)(6)(A)). The failure to give most participants most of the information they are entitled to receive under ERISA §204(h) constitutes an egregious failure to meet ERISA §204(h). (ERISA §204(h)(6)(B)(ii), 29 U.S.C. 1054(h)(6)(B)(ii)). Here, the Plan Administrator engaged in such an egregious failure by failing to provide anyone notice, or by providing notice that was so inadequate that it did not meet the content and timing requirements of ERISA §204(h). (Id.)

In addition, the failure to provide notice under ERISA §204(h) when such notice is due is egregious where, as in this case, the reduction in future benefit accruals or early retirement subsidies

is significant. (Treas. Reg. §1.411(d)-6, Q & A-6 and 7) The amount of Mr. Gillis' early retirement subsidy under the GSX Plan, which was cut back, is significant. According to the Plan Administrator, his opening Account Balance on January 1, 1999, including his early retirement subsidy, was $367,016.83, whereas his opening Account Balance without the subsidy was $244,749.63, or $122,267.20 less. (Exhibit L, Bates No. 505) The difference of $122,267.20 is significant, and merits notice under ERISA §204(h).

Mr. Gillis need not show the Court his reliance on the Plan Administrator's misleading disclosures to employees to state a claim under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3) for the Plan Administrator's failure to provide prior notice under ERISA §204(h), 29 U.S.C. §1054(h). Rather, Defendants' failure to provide ERISA §204(h) notice is subject to remedy under the liability provisions of ERISA. Thus, Defendants' reliance arguments at page 14 of their Memorandum in Support of Summary Judgment are irrelevant here.

**B.      Mr. Gillis seeks to enforce the payment terms of the SPX and GSX Plans that entitled him to a lump sum distribution when he retired early and to remedy the delayed payment by seeking interest on his unpaid benefits.**

Defendants argue wrongly that Mr. Gillis failed to make a claim for his benefit and that is the reason he did not receive his early retirement benefit. The documented facts of this case do not support Defendants' contention. In fact, Mr. Gillis went through an entire administrative process claiming his benefits under the SPX Plan. Moreover, in the claim by his attorney for benefits, dated September 27, 2002, Mr. Gillis applied to the Plan Administrator for his benefits under the SPX Plan, and specifically asked the Plan Administrator for any documentation required to process his claim. (Exhibit P, Bates No. 547 which states in pertinent part, "Please provide me with the proper documentation for Mr. Gillis to process this claim.") The Plan Administrator ignored Mr. Gillis' request for forms to apply for his benefit, just as it ignored the deadline for responding to his appeal. (SOF ¶29, Exhibit R, Bates No. 579-598)

Moreover, Mr. Gillis not only gave prior notice that he was going to file this lawsuit, but gave Defendants a copy of his complaint before it was filed.  (Exhibit R, Bates Nos. 579-598)  For Defendants to suggest that Mr. Gillis did not do everything that he was required to do to process his claim for retirement benefits flies in the face of the facts, and is further evidence of the Plan Administrator's bad faith and total disregard for the requirements of ERISA.

Because the Plan Administrator effectively reduced Mr. Gillis' early retirement subsidy further when it failed to him pay his lump sum benefit at early retirement, in contravention of the SPX and GSX Plan terms,[6] Mr. Gillis seeks an equitable remedy to redress that violation under ERISA §502(a)(3).  (See discussion, Plaintiff's Mem. in Supp. of S.J., pages 15-16)  Mr. Gillis seeks interest on the lump sum that should have been paid to him when he retired early on June 20, 2002, under an equitable theory of constructive receipt or equitable lien.  The funds held under the SPX Plan, part of which belong to the Plaintiff, are clearly in Defendants' possession.  Accordingly, the Court has authority to order Defendants either to transfer title (in the case of a constructive trust) to Mr. Gillis or give him a security interest (in the case of an equitable lien), for the amount equal to interest due on the benefit that Defendants should have paid Mr. Gillis in 2002.

**V.    The SPX Plan discriminated against Mr. Gillis on account of his age.**

The SPX Plan formulas for calculating the Transition Benefit and the SPX Accrued Benefit are clearly age discriminatory on their face and violate the requirements of ERISA §204(b)(1)(G) and (H) in a very specific way by subtracting a benefit already accrued by, or owed to a participant over age 55 and eligible for early retirement.  (Plaintiff's Mem. in Supp. of S. J. pages 13-15) Defendants seek to support their claim that the SPX Plan did not violate the age discrimination rules of ERISA by citing Campbell v. BankBoston, N.A., 206 F. Supp. 2d 70, 74, 79 (D.Mass 2002), a

---

[6] The timing of Mr. Gillis' lump sum early retirement benefit is the same under the SPX and GSX Plans, and is due upon early retirement.

wholly inapposite case, because it involves a welfare not a pension plan to which ERISA

§ 204(b)(1)(G) and (H), at issue here, do not apply.

