## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
)
THOMAS D. GILLIS,                                   )
                                                    )
                            Plaintiff               )
                                                    )    Civil Action No.:  03-12389-GAO
vs.                                                 )
                                                    )    Judge George A. O'Toole, Jr.
SPX CORPORATION INDIVIDUAL ACCOUNT  )
RETIREMENT PLAN and SPX RETIREMENT   )
ADMINISTRATIVE COMMITTEE,            )
                                                    )
                            Defendants              )
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Andrew A. Jacobson
Andrew W. Vail
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Tel:  (312) 222-9350
Fax:  (312) 840-7650
Email:  ajacobson@jenner.com
Email:  avail@jenner.com

Richard Cavanaugh BBO#557539
GALLAGHER & CAVANAUGH, LLP
Boott Cotton Mills
100 Foot of John Street
Lowell, MA 018
Tel: (978) 452-0522
Email:  richardc@gcattorneys.com

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ........................................................................................................... 6

I.    PLAINTIFF MISSTATES THE LAW ABOUT THE APPROPRIATE
STANDARD  OF REVIEW IN THIS CASE ....................................................... 6

II.    THE SPX PLAN DID NOT CUTBACK PLAINTIFF'S BENEFITS .................. 7

        A.    Plaintiff's Anti-Cutback Claims Fail Because He Did Not
Forfeit Any Benefit ................................................................................ 7

        B.    Plaintiff's Merger Claims Fail Because He Did Not Forfeit Any
Benefit ................................................................................................. 12

III.    COUNT III FAILS BECAUSE THERE WAS NO CUTBACK  AND
THEREFORE SPX DID NOT MAKE ANY MATERIAL
MISREPRESENTATIONS ABOUT A CUTBACK .......................................... 13

IV.    COUNT IV FAILS BECAUSE THERE WAS NO BENEFIT
REDUCTION THEREFORE SPX DID NOT IMPROPERLY
DISCRIMINATE BASED ON AGE ................................................................. 14

V.    SPX HAS NOT BREACHED A DUTY BY DENYING
PLAINTIFF'S INCORRECT CLAIM AMOUNT ............................................ 14

VI.    SPX, NOT MR. GILLIS, IS ENTITLED TO JUDGMENT
ON THE REQUEST FOR PENALTIES OR FEES............................................ 15

        A.    Mr. Gillis Waived Any Claim for Penalties ............................................ 15

        B.    This Case Is Not The Proper Case For Section 502(c)(1)
Penalties................................................................................................ 15

        C.    Fees and Costs Should Be Awarded to SPX in this Case ........................ 17

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Arena v. ABB Power T&D Co., Inc.*, No. 99-0391, 2004 U.S. Dist. LEXIS 6522
(S.D. Ind. Mar. 4, 2004).................................................................................9

*Averhart v. U.S. WEST Mgmt. Pension Plan*, 46 F.3d 1480 (10th Cir. 1994) ............................14

*Berger v. Xerox Corp Retir. Income Guaranty Plan*, 338 F.3d 775 (7th Cir. 2003) ..............12, 14

*Campbell v. BankBoston, N.A.*, 206 F. Supp. 2d 70 (D. Mass. 2002) .................................7, 8, 14

*Cato v. Thompson*, 118 Fed. Appx. 93, 96 (7th Cir. 2004) ..........................................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...........................................................................6

*Central Laborers' Pension Fund v. Heinz*, 541 U.S. 739 (2004) ...............................................8, 9

*Constantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994) ................................................................9

*Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) ..........................................................12, 14

*Faircloth v. Lundy Packing Co.*, 91 F.3d 648 (4th Cir. 1996) ....................................................15

*Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137 (3rd Cir. 1993) ..................................................12

*Herman v. Central States, S.E. & S.W. Pension Fund*, 423 F.3d 684 (7th Cir. 2004)..................13

*Hickerson v. Velsicol Chemical Corp.*, 778 F.2d 365 (7th Cir. 1985).........................................12

*King v. Pension Trust Fund of the Pension Hosp. & Benefit Plan of the Elec.
Indus.*, 131 Fed. Appx. 740, 741 (2d Cir. 1005) ................................................7

*Leahy v. Raytheon Co.*, 315 F.3d 11 (1st Cir. 2002)....................................................................7

*Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19 (1st Cir. 2003) ................................7

*Myers-Garrison v. Johnson & Johnson*, 210 F.3d 425 (5th Cir. 2000) ......................................10

*Parry v. SBC Communs., Inc.*, 375 F. Supp. 2d 31 (D. Conn. 2005)..........................................10

*Pieski v. Northrop Grumman Corp.*, No.01-993, 2002 U.S. Dist. LEXIS 11891
(W.D. Pa. April 22, 2002)...............................................................................9

*Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397 (7th Cir. 1992) ........................................................................................17

*Radford Trust v. First Unum Life Ins. Co. of Am.*, 399 F. Supp. 2d 3 (1st Cir. 2005) ................17

