# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS D. GILLIS,<br><br>   Plaintiff<br><br>vs.<br><br>SPX CORPORATION INDIVIDUAL ACCOUNT RETIREMENT PLAN and SPX RETIREMENT ADMINISTRATIVE COMMITTEE,<br><br>   Defendants | Civil Action No.: 03-12389-GAO<br><br>Judge George A. O'Toole, Jr. |

### DECLARATION OF ROBERT CAMPBELL
### IN SUPPORT OF DEFENDANTS' OPPOSITION
### TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Robert Campbell, being first duly sworn, depose and state as follows:

1. I am employed by Watson Wyatt & Company ("Watson Wyatt") as a consulting actuary. If called to testify, I would be competent to testify to all matters stated in this affidavit on my own personal knowledge.

2. My duties and responsibilities as a consulting actuary at Watson Wyatt include, but are not limited to, performing actuarial and benefit calculations relating to retirement benefit plans. I am an Enrolled Actuary under ERISA, an associate of the Society of Actuaries and a member of the American Academy of Actuaries.

3. I have been employed by Watson Wyatt as a consulting actuary with the above mentioned duties and responsibilities since 1994.

4. On or about December of 1999, the SPX Plan and the SPX Administrative Committee (collectively "SPX") engaged Watson Wyatt as the independent actuary for the SPX

Plan. Prior to that time, SPX had engaged Hewitt Associates as independent actuary for the SPX Plan.

5. I provided a Declaration in support of Defendants' Motion For Summary Judgment, which was attached as Exhibit A to Defendants' Memorandum in Support of Their Motion for Summary Judgment. That Declaration sets forth additional information about the Plan, its operation, and Mr. Gillis' claims in this case relating to his benefit calculation under the terms of the SPX Plan; and its paragraphs are hereby incorporated by reference into this Declaration. *See* SPX's S.J. Mem. Ex. A, Campbell Decl.

6. The actuarial and benefit calculations relating to Mr. Gillis' benefit at the time of merger demonstrate that immediately prior to and immediately after the SPX and GSX Plan merger his accrued GSX and SPX benefits were identical:

| GSX Accrued Benefit as of 11/30/98 | SPX Accrued Benefit as of 12/01/98 |
|---|---|
| $2,187.56 monthly | $2,187.56 monthly |

At this time the Transition Benefit was not yet offered, as it became effective October 1, 1999. Immediately prior to and immediately after the Transition Benefit amendment, Mr. Gillis' SPX Accrued Benefit did not decrease, as shown below:

| SPX Accrued Benefit as of 09/30/99 | SPX Accrued Benefit as of 10/01/99 |
|---|---|
| $2,341.54 monthly | $2,562.78 monthly |

7. The GSX early retirement subsidy is applied to the Transition Benefit at the point in time the participant retires from SPX prior to age 65. This early retirement subsidy is achieved by applying the SPX Plan's subsidized early retirement reduction factors to the Transition Benefit when the participant retires. An actuarially-equivalent early retirement reduction would be around 6-7% for each year a participant retires before age 65. Upon retirement under the SPX Plan, a participant's accumulated Transition Benefit is reduced by only

2

3% for each year by which the participant's retirement date precedes age 62, producing an early retirement benefit that has greater actuarial value than the normal retirement benefit. *See* SPX's S.J. Mem. Ex. C, SPX Plan at Appendix B-31(p)(2) ("The monthly amount payable to the Participant at Normal Retirement Age shall be reduced by .25 percent per month for each month prior to his 62nd birthday that his Early Retirement Date occurs."). The value of the early retirement subsidy built into the Transition Benefit is demonstrated by the hypothetical calculation below:[1]

| Transition Benefit<br>with built-in subsidy as of 03/01/06 | Transition Benefit<br>without built-in subsidy as of 03/01/06 |
| --- | --- |
| $2,750.05 monthly, or<br>$417,130.42 lump-sum | $2,370.61 monthly, or<br>$359,575.95 lump-sum |

8.  The SPX Plan is a "front-loaded" cash balance plan, which means that future interest credits to an employee's hypothetical account balance are not conditioned upon future service. Thus, in the case of the SPX Plan, the benefits attributable to future interest credits with respect to a hypothetical allocation accrue at the same time that the benefits attributable to the hypothetical allocation accrue. As a result, if an employee terminates employment and defers distribution to a later date, interest credits will continue to be credited to that employee's hypothetical account. The SPX Plan's terms mirrors the provisions of IRS Notice 96-8 in this respect.

