# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

No. 03-CV-12389-GAO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THOMAS D. GILLIS,

        Plaintiff

  vs.

SPX CORPORATION INDIVIDUAL

RETIREMENT PLAN and

SPX RETIREMENT

ADMINISTRATIVE COMMITTEE,

        Defendants

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

VOLUME: I

PAGES: 1-87

DEPOSITION OF THOMAS D. GILLIS

DECEMBER 6, 2005

G&M Court Reporters, Ltd.
617-338-0030

ORIGINAL

1  DEPOSITION OF THOMAS D. GILLIS, a witness
2  called on behalf of the Defendants,
3  pursuant to Federal Rules of Civil
4  Procedure, before Judith McGovern
5  Williams, Certified Shorthand Reporter
6  No. 130993, Registered Professional
7  Reporter, Certified Realtime Reporter,
8  Certified LiveNote Reporter, and Notary
9  Public in and for the Commonwealth of
10  Massachusetts, at the offices of Burns &
11  Levinson L.L.P., 125 Summer Street,
12  Boston, Massachusetts  02110-1624 on
13  Tuesday, December 6, 2005, commencing at
14  10:00 a.m.
15
16
17
18
19
20
21
22
23
24

Page 3

1   APPEARANCES:

2

3   BURNS & LEVINSON L.L.P.

4     Lawrence P. Murray, Esquire

5     125 Summer Street

6     Boston, Massachusetts   02110-1624

7     617-345-3510

8     lmurray@burnslev.com

9     On behalf of the Plaintiff

10

11  JENNER & BLOCK L.L.P.

12    Andrew A. Jacobson, Esquire

13    One IBM Plaza

14    Chicago, Illinois   60611-7603

15    312-222-9350

16    ajacobson@jenner.com

17    On behalf of the Defendants

18

19

20

21

22

23

24

|    |    |                                                          |
|----|----|----------------------------------------------------------|
| 1  |    | was the Lindberg facility in Watertown,                  |
| 2  |    | Wisconsin.  That is where Blue M was at                  |
| 3  |    | that point.                                              |
| 4  | Q. | Okay.  When is the first time you can                    |
| 5  |    | recall the subject of employee benefits                  |
| 6  |    | being addressed with you in connection                   |
| 7  |    | with SPX?                                                |
| 8  | A. | Oh, when they sent out information, it                   |
| 9  |    | said that, to us, that SPX would continue,               |
| 10 |    | that we would merge into SPX.  There was                 |
| 11 |    | handouts or literature mailed actually to                |
| 12 |    | us.                                                      |
| 13 | Q. | Okay.  Do you recall what that literature                |
| 14 |    | was?                                                     |
| 15 | A. | It was descriptions of what was going to                 |
| 16 |    | happen.                                                  |
| 17 | Q. | Were these about the merger generally or                 |
| 18 |    | specific to benefits?                                    |
| 19 | A. | Specific to benefits.                                    |
| 20 | Q. | Do you recall how many of those                          |
| 21 |    | communications you received?                             |
| 22 | A. | There could have been two or three.  One                 |
| 23 |    | in particular that I remember was the                    |
| 24 |    | large copy of a PowerPoint presentation                  |

```
1          that was at the meeting in headquarters
2          that I wasn't available to go.
3    Q.    Okay.  And that is the one that I think we
4          talk about in the case called Building for
5          Tomorrow?
6    A.    Right.
7    Q.    I have that here.  We can get into that.
8          How was it that you obtained that
9          PowerPoint?
10   A.    It was mailed to me.
11   Q.    Was there any kind of cover letter that
12         you recall?
13   A.    No.  It was just here was what was
14         presented at the meeting, the all-hands
15         meeting at the factory.
16   Q.    Okay.  Other than receiving the PowerPoint
17         from that meeting, did you receive any
18         accounts of that meeting, any other kinds
19         of accounts from people or anything like
20         that?
21   A.    No.
22   Q.    Did you talk to anyone who had attended
23         the meeting?
24   A.    I did.
```

1  Q.  And what do you recall them telling you about the meeting?
3  A.  Nothing enlightening.
4  Q.  Okay. All right. So we will look at the PowerPoint in a minute, but other than the PowerPoint, do you recall anything else specifically that you might have received?
8  A.  No, I don't.
9  Q.  We will go over some other documents just to see when you might have gotten them or how, if you did.

