# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

THOMAS D. GILLIS,                          )
                                           )
                      Plaintiff,           )
                                           )
vs.                                        )          Civil Action No.:  03-12389-GAO
                                           )
SPX CORPORATION INDIVIDUAL ACCOUNT )
RETIREMENT PLAN and SPX RETIREMENT         )
ADMINSTRATIVE COMMITTEE,                   )
                                           )
                      Defendants.          )
_____)

## MEMORANDUM TO SUPPLEMENT
## PLAINTIFF'S SUMMARY JUDGMENT RECORD
## TO INCORPORATE RECENTLY ENACTED PENSION LAW

### INTRODUCTION

The Pension Protection Act of 2006 (H.R. 4), which was signed into law on August 17, 2006, amends ERISA and the federal tax code to amplify the rights of participants in retirement plans and to secure their pensions.  While the Pension Protection Act of 2006 was not technically effective when many of the facts of the case at bar occurred, it is compatible with and a logical extension of that law and is highly relevant to the issues in this case.  It specifically addresses cash balance conversions requiring the early retirement subsidy to be included in the benefits of a participant who, like Plaintiff, qualified for that subsidy under a defined benefit plan prior to its amendment to a cash balance plan.  Moreover, the new law reaffirms and expands the requirement that individuals, such as those similarly situated to Plaintiff, be given proper, prior notice of a reduction of their future benefit accruals.

The gravamen of this case is Plaintiff's allegation that Defendants improperly and illegally cutback his retirement benefits when it converted the GSX Plan to a cash balance plan. That conversion became effective on December 1, 1998 when the GSX Plan was merged with the SPX Plan. The merger of plans was accomplished by an amendment ("SPX Plan Amendment" or "SPX Plan") that converted the traditional defined benefit formula of the GSX Plan to a three-part cash balance formula under the SPX Plan. The Plaintiff maintains that each of the three benefit calculations of the SPX Plan (i.e., Transition Benefit, SPX Accrued Benefit and GSX December 31, 1998 Accrued Benefit), whether viewed separately or as the highest of the three, illegally cutback Plaintiff's retirement benefits by: (a) in the case of the Transition Benefit, eliminating without prior notice his early retirement subsidy which he already earned; (b) in the case of the SPX and GSX Accrued Benefits, reducing his future accruals without prior notice; and (c) in the case of all benefits, suspending payment of his pension in violation of SPX Plan terms and applicable law, even after Plaintiff made written claims therefor.

Had the GSX Plan been in effect when Plaintiff retired, he would have received a greater pension than the highest benefit offered him under the SPX Plan Amendment.

Because the SPX Retirement Administrative Committee ("Plan Administrator") failed to give proper, prior notice to former GSX employees regarding the cutback of their future benefit accruals under the SPX Plan Amendment, it violated federal law. Moreover, rather than disclosing these cutbacks, the SPX Plan Administrator exacerbated its failure to give prior notice by providing former GSX employees, including Plaintiff, materially misleading disclosures. Defendants also failed to comply with ERISA procedures for responding to Plaintiff's document requests, further exemplifying the Plan Administrator's bad faith and ongoing practice of flouting the requirements of ERISA. The new law underscores existing law relating to these issues.

I.    **Each alternative benefit calculation under the SPX Plan Amendment violates the anti-cutback rules of ERISA.  New law amplifies this result.**

    A.    **Law in effect at time of SPX Plan Amendment forbids the cutback of benefits.**

There are two separate and distinct types of illegal cutbacks relevant in this case that the existing statute prohibits without proper, prior notice: the cutback of early retirement subsidies, and the cutback of future accrued benefits.  (ERISA §§204(g)(2)(A) and 204(h)(1) and (9), 29 U.S.C. §1054(g)(2)(A) and (h)(1) and 26 U.S.C. §411(d)(6)(A) and §4980F(e)(1) and (f)(3)) Unless proper, prior notice is provided, the plan amendment making either such cutback is invalid and the pre-amendment provisions are reinstated if they produce a higher benefit.  (ERISA §204(h)(6), 29 U.S.C. §1054(h)(6))

The black letter law in effect at the time of the SPX Plan Amendment is clear on its face  in prohibiting the elimination of the early retirement subsidy without prior notice.  The law at 26 U.S.C. §411(d)(6) (and its analogous provision at ERISA §204(g), 29 U.S.C. §1054(g)) states:

> "(6)(A)  A plan shall be treated as not satisfying the requirements of this section if the accrual benefit of a participant is decreased by an amendment of the plan…
>
>     (B)  For purposes of paragraph (1), a plan amendment which has the effect of –
>
>         (i)  eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in regulations) …
>
> with respect to benefits attributable to service before the amendment shall be treated as reducing accrued benefits.  In the case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfies (either before or after the amendment) the pre-amendment conditions for the subsidy."

    B.    **Pension Protection Act of 2006 specifically forbids the elimination of early retirement subsidy in the context of a cash balance conversion.**

The Pension Protection Act of 2006 amends 26 U.S.C. §411(b) by adding a provision specifically stating that any early retirement subsidy earned under a defined benefit plan before its

conversion to a cash balance plan must be credited to a participant's opening account balance in the cash balance plan.  (Exhibit 1, attached, 26 U.S.C. §411(b)(5)(B)(ii)-(v) as amended by the Pension Protection Act of 2006 ("PPA"))  While this law applies to amendments adopted after June 29, 2005 (and is thus technically inapplicable to the amendment converting the GSX Plan to the SPX cash balance plan), it illustrates one specific application of the more general anti-cutback rules already articulated at 26 U.S.C. §411(d)(6) and ERISA §204(g) and in effect at the time of the SPX Amendment.  Both old and new law treat early retirement subsidies already earned prior to the conversion of a defined benefit plan to a cash balance plan as a past accrued benefit that cannot be cut.  The requirement under new law is merely an application of existing law to cash balance conversions.

### C.    Plaintiff suffered a cutback in his GSX benefits no matter which of the three SPX Plan formulas applies.

Cutbacks of the Plaintiff's future accruals are evident by comparing Mr. Gillis' benefit at retirement, calculated under the original GSX Plan formula, to his retirement benefit under the SPX Plan as of the same date.  Had the terms of the GSX Plan been in effect when Mr. Gillis retired in 2002, his lump sum benefit under the GSX Plan as of July 1, 2002 would have been $513,409, which is $51,649 greater than the Defendants' calculations of Mr. Gillis' SPX Accrued Benefit as of that date; $54,877.64 greater than Defendants' calculation of his Transition Benefit; and $115,633.92 greater than Defendants' calculation of his GSX December 31, 1998 Accrued Benefit.[1]  (Exhibit 2, attached, Decl. of Plaintiff's Actuary, Arthur W. Anderson, ¶ 6, and Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J. page 6.)  The SPX Plan Amendment to the

---

[1] According to Defendants, Plaintiff's benefits under the SPX Plan terms as of July 1, 2002 were:
- SPX Accrued Benefit:        $461,760.00
- Transition Benefit          $458,331.36
- GSX Accrued Benefit         $397,775.08

(Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J. page 6.)

GSX Plan thus had the effect of cutting back Plaintiff's benefits under existing law no matter which of the benefit calculations under the SPX Plan three-part formula was awarded to Mr. Gillis. This result is only exacerbated under new law which explicitly treats the earned early retirement subsidy as a benefit that is accrued and cannot be reduced in a cash balance conversion, thus invalidating the part of the Transition Benefit calculation that reduces the Plaintiff's benefit by his early retirement subsidy.

