# EXHIBIT A



**Pension & Benefits REPORTER**

Volume 33 Number 35
Tuesday, September 5, 2006
ISSN 1522-5976

Page 2078

## News

### Cash Balance Plans
### PPA and Reversed Court Ruling
### Dooms Age-Related Suits, Practitioners Say

The newly enacted pension law in combination with a recent ruling from a federal appeals court on hybrid pension plans has all but eliminated plaintiffs' ability to prevail in age discrimination lawsuits when their employers change their defined benefit pension plans, according to pension professionals and advocates interviewed by BNA.

"I think it'll be harder for plaintiffs," Nell Hennessey, president of Fiduciary Counselors Inc., predicted Aug. 25. "The litigation risk for the plaintiffs has clearly gone up everywhere," she told BNA.

Speaking of the new pension statute in general, Hennessey said, "I think it's probably helpful to younger workers and harmful to older workers." Hennessey was deputy executive director and chief negotiator of the Pension Benefit Guaranty Corporation from 1993 to 1998.

The Pension Protection Act (P.L. 109-280), was signed into law Aug. 17 and explicitly states that employers who offer "cash balance" pension plans or other plans that feature hypothetical accounts for individual workers do not violate the Age Discrimination in Employment Act. The language is prospective, however, referring only to plans that exist or were established after that provision's effective date of June 29, 2005.

Just days after the pension bill passed the Senate and was sent to the president, the U.S. Court of Appeals for the Seventh Circuit issued what some call a landmark ruling in *Cooper v. IBM Personal Pension Plan*. Reversing a district court's decision, the Seventh Circuit said IBM's cash balance plan did not discriminate against older workers (151 PBD, 8/8/06, 33 BPR 1867, 8/8/06). IBM had terminated its cash balance plan as a result of the district court's earlier decision that said the plan discriminated against older workers (148 PBD, 8/4/03; 30 BPR 1716, 8/5/03; 30 EBC 2511).

#### Employers Shied Away From Cash Balance Plans

The district court's decision in *Cooper* had caused many employers to shy away from converting their traditional defined benefit plans to cash balance plans, according to Groom Law Group Attorney William Sweetnam, who was the benefits tax counsel in the Office of the Tax Policy at the U.S. Department of the Treasury until May 2005. "I think very few people have been doing cash balance conversions lately," he said Aug. 25. Before the Seventh Circuit reversed the lower court's decision in *Cooper*, "it didn't matter how generous you were" in making a conversion. "You still would have an illegal plan," he said.

Cash balance and other hybrid pension plans create hypothetical accounts for individual employees that calculate workers' retirement benefits based on a formula that includes their compensation and an "interest credit" that may be based on a fixed interest rate or tied to an extrinsic index. They include elements of traditional defined benefit plans and defined contribution plans.

Opponents of cash balance plans argue that they favor younger workers because the money in their hypothetical accounts accrues for a longer period before they retire than in the accounts for older workers. Older workers' pension payouts are slashed when employers convert from defined benefit plans to cash balance plans, opponents say.

AARP is one advocacy group that has criticized cash balance plans as harmful to older workers. But AARP Senior Legislative Representative Frank Toohey said Aug. 24 he has shifted his focus away from cash balance plans to the pension law's strict new funding limitations, which he fears is going to chip away at traditional defined benefit plans. "It is going to discourage employers from continuing with defined benefit plans. There's a genuine concern about that," he said. "If that's the case, then cash balance plans are not a bad plan now."

The *Cooper* decision virtually inoculates employers against age discrimination lawsuits when they set up hybrid pension plans or convert from a defined benefit plan to a hybrid plan, according to Lynn Dudley, American Benefits Council vice president for retirement policy. "It's pretty clear. The design is legitimate," she said Aug. 24. "It's a very significant limitation on the ability to go after someone on the basis of age discrimination solely on the fact that they have a hybrid plan."

### *Cooper* Influenced Pension Bill Talks

The oral argument in *Cooper* took place several weeks before lawmakers finalized the language of the pension conference report that would eventually become law. After the oral argument, negotiators who favored cash balance plans were confident that the district court decision would be overturned. They opted to focus only on prospective cash balance language, rather than fight for retrospective provisions, according to sources familiar with the negotiations.

"Everybody had been waiting for *Cooper* to come down," Hennessey said. "There was some feeling that the judges in *Cooper* didn't want to influence the legislation."

Congressional staffers involved in drafting the pension bill attended the oral argument, however, which subsequently influenced their negotiating strategy in hammering out the last details of the bill, according to sources. Although the pension bill's final language on cash balance plans is prospective only, the statute does not contain some of the safeguards in an earlier version of the bill that had retroactive language about cash balance plans.

