UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-12389-GAO

THOMAS D. GILLIS,
Plaintiff

v.

SPX CORPORATION INDIVIDUAL RETIREMENT PLAN and SPX RETIREMENT ADMINISTRATIVE COMMITTEE,
Defendants.

MEMORANDUM AND ORDER
March 31, 2007

O'TOOLE, D.J.

I.  Introduction

Thomas D. Gillis was an employee of General Signal Corporation ("GSX"), when it was acquired by SPX Corporation ("SPX" or "Company") in 1998. As part of the acquisition, the SPX Retirement Administrative Committee ("Plan Administrator") amended the SPX Corporation Individual Retirement Plan ("SPX Plan" or "Plan"), a front-loaded cash balance plan, to incorporate a new benefit for former GSX employees.

Gillis' employment with SPX terminated on June 20, 2002, and thereafter he decided to take his retirement benefit in a single lump sum payout. At the time of his termination, the SPX Plan provided that former GSX plan participants were entitled to receive the greatest of three benefit options: (1) the SPX Accrued Benefit; (2) the Transition Benefit; or (3) the December 31, 1998 GSX Accrued Benefit.[1] In Gillis' case, SPX calculated that his SPX Accrued Benefit provided the greatest lump sum payout, $471,147.90, compared to a Transition Benefit computed to be $451,569.24 and

---

[1] The GSX Accrued Benefit would result in the smallest payout to the plaintiff and it does not figure in the present dispute except as part of the background.

a GSX Accrued Benefit of $413,445.24. (Gillis Aff. Ex. J; Decl. of Elaine Krom ¶ 14.) Each of these calculations was made in accordance with the terms of the SPX Plan. (Decl. of Robert Campbell.)

Gillis disputed the SPX calculations, specifically with respect to the value of his Transition Benefit.[2] When SPX reaffirmed its calculations, Gillis filed a six-count complaint against the SPX Plan and the Plan Administrator, which he later amended. In his amended complaint, he asserts that the SPX Plan violates the anti-cutback provisions of the Employee Retirement Income Security Act ("ERISA" or the "Act") of 1974 § 204(g)(1), 29 U.S.C. § 1054(g)(1) and I.R.C. § 411(d)(6) because it excludes an already vested early retirement subsidy from his opening balance in the calculation of his Transition Benefit and fails to take proper account of interest projections to age 65 for participants taking early retirement lump sum distributions. Gillis further alleges that SPX's actions violated ERISA's merger provisions, ERISA § 208, 29 U.S.C. § 1058 and I.R.C. § 414(l), age discrimination prohibitions, ERISA § 204(B)(1)(G), 29 U.S.C. § 1054(B)(1)(G), and requirement of timely response to document requests, ERISA §502(c)(1), 29 U.S.C. § 1132(c)(1). The amended complaint also asserts claims for breach of fiduciary duty against the defendants based on the informational materials provided to SPX Plan participants and the Company's failure to pay Gillis his benefit in a timely manner.

---

[2]According to Gillis' calculations, his Transition Benefit should have totaled $661,367.62 on the date his employment terminated. See Pl. Ex. P. The discrepancy between the two Transition Benefit calculations is attributable to the fact that Gillis performed his calculation using his full account balance–including his already vested early retirement subsidy–while SPX, according to the terms of its plan, subtracted the early retirement subsidy and then used under the GSX Plan actuarial factors intended, in part, "to capture the value of any early retirement benefits to be reflected in the Transition Benefit amount." Decl. of Robert Campbell in Support of Defs.' Mot. for Summ. J. at ¶17.

Both sides in this dispute have filed motions for summary judgment with respect to all counts. After consideration of the parties' arguments as presented in their briefing and at oral argument, the defendants' motion for summary judgment (Dkt. No. 27) is GRANTED, and the plaintiff's motion for summary judgment (Dkt. No. 23) is DENIED.

**II.    Analysis**

**A.    The SPX Plan Does Not Violate the ERISA Merger and Anti-Cutback Rules**

Pursuant to ERISA § 208 and I.R.C. § 414(l), when benefit plans are merged, each plan participant must receive benefits immediately after the merger that are equal to the benefits he would have received had his plan terminated immediately prior to the merger.[3] See 29 U.S.C. § 1058; I.R.C. § 414; see also Hickerson v. Velsicol Chem. Corp., 778 F.2d 365, 374 (7th Cir. 1985) ("The validity of the attempted merger under ERISA is measured by comparing the "benefits on a termination basis" of the participants immediately *before* the proposed merger with the benefits on a termination basis of the participants immediately after. Treas. Reg. § 1.414(*l*)-1(a)(2)(ii)"). At its core, this merger rule is a simple one, intended to prevent companies from eliminating an employee's previously accrued benefits when merging one benefit plan with another.