Defendants further mischaracterize[7] the issues at bar here by asserting that the Plaintiff is

arguing that cash balance plans are inherently discriminatory.  Mr. Gillis is making no such

argument.  Rather, Mr. Gillis argues that the SPX Plan, on its face, violates the age discrimination

rules of ERSA because it decreases accrued benefits (in the case of the Transition Benefit) and

ceases future benefit accruals (in the case of the SPX Accrued Benefit) on account of age.

**VI.**    **Mr. Gillis is entitled to Summary Judgment on Count VI.**

    **A.**    **Mr. Gillis in no way waived the claims that he has brought in this case,
and is entitled to Summary Judgment.**

Defendants' theory that Mr. Gillis waived his claims in this case is wholly without merit and

contravenes the documented facts of this case.  When Mr. Gillis terminated his employment with

SPX, he entered into a Termination Agreement ('Agreement") under which he released certain

claims that are not at issue here.  The Agreement states specifically that Mr. Gillis did not release

his claims for vested benefits under the SPX Plan (Exhibit K, Agreement,  page 2).  The Agreement

states in pertinent part, "……the release…..does not apply to claims for vested benefits, if any,

arising from Company-sponsored retirement plans."  The Agreement also states that Mr. Gillis'

release of claims, "does not apply to any claim that arises after [he] sign[s] this agreement, and does

not include claims that cannot be released as a matter of law." (Exhibit K, Agreement, page 2)  Mr.

Gillis specifically did not release his administrative claims for retirement benefits and all claims that

Mr. Gillis makes in this case arose after he signed the Agreement.  Mr. Gillis signed the Agreement

---

[7] Defendants further mischaracterize the law regarding age discrimination by implying that Cooper v. IBM, 274 F. Supp. 2nd 1010 (S.D. Ill, 2003), holding that cash balance plans are inherently discriminatory, is unimportant. (Defendants' Mem. in Supp. of S.J., page 17, note 6)  On the contrary, that case was so important it provoked the U.S. Congress to demand that the U.S. Department of Treasury withdraw its proposed age discrimination regulations issued in 2002 because Congress deemed them too lax when applied to cash balance conversions. (IRS Ann. 2004-57, 2004-27 IRB 6/15/2004)  For Defendants to belittle that case is to ignore the substantial controversy that cash balance conversions has provoked.

on July 31, 2002. He did not file his first administrative claim for retirement benefits until September 27, 2002 (Exhibit P, Bates Nos. 545-558). Prior to that, he had made only inquiries of the Plan Administrator regarding the amount of his benefits. All claims in this action, including those for attorneys' fees, costs and penalties, arose on November 25, 2003, well after July 31, 2002, when Mr. Gillis filed his claim in this Court. Therefore, his claim under ERISA §502(c)(1) was not released under the clear terms of the Agreement.. The cases that Defendants cite in their waiver argument are inapposite here because in those cases, unlike this case, the plan participants specifically waived the claims in actual controversy.

**B.**    **It is proper and appropriate for the Court to impose penalties against the Defendant under ERISA § 502(c)(1), 29 U.S.C. 1132(c)(1).**

Plaintiff sets forth in his Memorandum in Support of Summary Judgment, pages 16-17, the reasons for which he believes the Court should penalize Defendants under ERISA §502(c)(1), 29 U.S.C. §1132(c)(1). Mr. Gillis believes that the Plan Administrator merits punishment in this case because its failure to produce documents was egregious and apparently willful. While the Plan Administrator was "unable" to find the SPX Plan documents for 260 days after Mr. Gillis requested them, it was instantly able to do so when his attorney made a demand. Mr. Gillis believes that Defendants' bad faith in so dealing with an SPX Plan participant merits punishment, and respectfully asks the Court to impose a penalty against Defendants under ERISA §502(c)(1).

Respectfully submitted,
Plaintiff,
**THOMAS D. GILLIS,**
By his attorneys,


    /s/ Lawrence P. Murray
LAWRENCE P. MURRAY BBO# 561835
EVELYN A. HARALAMPU BBO# 221130
Burns & Levinson LLP
125 Summer Street
Boston, MA 02110
(617) 345-3000

Dated: March 10, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed though the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 10, 2006.

_____ /s/ Lawrence P. Murray _____
Lawrence P. Murray

J:\Docs\24651\00000\00992464.DOC