*Rodriguez-Abreau v. Chase Manhatten Bank*, 986 F.2d 580 (1st Cir. 1993) ..............................16

*Rueda v. Seafarers Int'l Union of N. America*, 576 F.2d 939 (1st Cir. 1978) ..............................7

*Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173 (1st Cir. 1995) ..........................15

*Tucker v. General Mot. Ret. Program*, 949 F. Supp. 47 (D. Mass. 1996) ..................................16

*U.S. v. Hook*, 195 F.3d 299 (7th Cir. 1999) ................................................................................9

*Wright v. R.R. Donnelley & Sons Co. Group Benefit Plan*, 402 F.3d 67 (1st Cir. 2005) ..............7

**FEDERAL STATUTES**

29 U.S.C. § 1054 ........................................................................................................................13

IRS Notice 96-8 ....................................................................................................................11, 12

**INTRODUCTION**

The SPX Plan is a single, unified plan, under which participants are to receive a single benefit payment.  The benefit usually is expressed as a monthly amount, but in some circumstances may be taken as a lump sum payment, in which case the monthly benefit is actuarially converted to a single sum through application of interest rates and other factors.

Because employee situations may vary, there are three possible alternative benefits – the GSX Accrued Benefit, the SPX Accrued Benefit, and the Transition Benefit.  One employee might receive the most under a different one of the three alternatives, while another employee whose employment history and retirement situation or timing is different might receive more under one of the alternative calculations.  SPX ensures that participants receive the maximum amount available under the Plan terms by providing that the single benefit amount the participant receives is the greatest amount resulting from the three alternatives.

The law requires that where benefit plans merge or are amended, the plan terms operate such that the single benefit each participant would receive (measured at merger or amendment) is at least as much as they would have received under the old plan (for mergers) or under the unamended plan (for amendments).  SPX specifically designed its plan to meet these legal requirements by providing that in no case would a participant receive less than they would have accrued under the old GSX Plan.  SPX did this by including the GSX Accrued Benefit among the three alternatives, then awarding the participant the greatest of the three alternatives.

Far from carrying his burden at summary judgment, Mr. Gillis has nowhere even identified the dollar amount of the applicable benefit under the pre-merger, post-merger, unamended or amended plan at the relevant times, let alone shown that there was any actual cutback in benefits.  This is not accidental.  Mr. Gillis essentially concedes that the terms of the

merged and amended SPX Plan operate to pay him a benefit that is at least as great, if not greater, than he would have received under the old GSX Plan.  Gillis Aff. ¶15.  Mr. Gillis also concedes that the single benefit amount SPX offered him (the SPX Accrued Benefit) includes the value of his early retirement subsidy.  Pl.'s S.J. Mem. at 6.  Those facts are dispositive of this case (and form the basis of SPX's cross-motion for summary judgment).

Having suffered no actual cutback in benefits, and having been offered an SPX Plan benefit amount that both exceeds what he would have received under the GSX Plan *and* that includes the value of the early retirement subsidy, Mr. Gillis is a very unusual plaintiff in search of a theory that, interpreted creatively, might deliver more than that to which the law entitles him.  That undoubtedly accounts for Mr. Gillis' incorrect attempt to ignore the dispositive fact that his single benefit amount suffered no cutback and instead to disassemble the fully compliant SPX Plan into components.  It further explains the scattershot approach of raising (but not establishing) a variety of other imagined ERISA violations that have little to do with the facts of Mr. Gillis' case.  Those attempts are both legally and factually unsupported, and summary judgment should be denied.

**Factual Background.**

*The SPX Plan.*

The SPX Plan is a front-loaded cash-balance pension plan pursuant to ERISA.  Ex. A, Campbell Second Decl. ¶ 8.  The Plan was originally established in 1985 as a defined benefit plan and converted to a cash balance plan on or about July 1, 1997.  SPX's S.J. Mem. Ex. C, SPX Plan §1.1.

Generally, a qualified retirement plan may be categorized as either a defined benefit plan or a defined contribution plan.  *See* Depart. of Labor, "Cash Balance Plans Question and

Answers," at http://www.dol.gov/ebsa/faqs/faq_consumer_cashbalanceplans.html (last visited March 12, 2006). A traditional defined benefit plan provides a specific benefit at retirement age that may be based on compensation, years of service and certain actuarial assumptions. A traditional defined contribution plan (such as a 401(k), profit-sharing or employee stock ownership plan) provides a benefit based on contributions made to the plan by either the employee or employer as well as investment return. *Id.* Even though a cash balance plan, like the SPX Plan, is a form of a defined benefit plan, it has some characteristics of a defined contribution plan. Unlike a traditional defined benefit plan, a cash balance plan benefit takes the form of an account balance rather than a projected future benefit amount. *Id.*

A participant's benefit under a cash balance plan is stated in terms of an account balance. Generally, a participant's account is credited with pay credits each year. *Id.* This credit is based on a percentage of the participant's compensation. In addition to the pay credit, a participant will also receive an interest credit. This credit acts as a form of investment return for the account balance. *Id.* At the time of distribution, the account balance is converted to a monthly amount to be distributed to the participant. Ex. A, Campbell Second Decl. ¶ 8.