9.  Under the SPX Plan, as set forth in Section 2.1(bb), "'Interest Credit Rate' means the rate of interest (determined each Plan Year) at which a Participant's Account Balance is deemed to grow. For any Plan Year, the Interest Credit Rate shall be the interest rate paid on

---

[1] The SPX Plan does not provide for an explicit calculation of the Transition Benefit without the built-in subsidy. I have performed that calculation for comparison purposes by applying the normal actuarially-equivalent early retirement reduction of about 6-7% for each year a participant retires before age 65.

3

five-year United States Treasury Notes (Constant Maturities) in effect as of the last business day of the immediately preceding November." This is one of the standard indices specified in IRS Notice 96-8, Section IV, and was selected for the SPX Plan to comply with this rule.

10. On page 14 of Mr. Gillis' memorandum in support of his motion for summary judgment it states: "Under the SPX Plan, no interest is credited through age 65 to the Account Balance of a participant retiring prior to age 65, as is required by applicable law for cash balance plans." Pl.'s S.J. Mem. at 14. This is not accurate. The SPX Plan provides the value of interest credited through age 65 to the account of a participant retiring prior to age 65. In calculating the amount of a single sum distribution under the SPX Plan, the balance of the employee's hypothetical account is effectively projected to normal retirement age with the Plan's then current interest credit rate and then discounted back to the current age using an interest rate that is, under IRS Notice 96-8, deemed to be greater than the Plan's interest credit rate. Because of the relationship between these interest rates, the resulting value is not greater than the original account balance. The result of this calculation is that the participant's account balance itself is the accrued benefit and the basis for determining all optional forms of payment. That said, the SPX Plan does not require the Administrator to actually go through the step-by-step mechanics of calculating interest forward and then discounting back to the current date. Instead IRS Notice 96-8 specifically states that a cash balance plan with interest rates as specified in the SPX Plan will not violate sections 411(a) or 417(e) by basing optional forms of payment of participants' benefits directly on the account balance.

11. The SPX Plan is designed to protect against benefit forfeiture, which has resulted under some other plans when they projected the value of future interest credits using a rate that understated the value of those credits or plans by their terms reduced the interest rate or rate of

4

return used for projecting future interest credits. Forfeiture also occurred when some plans failed to take future interest into account (*i.e.,* there is no projection of future interest credits). All of these plans did not comply with IRS Notice 96-8, but the SPX Plan does. This is because, as stated above, under the SPX Plan, since the interest credit rate for account balances is deemed to be less than the interest rate used to determine annuity conversion factors, the employee's hypothetical account balance will equal or exceed the present value of the employee's accrued benefit.

12.   The SPX Plan provides that upon retirement, former GSX Plan participants receive the greatest of three possible benefit amounts, known as (1) the GSX Accrued Benefit, (2) the SPX Accrued Benefit, and (3) the Transition Benefit. When Mr. Gillis separated from SPX on June 20, 2002, his benefits were as follows:[2]

| GSX Accrued Benefit | SPX Accrued Benefit | Transition Benefit |
|---|---|---|
| $2,544.45 monthly, or $397,775.08 in lump-sum | $2,953.74 monthly, or $461,760.18 in lump-sum | $2,933.09 monthly, or $458,531.36 in lump-sum |

---

[2] Projected for convenience to July 1, 2002.

5

13. Today, Mr. Gillis remains entitled to his SPX Accrued Benefit, which as shown below is the greatest of these three possible alternatives, and clearly more than he would have received under the Plan:

| GSX Accrued Benefit as of 03/01/06 | SPX Accrued Benefit as of 03/01/06 | Transition Benefit as of 03/01/06 |
|---|---|---|
| $3,047.25 monthly, or $436,788.28 in lump-sum | $3,465.21 monthly, or $525,606.04 in lump-sum | $2,750.05 monthly, or $417,130.42 in lump-sum |

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON MARCH 13, 2006.**

/s/ Robert Campbell
Robert Campbell

Consulting Actuary, Watson Wyatt & Company

6