At some point, do you recall receiving a summary plan description for the SPX benefits plan?
15  A.  Yes.
16  Q.  Do you recall how you received that?
17  A.  Mail.
18  Q.  Do you recall the time period in which you would have received it?
20  A.  Most of all of that communication came in in 1998, late. I think there was a four- to six-month period where all of those things were being finalized officially.
24  Q.  When you say "all of those things," what

1   own or with the assistance of counsel or
2   anyone else?
3  A.  I had -- I had somebody assisting me.
4  Q.  Who was assisting you?
5  A.  A gentleman by the name of George
6   Chimbenko.
7  Q.  Could you spell that last name?
8  A.  I knew you were going to ask me that.  I
9   think it is C-H-I-M-B-E-N-K-O.
10 Q.  Who is Mr. Chimbenko?
11 A.  He is an attorney.
12 Q.  Was he an attorney you hired to represent
13   you or someone who was just helping you
14   out or what?
15 A.  He was consulting me -- with me at that
16   time.  I did not hire him.
17 Q.  Is he a personal friend?
18 A.  No.
19 Q.  Okay.  What were the circumstances -- and
20   I want to caution you.  You don't need to
21   tell me anything that you discussed with
22   Mr. Chimbenko.
23 A.  Okay.
24 Q.  I just want to understand the

| | | |
|---|---|---|
| 1 | | circumstances of you going to him, what |
| 2 | | caused you to go to him.  And I take it |
| 3 | | you didn't ultimately retain him as your |
| 4 | | lawyer? |
| 5 | A. | I did not retain him, no. |
| 6 | Q. | What assistance did he provide you in |
| 7 | | connection with the issue of your benefits |
| 8 | | with SPX or this communication? |
| 9 | A. | He helped write the letter. |
| 10 | Q. | Okay.  How did you locate him as someone |
| 11 | | who could help you do that? |
| 12 | A. | Through a lawyer that I had used for other |
| 13 | | purposes. |
| 14 | Q. | And who is that? |
| 15 | A. | It was Reese & Carlson -- Gilmore, Reese & |
| 16 | | Carlson in Franklin, Massachusetts. |
| 17 | Q. | Was there any particular reason you didn't |
| 18 | | hire Mr. Chimbenko at that time? |
| 19 | A. | Yes, there was. |
| 20 | Q. | What is that? |
| 21 | A. | He had a conflict of interest. |
| 22 | Q. | Oh, all right.  Did he explain to you the |
| 23 | | nature of what that was? |
| 24 | A. | No. |

| | | |
|---|---|---|
| 1 | Q. | After October 22, 2001, did you retain |
| 2 | | counsel to assist you in your benefits |
| 3 | | issues? |
| 4 | A. | Yes, I did. |
| 5 | Q. | When did you do that? |
| 6 | A. | Sometime in 2002. |
| 7 | Q. | And to whom did you -- who did you retain? |
| 8 | A. | Burns & Levinson. |
| 9 | Q. | Was that a firm you had been referred to |
| 10 | | by anyone? |
| 11 | A. | Yes. |
| 12 | Q. | Who referred you there? |
| 13 | A. | Lawyers at Reese, Gilmore & Carlson. |
| 14 | Q. | Do you recall when in 2002 you retained |
| 15 | | Burns & Levinson? |
| 16 | A. | I can't be specific other than it was |
| 17 | | later than June probably. Maybe -- I |
| 18 | | would just be guessing. I really can't |
| 19 | | pin it down. |
| 20 | Q. | Okay. You say later in June, I take it |
| 21 | | because it was after your termination of |
| 22 | | employment? |
| 23 | A. | Yes. |
| 24 | Q. | So it would be fair to say it was sometime |