> **(1)    The terms of the Transition Benefit calculation violate the existing anti-cutback rule and the anti-circumvention rule of new law.**

The plain terms of the Transition Benefit under the SPX Plan require the subtraction of the GSX early retirement subsidy:

Transition Benefit:

"The Participant's Account Balance at Early Retirement, as determined under the Plan (*without taking into account the provisions… which would otherwise include the GSX Corporate Plan's early retirement subsidy in determining the opening Account Balance of a GSX Group Employee eligible for Early Retirement under the GSX Corporate Plan*) shall be converted to an Actuarially Equivalent Annuity, payable at Normal Retirement Age." (emphasis added) (Defendants' Exh. C, SPX Plan §B-31(p)(1), Bates No. 423)

The Defendants make the point that the Transition Benefit, instituted by the December 1, 1998 SPX Plan Amendment, does not take effect until October 1, 1999 and, as of the date immediately after the merger, December 1, 1998, the Transition Benefit was not available. Therefore, Defendants apparently argue, on December 1, 1998, before the Transition Benefit took effect, there was no violation of the anti-cutback rule regarding mergers even though the Transition Benefit reduces a GSX employee's early retirement subsidy earned under the GSX Plan. (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., pages 5, and 12-13.) Defendants apparently advocate that it is permissible to bypass the anti-cutback rule of an accrued benefit in a

cash balance conversion by making the reduced benefit effective not as of the date of the amendment, but later.

The two effective dates in the SPX Plan Amendment (October 1, 1999 for the Transition Benefit and December 1, 1998 for other provisions) have the effect of creating two amendments in one document.  Under the new law, the circumvention of the anti-cutback rule in the context of a cash balance conversion is specifically prohibited through the use of two or more amendments. (Exhibit 1, attached, 26 U.S.C. §411(b)(5)(B)(v)(III), as amended by the PPA)  Accordingly, the new law would prevent the use of multiple effective dates having the effect of multiple amendments to cutback benefits in a conversion to a cash balance plan.  The new law only amplifies the existing anti-cutback rule by specifically prohibiting the device of multiple amendments that Defendants employ to effect a cutback.

(2)    **The SPX Accrued Benefit and December 31, 1998 Accrued Benefit also cut back Plaintiff's GSX Plan future benefit accruals in violation of ERISA §204(h)(1), 29 U.S.C. 1054(h)(1).  This result is unchanged under the new law.**

Each alternate benefit under the SPX Plan violates the ERISA anti-cutback rules for either past or future accrued benefits.  As shown supra at ID(1), the Transition Benefit illegally reduced Mr. Gillis' benefit by the amount of his already accrued early retirement subsidy under the GSX Plan.  The GSX December 31, 1998 Accrued Benefit under the SPX Plan, by its terms, did not accrue any benefits after 1998 and, by definition, cut back future benefit accruals in violation of ERISA §204(h) without prior notice.  (Defendants' Exh. C, SPX Plan §B-31(h), Bates No. 410) The SPX Accrued Benefit both accrued future benefits at a slower rate than under the GSX Plan and ceased accruing benefits altogether, in violation of applicable law, for those retiring early from SPX and taking early payment.  (See Plaintiff's Mem. in Supp. of S.J., pages 14-15)  Thus, each benefit calculation under the SPX Plan Amendment cut back the benefits that Plaintiff would have

otherwise received under the GSX Plan no matter which of the three calculations of the SPX Plan applies to him.  Therefore, the SPX Plan Amendment is invalid under existing ERISA §204(h)(6) (quoted in footnote 4, <u>infra</u>) because of Defendants' additional failure to provide proper, prior notice of the cutback under ERISA §204(h)(1).  New law does not change the result.

Defendants' argument that by offering Plaintiff the highest of three failed benefits somehow meets the requirements of the ERISA anti-cutback rule is simply wrong as a matter of law.  Defendants also wrongly conclude that there is no cutback because they wrongly compare SPX Plan benefits as of Plaintiff's retirement date to what he would have received two years prior on the date of the merger.  (Defendants' Mot. in Opp. to Plaintiff's Mot. for S.J., pages 7-8) Cutback amendments under ERISA §204(g) and (h) are tested by comparing an employee's benefit as of some date (such as retirement) under the original plan formula to the benefit under the amendment <u>as of the same date</u>.  (<u>Central Laborer's Pension Fund v. Heinz</u>, 124 S.Ct. 2230, 2235-2336, (2004)).

Regarding the calculation of the SPX Accrued Benefit, Defendants make the additional, unsupported claim that the SPX Plan provides "the value of interest credited through age 65 to the account of a participant retiring prior to age 65."  (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., page 11)  Yet the terms of the SPX Plan say no such thing.  (Defendants' Exh. C, SPX Plan §§2.1(c)(1), (bb) and 6.2, Bates Nos. 228, 235 and 252)  Moreover, Defendants' own actuary admits that the SPX Plan is deficient in this respect.  (Exh. A, Campbell Second Decl., ¶10) Rather, the plain meaning of the SPX Plan language is to accrue interest on an Account Balance only to the date of the commencement of benefits.  There is nothing in the SPX Plan that states interest shall be credited to a participant's Account Balance to age 65 if the participant receives payment of his or her early retirement benefit prior to age 65.  Accordingly, the plain language of

the SPX Plan violates IRS Notice 96-8 and Treasury Regulation §1.401(a)(4)-8(c)(1)(B). The SPX Plan Administrator's calculation now produced in contravention of the terms of the SPX Plan is simply a contrived solution to correct a clear deficit in the SPX Plan. (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., page 11; Cf. Plaintiff's Mem. in Supp of S.J., pages 14-15, for more detailed discussion)

Moreover, even if the SPX Accrued Benefit complied with IRS Notice 96-8 and Treasury Regulation §1.401(a)(4)-8(c)(1)(B) (which it does not), its calculation violates the anti-cutback rules of ERISA because it reduces future benefit accruals as compared to the benefits that would have accrued under the GSX Plan on the same date. The SPX Accrued Benefit provides Mr. Gillis with only $461,760, which is $51,649 lower than what he would have otherwise received under the GSX Plan had its terms been in effect in 2002 when he retired. (Exhibit 2, attached, Decl. of Plaintiff's Actuary, Arthur W. Anderson, ¶6 and Defendants' Mem in Opp. to Plaintiff's Mot. for S.J., page 6)

**II.     The Plan Administrator has operated the SPX Plan in a manner that further cuts back Plaintiff's retirement benefit by suspending all payment to him in violation of existing and new law.**

To date, Mr. Gillis has received no benefit from the SPX Plan whatsoever even though he retired four years ago and made several claims for benefits. (Gillis Aff. ¶25) Accordingly, his benefits have been cut back to zero in contravention of ERISA, applicable case law and the terms of the SPX Plan. (ERISA §404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D); Central Laborers' Pension Fund v. Heinz, 124 S.Ct. 2230 (2004) (which held that the suspension of payment otherwise due under a pension plan is an illegal cutback of benefits); Defendants' Exh. C, SPX Plan §6.2, Bates No. 252. See also, Plaintiff's Mem. in Opp. to Defendants' Mot. for S.J., pages. 17-18 and Plaintiff's Mem. in Supp. of S.J., pages 15-16.)