Pension plan sponsors were disappointed that the law contains no language on retroactivity because they wanted the pension bill to state unequivocally that cash balance plans created at any time are not age discriminatory, according to Dudley. "There's always the chance that someone can file a lawsuit on a different ground," she said. Moreover, she said, cases pending in other circuits could be decided differently.

Dudley acknowledged, however, that the *Cooper* decision goes a long way toward addressing employers' concerns about cash balance plans that already are in existence. "It's very clear, retroactively, that the design is OK. That's very valuable. That's probably more valuable to the existing plan sponsors" than the new pension law, she said.

### Disparate Impact Lawsuits Expected

Dudley said employers still might be vulnerable to lawsuits alleging that cash balance plan conversions violate ADEA under the "disparate impact" or "disparate treatment" theories. Plaintiffs could claim the conversions have a worse impact on older workers than younger workers.

Disparate treatment cases carry a heavy burden of proof, however, which will require the plaintiffs' bar to "be creative" in their claims, Dudley said. "That's much more difficult to prove because you actually have to have some disparate treatment of the people." Many employers

go out of their way to ensure that workers are not financially harmed by cash balance plan conversions, she added.

Sweetnam said the U.S. Supreme Court's recent decisions in disparate impact cases unrelated to pensions has caused some in the pension community to worry that employers who convert to cash balance plans could be vulnerable to disparate impact lawsuits. "I don't get as worried about that," he said. If they are sued, employers can point to the new pension law, which explicitly states that cash balance plans are not discriminatory based on age.

He said, "If I'm arguing this case in front of a judge, I say, 'Judge, Congress specifically went into ADEA to talk about cash balance conversions, and this is what they said.'"

### Employee Notice, 'Backloading' Claims Possible

Sweetnam said some lawsuits could claim that employers did not give workers proper notice when they converted from a traditional defined benefit plan to a cash balance plan. But those cases would be difficult to win, even retrospectively, because in 2001, Treasury changed the rules about employee notification to give employers some leeway on notice, he added. "If you don't give advance notice, the plan is not blown up."

Proskauer Rose Attorney Andrea Rattner told BNA Aug. 25 that many pending age discrimination claims involving cash balance plans also allege that employers violated federal law by "backloading" their calculations of workers' pension accruals. While the *Cooper* decision may have negated the age discrimination claims, the backloading claims could still be valid, she said.

But Rattner, who specializes in designing pension plans, said workers' claims involving backloading are more difficult for plaintiffs attorneys to argue. "It's really a facts and circumstances test" based on an individual worker's situation, she said.

Hennessey said most firms that established cash balance plans after June 29, 2005, are likely to be in near-compliance with the new law, but those "interim" plans could spur some litigation. "I think they will comply," she said, adding that those litigation issues will be resolved quickly.

### Small Businesses Win With Pension Bill

The new pension law will prompt small businesses that currently provide no pension benefits to offer cash balance plans to their workers as a new benefit, Sweetnam predicted. Small businesses receive tax shelters for offering traditional defined benefit plans or cash balance plans, but cash balance plans are easier to operate and pose less financial risk than traditional defined benefit plans, he said.

Larger companies probably will continue to be leery of converting to cash balance plans, according to Sweetnam. "If an employer is being driven to do something in order to reduce costs, they probably will just freeze their plan rather than do a cash balance plan," he said.

Nobody can argue that freezing a plan is discriminatory, but companies still may be vulnerable to lawsuits if they convert to a cash balance plan, Sweetnam said. "Congress can't tell a company that they can't terminate a plan. It's a voluntary system. Even [Rep.] Bernie Sanders (I-Vt.), the most liberal guy in the House of Representatives, wouldn't be able to say that you can keep these plans in perpetuity."

AARP's Toohey said he concerns himself more about the decline of traditional defined benefit pension plans than the emergence of cash balance plans. "I'm worried about what's going to happen in the future," he said. "Half the workforce has no coverage at all. Then we have lots of folks with just 401(k) coverage. What can we do to encourage coverage for everybody?"

Hennessey agreed with that assessment, calling the new pension law "the Pension Destruction Act."

"I didn't think it was particularly pro-participant. I think the whole funding regime for single employer plans is just a disaster," Hennessey said.

*By Fawn Johnson*

Contact customer relations at: customercare@bna.com or 1-800-372-1033
ISSN 1522-5976
Copyright © 2006, The Bureau of National Affairs, Inc.
Copyright FAQs | Internet Privacy Policy | BNA Accessibility Statement | License

Reproduction or redistribution, in whole or in part, and in any form,
without express written permission, is prohibited except as permitted by the BNA Copyright Policy,
http://www.bna.com/corp/index.html#V