In connection with SPX's acquisition of GSX, the GSX retirement plan, under which Gillis had accrued an early retirement subsidy, was merged with the SPX Plan. The newly merged plan guaranteed that Gillis, like other former GSX plan participants, was entitled to receive the greater of

---

[3]Specifically, § 208 reads:
> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan . . . unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated).

29 U.S.C. § 1058.

3

either the GSX Accrued Benefit or the SPX Accrued Benefit upon termination of his employment. The GSX Accrued Benefit is the value of a plan participant's vested benefits under the GSX Plan as of December 31, 1998, expressed as an actuarially equivalent lump sum, while the SPX Accrued Benefit is the value of the participant's vested benefits (including principal and interest credits) as calculated under the SPX Plan at any given point in time. (Defs.' Ex. C, SPX Plan § B-31(k)(3) and (h), § 2.1(b))  Without question, both the GSX Accrued Benefit and the SPX Accrued Benefit include the value of Gillis' GSX early retirement subsidy.  (Id.; Pl.'s Opp. at 2.)  Because the SPX Plan as amended preserved Gillis' previously accrued early retirement subsidy and Gillis was entitled to at least as great a benefit post-merger as he had been entitled to pre-merger, the SPX Plan does not violate ERISA's merger rule.

Approximately ten months later, the SPX Plan was further amended to add another option, the Transition Benefit.  According to uncontoverted evidence provided by the defendants, SPX, on advice of its independent actuary, added the Transition Benefit to place a specific subset of former GSX employees those who (unlike Gillis) had *not* yet accrued an early retirement subsidy on more equal footing with other SPX employees. (Defs.' Mem. in Support of Mot. for Summ. J., Ex. B ¶¶ 12-13 and Ex. 12)  Gillis, however, contends that the addition of the Transition Benefit violated both the merger and anti-cutback provisions of ERISA because its calculation, at least in his case, required that the value of his early retirement subsidy be subtracted from the initial balance in his account before actuarial factors were applied to determine the total amount of the benefit.

Much like the merger rule, the purpose of the anti-cutback provisions of § 204(g)(1) of ERISA is to prevent an employer from "pulling the rug out from under employees" by amending its benefit plan to eliminate or reduce a previously accrued early retirement subsidy. Williams v. Cordis Corp., 30 F.3d 1429, 1431 (11th Cir. 1994); Allen v. Honeywell Retirement Earnings Plan, 382 F.

Supp. 2d 1139, 1150 (D. Ariz. 2005). Specifically, the anti-cutback rule provides, with certain exceptions not relevant here, that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054 (g)(1). The rule applies to the participant's basic accrued benefit, as well as to accrued early retirement benefits, retirement-type subsidies, and optional forms of benefits. Id. 1054(g)(2).

SPX violated neither this rule nor the merger rule when it implemented the Transition Benefit. The addition of a new benefit alternative developed to improve the lot of a specific subset of plan participants to a benefit plan that already clearly preserved the early retirement benefits of former GSX employees like Gillis does not run afoul of ERISA's protective provisions. The Act requires that the merger or amendment of retirement plans does not result in a plan that has the effect of reducing an employee's previously accrued benefits.[4] The SPX Plan meets this requirement: the choice between the GSX Accrued Benefit and the SPX Accrued Benefit ensured that Gillis would receive at least as great a benefit after the merger and amendment as he was entitled to beforehand.