Unlike a traditional defined benefit plan, a cash balance plan only takes into consideration a participant's compensation. Further, as pay credits and interest credits are made on a yearly basis, a participant's age and length of service with an employer do not impact a participant's account balance in the same manner as in the case of a traditional defined benefit plan. *See* "Cash Balance Plans Question and Answers," *supra.*

*The GSX and SPX Plan merger.*

On November 30, 1998, the GSX Plan, of which Mr. Gillis was a participant, merged into the SPX Plan. SPX's S.J. Mem. Ex. C, SPX Plan at Appendix B-31(a). The GSX Plan was a

defined benefit plan at the time of the merger. *See Id.* Ex. A, Campbell Decl. ¶ 6-7. Therefore, GSX Plan participants who became SPX Plan participants by way of the plan merger needed to have their GSX Plan defined benefit plan benefit converted into a cash balance benefit under the SPX Plan. *Id.* The method of calculation as set forth by the SPX Plan for this conversion, including as applied to Plaintiff, is described in full detail in SPX's Summary Judgment Memorandum. *See Id.* at 1-4, 6-11; *see also Id.* Ex. A, Campbell Decl. at ¶ 13.

On December 1, 1998, the newly merged SPX Plan participants, like Mr. Gillis, now had two possible alternative methods of determining their benefit if they chose to retire - the GSX Accrued Benefit or the SPX Accrued benefit.[1] The SPX Plan provided that a participant would receive the greater of the two alternatives. Predictably, since new accruals under the SPX Accrued Benefit were just beginning, the calculation of the two alternative benefits yielded identical results.

| GSX Accrued Benefit as of 11/30/98 | SPX Accrued Benefit as of 12/01/98 |
|:---:|:---:|
| $2,187.56 monthly | $2,187.56 monthly |

Ex. A, Campbell Second Decl. ¶ 6.

Mr. Gillis' SPX Accrued Benefit after the merger is not less than his GSX Accrued Benefit before the merger. It is undisputed that the SPX Accrued Benefit also included Mr. Gillis' GSX early retirement subsidy. Pl.'s S.J. Mem. at 8. Therefore, Mr. Gillis forfeited nothing when his account was merged into the SPX Plan.

Shortly after the merger, the SPX Plan's independent actuary, Hewitt Associates, in examining the effects of the plan merger, found that a group of transferred participants might receive a lesser future benefit under the SPX Plan than the GSX Plan if they elected early

---

[1] As noted below, the third alternative - the Transition Benefit - was introduced by an amendment effective October 1, 1999.

retirement from SPX.  *See* SPX's S.J. Mem. Ex. B, Krom Decl. ¶¶ 12-13 and Ex. 12.  The affected group comprised plan participants who (unlike Mr. Gillis), had not yet accrued any GSX early retirement subsidy.  Although the resulting lesser future benefits did not run afoul of ERISA (because not yet accrued benefits generally are not protected), SPX voluntarily chose to address the issue by creating the Transition Benefit alternative.  *Id.*

Even though it was not required under ERISA, SPX addressed this issue so that former GSX employees felt like "one SPX team."  *See* SPX's S.J. Mem. Ex. B, Krom Decl. ¶ 10.  Based on recommendations from Hewitt Associates, SPX amended the SPX Plan, effective October 1, 1999, to provide for the Transition Benefit as an alternative benefit to compensate the group of transferred participants who had not yet accrued their early retirement subsidy.  *See* SPX's S.J. Mem. Ex. C, SPX Plan at Appendix B-31(p); *see also Id.* Ex. B, Krom Decl. Ex. 12.

*Mr. Gillis' benefit under the SPX Plan.*

The parties agree that Mr. Gillis meets the threshold criteria for at least having the possible Transition Benefit calculated as one of the three possible benefit alternatives.  It is not surprising however (and certainly not unlawful), that this new, alternative benefit did not provide a greater benefit to Mr. Gillis (who was not in the affected group) than his SPX Accrued Benefit.  Indeed, the Summary Plan Description Supplement specifically noted this likely result for participants like Mr. Gillis who already had accrued a subsidy:

> If you were in the Corporate Plan on December 31, 1998 and were at least age 55 with five years of service on that date, your regular cash balance account could be better than the transition benefit.  This is because your opening account balance already included the value of your early retirement benefit…you will get the better of the regular or transition benefit.

SPX's S.J. Mem. Ex. B, Krom Decl. Ex. 2.  Mr. Gillis was in the Corporate Plan on December 31, 1998, was over 55, and had five years of service.  Gillis Aff. ¶ 6.  In essence, this

provision of the SPD spoke directly to Mr. Gillis and advised him that "your regular cash balance account could be better than the transition benefit…because your opening account balance already included the value of your early retirement benefit."