The benefits that Plaintiff seeks in this case are allowed to him under federal law. Defendants' claim to the contrary based on their citation of <u>Averhart v. U.S. West Management Pension Plans</u>, 46 F. 3d 1480 (10th Cir. 1994) is inapposite because that case relates to a special benefit under the terms of a plan for which those plaintiffs did not qualify. Unlike the SPX Plan terms, the underlying plan terms in <u>Averhart</u> complied with applicable law. (Defendants' Mot. in Opp. to Plaintiff's Mot. for S.J., page 14) (<u>See</u>, Plaintiff's Mem. in Supp. to Mot. for S.J., pages 15-16, for more detailed discussion) New law does not change this result

**III.    Because Plan Administrator failed to provide Plaintiff proper, prior notice of the cutback of his retirement benefits under the SPX Plan, but, rather, misled him, the SPX Plan amendment is subject to invalidation under ERISA. The new law does not change these consequences.**

The new law leaves untouched the requirement that an employer notify plan participants before a significant reduction of future benefit accruals occurs. Rather, the new law amplifies this existing notice requirement by expanding the group that must be notified. (Exhibit 3, attached, for new law at 26 U.S.C. § 4980F(e)(1))

The only legal method of cutting back an early retirement subsidy or the rate of future benefit accruals under existing law is by giving participants notice "within a reasonable time before the effective date of the plan amendment." (ERISA §204(h)(3))  In this case, such notice would have been due 15 days before the effective date of the amendment, that is, on November 16, 1998.[2]  It is clear from the facts of this case that no ERISA §204(h) notice announcing benefit cutbacks was ever given regarding the Transition Benefit or any other SPX Plan benefit. Neither the Supplement of the SPX Plan Summary Plan Description nor any other SPX employee

---

[2] If one were to use the effective date of the provision describing the Transition Benefit, October 1, 1999, ERISA §204(h) notice would have been due on September 16, 1999. However, since the statute refers to the "effective date of the amendment", the proper date for ERISA §204(h) notice was November 16, 1998. Because no notice under ERISA §204(h) was ever given at any time, the due date for such notice is a moot point.

disclosure describes the cutback in future benefit accruals that the SPX cash balance amendment represents to older employees like the Plaintiff. (See Plaintiff's discussion of Count III in his Mot. for S.J., pages 8-13, and his Opp. to Defendants' Mot. for S.J., pages 12-15)  Accordingly, no ERISA §204(h) notice was given timely as to any aspect of the SPX Plan Amendment because no such notice was given at all.

Nevertheless, Defendants freely admit that the effect of the SPX Plan Amendment was to reduce future benefit accruals for those electing early retirement from SPX, and for that reason created the Transition Benefit. (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., pages 4-5) Defendants also freely admit that they did not advise SPX Plan participants of the cutback of their future benefit accruals in accordance with ERISA §204(h). (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., page 13)  Rather, the Plan Administrator materially misled employees by providing former GSX employees at least two notices stating that their benefits accrued under the GSX Plan would never be cut back. (Gillis Aff., Exh. L and Exhibit 4, attached) [3]  This disclosure was materially misleading as to the Transition Benefit because it fails to describe the cutback of the GSX early retirement subsidy. (Plaintiff's Mem. in Supp. of Mot. for S.J., pages 8-13 and Plaintiff's Mem. in Opp. to Defendants' Mot. for S.J., pages 13-17)  The Plan Administrator falsely asserted to former GSX employees that the "Transition Benefit [is] provided to help ensure comparable benefits [to the GSX Plan]" (Gillis Aff., "Building for Tomorrow", Bates Nos. 623-624).  The Plan Administrator compounded this falsehood by further emphasizing

---

[3] For example, "Announcing Your New Benefits Program," provided to GSX employees in mid-1998, states in part: "If you currently participate in a General Signal pension plan, you will not lose any benefits you have accrued as of December 31, 1998. All the money you have earned for our retirement will carry forward to the Individual Account Retirement Plan [SPX Plan]. Your opening account balance in the Individual Account Retirement Plan will be the December 31, 1998 value of your current pension benefit…Once we have calculated the value of your pension benefit, you will receive a statement that indicates the amount that has been contributed to the Individual Account Retirement Plan as your opening balance." (Exhibit 4 attached)

that older GSX employees would be protected under the SPX Plan with the Transition Benefit. (Gillis Aff., ¶16 and Exh. L)

The Plan Administrator further misled former GSX employees by distributing the Supplement to the Summary Plan Description of the SPX Plan, a special employee disclosure dedicated to describing the Transition Benefit. That Supplement states that the Transition Benefit would provide an even greater benefit to those who, like Mr. Gillis, met the qualifications for it. (Gillis Aff., Exh. L, Supplement, stating "The transition benefit provides you with a better benefit if you retire early from SPX." (Bates No. 592) In addition, that Supplement provided former GSX Plan participants with a particularly deceptive example of the calculation of the Transition Benefit. (Id. at Bates No. 593)) That example (the "Harry Example") never disclosed any reduction of the GSX early retirement subsidy even though Harry, the former GSX employee in the example, was, like Mr. Gillis at the time of the merger, age 55 and eligible for the Transition Benefit under the SPX Plan. To expect Mr. Gillis to conclude on the basis of the Harry Example that the calculation of his own Transition Benefit requires the reduction of his GSX early retirement from his Account Balance is totally unreasonable, particularly in light of other SPX disclosures that he would not lose any of the benefits that he accrued as of December 31, 1998. (Cf. Exhibit 4, attached) On the contrary, the Supplement works a fraud on former GSX employees by assuring them that the Transition Benefit provides a better benefit for early retirees and by actually showing them how to calculate the Transition Benefit without reducing the Account Balance by the amount of the GSX employee's early retirement subsidy under the GSX Plan.

Because Defendants never complied with the ERISA §204(h) notice requirement, the SPX Plan Amendment was invalid under ERISA §204(h)(6),[4] and the prior GSX Plan benefit must be reinstated for Mr. Gillis who was hurt by the Amendment. Alternatively, the Plaintiff's benefits must be calculated as if the SPX Plan Amendment complied with ERISA. New law does not change this result.

**IV.  Defendants' reference to optional payment rules of ERISA is irrelevant to the SPX Plan and does not support their position. New law does not change this result.**

In an effort to justify its reduction of the GSX early retirement subsidy from the calculation of the Transition Benefit, the Defendants invoke the preamble to an irrelevant 1988 regulation quoted in an inapplicable case. (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., pages 9-10, citing Perry v. SPC Communications, Inc., 375 F. Supp 2d 31, 53, (2005) U.S. Dist. LEXIS 12556) Those rules state that if a benefit is paid in more than one optional payment form (such as a lump sum and a joint and survivor annuity), there is no requirement that each non-annuity payment option include a retirement subsidy. The purpose of the regulation is to protect surviving spouses who choose a joint and survivor annuity payment. For example, a benefit calculation payable as a joint and survivor annuity may include the early retirement subsidy while the same benefit payable as a lump sum may exclude such subsidy, provided that the participant has a choice of optional payment forms. (Perry v. SPC Communications, Inc., supra at 53) Defendants misapply this principle to this case by confusing the underlying calculation of a pension benefit alternative with valuing optional forms of payment of that benefit. Here, each of the three separate alternative benefit calculations under the SPX Plan (Transition Benefit, GSX December 31, 1998

---

[4] ERISA §204(h)(6), 29 U.S.C. §1054 (h)(6), states in pertinent part, "In the case of any egregious failure to meet any require of this subsection with respect to any plan amendment, the provisions of the applicable pension plan shall be applied as if such amendment entitled all applicable individuals to the greater of:

    (i)     the benefits to which they would have been entitled without such amendment, or

    (ii)    the benefits under the plan with regard to such amendment."