Alternatively, Gillis argues that the SPX Plan violates ERISA's anti-cutback provision and the accrual rules in 26 U.S.C. §§ 411 and 417 because it "fails to credit to age 65 future interest credits on Mr. Gillis' Account Balance before converting it to its actuarial equivalent as of his early

---

[4] Gillis provides no legal support for his contention that each alternative under the SPX Plan, as applied to each plan participant, must comply independently with the anti-cutback provisions of ERISA and the Internal Revenue Code. At least one circuit court appears to have come to a contrary conclusion. In Myers-Garrison v. Johnson & Johnson, 210 F.3d 425 (5th Cir. 2000), the plaintiffs argued that their benefits had been cut back due to a plan amendment. The court concluded that this was true with respect to at least one sub-class, which was required to accept the newly amended benefit. However, with respect to a second sub-class of employees, those who could choose between the new benefit option and receiving their normal annual benefits, the court concluded that their benefits had not been reduced. See id. at 431. Because the sub-class could have chosen to take the pre-existing, unchanged benefit, the anti-cutback provision was not violated: "The anti-cutback rule does not regulate new benefits; as a commonsense matter, offering employees a new alternative does not amount to a decrease in their accrued benefits." Id.

retirement date." Am. Compl. ¶¶ 37-41; see also Pl.'s Memo in Support of Summ. J. at 14-15. When calculating the amount of a lump sum distribution under a cash balance plan (like the SPX Plan), the balance of an employee's hypothetical account must be projected to normal retirement age using the interest rate provided for in the plan and then the employee must be paid at least the present value of that projected hypothetical account. See IRS Notice 96-8 Section III.A. Because "the retirement benefits payable at normal retirement age are determined by reference to the hypothetical account balance as of normal retirement age, including benefits attributable to interest credits to that age . . . benefits attributable to interest credits are in the nature of accrued benefits . . . and . . . once accrued, must become nonforfeitable." Id. Thus, Gillis' argument goes, if the calculation of the SPX Accrued Benefit fails to account for future interest credits, the SPX Plan violates ERISA's anti-cutback and accrual rules.

The defendants have provided evidence that the calculation of the SPX Accrued Benefit pursuant to the terms of the SPX Plan does not violate the anti-cutback rule, and Gillis has not placed that evidence in dispute.[5] Under the Plan, an employee's account balance is projected to normal retirement age using the interest rate specified in the Plan (which is based on the rate paid on five-year U.S. Treasury Constant Maturities), and then discounted back to the present value using an interest rate that is, under IRS Notice 96-8, deemed to be greater than the rate at which the Plan credits interest. Campbell Decl. in Support of Defs.' Opp. to Pl.'s Mot. for Summ. J. ¶¶ 8-11 This approach is permitted by IRS Notice 96-8, which further recognizes that under such circumstances,

---

[5] Gillis offers little support for his argument that the calculation of his SPX Accrued Benefit violates the anti-cutback rule, save the fact that the text of the Plan describes the employee's SPX Accrued Benefit as of the date of his early retirement as being his account balance on that date. As discussed further in the text, such an approach is permitted so long as the Plan comports with the Treasury Department's "safe harbor." See 26 C.F.R. 1.401(a)(4)-8(c); IRS Notice 96-8.

"the employee's hypothetical account balance will equal or exceed the present value of the employee's accrued benefit determined in accordance with section 417(e). Thus, a single sum distribution equal to the employee's hypothetical account balance under such a plan will satisfy sections 411(a) and 417(e)." IRS Notice 96-8. This is true even where, as here, the Plan terms do not require that the calculations actually be performed, but rather define the accrued benefit as an amount equal to the employee's hypothetical account balance. Id. Sect. III. C.

In sum, because the SPX Plan preserved Gillis' early retirement subsidy and he has not challenged the evidence demonstrating that his SPX Accrued Benefit was calculated in conformity with the applicable accrual rules, the defendants' motion for summary judgment with respect to Counts I and II of the amended complaint is granted.

**B.     The SPX Plan Does Not Violate ERISA's Rules Against Age Discrimination**

The same aspects of the SPX Plan challenged in Gillis' merger and anti-cutback claims the subtraction of his GSX early retirement subsidy from the Transition Benefit and the interest calculations made with respect to the SPX Accrued Benefit also form the basis of Count IV of the amended complaint, which alleges that the SPX Plan violates ERISA's rules against age discrimination. Sections 204(b)(1)(G) and (H) of ERISA provide that a plan cannot reduce a participant's accrued benefit or cease or reduce the rate of accrual of a participant's benefit on account of any increase in his age or service. See 29 U.S.C.§§ 1054(b)(1)(G) and (H).

Having already determined that the SPX Plan preserves Gillis' previously accrued early retirement subsidy and properly calculates the interest to age 65 for the SPX Accrued Benefit, I need not revisit those issues here. It suffices to say that because Gillis cannot demonstrate that his benefits under the Plan were impermissibly cut back, he cannot demonstrate that they were cut back because of his age or years of service.