The SPX Plan provided that upon retirement, former GSX Plan participants would receive the greatest of three possible benefit amounts, known as:  (1) the GSX Accrued Benefit; (2) the SPX Accrued Benefit; and (3) the Transition Benefit.  When Mr. Gillis separated from SPX on June 20, 2002, those benefits were as follows:[2]

| GSX Accrued Benefit | SPX Accrued Benefit | Transition Benefit |
|---|---|---|
| $2,544.45 monthly, or $397,775.08 in lump-sum | $2,953.74 monthly, or $461,760.18 in lump-sum | $2,933.09 monthly, or $458,531.36 in lump-sum |

Ex. A, Campbell Second Decl. ¶ 12.

As shown, and admitted by Mr. Gillis, the SPX Accrued Benefit (the benefit being provided to him by SPX), which includes his early retirement subsidy was greater than his GSX Accrued Benefit.

## ARGUMENT

### I.    PLAINTIFF MISSTATES THE LAW ABOUT THE APPROPRIATE STANDARD OF REVIEW IN THIS CASE.

As set forth in SPX's Summary Judgment Memorandum, the SPX Plan Administrator's determination of Mr. Gillis' benefits is conclusive unless it is arbitrary and capricious.  SPX's S.J. Mem. at 4-6.  Even though Plaintiff plainly brings this action pursuant to ERISA, his brief fails to cite a single ERISA case addressing the applicable standard of law.  *See* Pl.'s S.J. Mem. at 2.  Instead, Mr. Gillis cites eight cases that provide the Federal Rule 56(c) standard for summary judgment outside of the context of ERISA.  *Id.; see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).

---

[2] Projected for convenience to July 1, 2002.  Ex. A, Campbell Second Decl. ¶ 12.

It is well-established law that where the plan allows its administrators discretionary authority to determine benefits and to interpret the terms of the plan, the plan administrators' benefits determination or interpretation may only be set aside if it is "arbitrary and capricious." *See Wright v. R.R. Donnelley & Sons Co. Group Benefit Plan,* 402 F.3d 67, 74 (1st Cir. 2005); *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 24 (1st Cir. 2003); *Leahy v. Raytheon Co.*, 315 F.3d 11, 17 (1st Cir. 2002); *see also Rueda v. Seafarers Int'l Union of N. Am.*, 576 F.2d 939, 942 (1st Cir. 1978).

As Defendants' demonstrated in SPX's Summary Judgment Memorandum, it is beyond challenge that the express terms of the SPX Plan grant the Plan Administrator the requisite discretion such that its determinations may not be set aside unless they are arbitrary and capricious. *See* SPX's S.J. Mem. Part I; SPX's S.J. Mem. Ex. C, SPX Plan § 12.6. Accordingly, the Plan Administrator's interpretation of the SPX Plan and determination of Mr. Gillis' benefits governs, and at summary judgment, any doubts about the correctness of that determination should be resolved in favor of upholding that determination. *Liston*, 330 F.3d at 24 ("the rationality standard tends to resolve doubts in favor of the administrator").

## II.    THE SPX PLAN DID NOT CUTBACK PLAINTIFF'S BENEFITS.

### A.    Plaintiff's Anti-Cutback Claims Fail Because He Did Not Forfeit Any Benefit.

Under Section 204(g)(1), if a plaintiff does not demonstrate that he has received a lesser accrued benefit after a plan amendment his claim fails. *Campbell v. BankBoston, N.A.*, 206 F. Supp. 2d 70, 79 (D. Mass 2002); *aff'd* 2003 U.S. App. LEXIS 4027 (1st Cir. Mar. 7, 2003); *King v. Pension Trust Fund of the Pension Hosp. & Benefit Plan of the Elec. Indus.*, 131 Fed. Appx. 740, 741 (2d Cir. 1005). In this case, Mr. Gillis received a benefit at least equal to his previously accrued GSX Plan benefit under the SPX Plan amendment that merged the GSX and

SPX Plans.  Ex. A, Campbell Second Decl. ¶ 6.  This fact is fatal to his anti-cutback claim, because without establishing the requisite element that he received a lesser benefit after the amendment, his anti-cutback claim cannot survive SPX's motion for summary judgment, let alone affirmatively succeed at this stage.  *Campbell*, 206 F. Supp. 2d at 79.

Indeed, the anti-cutback cases Mr. Gillis cites only serve to make clear that his anti-cutback claim fails to establish this fundamental element required by Section 204(g)(1).  In each anti-cutback case Mr. Gillis cites, the court found that the defendants violated ERISA because the plaintiffs could show an actual forfeiture in the benefit amount they actually received as a result of the plan amendment.  In those cases, a plaintiff could point to their benefit amount immediately prior to and immediately after the plan amendment and show a demonstrably lesser benefit amount after amendment.  For example, in *Heinz*, the seminal Supreme Court case on Section 204(g)(1), plaintiffs brought suit under ERISA for violations of the anti-cutback provision when their plan amended the definition of the type of work that triggered a suspension of a retirement subsidy.  541 U.S. 739.  Before the plan amendment, plaintiffs had taken early retirement from their employer and were receiving monthly annuity payments that included this subsidy.  After the amendment, the subsidy was suspended and the plan stopped paying plaintiffs the subsidy, thereby quantifiably reducing their monthly payment amount.  *Id.* at 741-42.