Accrued Benefit and SPX Accrued Benefit) is payable in the form of either a lump sum or an annuity, as the employee may choose. But, unlike <u>Perry,</u> each and every optional method of paying the Transition Benefit excludes the early retirement subsidy because the calculation of the Transition Benefit itself excludes that subsidy. Thus, <u>Perry v. SPC Communications, Inc.</u> is irrelevant because the issue in this case is not whether different payment options for the same benefit calculation under the SPX Plan comply with the rules for valuing optional forms of payment, but rather, whether the calculation of benefits under the SPX Plan represents a <u>per se</u> cutback without regard to the type of payment option that a participant might choose. Defendants invoke an irrelevant rule to obfuscate the anti-cutback issue before the Court. The fact that other alternative benefit calculations under the SPX Plan may include the early retirement subsidy does not correct the failure of the Transition Benefit to exclude that subsidy because the Transition Benefit represents a mandatory calculation of a benefit, not an optional form of payment that the employee may select.

Similarly, Defendants' reference to <u>Meyers-Garrison v. Johnson & Johnson</u> is also wholly inapposite because the facts of that case are fundamentally different than those presented here. (Defendants' Mot. in Opp. to Plaintiff's Mot. for S.J., page 10) In that case participants were allowed to choose their old benefit instead of the new benefit, a choice not given to Mr. Gillis under the SPX Plan. (<u>Meyers-Garrison v. Johnson & Johnson</u>, 210 F 3d. 425, 431 (5th Cir. 2000)) None of the issues in <u>Meyers-Garrison</u> applies here.

**V.      Mr. Gillis in no way waived the claims that he has brought in this case for penalties under ERISA § 502(e)(1), 29 U.S.C. 1132(c)(1). New law does not change the result.**

Defendants assert that Mr. Gillis somehow waived his claim for penalties in this case under ERISA §502(c)(1) for Defendants' failure to provide him documents timely. They base this assertion on the wrong theory that Mr. Gillis waived his claim for Defendants' failure to deliver

documents between October 22, 2001 and July 31, 2002. However, the Termination Agreement ("Agreement") is specifically inapplicable to any claims arising after Mr. Gillis signed the Agreement, nor does it apply to any claim that cannot be released as a matter of law. (Plaintiff's Opp. to Defendants' Mot. for S.J., pages 19-20)

No claim under ERISA §502(c)(1) can arise unless and until a matter is before a court[5], as only a court can award the penalty under ERISA §502(c)(1). Mr. Gillis signed the Termination Agreement on July 31, 2002. (Defendants' Decl. of Elaine Krom, Exh. B, Bates No. 535) Since Mr. Gillis did not file this suit until February 14, 2005 any claim under ERISA §502(c)(1) arose well after July 31, 2002, and is thus outside the scope of the release in the Termination Agreement. Moreover, since it is solely the Court's prerogative to impose on Defendants a penalty under ERISA §502(c)(1), such a claim is not one that Plaintiff can release as a matter of law. Accordingly, under the plain language of the Termination Agreement, Mr. Gillis has not and cannot release any claim under ERISA §502(c)(1) and, thus, has not and could not have waived his claim under the Agreement. New law does not change this result.

**VI.    It is proper for the Court to assert penalties against the Plan Administrator under ERISA § 502(c)(1), 29 U.S.C. §1132(c)(1) and new law does not change this result.**

On October 22, 2001, Mr. Gillis first requested a complete copy of the SPX Plan and GSX Plan from the Plan Administrator. (Gillis Aff., ¶23, Exh. N, Bates Nos. 507-509) While the Plan Administrator produced excerpts of the Plan document on November 7, 2001 (Defendants' Decl. of Elaine Krom, Exh. 4, Bates Nos. 511-520), the Plan Administrator did not honor that request until July 18, 2002, and then, only in response to the demand of Plaintiff's attorney (Gillis Aff.,

---

[5] In determining whether this case qualifies for summary judgment, the Court must determine whether it could find for the Plaintiff under the substantive evidentiary standards of ERISA which require that, in interpreting the SPX Plan terms, the Plan Administrator must not act in an arbitrary and capricious manner, or as a result of a conflict of interest. (Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 957 (1989).) The terms of the SPX Plan, so interpreted, are then held against the substantive standards of law, here ERISA, to determine whether the facts of the case, so interpreted, require a verdict for the Plaintiff. (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 248, 106 S.Ct. 2505 (1986))

¶24, Exh. O, Bates Nos. 536-537). Accordingly, the Plan Administrator's withholding of the entire SPX Plan and GSX Plan documents that Mr. Gillis requested is plainly deliberate. Yet the Defendants ask the Court to believe that the Plan Administrator's failure to respond to Mr. Gillis' request for the complete SPX Plan document is somehow not a violation of ERISA §502(c)(1). (Defendants' Opp. to Plaintiff's Mot. for S.J., pages 15-16) The Defendants also ask the Court to believe that the Plan Administrator's immediate response to the same document request by Mr. Gillis' attorney is a coincidence based on when it "found" the SPX Plan document. (Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., page 16) Clearly, the Plan Administrator had the SPX Plan document at least since November 7, 2001 when it produced copies of excerpts thereof. Given the Plan Administrator's excessive delay in producing the complete SPX Plan document (230 days after the statutory deadline) and its immediate delivery of that same document upon the demand of Mr. Gillis' attorney, it strains credulity to believe that the Plan Administrator could not have responded timely to Mr. Gillis' request, and further strains credulity that the Plan Administrator acted in good faith. Clearly, the Plan Administrator did not act in good faith, and for that reason is deserving of punishment as a measure to emphasize its violation of federal law and to encourage the Plan Administrator to correct its future behavior by taking its duties and responsibilities under ERISA seriously. New law leaves in place the penalties of ERISA §502(c)(1).

**VII.    Fees and costs are properly awarded to Plaintiff under applicable law given the facts of this case. New law does not change this result.**

The parties agree that in awarding attorneys' fees and costs, the Court should examine the degree of the opposing parties' culpability and bad faith. (Plaintiff's Mem. in Supp. of S.J., pages 18-19 and Defendants' Mem. in Opp. to Plaintiff's Mot. for S.J., page 17) On this basis, Plaintiff should be awarded attorneys' fees and costs.

Defendants have shown a significant amount of bad faith in their dealing with Plaintiff and other former GSX employees. As discussed supra at III, Defendants provided deceptive, false and materially misleading disclosures to former GSX employees regarding the purpose and calculation of the Transition Benefit. They also failed to disclose to former GSX employees the fact that their future GSX Plan benefit accruals would be cut back under the SPX Plan Amendment. The disclosures that the Plan Administrator did make were in direct violation of ERISA standards and requirements and materially misled older workers, the very persons whom Defendants claim they were trying to protect. (Plaintiff's Mot. in Supp. of S.J., pages 8-13 and supra at III)

Moreover, the trust fund under the SPX Plan profited by the early retirement subsidies that the Transition Benefit cuts. The merger rules under ERISA §208, 29 U.S.C. §1058 set the standards for determining how much the GSX Plan was required to transfer to the SPX Plan when those plans merged. All Participants' accrued GSX benefits as of December 31, 1998, including their early retirement subsidies, were transferred to the SPX Plan. (Defendants' Exh. C, SPX Plan §B-31(l), Bates No. 413) But the calculation of the Transition Benefit takes those subsidies away from those who would qualify for them, allowing the SPX Plan to pocket those subsidies. New law does not change this result. Accordingly, the calculation of the Transition Benefit exhibits Defendants' bad faith because it contravenes ERISA and allows Defendants to profit from an accrued benefit that ERISA guarantees to workers.