### C.     The Defendants Have Not Breached Their Fiduciary Duty to Gillis

Count III of the amended complaint, at least as originally articulated, see Am. Compl. at ¶¶ 55-61; Pl.'s Mem. in Support of Mot. for Summ. J. at 8-11, asserted that the defendants had breached their fiduciary duty to Gillis because at the time of the plan merger, they distributed a misleading plan summary that failed to provide clarifying examples and minimized or rendered obscure any exceptions, limitations, reductions and other restrictions contained in the new SPX Plan, all in violation of ERISA §§ 102(a) and 104(b), 29 C.F.R. § 2520.102-2(a) and 29 C.F.R. §2520.102-2(b). Specifically, Gillis claims that the documents provided to employees by SPX at the time of the merger did not adequately describe how the Transition Benefit would be calculated, nor did they indicate that his previously accrued benefits would be reduced under the SPX Plan.

Faced with the likelihood that any common law claim for breach of fiduciary duty would be preempted by ERISA, see Dudley Supermarket, Inc. v. Transamerica Life Ins. and Annuity Co., 302 F.3d 1, 4 (1st Cir. 2002), and that he could not personally recover damages for any breach of fiduciary duty by the defendants, see 29 U.S.C. §§ 1332(a)(2) and 1109(a); Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985), Gillis recast Count III as a claim for equitable relief under § 1332(a)(3) to enforce ERISA's notice provision, § 204(h).  Section 204(h) requires plan administrators to provide participants with timely written notice of any amendment to the plan that causes a "significant reduction in the rate of future benefit accrual," 29 U.S.C. § 1054(h)(1), and provides that where there has been an "egregious failure" to meet the notice requirement, a plan participant is entitled to the greater of (i) the benefit he would have been entitled to "without regard to [the] amendment" or (ii) his benefits under the plan post amendment, 29 U.S.C. § 1054(h)(6). Given that section 204(h) by its terms requires notice only of those changes that significantly reduce a participant's future benefit accrual and that the uncontroverted evidence in this case indicates that

8

the SPX Plan complies with ERISA's interest accrual rules, Gillis is not entitled to the relief he seeks. The defendants' motion for summary judgment as to Count III of the amended complaint therefore is granted.

Like Count III, Count V of the amended complaint sets forth a claim for breach of fiduciary duty. In it, Gillis alleges that the defendants breached their duty to him when they failed to pay him the benefit he demanded at the time his employment with SPX terminated in June 2002, and makes a demand under 29 U.S.C. §1132(a)(3) for the interest that has accrued on his account balance during the pendency of this dispute. See Am. Compl. ¶¶ 68-73; Pl.'s Memo in Support of Mot. for Summ. J. at 15-16. The defendants do not dispute that they have paid no part of Gillis' retirement benefit over to him. In fact, they freely admit that they denied his application for benefits, see Gillis Aff. Ex. J, and also denied his subsequent appeal, see id. at Ex. R.

These denials were justified. The SPX Plan guaranteed that Gillis would receive the greatest of his GSX Accrued Benefit, SPX Accrued Benefit, or Transition Benefit. Calculated pursuant to the terms of the Plan, which I have already concluded does not violate ERISA, his SPX Accrued Benefit ($471,147.90) was higher than both his Transition Benefit ($451,569.24) and his GSX Accrued Benefit ($413,445.24) at the time he made his claim for benefits. Despite this fact, Gillis submitted a claim for $661,367.62, the value of his Transition Benefit as he calculated it including the value of his previously accrued early retirement subsidy. Because his calculations contravened the terms of the SPX Plan and his claim demanded an amount in excess of the maximum plan benefit due to him, the Plan Administrator was correct to deny his claim and the subsequent appeal. Having complied with their obligation under ERISA to discharge their duties "in accordance with the documents and instruments governing the plan," see 29 U.S.C. § 1104(a)(1)(D), the defendants'

actions in no way constituted a breach of their fiduciary duty to Gillis.[6]  Cf. Averhart v. US WEST Mgt. Pension Plan, 46 F.3d 1480, 1489 n.6 (10th Cir. 1994).