The specific issue the Supreme Court addressed in *Heinz* was whether the temporary suspension of subsidy was indeed a "cutback" under Section 204(g)(1), because the defendant argued that the subsidy payments would restart once plaintiffs ceased the triggering employment.  *Id.*  The Court found the suspension to be a cutback in violation of Section 204(g)(1).  Here, Mr. Gillis cannot point to his benefit immediately prior to and after the amendment and demonstrate any forfeiture, and therefore *Heinz* and the other anti-cutback cases simply do not

support his claim. Instead, these cases merely confirm the unremarkable application of 204(g)(1) – that if a plan amendment causes a participant to forfeit an already accrued benefit that amendment violates ERISA.[3]

Having suffered no cutback, Mr. Gillis urges a novel proposition that the Transition Benefit, as a new stand-alone benefit, failed to satisfy the anti-cutback and merger laws. As set forth above, the SPX Plan amendment that merged the GSX and SPX Plans provided Mr. Gillis with the SPX Accrued benefit as one alternative under the SPX Plan. Upon his retirement, this was his greatest possible benefit under the Plan and it included his GSX early retirement subsidy. In light of these undisputed facts, Plaintiff takes the unsupported position that under ERISA every alternative benefit option (including new benefits) must explicitly follow the anti-cutback provisions. Notably, Plaintiff fails to rely on a single case, or any legal authority at all, in making this argument. On that basis alone, the Court should reject this *ad hoc* proposition of law. *Cato v. Thompson*, 118 Fed. Appx. 93, 96 (7th Cir. 2004) (citing *U.S. v. Hook*, 195 F.3d 299, 310 (7th Cir. 1999)).[4]

That Mr. Gillis' claim that the new Transition Benefit even triggers anti-cutback is flawed is shown by two federal court ERISA decisions addressing alternative forms of benefit payments. The Fifth Circuit has held: "The anti-cutback rule does not regulate new benefits; *as*

---

[3] Plaintiff cites the following distinguishable cases, in addition to *Heinz*: *Arena v. ABB Power T&D Co., Inc.*, No. 99-0391, 2004 U.S. Dist. LEXIS 6522 (S.D. Ind. Mar. 4, 2004) (eliminating vested benefit reduced plaintiffs' monthly pension payments and was therefore a cutback); *Constantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir. 1994) (plaintiff class' already accrued early retirement subsidy was eliminated by plan amendment and replaced with a lump-sum calculation that resulted in a immediate lesser benefit amount); *Pieski v. Northrop Grumman Corp.*, No. 01-993, 2002 U.S. Dist. LEXIS 11891 (W.D. Pa. April 22, 2002) (same). Here, Mr. Gillis was eligible to receive at least as much as he would pre-amendment, including the value of his GSX early retirement subsidy.

[4] Federal courts have held that in order to develop a legal argument, the fact at issue must be bolstered by relevant legal authority. *See, e.g.*, *Hook*, 195 at 310.

*a commonsense matter, offering employees a new alternative does not amount to a decrease in their accrued benefits*." *Myers-Garrison v. Johnson & Johnson*, 210 F.3d 425, 431 (5th Cir. 2000) (emphasis added).   A recent district court decision, citing relevant Treasury Regulations, further shows Plaintiff's proposition is not correct:

> A plan may have more than one optional form of benefit under which benefits may be paid.  There is no requirement that each form of benefit be the actuarial equivalent of all other benefit forms . . .  If a plan provides a subsidy for one optional form of benefit (i.e., the payments under an optional form of benefit have an actuarial present value that is greater than the actuarial present value of the accrued benefit), there is no requirement to extend a similar subsidy (or any subsidy) to every other optional  form of benefit.

*Parry v. SBC Communs., Inc.*, 375 F. Supp. 2d 31, 53 (D. Conn. 2005) (citations omitted). Because the SPX Plan operated in a way to award Mr. Gillis equivalent or greater benefits, Mr. Gillis cannot prevail even if the Transition Benefit calculation did not extend the precise same subsidy in the precise same manner as the other alternatives (a fact Mr. Gillis has not even established).  *Id.*

Even if Mr. Gillis' novel proposition were adopted, its application in this case would still require judgment for SPX, not Mr. Gillis.  Since the Transition Benefit was a newly offered, alternative benefit, and lacks any appropriate pre-existing former transition benefit for comparison, it is impossible for Plaintiff to show that the Transition Benefit amendment caused forfeiture.  In other words, pre-merger (and pre-amendment creating the Transition Benefit) Mr. Gillis' Transition Benefit was $0.  At the earliest point in time following creation of the Transition Benefit (October 1, 1999), Mr. Gillis' Transition Benefit was $2,562.78 per month.  Ex. A, Campbell Second Decl. ¶ 6.  Going from $0 to $2,562.78 per month can hardly be considered a cutback.