In addition, the SPX Plan Administrator treated Plaintiff in an egregious manner that violated the plain terms of ERISA and showed further bad faith by deliberately refusing to provide him the plan documents that he requested; by never paying him any pension to which he was clearly entitled, even after he made two written claims therefor; and by delaying the administrative

claims procedure by responding to Mr. Gillis at the very end of the extended due date of the initial claim, and substantially outside the deadline, in the case of his administrative appeal.

Moreover, Defendants knew or should have known that their cash balance conversion violates basic principles of ERISA, as Plaintiff has argued. SPX is a Fortune 500 corporation with ample resources to hire the best counsel, both legal and actuarial. Its failure to comply with the basic tenets of ERISA and analogous tax law, as amplified by the PPA, can only be described as a deliberate and shameless disregard of law.

Moreover, Defendants' treatment of Plaintiff, particularly their four-year, non-payment of any of the pension that even Defendants admit they owe Mr. Gillis, rises to the level of harassment and further exemplifies Defendants' extreme bad faith. Likewise, following the illegal terms of the SPX Plan which the Plan Administrator knew or should have known violate ERISA is no defense to any part of Defendants' position.

For these reasons, Plaintiff respectfully asks the Court to award him attorneys' fees and costs to him.

## CONCLUSION

For all the reasons set forth above and in the record presented to this Court, the Plaintiff, Thomas D. Gillis, respectfully requests that this Court grant summary judgment in his favor on all counts.

Respectfully submitted,
Thomas D. Gillis, Plaintiff
By his attorneys,

_____
Lawrence P. Murray, Esq., BBO #561835
Evelyn A. Haralampu, Esq., BBO #221130
Michael P. Twohig, Esq., BBO #648079
Burns & Levinson, LLP
125 Summer Street
Boston, MA  02110
(617) 345-3000

Dated: September      , 2006

## CERTIFICATE OF SERVICE

I, Michael P. Twohig, hereby certify that a true copy of the above document was served upon the attorney of record for each other party by first class mail, postage prepaid, on this ____ day of September, 2006.

_____
Michael P. Twohig, Esq.

24651.0-EmergencyMemo-MemSuppPlntff'sSumJudgRec.doc
J:\Docs\24651\00000\01052237.DOC

# EXHIBIT 1

(3) SERVICE REQUIRED.—With respect to any plan, the amendments made by this section shall not apply to any employee before the date that such employee has 1 hour of service under such plan in any plan year to which the amendments made by this section apply.

(4) SPECIAL RULE FOR STOCK OWNERSHIP PLANS.—Notwithstanding paragraph (1) or (2), in the case of an employee stock ownership plan (as defined in section 4975(e)(7) of the Internal Revenue Code of 1986) which had outstanding on September 26, 2005, a loan incurred for the purpose of acquiring qualifying employer securities (as defined in section 4975(e)(8) of such Code), the amendments made by this section shall not apply to any plan year beginning before the earlier of—

(A) the date on which the loan is fully repaid, or

(B) the date on which the loan was, as of September 26, 2005, scheduled to be fully repaid.

(b) ACCRUED BENEFIT REQUIREMENTS.—

(1) DEFINED BENEFIT PLANS.—

* * *

(F) CERTAIN INSURED DEFINED BENEFIT PLANS.—Notwithstanding subparagraphs (A), (B), and (C), a defined benefit plan satisfies the requirements of this paragraph if such plan—

(i) is funded exclusively by the purchase of insurance contracts, and

(ii) satisfies the requirements of *subparagraphs (B) and (C) of section 412(e)(3)* (relating to certain insurance contract plans),

but only if an employee's accrued benefit as of any applicable date is not less than the cash surrender value his insurance contracts would have on such applicable date if the requirements of *subparagraphs (D), (E), and (F) of section 412(e)(3)* were satisfied.

* * *

(5) SPECIAL RULES RELATING TO AGE.—

(A) COMPARISON TO SIMILARLY SITUATED YOUNGER INDIVIDUAL.—

(i) IN GENERAL.—*A plan shall not be treated as failing to meet the requirements of paragraph (1)(H)(i) if a participant's accrued benefit, as determined as of any date under the terms of the plan, would be equal to or greater than that of any similarly situated, younger individual who is or could be a participant.*

(ii) SIMILARLY SITUATED.—*For purposes of this subparagraph, a participant is similarly situated to any other individual if such participant is identical to such other individual in every respect (including period of service, compensation, position, date of hire, work history, and any other respect) except for age.*

(iii) DISREGARD OF SUBSIDIZED EARLY RETIREMENT BENEFITS.—*In determining the accrued benefit as of any date for purposes of this clause, the subsidized portion of any early retirement benefit or retirement-type subsidy shall be disregarded.*

(iv) ACCRUED BENEFIT.—*For purposes of this subparagraph, the accrued benefit may, under the terms of the plan, be expressed as an annuity payable at normal retirement age, the balance of a hypothetical account, or the current value of the accumulated percentage of the employee's final average compensation.*

(B) APPLICABLE DEFINED BENEFIT PLANS.—

(i) INTEREST CREDITS.—

(I) IN GENERAL.—*An applicable defined benefit plan shall be treated as failing to meet the requirements of paragraph (1)(H) unless the terms of the plan provide that any interest credit (or an equivalent amount) for any plan year shall be at a rate which is not greater than a market rate of return. A plan shall not be treated as failing to meet the requirements of this subclause merely because the plan provides for a reasonable minimum guaranteed rate of return or for a rate of return that is equal to the greater of a fixed or variable rate of return.*

(II) PRESERVATION OF CAPITAL.—*An interest credit (or an equivalent amount) of less than zero shall in no event result in the account balance or similar amount being less than the aggregate amount of contributions credited to the account.*

**Code Sec. 411(b)(5)(B)(i)(II)    ¶ 5080**



(III) MARKET RATE OF RETURN.—The Secretary may provide by regulation for rules governing the calculation of a market rate of return for purposes of subclause (I) and for permissible methods of crediting interest to the account (including fixed or variable interest rates) resulting in effective rates of return meeting the requirements of subclause (I).

(ii) SPECIAL RULE FOR PLAN CONVERSIONS.—If, after June 29, 2005, an applicable plan amendment is adopted, the plan shall be treated as failing to meet the requirements of paragraph (1)(H) unless the requirements of clause (iii) are met with respect to each individual who was a participant in the plan immediately before the adoption of the amendment.

(iii) RATE OF BENEFIT ACCRUAL.—Subject to clause (iv), the requirements of this clause are met with respect to any participant if the accrued benefit of the participant under the terms of the plan as in effect after the amendment is not less than the sum of—

(I) the participant's accrued benefit for years of service before the effective date of the amendment, determined under the terms of the plan as in effect before the amendment, plus

(II) the participant's accrued benefit for years of service after the effective date of the amendment, determined under the terms of the plan as in effect after the amendment.