That being said, equitable considerations would seem to require that when Gillis makes a claim for his SPX Accrued Benefit, he received the interest that had accrued on his cash balance account under the terms of the SPX Plan during the pendency of this dispute.  Such a result is unlikely to cause controversy, as all along SPX has been treating Gillis' account as if there had been no claim, with the result that it has continued to accrue interest at the defined plan rate.

### D.    Gillis Has Waived His Claim that the Defendants Failed to Produce Plan Documents In a Timely Manner

Gillis also alleges that the defendants violated ERISA §502(c)(1), which required them, upon Gillis' request, to provide him with plan documents within 30 days.  29 U.S.C. § 1132(c)(1). Because they failed to do so, he requests that the Court order them to pay $26,290, or $110 per day for each day by which the deadline was exceeded.  See id.

Gillis first requested the documents on October 22, 2001, see Gillis Aff. at Ex. N, but he was not provided with a complete set of the requested documents until 230 days later.  The defendants do not dispute that the deadline was missed, but rather assert that Gillis waived any such claim he might have had when he signed his termination agreement on July 31, 2002.

---

[6]To the extent that Gillis' briefing seems to suggest that the defendants violated their duty to him by failing to pay over to him, at least one value of his SPX Accrued Benefit–that is, the value of his claim that was not in dispute–I disagree.  There is no indication in the record that Gillis ever made a claim for his SPX Accrued Benefit, or even that in the context of his claim for the Transition Benefit, he requested disbursement of such portion of his claim as was uncontested. Rather, his claim was for a benefit in a specific amount–an amount he was not entitled to.

The termination agreement which Gillis signed contains the following release provision :

> By signing this Agreement, you release the Company from any known or unknown claims that you may have against the Company. . . .
> The Release applies to the Company and . . . [e]xcept to the extent provided herein, the release also includes any employee benefit plans or funds sponsored or administered by the Company (except that it does not apply to claims for vested benefits, if any, arising from Company-sponsored retirement plans).
> This is a general and complete release that applies to any claim, known or unknown and waives any claim to further compensation or benefits. . . .
> This release specifically applies to claims under . . . the Employee Retirement Income Security Act, . . . any claims for attorneys fees, and any claims arising under any and all federal, state and local laws and under federal and state common law, including claims in contract and tort. It does not apply to any claim that arises after you sign this Agreement, and it does not include claims that cannot be released as a matter of law.

Id. at Ex. K ¶ 4.

I conclude that the defendants are correct: Gillis waived his claim for penalties under ERISA §502(c)(1) when he signed the separation agreement. His claim accrued prior to the date of execution, and while it is related to his claim for vested benefits, it is not the type of benefits claim specifically exempted from the general release. In fact, it falls neatly within the category of "known claims . . . against the Company and . . . any employee benefit plans . . .sponsored or administered by the Company . . . [arising] under . . .the Employee Retirement Income Security Act." In some circumstances it might be unfair to conclude that an employee had waived his right to assert an ERISA claim, particularly where he might not even know he was entitled to raise such a claim at the time he signed the release. This is not that circumstance. Before Gillis signed his separation agreement, he had already retained counsel to advise him regarding his ERISA dispute, and his counsel had sent a letter to SPX warning them of the penalties they would be subject to if they failed

to provide the documents as requested. See id. at Ex. O. As a result of the fact that the undisputed facts in the record indicate that Gillis waived his § 502(c)(1) claim, the defendants are entitled to summary judgment on Count VI of the Complaint.

### III. Conclusion

The SPX Retirement Plan does not violate ERISA's anti-cutback, merger or age discrimination provisions, and the manner in which the defendants administered the plan did not violate any fiduciary duty they might have owed to Gillis. For these reasons, the defendants' Motion for Summary Judgment is GRANTED and Gillis' Motion for Summary Judgment is DENIED.

Finally, having considered the factors set forth in Cottrill v. Sparrow, Johnson & Ursillo. Inc., 100 F.3d 220, 225 (1st Cir. 1996),[7] I conclude that neither Gillis nor the defendants are entitled to the award of attorneys fees.

It is SO ORDERED.

   March 31, 2007                                               /s/ George A. O'Toole, Jr.  
DATE                                                            DISTRICT JUDGE

---

[7] The factors include: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the parties to satisfy a fee award; (3) whether a fee award would deter others from acting under similar circumstances; (4) the benefit that a successful suit confers on plan participants and beneficiaries; and (5) the relative merit of the parties positions. Cottrill, 100 F.3d at 225.