Moreover, Mr. Gillis' SPX Accrued Benefit – the amount for which he ultimately qualified – only continued to increase even after introduction of the Transition Benefit amendment. It remains the greatest available benefit under the SPX Plan. Accordingly, Mr. Gillis cannot establish that the Transition Benefit amendment lessened the actual amount of the benefit to be paid to him under the SPX Plan.

However, to avoid this consequence – that he plainly did not suffer any forfeiture actionable under ERISA – Mr. Gillis attempts to salvage his anti-cutback claim by arguing in the alternative, that: "even if the Accrued Benefit preserves the early retirement subsidy, it violates the anti-cutback rule for a separate reason ['by violating the applicable accrual rules for cash balance plans.']" Pl.'s S.J. Mem. at 6 (citing to his Counts III and IV). Mr. Gillis contends, without factual support, that "[u]nder the SPX Plan, no interest is credited through age 65 to the Account Balance of a participant retiring prior to age 65, as is required by applicable law for cash balance plans." Pl.'s S.J. Mem. at 14.

This allegation, in addition to being factually and legally unsupported, cannot save Mr. Gillis' claim. First, the SPX Plan provides the value of interest credited through age 65 to the account of a participant retiring prior to age 65. Ex. A, Campbell Second Decl. ¶ 10. In calculating the amount of a single sum distribution under the SPX Plan, the balance of the employee's hypothetical account is effectively projected to normal retirement age with the Plan's then current interest credit rate and then discounted back to the current age using an interest rate that is, under IRS Notice 96-8, deemed to be greater than the Plan's interest credit rate. *Id.* Because of the natural relationship between these interest rates, the resulting value is not greater than the original account balance. Under these circumstances, the law permits the participant's

account balance itself to be accrued benefit and the basis for determining all optional forms of payment. *Id.*

Plaintiff's brief cites two cases where the courts held that the plans at issue violated ERISA because they, unlike the SPX Plan, failed to provide future interest credits. *Berger v. Xerox Corp Retir. Income Guar. Plan*, 338 F.3d 775 (7th Cir. 2003) (citing to IRS Notice 96-8, rejected defendant plans' argument they did not need to provide future interest credits to participants' benefits if the participant chose lump-sum distribution); *Esden v. Bank of Boston*, 229 F.3d 154 (2d Cir. 2000) (same).

The SPX Plan properly calculated Mr. Gillis' future interest credits consistent with the Treasury Department's safe-harbor provisions in IRS Notice 96-8, and thus did not violate ERISA Section 204(g)(1). The cases cited in Plaintiff's brief do not support a different result, indeed, those courts relied heavily on Notice 96-8 in their decisions.

### B.    Plaintiff's Merger Claims Fail Because He Did Not Forfeit Any Benefit.

Plaintiff's Count II, based on ERISA's related merger provision, fails for the same, fundamental reason – because Mr. Gillis accrued benefit did not decline as a result of the GSX and SPX Plan merger.

The parties agree that the test of whether a merger meets ERISA's requirements "is measured by comparing the benefits on a termination basis of the participants immediately *before* proposed merger with the benefits on termination basis of participants immediately after." *Hickerson v. Velsicol Chemical Corp.*, 778 F.2d 365, 374 (7th Cir. 1985);[5] *see* SPX's S.J. Mem.

_____

[5] In *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137 (3rd Cir. 1993), cited on page 8 of his brief, the court unremarkably found that a successor plan must provide funding so that already accrued early retirement subsidy payments would continue to qualified transferred participants after the plans merger. Otherwise the plaintiffs were going to receive a lesser benefit amount due to the

at 10; Pl.'s S.J. Mem. at 7.  Again, Mr. Gillis fails to even quantify his benefit at the correct measuring date, which is enough to deny summary judgment.  In fact, Mr. Gillis' Count II fails because SPX has demonstrated that Mr. Gillis received a benefit equal to and subsequently greater than his benefit before the GSX and SPX Plan merger.  Ex. A, Campbell Second Decl. ¶ 6.

## III.  COUNT III FAILS BECAUSE THERE WAS NO CUTBACK AND THEREFORE SPX DID NOT MAKE ANY MATERIAL MISREPRESENTATIONS ABOUT A CUTBACK.