(iv) SPECIAL RULES FOR EARLY RETIREMENT SUBSIDIES.—For purposes of clause (iii)(I), the plan shall credit the accumulation account or similar amount with the amount of any early retirement benefit or retirement-type subsidy for the plan year in which the participant retires if, as of such time, the participant has met the age, years of service, and other requirements under the plan for entitlement to such benefit or subsidy.

(v) APPLICABLE PLAN AMENDMENT.—For purposes of this subparagraph—

(I) IN GENERAL.—The term "applicable plan amendment" means an amendment to a defined benefit plan which has the effect of converting the plan to an applicable defined benefit plan.

(II) SPECIAL RULE FOR COORDINATED BENEFITS.—If the benefits of 2 or more defined benefit plans established or maintained by an employer are coordinated in such a manner as to have the effect of the adoption of an amendment described in subclause (I), the sponsor of the defined benefit plan or plans providing for such coordination shall be treated as having adopted such a plan amendment as of the date such coordination begins.

(III) MULTIPLE AMENDMENTS.—The Secretary shall issue regulations to prevent the avoidance of the purposes of this subparagraph through the use of 2 or more plan amendments rather than a single amendment.

(IV) APPLICABLE DEFINED BENEFIT PLAN.—For purposes of this subparagraph, the term "applicable defined benefit plan" has the meaning given such term by section 411(a)(13).

(vi) TERMINATION REQUIREMENTS.—An applicable defined benefit plan shall not be treated as meeting the requirements of clause (i) unless the plan provides that, upon the termination of the plan—

(I) if the interest credit rate (or an equivalent amount) under the plan is a variable rate, the rate of interest used to determine accrued benefits under the plan shall be equal to the average of the rates of interest used under the plan during the 5-year period ending on the termination date, and

(II) the interest rate and mortality table used to determine the amount of any benefit under the plan payable in the form of an annuity payable at normal retirement age shall be the rate and table specified under the plan for such purpose as of the termination date, except that if such interest rate is a variable rate, the interest rate shall be determined under the rules of subclause (I).

(C) CERTAIN OFFSETS PERMITTED.—A plan shall not be treated as failing to meet the requirements of paragraph (1)(H)(i) solely because the plan provides offsets against benefits under the plan to the extent such offsets are allowable in applying the requirements of section 401(a).

(D) PERMITTED DISPARITIES IN PLAN CONTRIBUTIONS OR BENEFITS.—A plan shall not be treated as failing to meet the requirements of paragraph (1)(H) solely because the plan provides a disparity in contributions or benefits with respect to which the requirements of section 401(l) are met.

(E) INDEXING PERMITTED.—

(i) IN GENERAL.—A plan shall not be treated as failing to meet the requirements of paragraph (1)(H) solely because the plan provides for indexing of accrued benefits under the plan.

(ii) PROTECTION AGAINST LOSS.—Except in the case of any benefit provided in the form of a variable annuity, clause (i) shall not apply with respect to any indexing which results in an accrued benefit less than the accrued benefit determined without regard to such indexing.

(iii) INDEXING.—For purposes of this subparagraph, the term "indexing" means, in connection with an accrued benefit, the periodic adjustment of the accrued benefit by means of the application of a recognized investment index or methodology.

(F) EARLY RETIREMENT BENEFIT OR RETIREMENT-TYPE SUBSIDY.—For purposes of this paragraph, the terms "early retirement benefit" and "retirement-type subsidy" have the meaning given such terms in subsection (d)(6)(B)(i).

(G) BENEFIT ACCRUED TO DATE.—For purposes of this paragraph, any reference to the accrued benefit shall be a reference to such benefit accrued to date.

\* \* \*

## [CCH Explanation at ¶ 205 and ¶ 1005. Committee Reports at ¶ 10,010 and ¶ 10,560.]

### Amendments

**• 2006, Pension Protection Act of 2006 (H.R. 4)**

**H.R. 4, § 114(b)(2)(A)-(B):**

Amended Code Sec. 411(b)(1)(F) by striking "paragraphs (2) and (3) of section 412(i)" in clause (ii) and inserting "subparagraphs (B) and (C) of section 412(e)(3)", and by striking "paragraphs (4), (5), and (6) of section 412(i)" and inserting "subparagraphs (D), (E), and (F) of section 412(e)(3)". **Effective** 8-17-2006.

**H.R. 4, § 701(b)(1):**

Amended Code Sec. 411(b) by adding at the end a new paragraph (5). **Effective** generally for periods beginning on or after 6-29-2005. For special rules, see Act Sec. 701(d) in the amendment notes following Code Sec. 411(a), above, and see Act Sec. 701(e)(3)-(5), below.

**H.R. 4, § 701(e)(3)-(5), provides:**

(3) VESTING AND INTEREST CREDIT REQUIREMENTS.—In the case of a plan in existence on June 29, 2005, the requirements of clause (i) of section 411(b)(5)(B) of the Internal Revenue Code of 1986, clause (i) of section 204(b)(5)(B) of the Employee Retirement Income Security Act of 1974, and clause (i) of section 4(i)(10)(B) of the Age Discrimination in Employment Act of 1967 (as added by this Act) and the requirements of 203(f)(2) of the Employee Retirement Income Security Act of 1974 and section 411(a)(13)(B) of the Internal Revenue Code of 1986 (as so added) shall, for purposes of applying the amendments made by subsections (a) and (b),

(d) SPECIAL RULES.—

\* \* \*

apply to years beginning after December 31, 2007, unless the plan sponsor elects the application of such requirements for any period after June 29, 2005, and before the first year beginning after December 31, 2007.

(4) SPECIAL RULE FOR COLLECTIVELY BARGAINED PLANS.—In the case of a plan maintained pursuant to 1 or more collective bargaining agreements between employee representatives and 1 or more employers ratified on or before the date of the enactment of this Act, the requirements described in paragraph (3) shall, for purposes of applying the amendments made by subsections (a) and (b), not apply to plan years beginning before—

(A) the earlier of—

(i) the date on which the last of such collective bargaining agreements terminates (determined without regard to any extension thereof on or after such date of enactment), or

(ii) January 1, 2008, or

(B) January 1, 2010.

(5) CONVERSIONS.—The requirements of clause (ii) of section 411(b)(5)(B) of the Internal Revenue Code of 1986, clause (ii) of section 204(b)(5)(B) of the Employee Retirement Income Security Act of 1974, and clause (ii) of section 4(i)(10)(B) of the Age Discrimination in Employment Act of 1967 (as added by this Act), shall apply to plan amendments adopted after, and taking effect after, June 29, 2005, except that the plan sponsor may elect to have such amendments apply to plan amendments adopted before, and taking effect after, such date.

(6) ACCRUED BENEFIT NOT TO BE DECREASED BY AMENDMENT.—

(A) IN GENERAL.—A plan shall be treated as not satisfying the requirements of this section if the accrued benefit of a participant is decreased by an amendment of the plan, other than an amendment described in *section 412(e)(2)*, or section 4281 of the Employee Retirement Income Security Act of 1974.

\* \* \*

**Code Sec. 411(d)(6)(A)    ¶ 5080**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

THOMAS D. GILLIS,                    )
                                     )
                Plaintiff            )
                                     )        Civil Action No.:  03-12389-GAO
vs.                                  )
                                     )
SPX CORPORATION INDIVIDUAL ACCOUNT   )
RETIREMENT PLAN and SPX RETIREMENT   )
ADMINSTRATIVE COMMITTEE,             )
                Defendants           )

---

## DECLARATION OF PLAINTIFF'S ACTUARY, ARTHUR W. ANDERSON, IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

I, Arthur W. Anderson, being duly sworn, depose and state as follows:

1.      I am the principal of the AWA Group and consulting actuary to Thomas D. Gillis. If called to testify, I am competent to testify to all matters stated in this affidavit on my own personal knowledge.