In his briefing, Plaintiff's claim has morphed from the original unsupportable breach of fiduciary duty claim for misrepresentation (*see* SPX's S.J. Mem. Ex. E, Am. Compl. ¶¶ 55-61) into a notice claim under ERISA Section 204(h).  *See* Pl.'s S.J. Mem. at 11-12.  Under 204(h), plan sponsors are prohibited from amending a plan in a way that reduces future benefit accrual without proper notice to plan participants:

> A [pension] plan...may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, unless, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date…

29 U.S.C. § 1054(h).

In this case, the only record evidence establishes that SPX did not reduce Mr. Gillis' rate of future accrual, but instead appropriately handled future interest credits.  *See* Part II *supra*; *see also* Ex. A, Campbell Second Decl. ¶ 10.  Therefore Section 204(h) is not triggered.  *Herman v. Central States, S.E. & S.W. Pension Fund*, 423 F.3d 684, 691-92 (7th Cir. 2004) (holding that this provision does not apply where ERISA Section 204(g)(1) has not been violated).

---

plan merger and the subsequent elimination of their early retirement subsidy.  The defendant plan in that case took the position that as a successor plan it had no obligation to fund already accrued early retirement subsidies because its terms did not provide for early retirement subsidies.  These issue are not present in this case.

## IV.   COUNT IV FAILS BECAUSE THERE WAS NO BENEFIT REDUCTION THEREFORE SPX DID NOT IMPROPERLY DISCRIMINATE BASED ON AGE.

As discussed in SPX' Summary Judgment Memorandum, Plaintiff cannot establish a claim for age-discrimination under ERISA Section 204(b)(1)(G) because SPX did not reduce Mr. Gillis' benefit based on his age.   SPX's S.J. Mem. at 16-18.   In *Campbell,* which was affirmed by the First Circuit, Judge Lasker dismissed an age discrimination claim and clarified that:

> Where no accrued benefits were reduced by the conversion to a cash balance system and the plaintiff was credited with what he had accrued up to that date of the conversion, there was no intentional age discrimination by the defendant.

*Campbell,* 206 F. Supp. at 74, 79.

Further, Mr. Gillis' citation to *Berger* and *Esden* cannot save this claim.   Those cases involved plans that failed to provide the appropriate credit interest under ERISA and therefore cutback certain older participants' accrued benefits.   *See Berger*, 338 F.3d at 762-63; *Esden*, 229 F.3d at 157-58.   Here, the SPX Plan properly addressed the issue of interest credits.   *See* Ex. A, Campbell Second Decl. ¶¶ 9-11.

## V.   SPX HAS NOT BREACHED A DUTY BY DENYING PLAINTIFF'S INCORRECT CLAIM AMOUNT.

Plaintiff's Count V should be dismissed because he has never properly applied for his benefit under the SPX Plan.   SPX's S.J. Mem. at 15.   Mr. Gillis only seeks a benefit not owed to him and as a matter of law a plan fiduciary does not violate ERISA if it denies benefits to a person not entitled to those benefits.   *See Id.; See, e.g., Averhart v. U.S. WEST Mgmt. Pension Plan,* 46 F.3d 1480, 1489 (10th Cir. 1994).

Because Mr. Gillis has never properly claimed his benefit, and only sought benefits not owed to him, Count V fails as a matter of law.

## VI.    SPX, NOT MR. GILLIS, IS ENTITLED TO JUDGMENT ON THE REQUEST FOR PENALTIES OR FEES.

### A.    Mr. Gillis Waived Any Claim for Penalties.

Mr. Gillis contends that he was harmed by SPX's delay in delivering some SPX Plan documents. But Mr. Gillis concedes that he received the documents by July 18, 2002. Pl.'s S.J. Mem. at 16-17. After that date (and thus after the alleged harm caused by the delay), Mr. Gillis executed a severance agreement in which he released "any known or unknown claims...against the Company" on July 31, 2002. *See* SPX's S.J. Mem. at 18-19; *see Id.* Ex. B, Krom Decl. at ¶ 3(f) and at Ex. 6, Termination Agreement at ¶ 4. Mr. Gillis therefore waived any claim he had against SPX for the claimed failure to deliver SPX Plan documents between October 22, 2001, and July 18, 2002. Although the Agreement specifically states that Mr. Gillis is not waiving any claims to vested benefits under the SPX Plan, the statutory penalties clearly are not "vested benefits" under ERISA. Therefore the exception does not apply and under the binding terms of the Agreement, Mr. Gillis waived this claim. *See, e.g., Smart v. Gillette Co. Long-Term Disability Plan,* 70 F.3d 173, 182 (1st Cir. 1995). Mr. Gillis' motion for summary judgment should be denied and SPX's cross-motion should be granted as to Count VI.

### B.    This Case Is Not The Proper Case For Section 502(c)(1) Penalties.

Moreover, even absent waiver, this is not the type of case for which any penalty is appropriate under Section 502(c)(1). *See* SPX's S.J. Mem. at 19. The purpose of assessing penalties under this Section is to punish employers who willfully contravene the purposes of the disclosure requirement or prejudice plaintiffs by their delay. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996). Because the purposes of ERISA are not served when no prejudice or harm was suffered by the plaintiff and the delay in providing documents was not due to an intentional, bad faith delay by the defendant, courts have refused to assess penalties under

Section 502(c)(1) in these circumstances. *See, e.g., Rodriguez-Abreau v. Chase Manhatten Bank*, 986 F.2d 580, 588-89 (1st Cir. 1993); *Tucker v. General Motors Ret. Program*, 949 F. Supp. 47, 56 (D. Mass. 1996).