2.      My duties and responsibilities as a consulting actuary and principal of the AWA Group include, but are not limited to, performing actuarial and benefit calculations for retirement plans.  I am an Enrolled Actuary, an Associate of the Society of Actuaries, a Fellow of the Conference of Consulting Actuaries, and the author of <u>Pension Mathematics for Actuaries</u>.

3.      In or around June of 2002 Mr. Gillis engaged me as an independent actuary to review the calculation of his benefits under the SPX Plan and the GSX Plan.

4.      In addition, I computed the benefits that Mr. Gillis would have had upon his retirement on June 20, 2002, if the GSX Plan continued to be in effect.  I assumed that the GSX Plan would have had to have been amended to comply with the Economic Growth and Tax

1

Relief Reconciliation Act of 2001 (EGTRRA). In this regard, I assumed that the maximum compensation in 2002 and all prior years was $200,000. I also assumed that the lump sum interest for 2002 was the 30 year treasury rate for November, 2001 that is 5.12%. Finally, I note that Mr. Gillis was born on December 2, 1942, was hired by the predecessor of GSX Corporation on May 10, 1965, and terminated employment on June 20, 2002.

     5.      To compute Mr. Gillis' estimated lump sum under the GSX Plan if he received that benefit on his normal retirement date, January 1, 2008, I further assumed the appropriate interest rate would be 4.5%, approximately the current Treasury rate.

     6.      Based on these assumptions, Mr. Gillis would have received an early retirement benefit under the GSX Plan on July 1, 2002, reduced by 0.25% for each month remaining until his normal retirement date as follows:

**GSX Plan Benefit**
**As of July 1, 2002:**

**Monthly:**   **$4,216.61**
**Lump sum: $513,409**

     7.      Based on the same assumptions, Mr. Gillis would have alternatively received a benefit under the GSX Plan starting on January 1, 2008 (his normal retirement date) as follows:

**GSX Plan Benefit**
**as of January 1, 2008:**

**Monthly:**   **$5,049.83**
**Lump sum: $743,997**

Signed under the pains and penalties of perjury this 3rd day of April, 2006.


             /s/ Arthur W. Anderson
             Arthur W. Anderson, ASA, FCA, EA
             Consulting Actuary
             AWA Group

# EXHIBIT 3

(B) APPLICABLE SECURITIES.—This paragraph shall apply to employer securities which are attributable to employer contributions other than elective deferrals, and which, on September 17, 2003—

(i) consist of preferred stock, and

(ii) are within an employee stock ownership plan (as defined in section 4975(e)(7) of the Internal Revenue Code of 1986), the terms of which provide that the value of the securities cannot be less than the guaranteed minimum value specified by the plan on such date.

(C) COORDINATION WITH TRANSITION RULE.—In applying section 401(a)(35)(H) of the Internal Revenue Code of 1986 and section 204(j)(7) of the Employee Retirement Income Security Act of 1974 (as added by this section) to employer securities to which this paragraph applies, the applicable percentage shall be determined without regard to this paragraph.

## [¶ 5320] CODE SEC. 4980F. FAILURE OF APPLICABLE PLANS REDUCING BENEFIT ACCRUALS TO SATISFY NOTICE REQUIREMENTS.

* * *

(e) NOTICE REQUIREMENTS FOR PLANS SIGNIFICANTLY REDUCING BENEFIT ACCRUALS.—

⟫⟫→ *Caution: Code Sec. 4980F(e)(1), below, as amended by H.R. 4, applies to plan years beginning after December 31, 2007.*

(1) IN GENERAL.—If an applicable pension plan is amended to provide for a significant reduction in the rate of future benefit accrual, the plan administrator shall provide the notice described in paragraph (2) to each applicable individual (and to each employee organization representing applicable individuals) *and to each employer who has an obligation to contribute to the plan.*

* * *

### [CCH Explanation at ¶ 410. Committee Reports at ¶ 10,350.]
**Amendments**

• **2006, Pension Protection Act of 2006 (H.R. 4)**

**H.R. 4, § 502(c)(2):**

Amended Code Sec. 4980F(e)(1) by adding at the end before the period the following: "and to each employer who

has an obligation to contribute to the plan". **Effective** for plan years beginning after 12-31-2007.

## [¶ 5325] CODE SEC. 6033. RETURNS BY EXEMPT ORGANIZATIONS.

(a) ORGANIZATIONS REQUIRED TO FILE.—

* * *

(3) EXCEPTIONS FROM FILING.—

* * *

(B) DISCRETIONARY EXCEPTIONS.—The Secretary may relieve any organization required under paragraph (1) *(other than an organization described in section 509(a)(3))* to file an information return from filing such a return where he determines that such filing is not necessary to the efficient administration of the internal revenue laws.

* * *

### [CCH Explanation at ¶ 1270. Committee Reports at ¶ 11,360.]
**Amendments**

• **2006, Pension Protection Act of 2006 (H.R. 4)**

**H.R. 4, § 1245(a):**

Amended Code Sec. 6033(a)(3)(B) by inserting "(other than an organization described in section 509(a)(3))" after

"paragraph (1)". **Effective** for returns filed for tax years ending after 8-17-2006.

(h) CONTROLLING ORGANIZATIONS.—*Each controlling organization (within the meaning of section 512(b)(13)) which is subject to the requirements of subsection (a) shall include on the return required under subsection (a)—*

*(1) any interest, annuities, royalties, or rents received from each controlled entity (within the meaning of section 512(b)(13)),*

**Code Sec. 6033(h)(1)     ¶ 5325**

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS D. GILLIS, )<br><br>Plaintiff )<br><br>vs. )<br><br>SPX CORPORATION INDIVIDUAL ACCOUNT )<br>RETIREMENT PLAN and SPX RETIREMENT )<br>ADMINSTRATIVE COMMITTEE, )<br>　　　　　　　　　　　Defendants ) | Civil Action No.:  03-12389-GAO |

## SECOND AFFIDAVIT OF THOMAS D. GILLIS

I, Thomas D. Gillis, being duly sworn do depose and state as follows:

1.     In or around May or June of 1998 SPX Corporation mailed me an employee disclosure entitled, "Announcing Your New Benefits Program".

2.     That disclosure stated on page 8 that I would not lose any of my benefits under the GSX Plan accrued as of December 31, 1998, and that all money that I had earned for retirement would be carried forward to the SPX Plan in my opening account balance under the SPX Plan.

3.     Attached hereto as **Exhibit T** is a true copy of the pertinent part of the employee disclosure entitled, "Announcing Your New Benefits Program."

Signed under the pains and penalties of perjury this  3rd  day of April, 2006.