In this case, the delay in producing the requested documents did not result from bad faith or intentional delay on the part of SPX. Rather, the delay was the result of SPX's desire to ensure that Gillis received the complete documents he requested. SPX's S.J. Mem. Ex. B, Krom Decl. at ¶ 24. During this time, SPX corresponded with Gillis, apprising him of SPX's progress and providing the documents it had so far. Moreover, while SPX processed the request for documents, it tolled Gillis' sixty-day appeal period so that Gillis would not be prejudiced by any delay. *Id.; see also Id.* Ex. 4.

In his brief, Mr. Gillis alleges that the delay is providing him these documents caused him actual financial harm because he had to hire counsel to obtain SPX Plan documents from SPX. Pl.'s S.J. Mem. at 17. The undisputed facts show otherwise. SPX promised to provide Mr. Gillis the few remaining SPX Plan documents well before Mr. Gillis engaged his counsel in this case. Mr. Gillis did not hire counsel to get SPX Plan documents from SPX, rather he hired them to bring this action against SPX. *See* Ex. B, Gillis Dep. at 38-40. Indeed, Mr. Gillis has testified that he was mailed copies of most of the documents he has relied on in this case before hiring counsel. *Id.* at 28-30.

Given SPX's good-faith and the fact that Gillis suffered no prejudice, the punitive purposes of § 502(c)(1) would not be served by assessing penalties against SPX.

C.    **Fees and Costs Should Be Awarded to SPX in this Case.**

In his summary judgment brief, Mr. Gillis seeks attorneys' fees and costs (Pl.'s S.J. Mem. at 17-19); however, under the First Circuit's standard such fees and costs should be awarded to SPX because it is Mr. Gillis' claims that lack merit.

The parties agree as to the standard for an award of fees under ERISA §502(g)(1). When deciding whether to award attorneys fees in ERISA cases, the First Circuit employs a five-factor standard. *Radford Trust v. First Unum Life Ins. Co. of Am.*, 399 F. Supp. 2d 3, 6-7 (1st Cir. 2005). The five factors to consider are: (1) the degree of bad faith or culpability of the losing party; (2) the ability of such party personally to satisfy an award of fees; (3) whether such award would deter other persons acting under similar circumstances; (4) the amount of benefit to the action as conferred on the members of the pension plan; and (5) the relative merits of the parties' positions. *Id.* Courts consider the "bottom-line question" in awarding fees to be whether "the losing party's position [was] substantially justified and taken in good-faith, or was that party simply out to harass its opponent." *Production & Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992).

Here, Mr. Gillis essentially concedes that the SPX Plan Administrator followed the terms of the Plan, but Mr. Gillis contends that the Plan's design runs afoul of ERISA. As stated in SPX's Summary Judgment Memorandum, a plan administrator is required to follow the plan's terms, and therefore it is unreasonable to suggest that the Administrator was acting in bad-faith by following the binding terms of the Plan, even if the Plan's terms are later deemed non-compliant. More fundamentally, of course, no award of fees to Mr. Gillis is appropriate because no violation of ERISA has been established.

**CONCLUSION**

For all of the foregoing reasons, SPX respectfully requests that the Court deny Plaintiffs'

Motion for Summary Judgment and instead grant Defendants' Motion for Summary Judgment.


Dated: March 13, 2006                    Respectfully submitted,

                                         SPX Individual Account Retirement
                                         Plan and the SPX Retirement Administrative Committee


                                                  /s/ Andrew W. Vail
                         _____

                                                      Andrew A. Jacobson
                                                        Andrew W. Vail
                                                    JENNER & BLOCK LLP
                                                        One IBM Plaza
                                                      Chicago, IL 60611
                                                    Tel:  (312) 222-9350
                                                    Fax:  (312) 840-7650
                                               Email:  ajacobson@jenner.com
                                                  Email:  avail@jenner.com

                                               Richard Cavanaugh BBO#557539
                                            GALLAGHER & CAVANAUGH, LLP
                                                      Boott Cotton Mills
                                                   100 Foot of John Street
                                                      Lowell, MA 018
                                                     Tel: (978) 452-0522
                                             Email:  richardc@gcattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew W. Vail, an attorney, hereby certify that DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DEFENDANTS' RESPONSE   TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS, and EXHIBITS IN SUPPORT filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 13th day of March 2006, as follows:

> Evelyn Haralampu BBO#221130
> Lawrence P. Murray BBO#561835
> BURNS & LEVINSON LLP
> 125 Summer Street
> Boston, MA 02110
> (617) 345-3000
>
> Attorneys for Plaintiff,
> Thomas D. Gillis

_____/s/ Andrew W. Vail_____
Andrew W. Vail