　　　　　　　　　　　　　　　　　/s/ Thomas D. Gillis
　　　　　　　　　　　　　　　　　Thomas D. Gillis

J:\Docs\24651\00000\01003419.DOC

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| THOMAS D. GILLIS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| SPX CORPORATION INDIVIDUAL ACCOUNT | ) |
| RETIREMENT PLAN and SPX RETIREMENT | ) |
| ADMINSTRATIVE COMMITTEE, | ) |
| Defendants | ) |

Civil Action No.:  03-12389-GAO

_____

## <u>SECOND AFFIDAVIT OF THOMAS D. GILLIS</u>

I, Thomas D. Gillis, being duly sworn do depose and state as follows:

1.      In or around May or June of 1998 SPX Corporation mailed me an employee disclosure entitled, "Announcing Your New Benefits Program".

2.      That disclosure stated on page 8 that I would not lose any of my benefits under the GSX Plan accrued as of December 31, 1998, and that all money that I had earned for retirement would be carried forward to the SPX Plan in my opening account balance under the SPX Plan.

3.      Attached hereto as **Exhibit T** is a true copy of the pertinent part of the employee disclosure entitled, "Announcing Your New Benefits Program."

Signed under the pains and penalties of perjury this 3rd day of April, 2006.

/s/ Thomas D. Gillis_____
Thomas D. Gillis

J:\Docs\24651\00000\01003419.DOC

**EXHIBIT   T**

# Announcing YOUR NEW Benefits Program

# Update on Benefits

*This Update on Benefits is the first of several communication pieces about your SPX benefits. Please read this Update carefully as it provides an overview of your new SPX benefit program, which will go into effect January 1, 1999.*

*By consolidating our benefit plans, we will enjoy the advantages of group purchasing and a uniform benefit program across the company. Although the new benefit program will incorporate some changes and improvements, the total package will be comparable to the General Signal benefit program.*

## What You Need to Do

**Educate Yourself!** In addition to this *Update*, from now until the end of the year, you'll receive a lot more information about your new benefit program. It's important for you to read and understand these materials. Ask questions and be sure to attend meetings, which will be held in November. We also encourage you to share communications with your spouse or other family members.

**Make Choices.** Your SPX benefit program offers you a variety of flexible benefit options so that you can choose the coverage that best meets your needs. You'll also have the chance to decide whether or not to participate in the SPX Retirement Savings and Stock Ownership Plan (401(k) plan) and the Stock Purchase Plan.

**Enroll.** The open enrollment period for flexible benefits will run from November 2 until November 13. To enroll for benefits, you'll need to select your coverage and complete and return an enrollment form. You'll be able to enroll in the SPX Retirement Savings Plan and the Stock Purchase Plan in December.

---

**2**

The SPX flexible benefit program gives you an opportunity to choose the type and level of coverage that's right for you and your family.

**7**

SPX has three plans that can provide you with financial security for the future.

**10**

SPX provides many other "supplemental" plans to help meet your family's needs.

---


**SPX** Corporation

7

# Financial Security Plans

SPX has three plans that can provide you with financial security for the future:

- Individual Account Retirement Plan

- Retirement Savings and Stock Ownership Plan (KSOP)

- Stock Purchase Plan

These benefits are important. The more you understand your benefits today and start planning for tomorrow, the better you'll be able to enjoy a financially secure future. Here are some details on each of these plans.

## Individual Account Retirement Plan

As of January 1, 1999, you automatically will become a participant in the SPX Individual Account Retirement Plan that replaces your current pension plan. The Individual Account Retirement Plan is funded entirely by SPX.

Unlike your current pension plan (which pays a benefit based on a complicated formula), the amount contributed on your behalf to the Individual Account Retirement Plan is based on a simple calculation— a credit equal to a percentage of your annual pay plus an annual interest credit. Here are the highlights of the Individual Account Retirement Plan:

- You're eligible to participate in the plan as of January 1, 1999.

- Each year, your "account" is credited with an amount equal to:

  4% of annual pay up to the Social Security wage base ($68,400 in 1998)

  plus

  8% of annual pay above the Social Security wage base ($68,400 in 1998)

### About Your "Account"

Your account under the Individual Account Retirement Plan is not like a personal account you could have under the Retirement Savings Plan or a personal bank account. While the company keeps track of your balance, money is not actually set aside in an individual account in your name.

- An interest credit (equal to the current five-year Treasury rate) is applied to your account balance each year.

- You are 100% vested in your account after five years of service (including any service you have before January 1, 1999).

- When you retire or otherwise terminate employment, the full value of your account will be distributed to you.

### Why an Individual Account Retirement Plan?

- This is the same plan currently in place for most SPX associates.

- It's less complicated and easier to understand than your current pension plan.

- It offers greater tangible value that you can see today; you'll receive periodic plan statements so you can watch the value of your account grow.

- It's portable. If you leave SPX (after five years of service, regardless of your age), you can take the value of your Individual Account Retirement Plan with you.



8

## Your Current Pension Benefit

If you currently participate in a General Signal pension plan, you will not lose any benefits you have accrued as of December 31, 1998. All the money you have earned for your retirement will carry forward to the Individual Account Retirement Plan.

Your opening account balance in the Individual Account Retirement Plan will be the December 31, 1998 value of your current pension benefit. Determining the value of your current pension benefit is a complex actuarial calculation and will take several months to complete. Once we have calculated the value of your pension benefit, you will receive a statement that indicates the amount that has been contributed to the Individual Account Retirement Plan as your opening balance.



## SPX Retirement Savings and Stock Ownership Plan

Beginning January 1, 1999, you will be able to participate in the SPX Retirement Savings Plan. Designed to supplement the benefits provided through the Individual Account Retirement Plan, the plan offers several advantages:

- You can save up to 17% of pay in the plan, on a pre-tax basis; after-tax contributions are not permitted. (Under the General Signal plan, you also can save up to 17% of pay, a portion of which can be on an after-tax basis.)

- SPX will match the first 6% of pay you save. SPX's contribution initially will be made in SPX common stock (although you may transfer SPX's contribution to any other investment fund or funds available to you).

### Access to Fidelity Services

Fidelity Investments manages the day-to-day activities and investment funds of the plan. This means you'll have access to an array of Fidelity services, including:

1. **Daily Valuation:** Your account will be updated daily with investment returns and you can make changes to your investment fund directions on a daily basis.

2. **Interactive Phone System:** You simply pick up the phone to enroll in the plan, transfer funds, and request loans. After you enter your Social Security number and Personal Identification Number (PIN), which you will receive later this year, the phone system will lead you through each step.

3. **Customer Service Representatives:** You also can be connected to a Fidelity Customer Service Representative who can answer questions about the plan and your investment funds.

| When You Save: | SPX's Contribution Will Equal: |
|---|---|
| 1% of pay | 1% of pay |
| 2% of pay | 2% of pay |
| 3% of pay | 3% of pay |
| 4% of pay | 4% of pay |
| 5% of pay | 4.5% of pay |
| 6% of pay | 5% of pay |

12

## THERE'S MORE TO COME

- Late October/Early November: You'll receive an enrollment kit providing more details on your benefits, with instructions on how to enroll for 1999.

- Beginning November 2: You'll have the opportunity to attend meetings where you can get your questions answered.

- Late November: You'll receive more details on the Retirement Savings Plan and the Stock Purchase Plan.

- January 1, 1999: The effective date for the new SPX benefit program.

- Second calendar quarter of 1999: Updated Benefit Handbook.

- July 1, 1999: Retirement statement showing "opening" account balance in the Individual Account Retirement Plan.

## A Final Note

This update summarizes the SPX benefit program. A complete description of each benefit can be found in the legal plan documents. Every effort has been made to provide an accurate summary of the plans. If there is a conflict between this material and the applicable plan documents, the plan documents will govern.